# EXHIBIT A

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:

Rene C. Davidson Courthouse

Administration Building, 1221 Oak Street, Oakland, CA 94612

**FILED**
Superior Court of California
County of Alameda

12/18/2025

Chad Finke, Executive Officer/Clerk of the Court

By: _____ Deputy

A. Gospel

PLAINTIFF(S):

Adrienne Hankins, an individual

DEFENDANT(S):

DENTONS US LLP et al

**NOTICE OF CASE ASSIGNMENT**

CASE NUMBER:

25CV160714

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

| | |
|---|---|
| ASSIGNED JUDGE: | Peter Borkon |
| DEPARTMENT: | 15 |
| LOCATION: | Rene C. Davidson Courthouse |
| | Administration Building, 1221 Oak Street, Oakland, CA 94612 |
| PHONE NUMBER: | (510) 267-6931 |
| FAX NUMBER: | |
| EMAIL ADDRESS: | Dept15@alameda.courts.ca.gov |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedures section 170.6 must be exercised within the time period by law. (See Code of Civ. Proc. §§ 170.6, subd. (a.)(2) and 1013)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording. Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

GENERAL PROCEDURES

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the Rene C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544 and through Civil e-filing. Information regarding Civil e-filing can be found on the courts website. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

**NOTICE OF CASE ASSIGNMENT**

**ASSIGNED FOR ALL PURPOSES TO**
JUDGE Peter Borkon
DEPARTMENT 15

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processed (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days." The court's website contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

COURT RESERVATIONS

The use of the Court Reservation System (CRS) is now mandated in many civil courtrooms within the Alameda County Superior Court. Instead of calling or emailing the courtroom to make a reservation, parties with a case assigned to a courtroom using CRS are directed to utilize CRS to make and manage their own reservations, within parameters set by the courtrooms. CRS is available 24 hours a day, seven days a week and reservations can be made from a computer or smart phone. Please note, you are prohibited from reserving more than one hearing date for the same motion.

Prior to scheduling any motion on CRS, including any Applications for Orders for Appearance and Examination, or continuing any motion, please review the online information (if any) for the courtroom in which you are reserving. There may be specific and important conditions associated with certain motions and proceedings. Information is available on the court's eCourt Public Portal at www.eportal.alameda.courts.ca.gov.

Chad Finke, Executive Officer / Clerk of the Court

By

A. Gospel, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>**12/18/2025**<br>Chad Fluke, Executive Officer/Clerk of the Court<br>By: _Andre Leyva_ Deputy<br>A. Gospel |
| PLAINTIFF:<br>Adrienne Hankins, an individual | |
| DEFENDANT:<br>DENTONS US LLP et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>25CV160714 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

> Date: 05/19/2026    Time: 2:30 PM    Dept.: 15
>
> Location: Rene C. Davidson Courthouse
> Administration Building, 1221 Oak Street, Oakland, CA 94612

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

Expedited Jury Trials

> If the parties agree, they may try the case in an Expedited Jury Trial. Code of Civ. Proc. § 630.01 et seq. In short, the parties would agree to the following: 8 jurors (6 must agree); 3 peremptory challenges per side; 5-hour time limit per side, unless otherwise agreed and approved; one to two court days for completion, unless otherwise agreed and approved; high/low arrangement option; and limited right to appeal. For additional information, please see the following links:
>
> • EJT-010-INFO* Expedited Jury Trial Information Sheet (ca.gov)
> • EJT-008 Agreement of Parties (Mandatory Expedited Jury Trial Procedures) (ca.gov)
> • EJT-020 [Proposed] Consent Order for Voluntary Expedited Jury Trial (ca.gov)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA CIV-100 [Rev. 10/2021]

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>12/18/2025<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _A. Gospel_ Deputy<br>A. Gospel |
| PLAINTIFF/PETITIONER:<br>Adrienne Hankins, an individual | |
| DEFENDANT/RESPONDENT:<br>DENTONS US LLP et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>25CV160714 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Adrienne Hankins, an individual
807 Dodd Court
Bay Point, CA 94612

Chad Finke, Executive Officer / Clerk of the Court

Dated: 12/22/2025          By:

A. Gospel, Deputy Clerk

**CERTIFICATE OF MAILING**



# Superior Court of California, County of Alameda
# Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

> The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:
>
> - Indicating your preference on Case Management Form CM-110. If applicable, when you file your CM-110 file one of the following:
>   - Parties seeking early ADR may request a delay of the Initial Case Management Conference (CMC) by filing form ALA ADR-001, Stipulation to Attend Alternative Dispute Resolution (ADR) and Delay the Initial CMC for 90 days.
>   - Parties seeking referral to the Civil and Probate Mediation Panel (CMP) should file with the clerk a Request for Referral to CMP and Proposed Order.
>
> - Agreeing to ADR at your Initial Case Management Conference.
>
> **QUESTIONS?** Call (510) 891-6055. Email: adrprogram@alameda.courts.ca.gov
> Or visit the court's website at www.alameda.courts.ca.gov/general-information/adr

## What Are the Advantages of Using ADR?

- *Faster* —Litigation can take years to complete but ADR usually takes weeks or months.
- *Cheaper* – Parties can save on attorneys' fees and litigation costs.
- *More control and flexibility* – Parties choose the ADR process appropriate for their case.
- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.
- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

## What Is the Disadvantage of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

## What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

o  **Court Mediation Program**: Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o  **Private Mediation**: This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

o  **Judicial Arbitration Program** (non-binding): The judge can refer a case, or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court.  If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

o  **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

### Mediation Service Programs in Alameda County

Low-cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services.  Contact the following organizations for more information:

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Telephone: (925) 337-7175
Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

**The Congress of Neutrals**
3478 Buskirk Avenue, Suite 1000, Pleasant Hill, CA 94523
Telephone: (925) 937-3008  Website: www.congressofneutrals.org
Their mission is to serve the community, promote harmony and help resolve conflict, one conversation at a time.

Note: For a list of additional mediation service providers, please contact the ADR Office.

ALA ADR-001

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name, State Bar number, and address*):<br><br>TELEPHONE NO.:               FAX NO. (*Optional*):<br>E-MAIL ADDRESS (*Optional*):<br>ATTORNEY FOR (*Name*): | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| | |
|---|---|
| **STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS** | CASE NUMBER: |

**INSTRUCTIONS:  All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 24405 Amador Street, Hayward, CA 94544, or Fax to (510) 267-5727.

1.  Date complaint filed: _____.  An **Initial Case Management Conference** is scheduled for:

    Date:                Time:                Department:

2.  Counsel and all parties certify they have met and conferred and have selected the following ADR process (*check one*):

    ☐ Court mediation        ☐ Judicial arbitration
    ☐ Private mediation      ☐ Private arbitration

3.  All parties agree to complete ADR within 90 days and certify that:

    a.  No party to the case has requested a complex civil litigation determination hearing;
    b.  All parties have been served and intend to submit to the jurisdiction of the court;
    c.  All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
    d.  Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
    e.  Case management statements are submitted with this stipulation;
    f.  All parties will attend ADR conferences; and,
    g.  The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____   ▶  _____
(TYPE OR PRINT NAME)               (SIGNATURE OF PLAINTIFF)

Date:

_____   ▶  _____
(TYPE OR PRINT NAME)               (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

ALA ADR-001

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

_____        ▶ _____
(TYPE OR PRINT NAME)                                (SIGNATURE OF DEFENDANT)

Date:

_____        ▶ _____
(TYPE OR PRINT NAME)                                (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Page 2 of 2

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

# AMENDED

## SUMMONS
### *(CITACION JUDICIAL)*

**SUM-100**

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**FILED**
**ALAMEDA COUNTY**

**JAN 13 2026**

CLERK OF THE SUPERIOR COURT

By _____ Deputy

**NOTICE TO DEFENDANT:** Dentons US LLP, Ashley Coker,
*(AVISO AL DEMANDADO):* Katharine E. Mellon, Brenda Navarrete (DDE), Arianna Kekatos (DOE 2), Laura Bethke (DOE 3) Antonia Alvarez (DOE 4) and DOES 5 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ADRIENNE HANKINS, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Alameda County Superior Court

Rene C. Davidson Courthouse, Adm Bldg., 1221 Oak St., Oakland, CA 94612

**CASE NUMBER:**
*(Número del Caso):*
25CV160714

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Adrienne Hankins, 807 Dodd Court, Bay Point, CA 94565   650-291-7369

DATE: JAN 13 2026        Chad Finke        Clerk, by _____, Deputy
*(Fecha)*                            *(Secretario)*                            *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ALAMEDA
EUREKA

**NOTICE TO THE PERSON SERVED:** You are served
1. ☑ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☑ by personal delivery on *(date):* January 21, 2026

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear
This Form button after you have printed the form.

1   ADRIENNE HANKINS
    807 Dodd Court
2   Bay Point, CA  94565
    Phone Number: 650-291-7369
3   Fax Number:  925-709-3096
    Email:  adrn.hankins@protonmail.com
4

5   ADRIENNE HANKINS, IN PRO PER

**FILED**
ALAMEDA COUNTY

JAN 1 3 2026

CLERK OF THE SUPERIOR COURT
By _____ Deputy

6                   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7                        **FOR THE COUNTY OF ALAMEDA**

8

9   ADRIENNE HANKINS, an individual,

10                  Plaintiff,

11      vs.

12  DENTONS US LLP, ASHLEY COKER,
    KATHARINE E. MELLON, BRENDA
13  NAVARRETE (DOE 1), ARIANNA KEKATOS
    (DOE 2), LAURA BETHKE (DOE 3),
14  ANTONIA ALVAREZ (DOE 4) and DOES 5
    through 20, inclusive,
15

16

17                  Defendants.

18

19

| | |
|---|---|
| Case No.: 25CV160714 | |

**FIRST AMENDED COMPLAINT FOR:**

1. **Wrongful Termination in Violation of FEHA (Fair Employment and Housing Act) (Gov. Code §§ 12940 (a))**

2. **Wrongful Termination in Violation of ADA Amendments Act (Americans with Disabilities Act Amendments) (Gov. Code §§ 12940 (m), (n))**

3. **Wrongful Termination in Violation of CFRA (California Family Rights Act) (29 U.S.C § 2615); (Gov. Code § 12945.2)**

4. **Wrongful Termination in Violation of FMLA (Family Medical Leave Act) (29 U.S.C § 2615); (Gov. Code § 12945.2)**

5. **Violation of FEHA (Fair Employment and Housing Act)/Failure to Engage in the Interactive Process (Gov. Code §§ 12940 (m), (n))**

6. **Retaliation in Violation of FEHA (Fair Employment and Housing Act) (Gov. Code §§ 12940 (h), (m), (n)); 12945.2)**

7. **Violation of ADEA (Age Discrimination in Employment Act) (29 U.S.C. §§ 621 & 623); Gov. Code § 12940 (a))**

*Continued on next page*

- 1 -

**FIRST AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8. **Harassment in Violation of FEHA (Gov. Code §§ 12940 (k); 12945.2)**

9. **Wrongful Termination in Violation of Internal Policy/Breach of Implied Covenant**

10. **Wrongful Termination in Violation of Public Policy (Gov. Code § 12940)**

11. **Negligent Infliction of Emotional Distress**

**DEMAND FOR JURY TRIAL**

**FIRST AMENDED COMPLAINT**

1

## I.   <u>NATURE OF ACTION</u>

2      1.    Plaintiff hereby amends the Complaint filed on December 18, 2025, pursuant to CCP

3   §§472, 474 to add Does 1 through 4 as defendants.  Plaintiff is informed and believes, and thereon

4   alleges, that each Doe defendant was an employee, supervisor, or agent of DENTONS US LLP,

5   and that each acted within the course and scope of such relationship in committing the acts

6   alleged herein.  Further, each of the Doe defendants is legally responsible in some manner for the

7   events and happenings referred to herein, and proximately caused the damages alleged.  Plaintiff

8   amends this complaint to allege their true names and capacities.

9      2.    Plaintiff ADRIENNE HANKINS ("Plaintiff"), an individual demanding a jury trial,

10  brings action against DENTONS US LLP, ASHLEY COKER, KATHARINE E. MELLON,

11  BRENDA NAVARRETE (DOE 1), ARIANNA KEKATOS  (DOE 2), LAURA BETHKE (DOE

12  3), ANTONIA ALVAREZ (DOE 4) and DOES 5 through 20, inclusive, (collectively

13  "Defendants"), to remedy and redress Defendants' employment practices and policies of wrongful

14  termination, harassment and discrimination, retaliation, failure to prevent discrimination and

15  harassment, and other tortious and unlawful conduct.  Plaintiff seeks compensatory damages,

16  punitive damages, injunctive relief, attorneys' fees and costs.

17

## II.   <u>JURISDICTION AND VENUE</u>

18     3.    This Court has jurisdiction in this matter because Plaintiff is a resident of the State of

19  California and Defendants regularly conduct business in Alameda County in the State of

20  California.

21     4.    Venue is proper in the of County of Alameda because Plaintiff was employed for

22  Defendants in the County of Alameda, and the unlawful actions and omissions, set forth herein,

23  occurred in the County of Alameda.

24

## III.   <u>PLAINTIFF</u>

25     5.    Plaintiff is a resident of the State of California.  At all relevant times herein, Plaintiff

26  was employed by Defendants and Does 1 through 20 in the County of Alameda, State of

27  California.

28

- 3 -

**FIRST AMENDED COMPLAINT**

1

## IV.   DEFENDANTS

2      6.    Plaintiff is informed and believes and thereon alleges that at all relevant times herein,

3   Defendant DENTONS US LLP (hereinafter "DENTONS" or "The Firm") is the world's largest

4   global law firm[1], with over 20,000 employees, including over approximately 12,500 lawyers

5   globally and including more than 1,100 employees in the United States, DENTONS has hundreds

6   of professionals in their California presence.  DENTONS has an office in Alameda County of

7   approximately 40 employees at 1999 Harrison Street, Suite 1210, Oakland, California 94612.

8      7.    Plaintiff is informed and believes and thereon alleges that at all relevant times herein,

9   that Defendant Ashley Coker (hereinafter "Coker") is the staff legal administrative assistant

10   manager at DENTONS, 1999 Harrison Street, Suite 1210, Oakland, California 94612.

11      8.    Plaintiff is informed and believes and thereon alleges that at all relevant times herein,

12   that Defendant Katharine E. Mellon (hereinafter "Mellon") is a Partner and Deputy General

13   Counsel at DENTONS.

14      9.    Plaintiff is informed and believes and thereon alleges that at all relevant times herein,

15   that Defendant DOE 1, BRENDA NAVARRETE (hereinafter "Navarrete") is a Benefits and LOA

16   (Leave of Absence) Specialist at DENTONS.

17      10.   Plaintiff is informed and believes and thereon alleges that at all relevant times herein

18   Defendant DOE 2, ARIANNA KEKATOS (hereinafter "Kekatos") is a HR Business Coordinator

19   at DENTONS.

20      11.   Plaintiff is informed and believes and thereon alleges that at all relevant times herein,

21   that Defendant DOE 3, LAURA BETHKE (hereinafter "Bethke") is the Human Resources

22   Business Partner at DENTONS

23      12.   Plaintiff is informed and believes and thereon alleges that at all relevant times herein,

24   that Defendant DOE 4, ANTONIA ALVAREZ, (hereinafter "Alvarez") is the Head of Human

25   Resources at DENTONS.

26

27

28   [1]"Dentons remains the largest law firm in the world by lawyer headcount..."† The Global Legal Post |
globallegalpost.com; Dentons US LLP | www.dentons.com

13.    The true names and capacities of DOES 5 through 20, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants under fictitious names. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated as a DOE is responsible for the events and happenings referred to herein, and caused the injuries and damages alleged in this Complaint. All claims against Defendants are therefore also pled against Does 5 through 20. Plaintiff will seek leave of the court to amend this Complaint to allege their true names and capacities when ascertained.

14.    Plaintiff is informed and believes and thereon alleges that each and every defendant was the authorized agent, principal, partner, joint venture, guarantor, actual or ostensible, of the other defendants and had full authority in their respective capacity to do as alleged herein, unless alleged otherwise. Furthermore, each and every defendant was operating within the course and scope of their agency, or as a principal, partner, joint venture, guarantor, actual or ostensible, relationship with the other defendants during the course of events described herein unless alleged otherwise. Whenever reference is made in this complaint to any act or failure by a defendant or defendants, such allegations and reference shall also be deemed to mean the acts and failures of each defendant acting individually, jointly, and severally, unless alleged otherwise. Whenever reference is made to individuals who are not named as a defendant in this complaint, but who were employees of Defendants, such individuals acted on behalf of Defendants within the course and scope of their employment.

## V.    STATEMENT OF FACTS

15.    Plaintiff was hired as a legal secretary at DENTONS (*formerly Sonnenschein Nath & Rosenthal, SNR Denton*) on March 10, 2008. Plaintiff dedicated more than seventeen years to DENTONS, consistently performing at an exceptional level as a legal administrative assistant (hereinafter "LAA", *title changed from legal secretary to legal administrative assistant*). Throughout her tenure, she received outstanding performance reviews and was recognized (*See* **Exhibit** A); by attorneys and colleagues for her professionalism, reliability, and value to The Firm.

16.    During her employment, Plaintiff sustained multiple, documented repetitive motion injuries directly attributable to her job duties. From approximately 2009 through 2025, Plaintiff experienced ongoing and worsening injuries as a direct result of her job duties (workers comp). These injuries, documented over several years, include cervical and lumbar spine injuries, right and left shoulder injuries, and right upper extremity impairments. Despite chronic pain, she maintained her work responsibilities, using paid time off only for necessary medical appointments and procedures, until the pain became unmanageable in recent years.

17.    Between 2023 to current, Plaintiff's injuries worsened. She experienced chronic, persistent and debilitating pain, in various body parts, throughout the day and while sleeping at night. Plaintiff contemplated options for an early retirement, with hopes of a productive life and career of which would offer job security and allow for self-sufficiency, gainful employment and income comparable to Plaintiff's DENTONS salary. She remained hopeful, despite chronic pain. However, Plaintiff was concerned as to what type of job she could do, since she had been doing the same work that caused multiple injuries for 17 years.

18.    In October 2023, Plaintiff consulted with her authorized treating physician by telephone and discussed her need for a modified work schedule. At that time, Plaintiff's physician prescribed that Plaintiff work on a reduced schedule -- 3 days per week for 7.5 hours per day (instead of 5 days per week) -- to reduce her risk of constant flare-ups, repeat injury, aggravation and exacerbation of injuries and to get some relief, (*See* **Exhibit B**).

19.    Shortly after Plaintiff discussed the aforementioned with her medical doctor, in October 2023, Plaintiff reviewed The Firm's DUS Policies and Procedures and discovered that she was eligible and covered under FMLA[2] (Family and Medical Leave Act) for a job-protected leave to address her own medical condition. Plaintiff also learned that she qualified for CFRA[3]

---

[2] The Family and Medical Leave Act (FMLA) entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons with continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave. dol.gov

[3] The California Family Rights Act (CFRA) authorizes eligible employees to take up to a total of 12 weeks of paid or unpaid job-protected leave during a 12-month period. While on leave, employees keep the same employer-paid health benefits they had while working. calcivilrights.ca.gov

**FIRST AMENDED COMPLAINT**

1    (California Family Rights Act) a job-protected leave, coordinated through UNUM, for her own

2    serious health condition.  UNUM provided Plaintiff with a leave entitlement eligibility letter (*See*

3    **Exhibit C**) "*UNUM works with DENTONS US LLP to administer family and medical leaves.*

4    *This includes leave taken under the Family and Medical Leave Act of 1993 (FMLA) and any*

5    *applicable state leave laws and corporate leave policies.*"

6        20.   On November 1, 2023, a DENTONS human resources manager sent an email (*See*

7    **Exhibit D**) with information regarding leave entitlement.  Among other information provided,

8    Plaintiff was responsible for informing UNUM and DENTONS in the event that any leave plans

9    changed.  The reduced schedule allowed Plaintiff to freely attend weekly medical appointments

10    (acupuncture, physical therapy, chiropractic care, and massage therapy) at her own expense (e.g.

11    PTO exhaustion, travel, gas costs, etc.).  Plaintiff attended multiple appointments on a consistent

12    weekly basis for approximately 2 years.

13        21.   One day, in February 2024, Plaintiff was getting coffee in the breakroom and Coker

14    asked her if they could talk (for an impromptu discussion); Plaintiff agreed. Coker proceeded to

15    state that a particular attorney mentioned that Plaintiff was hard to reach by phone at times.

16    (Plaintiff had been working with this attorney for less than a year and he would frequently call to

17    gossip and/or complain about other colleagues. He would also call on Plaintiff's off days.) Coker

18    stated that he mentioned when he calls Plaintiff, it sounds like a fax line and he believes Plaintiff

19    is commuting on company time. Plaintiff began explaining to Coker that she receives a lot of

20    spam calls, after the third ring, the call bounces to the fax line, and if someone sends an email,

21    she'll respond right away. Plaintiff also mentioned to Coker how this particular attorney liked to

22    call to gossip and it disrupts her workflow.  Coker responded in an accusing manner, "I think

23    you're commuting on company time." Plaintiff replied, "I would never commute on company

24    time, that's stealing from the Firm. I start my workday at home (8:30am) then I commute in at

25    about 10[am] and it only takes about 25 minutes. Then I head home at around 1:30[pm] to finish

26    out my workday. I use my lunch and breaks for the commuting time when there's minimal traffic

27    congestion". Coker then stated, "I think you're running errands." Plaintiff, in disbelief at Coker's

28    accusation, did not respond. Coker then asked Plaintiff regarding her ability to work in the office

more. Plaintiff explained her inability to do so, due to medical appointments, chronic pain, self-care needs and mental stability. Coker and Plaintiff verbally agreed to a one workday-in-office per week.

22.    Sometime in June 2024, DENTONS began a back-in-office work initiative which was not mandatory, but was encouraged for as many days per week as employees were able. Plaintiff continued to work in-office one day per week on her modified work (3 days) schedule, as agreed. Plaintiff noticed that the reduced work schedule helped her physical health, however it caused financial stress. As Plaintiff continued to grapple with chronic pain and work related injuries, she considered an early retirement. However, with the FMLA and CFRA leaves, Plaintiff had a glimpse of her financial situation, receiving pay only at 60% of Plaintiff's regular full-time salary. Plaintiff was owed intermittent leave/PTO reimbursement and she continued to check in with HR for the status. After multiple requests, on July 31, 2024, Plaintiff finally received payment (*See* **Exhibit E**) for leave taken October 2023 through June 2024.

23.    Plaintiff's condition had improved significantly after maintaining her medical compliance for approximately (10) months (which included weekly physical and massage therapy, acupuncture and chiropractic care). She felt encouraged that she may be able to return to work full time so she met with her doctor. On August 29, 2024, per doctor's orders, (*See* **Exhibit F, Page 32**), she was greenlighted to work 4 days instead of 3 days per week "*Patient is to work part-time 4 days a week 7.5 hours a day.*"

24.    In September 2024, Plaintiff's husband was diagnosed with cancer and underwent surgery in October 2024. On November 25, 2024, DENTONS coordinated with UNUM to approve CFRA and FMLA leave entitlement for Plaintiff to care for herself and for her husband, (*See* **Exhibit F, Page 33**). Plaintiff was grateful that DENTONS allowed her to work remotely and on a reduced schedule for Plaintiff's health reasons, self-care and for her spouse's very serious health condition. It allowed Plaintiff to balance her work commitments and personal life simultaneously.

25.    On April 9, 2025, Plaintiff met with Coker to discuss Plaintiff's prior year 2024 performance review. During the review, the first item Coker mentioned was a concern from one

- 8 -

**FIRST AMENDED COMPLAINT**

1  of Plaintiff's primary review appraisers (an attorney who Plaintiff was assigned to support). She

2  stated to Plaintiff, "you need to do better with proofreading." When Coker mentioned the

3  proofreading issue, Plaintiff had not yet had the opportunity to review any comments. This

4  stemmed from an attorney who Plaintiff was newly assigned to for 6 months. Plaintiff explained

5  to Coker that the attorney was new to The Firm and proofreading briefs is not a customary

6  practice for LAAs. Plaintiff went on to state how she runs Spell Check to find typos, and this

7  attorney frequently places commas after the word "and" but Spell Check calls it out. Plaintiff

8  asked "should I correct these types of errors?" Coker then stated, without acknowledging

9  Plaintiff's question, "he mentioned proofreading forms." At that point, Plaintiff still had not had

10 the opportunity to see his actual comment. Plaintiff replied, "In the 6 months working with him, I

11 remember preparing maybe one or two forms for him." Plaintiff then read the actual comment the

12 attorney made about proofreading. The comment stated, "*My one area of improvement for*

13 *Adrienne would be to have a more detailed eye when proofing and preparing things like a proof*

14 *of service--sometimes when we use old samples they are not updated to include recent changes*

15 *(like adding a new party to the list) or will contain names from the initial draft that are not*

16 *applicable to this case. Overall, I think Adrienne is a valued member of our team and she always*

17 *works hard to provide great results for our client.*" (See **Exhibit A, Page 17**). Plaintiff advised

18 Coker that the attorneys often forget to inform LAAs when the parties change and it is impossible

19 for the LAA to know unless the attorney provides that information. Coker replied, "He was

20 talking about forms." Plaintiff responded, "Well I'm not signing this then because it's not right."

21 Coker then said, "Signing doesn't mean you agree with it, it confirms we went over it together."

22 Plaintiff then began signing and Coker stated, in a nonchalant tone "Adrienne, this is a good

23 review." She then, while flipping through papers without making eye contact with Plaintiff,

24 switched to a coercing and bullying tone, "I know all about your injuries, your doctors'

25 appointments, and your self-care," then looking up at Plaintiff with an intimidating stare, "but I

26 am going to need you to come into the office three times per week." Plaintiff, appalled, kept quiet

27 in disbelief of Coker's comments about Plaintiff's medical issues in that context. It seemed Coker

28 was suggesting that Plaintiff disobey her doctor's recommendations. Plaintiff did not respond and

**FIRST AMENDED COMPLAINT**

after several seconds of silent staring, Coker stated, "Let's move on to compensation." Shortly after discussing compensation, the meeting ended.

26.    After the aforementioned performance review, Plaintiff read through all the appraisals. The comment about proofreading forms did not originate from the primary review appraiser; it was actually a comment that Coker made. Plaintiff was a little taken a back that this comment came from Coker and not an attorney. Coker would often time ask Plaintiff what the correct procedure was for a particular task. It was clear she was unfamiliar with litigation related court forms and/or documents. After contemplating the dialogue Plaintiff had with Coker and reading the actual review, all primary appraisers mostly gave Plaintiff ratings of "*Outstanding*" or "*Exceeds Expectations.*" It felt as though Coker disregarded all of the positive feedback and highlighted this single comment, inserting her own opinion, for the purpose of tarnishing what would otherwise be a stellar review.

27.    Next, Plaintiff read through DENTONS DUS Policies and Procedures (*See* **Exhibit G**) looking for the Firm's guidelines regarding remote work and could not find anything stating that in-office appearance three days per week was mandatory. At the time, Plaintiff was still on FMLA leave and continued to attend medical appointments throughout the month. If there was ever a request from one of Plaintiff's attorney assignments to come into the office for a hands-on project, Plaintiff would always make efforts to accommodate their requests. Plaintiff began to wonder why Coker was less focused on Plaintiff's excellent job performance. Coker overlooked all the positive reviews, yet focused on a disputable "Meets Expectations" comment and intimidatingly demanded Plaintiff disrupt her healthcare regimen after the two had already verbally agreed previously to 1-day per week.

28.    Since Plaintiff primarily had been working remotely since 2020, all of Plaintiff's medical providers were near Plaintiff's residence and it was more efficient to work from home and less disruptive to her DENTONS workload. Plaintiff attempted to work from the office more and found the collaborative connection helpful, however with multiple weekly appointments, it presented too great of a disruption to commute in more than one day. She had a full workload—supporting (5) attorneys—and staying compliant with her health regimen was a top priority.

**FIRST AMENDED COMPLAINT**

1    Plaintiff then resolved to continue working in the office one-day per week, as previously agreed,

2    since that was all she was able to accommodate physically and mentally. Plaintiff continued to use

3    FMLA and CFRA job-protected leaves, which were certified by her healthcare provider to work

4    on a reduced and/or intermittent schedule for 4 days per week, (*See* **Exhibit H**). DENTONS and

5    UNUM's coordinated efforts provided work-life balance, it helped Plaintiff's medical condition

6    and mental stability.

7        29.    Every 6-weeks, Plaintiff obtained a work status from Boomerang Healthcare to

8    provide to DENTONS. The work statuses also included the next 6-week follow-up appointment

9    date, (*See* **Exhibit I**). Plaintiff emailed a copy to Coker and Navarrete consistently to keep them

10   updated. Plaintiff also provided advance notice of days she would be working in-office or

11   remotely when possible, (*See* **Exhibit I, Page 71**)

12       30.    July 29, 2025, DENTONS benefits team sent Plaintiff and Coker an email *(See*

13   **Exhibit J, Page 73)** and copied various employees on the DENTONS benefits team. The email

14   outlined Plaintiff's 24-week leave entitlement (*benefits eligible and approved through January*

15   *10, 2026)*. As of August 2025, Plaintiff was eligible and approved for CFRA and FMLA - Non-

16   Parental Leave[4] --Non-Parental leave is designed to provide time off when you (self-care) due to a

17   serious health condition.

18       31.    On August 18, 2025, Coker conducted an impromptu, in-person/virtual staff meeting

19   with all eight of the Oakland office LAAs. Plaintiff and four others were present in person and

20   three LAAs joined via Zoom. As Coker made her announcement, she side-eyed stared at Plaintiff,

21   "all staff are to appear to work in the office three times per week, this is coming from the higher-

22   ups." And turning to the group, she asked, "any questions?" One LAA commented, "well, I'm

23   already coming in 3 days per week." Then the meeting ended.

24       32.    On August 19, 2025, Plaintiff attended a routine appointment with her treating

25   physician and advised him what Coker stated, requiring all employees needing to appear in the

26

27   _____

     [4] DUS recognizes the challenges employees face when trying to balance work demands and familial needs.

28   Accordingly, these Non-Parental Leave policies are designed to provide time off when you (self-care) have a serious
     health condition or a family member with a serious health condition needs assistance. Eligible family members include
     a spouse …"

**FIRST AMENDED COMPLAINT**

office three times per week.  He provided a work status note (*See* **Exhibit K)** and asked Plaintiff

to obtain the in-office exception form for doctor's approval.  Plaintiff emailed Navarrete and cc'd

Kekatos requesting the form, and the HR Benefits Team replied with an ADAAA

Accommodation form, (*See* **Exhibit L, Pages 85-87)**. The request was made for a DENTONS

work-in-office exemption form, but the Human Resources Benefits Team provided an ADAAA

Accommodation[5] form.

33.    On August 26, 2025, Plaintiff was working in the office when she received a

harassing phone call from Coker.  Coker stated, "since you are <u>not</u> in the office today (*Tuesday*),

are you coming in Wednesday, Thursday and Friday?"  Plaintiff stated, "I <u>am</u> in the office today.

I will do the best I can, I have a medical appointment today, and I have a contractor arriving at my

home tomorrow morning (*Wednesday)* and another medical appointment on Thursday."  Coker

stated, "Your contractor is not a work excuse."  Coker asked again, with an irritated tone, while

Plaintiff was in the office, "ARE YOU COMING INTO THE OFFICE?"  Plaintiff responded "I

will do the best I can.  I am working on getting an ADA accommodation/exception."  Coker then

exclaimed, "YOU ARE TO COME INTO THE OFFICE THREE DAYS PER WEEK UNTIL

YOUR ACCOMMODATION GETS APPROVED OR DENIED!"  Coker demanded again,

"What days are you coming in this week?" Plaintiff responded, "I am not sure."  She then

harassingly stated, "YOU ARE TO COME INTO THE OFFICE THREE DAYS PER WEEK

UNTIL YOUR ACCOMMODATION IS APPROVED!"  After hearing Coker's repeated demand

several times, Plaintiff responded "I understand; I get it." It was clear that Coker was angry and

annoyed.

34.    Plaintiff was under enough stress trying to focus on the task she was working on,

coping with chronic pain, as well as organizing and multi-tasking the workload in that moment.

---

[5] An employee has a disability if he or she has an impairment that substantially limits one or more major life activities
or a record of such impairment. "Substantially limits" under the ADA Amendments Act of 2008 ("ADAAA") has been
broadened to allow someone with an impairment to be "regarded as" having a disability, even without the perception
that the impairment limits a major life activity, provided that the impairment does not have an actual or expected
duration less than or equal to six months. The American with Disabilities Act of 1990: Prohibits employers from
discriminating against individuals with disabilities. ada.gov

**FIRST AMENDED COMPLAINT**

1    The LAA position is a very high intensity and demanding job due to the need for precision,

2    attention to detail and the ability to work under pressure in a fast-paced environment. Plaintiff's

3    position also required strong analytical skills and the ability to multi-task all while juggling

4    multiple requests from the five attorneys Plaintiff supported all while anticipating the next

5    deadline and/or task. LAAs are expected to be proactive, anticipate the needs of their colleagues

6    and the office as a whole. Plaintiff had a medical appointment and was finishing up the task at

7    hand, so that she could leave during her lunch break within the hour.

8        35.    The call was disruptive, emotionally disturbing and Plaintiff felt humiliated. Coker

9    earlier stated she was aware that Plaintiff was dealing challenges with injuries, as well as Plaintiff

10   needing to attend medical appointments (at least two per week), yet Coker demanded Plaintiff in a

11   bullying and harassing manner, to commute to work into the office three days per week when

12   working from home was equivalent or better in efficiency for both DENTONS and Plaintiff.

13       36.    Immediately following the call, Plaintiff received an email from Navarrete,

14   reiterating the demand advising Plaintiff that her in-office appearance, 3 days per week, was

15   required until the ADAAA accommodation was approved. Receiving Navarrete's follow-up email

16   within minutes after Coker's call was an unsettling occurrence and further added to Plaintiff's

17   feelings of humiliation and isolation. This August 26th incident caused Plaintiff substantial

18   emotional distress, nonetheless, she continued to focus on the task at hand.

19       37.    On August 28, 2025, Plaintiff's FMLA and CFRA leave status was updated (from 1

20   full day to just 2 hours per week) and approved through February 13, 2026, *"The healthcare*

21   *provider has certified that you may need to take leave up to 2 hours off per week."* (*See* **Exhibit**

22   **M, Page 88**). Plaintiff's condition improved drastically, all attributable to her medical treatments

23   and the modified work schedule approved through the job-protected leave. Although challenging,

24   Plaintiff commuted into the office 3 days per week for the remainder of August and through

25   September, while waiting for DENTONS to approve the ADAAA accommodation.

26       38.    On September 4, 2025, Plaintiff's treating practitioner completed the ADAAA

27   accommodation form (*See* **Exhibit N**) and Plaintiff emailed it to Navarrete and cc'd Bethke and

28   Kekatos. It took one week for Plaintiff to get a response. On September 11, Kekatos replied,

**FIRST AMENDED COMPLAINT**

1    *"Hello Adrienne, hope you are doing well. Would you be able to have your doctor update the*
2    *form for question 2?  It seems that the information provided pertains to a symptom rather than a*
3    *diagnosis. Additionally, we need clarification on how commuting, particularly by public transit,*
4    *aggravates the condition."* Plaintiff responded *"... not doing too good today, but I will talk with*
5    *my doctor." (See* **Exhibit O, Pages 92-93**). Kekatos's opinion regarding Plaintiff's doctor's
6    report made Plaintiff feel anxious and isolated.  It seemed as if the delayed response was
7    intentional and DENTONS was seeking to find a reason to deny the accommodation.  On
8    September 15, 2025, Navarrete asked Plaintiff to keep her posted once an updated form is
9    obtained from the provider.

10        39.    On September 18, 2025, Plaintiff had a doctor's appointment and discussed the
11    revisions requested by Kekatos.  Plaintiff's doctor revised the ADAAA accommodation form and
12    Plaintiff prepared a cover memorandum to send along with it, (*See* **Exhibit O, Pages 98-99**).  The
13    memorandum from Plaintiff provided more information as to the response requested by human
14    resources.  It included a Panel Qualified Medical Examination dated November 23, 2020, (See
15    **Exhibit O, Pages 101-109**) and a reference to the diagnosis and request for medical info that
16    Kekatos had requested (*See* **Exhibit O, Pages 115-117**). Plaintiff's doctor revised the form,
17    among other edits stating, *"forcing patient to take public transit multiple times a week in order to*
18    *go to work will increase patients risk for fall, trauma, re-injury and also aggravate current*
19    *injuries, and hinder the progress she is making by being compliant with her medical treatment."*
20    While difficult, Plaintiff still commuted into the office 3 days per week, waiting for DENTONS to
21    approve the ADAAA accommodation.

22        40.    On September 30, 2025, nearly two weeks following doctor's clarification, Plaintiff
23    received an email from Navarrete, advising that Plaintiff's ADAAA accommodation was
24    approved for 6 months, through March 2026 (*See* **Exhibit P**).  Plaintiff replied asking, "How is
25    this fair, I commuted into the office through the entire month of September, but my
26    accommodation is approved through March 2026, this is only 5 months, this approval needs to be
27    approved through April 2026."  Navarrete agreed, and stated, "the accommodation is approved
28    through April 2026." (*See* **Exhibit P, Page 118**) Although Plaintiff's doctor prescribed a

- 14 -
**FIRST AMENDED COMPLAINT**

1    September 4, 2026 re-evaluation, DENTONS approved Plaintiff's ADAAA accommodation only

2    through April 2026. Under the direction and order of Plaintiff's doctor, Plaintiff was granted a

3    full work-from-home medical ADAAA accommodation due to Plaintiff's health condition and

4    Plaintiff was relieved and grateful that DENTONS approved her reasonable accommodation.

5         41.    October 8, 2025 (about a week following the approval) at approximately 10:30am,

6    Coker sent Plaintiff an email requesting a meeting at 11:00am, either in person or virtual.

7    Plaintiff joined the virtual meeting with Coker and Bethke. Plaintiff was advised by Coker that

8    she was being let go. Plaintiff asked, "why" and Coker stated a "reduction in force." Bethke

9    didn't say a word. Coker stated, "We can send your final check by messenger or mail." Plaintiff

10   replied, "Messenger please." Coker's final words were, "Log-off immediately, the FedEx label for

11   your computer will come by messenger with your check." Plaintiff was shocked, humiliated and

12   wondering why she had been selected, especially because of the exceptional reviews over 17

13   years of service and the recently approved ADAAA accommodation. Plaintiff was in great

14   emotional distress.

15        42.    Bethke sent Plaintiff an email several hours later at 3:19pm, subject line titled

16   "Personal & Confidential," (*See* **Exhibit Q).** The email contained 10 attachments. Included was

17   a Notice to Employee as to Change in Relationship (*See* **Exhibit Q, Page 126)** and Alvarez's

18   Cover Letter explaining details of the *2025 Business Services Staffing Review and Organizational*

19   *Alignment Program.* (*See* **Exhibit Q, Page 127-128**). Contrary to what Coker stated, Alvarez's

20   letter made no mention of a reduction-in-force. Also, when Plaintiff received her final paycheck,

21   the memo attached to it read, "*2025 Business Services Staffing Review and Organizational*

22   *Alignment.*" Plaintiff was confused because Organizational Alignment[6] and Reduction-in-Force

23   are defined differently. Often times reductions in force are designed to sever employees with

24   negative work performance. However, Plaintiff's job performance was stellar. Plaintiff's prior

25   year 2024 performance review, was outstanding and mostly exceeded expectations, with no

26

27

28   [6] Organizational alignment is the process of implementing strategies and philosophies to ensure that each member of an organization, from entry-level positions to executive managers, shares a common goal and vision for the success of an organization. Organizational Alignment: Definition, Benefits and How To Achieve It | Indeed.com

- 15 -

**FIRST AMENDED COMPLAINT**

1    disciplinary issues. Plaintiff was recognized by attorneys and colleagues for her work ethic,

2    professionalism, reliability and her value to the Firm. While California is an at-will employment

3    state, Coker and Alvarez provided two differing reasons for Plaintiff's termination. It is apparent

4    that DENTONS used the guise of downsizing to wrongfully terminate Plaintiff, which thrust her

5    out of the workforce and into early retirement. Despite Plaintiff's ongoing medical needs and job-

6    protected leave DENTONS terminated her employment. Perhaps Plaintiff was selected because

7    she was approaching 58 years old with a disability which required accommodations that no longer

8    aligned with DENTONS organizational goals.

9         43.    Upon Plaintiff's termination, DENTONS offered a severance package—the

10   DENTONS Staff Severance Pay Plan ("Severance Plan") which states *"Under the Plan, eligible*

11   *employees are entitled to severance based on years of service... the Plan expressly reserves*

12   *DENTONS US LLP's discretion to enter into severance arrangements on terms different from*

13   *those set for in the Plan, including enhanced severance and benefits, where warranted by the*

14   *circumstances."* (See **Exhibit R, Page 140**). — along with DENTONS Employee Resource

15   Guide. At termination, Plaintiff was approaching 58 years old and facing ongoing medical needs,

16   including scheduled procedures and care for her own injuries as well as her husband's cancer

17   treatment, both of which require continued health insurance coverage. Plaintiff's rate of

18   compensation was $58.36/hour. (*See* **Exhibit S**) DENTONS offered Plaintiff (19) weeks of

19   severance pay and the acceptance of Waiver and Release Agreement (*See* **Exhibit T**) expired

20   within (45) days of the date of termination (November 22, 2025). It also stated medical benefits

21   would terminate on October 31, 2025. DENTONS Employee Resource Guide (*See* **Exhibit U,**

22   **Page 155**) states that health insurance coverage ends the last day of the month employment

23   terminates, with COBRA continuation available at employee's own expense unless otherwise

24   negotiated. This was not sufficient for Plaintiff to continue addressing her own serious health

25   condition, cover her husband's healthcare and their living expenses. Plaintiff also felt that this did

26   not reflect her long-standing contributions to The Firm, the circumstances of her separation, nor

27   her ongoing medical and financial needs, thus it did not align with her best interests. DENTONS

28   appeared to disregard Plaintiff's FMLA, CFRA leaves, ADAAA accommodation and her

1    disability in general.

2        44.    On October 10, 2025, Plaintiff emailed (see **Exhibit V, 163**) Alvarez a letter

3    confirming receipt of the Waiver and Release Agreement, and advising Alvarez that Plaintiff had

4    two active medical conditions protected under FMLA and CFRA, eligible through February 13,

5    2026; also advising that Plaintiff was granted an approved ADAAA accommodation through

6    April 30, 2026; and finally Plaintiff requested to continue working to remain on DENTONS

7    payroll and keep benefits in place, at least for the duration of leave. Alvarez responded (*See*

8    **Exhibit V, Page 165**) callously without empathy, "*clarifying that job protection would only apply*

9    *if the decision to terminate employment was related to Plaintiff's intermittent leave… neither your*

10   *accommodation nor your intermittent leave was the basis of the decision, and therefore, they are*

11   *irrelevant…*". Alvarez is the head of human resources. Plaintiff was taught to believe that the

12   responsibility of ("HR") is to ensure employees are treated fairly and as individuals with their

13   own needs and desires. HR is generally characterized to be empathetic, understanding and

14   supportive of employees' needs. Alvarez was aware that Plaintiff was a qualified individual with a

15   disability as defined under ADAAA and knew about Plaintiff's medical condition that impacted

16   certain aspects of her position, yet Plaintiff was met with a curt, indifferent response. This

17   interaction caused Plaintiff substantial emotional distress.

18       45.    October 11, 2025, Plaintiff emailed Alvarez (*See* **Exhibit V, Page 167**) regarding her

19   eligibility for DENTONS profit sharing contribution for 2025. However, on October 13, 2025,

20   Alvarez replied advising that Plaintiff was ineligible. Per the Employee Resource Guide,

21   employees are eligible for a profit sharing contribution for the year if their employment ends due

22   to disability, as documented by medical evidence and work status reports, (*See* **Exhibit U, Page**

23   **160**) At the time of Plaintiff's termination, she believes she was and is eligible to participate in

24   DENTONS's 2025 Profit Sharing. Coker and Alvarez provided conflicting reasons as to why

25   Plaintiff was terminated. Again, Coker stated Plaintiff was let go due to a reduction-in-force, but

26   Alvarez's letter states organizational alignment. The inconsistent explanations between Coker and

27   Alvarez reflects DENTONS was dishonest about the reason for termination and concealed the true

28   motive why they chose to discharge Plaintiff. The timing of Plaintiff's termination was

**FIRST AMENDED COMPLAINT**

immediately (the following week) after approval of the ADAAA accommodation which appears retaliatory. Defendants punished Plaintiff for prioritizing her health and terminated her due to her disability related to her medical condition.

46.    On October 23, 2025, Plaintiff paid $952.00 for COBRA for the month of November (*See* **Exhibit W**). Plaintiff had major costly procedures scheduled in October and November, however she could not afford to pay for COBRA for the month of December and resorted to cancelling the medical and dental appointments she had planned and scheduled.  The financial burden of the healthcare cost and Plaintiff's inability to obtain the medical and dental care needed due to financial constraints caused emotional distress.

47.    On November 10, 2025, Plaintiff emailed a demand letter (*See* **Exhibit X**) to Alvarez requesting enhanced severance and benefits. The demand was made in good faith with the intent to settle and resolve all disputes efficiently without further escalation.  Several weeks passed without a response from DENTONS and the deadline to accept the Severance Plan expired.

48.    On December 1, 2025, Mellon responded to Plaintiff's demand letter. Mellon did not address any of Plaintiff's requests. There was no mention as to whether or not DENTONS was willing to enhance the severance and benefits nor any mention of the option for Plaintiff to exercise DENTONS initial offer. DENTONS premeditated Plaintiff's termination, as Mellon's letter states, "*this past summer the Firm completed a comprehensive review... concluded that two Legal Administrative Assistant roles would be eliminated... Ms. Hankins was one of those selected.*" (*See* **Exhibit Y, Page 173**), while deceitfully and cruelly requesting additional documentation for review from Plaintiff's healthcare provider for the purpose of approving an ADAAA accommodation through April 2026, which they had no intentions of honoring since Plaintiff would be terminated a week following the approval. Further, Mellon's response defended DENTONS' position regarding the alleged reduction in force and appeared to invite ligation, (*See* **Exhibit Y, Page 174**), stating, "*If Ms. Hankins were to decide to file litigation, Dentons will vigorously defend against her claims.*" Reading Mellon's letter disheartened Plaintiff and caused substantial emotional distress.

49.    On December 8, 2025, Plaintiff's doctor directed her to sign up for a Functional

**FIRST AMENDED COMPLAINT**

1   Restoration Program which is a multi-disciplinary five days per week, 6-week program to

2   increase physical function, improve pain coping skills, psychological evaluation with a mental

3   health provider and promote the return to a productive lifestyle. Plaintiff is hoping to return to

4   life and rediscover a state of enhanced well-being. After contemplating the series of events

5   described herein, Plaintiff proceeded to file a complaint with the California Civil Rights

6   Department ("CRD") and received a right to sue. Plaintiff exhausted all administrative remedies.

7   The Right to Sue notice (*See* **Exhibit Z**) was served on DEFENDANTS on December 8, 2025.

8                              **VI.   CAUSES OF ACTION**

9                              **FIRST CAUSE OF ACTION**

10  **(Wrongful Termination in Violation of FEHA (Fair Employment and Housing Act) (Gov.**

11  **Code §§ 12940 (a)) —Against Defendants DENTONS, Coker, Mellon, Navarrete, Kekatos,**

12  **Bethke, Alvarez and Does 5 through 20, Inclusive)**

13      50.   Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

14      51.   At all relevant times, Plaintiff was an employee of Defendants within the meaning of

15  FEHA, Gov. Code §12926(d).

16      52.   At all relevant times, Defendants were employers within the meaning of Gov. Code

17  §12926(d), employing five or more persons.

18      53.   At all relevant time, Plaintiff performed her job duties competently and met

19  Defendants' legitimate expectations.

20      54.   Plaintiff is a member of a protected class under FEHA, i.e age, disability, medical

21  condition, or other protected characteristic.

22      55.   It is an unlawful employment for an employer to discharge a person based on one or

23  more of the protected classes, e.g. physical disability. Defendants subjected Plaintiff to adverse

24  employment actions, including termination of employment.

25      56.   Plaintiff's protected class, i.e. disability/medical condition, was a substantial

26  motivating reason for Defendants' decision to terminate Plaintiff.

27      57.   Defendants' conduct violated Gov. Code §12940(a) which prohibits discrimination

28  in the terms, conditions, and privileges of employment.

                              - 19 -
                    **FIRST AMENDED COMPLAINT**

58.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered lost wages, lost benefits, emotional distress, and other general and special damages in an amount according to proof.

59.    Defendants' actions were carried out with malice, oppression, or fraud, entitling Plaintiff to punitive damages under Civ. Code § 3294.

60.    Plaintiff has incurred and will continue to incur attorneys' fees and costs under Government Code section 12965(b).

### SECOND CAUSE OF ACTION

**(Wrongful Termination in Violation of ADA Amendments Act (Americans with Disabilities Act Amendments) (Gov. Code §§ 12940 (m, n)) —Against Defendants DENTONS, Coker, Mellon, Navarrete, Kekatos, Bethke, Alvarez and Does 5 through 20, Inclusive)**

61.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

62.    Plaintiff was a qualified individual with a disability within the meaning of the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101 et seq., and California Government Code § 12940 et seq.

63.    Plaintiff had a physical and/or mental impairment that substantially limited one or more major life activities.

64.    Plaintiff was able to perform the essential functions of the job with or without reasonable accommodation.

65.    Defendant was aware of Plaintiff's disability and/or perceived disability.

66.    Plaintiff requested reasonable accommodations for the disability, or such accommodations were otherwise required under the ADAAA and Gov. Code § 12940(m).

67.    Defendant failed to engage in a timely, good-faith interactive process to identify reasonable accommodations, in violation of Gov. Code § 12940(n).

68.    Instead of accommodating Plaintiff, Defendant subjected Plaintiff to adverse employment actions, including, untimely terminating Plaintiff's employment and defendant's stated reasons for termination were pretextual.

69.    Plaintiff's disability, requests for accommodation, and/or protected activity under the

**FIRST AMENDED COMPLAINT**

ADAAA and FEHA were substantial motivating factors in Defendant's decision to terminate Plaintiff.

70.    Defendant's conduct violated the following:

   a.    The ADAAA's prohibition on discrimination against qualified individuals with disabilities

   b.    California Government Code § 12940(a) (disability discrimination)

   c.    California Government Code § 12940(m) (failure to accommodate)

   d.    California Government Code § 12940(n) (failure to engage in interactive process)

   e.    California public policy protecting disabled employees from discrimination and retaliation

71.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered:

   a.    Loss of wages and benefits

   b.    Emotional distress

   c.    Damage to career reputation

   d.    Other economic and non economic harm

72.    Defendant's conduct was carried out with malice, oppression, or fraud, entitling Plaintiff to punitive damages under Civ. Code § 3294.

## THIRD CAUSE OF ACTION

**(Wrongful Termination in Violation of CFRA (California Family Rights Act) (29 U.S.C § 2615); (Gov. Code § 12945.2) —Against Defendants DENTONS, Coker, Mellon, Navarrete, Kekatos, Bethke, Alvarez and Does 5 through 20, Inclusive)**

73.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

74.    At all relevant times, Plaintiff was an eligible employee under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the California Family Rights Act ("CFRA"), Gov. Code § 12945.2.

75.    Defendant was at all relevant times an employer within the meaning of the FMLA and CFRA.

- 21 -

76. Plaintiff experienced a qualifying serious health condition, or needed leave to care for a family member with a serious health condition, entitling Plaintiff to protected leave under the FMLA and CFRA.

77. Plaintiff provided Defendant with adequate notice of the need for protected medical leave, or Defendant otherwise had sufficient information to know that Plaintiff's leave was protected under the FMLA and CFRA.

78. Plaintiff exercised rights protected by the FMLA and CFRA, including requesting and/or taking protected medical leave.

79. Instead of honoring Plaintiff's protected rights, Defendant engaged in unlawful conduct, including but not limited to:

    a.  Interfering with Plaintiff's ability to take protected leave

    b.  Failing to reinstate Plaintiff to the same or a comparable position upon return from leave

    c.  Retaliating against Plaintiff for requesting or taking protected leave

    d.  Terminating Plaintiff's employment because of Plaintiff's exercise of FMLA/CFRA rights

80. Defendant's actions violated 29 U.S.C. § 2615(a)(1) and (a)(2), which prohibit interference with, restraint of, or retaliation for the exercise of FMLA rights.

81. Defendant's actions also violated Gov. Code § 12945.2(l), which prohibits employers from discharging or discriminating against an employee for exercising rights under the CFRA.

82. Plaintiff's use of, request for, or intent to take protected leave was a substantial motivating factor in Defendant's decision to terminate Plaintiff.

83. Defendant's stated reasons for termination were false, pretextual, and designed to conceal unlawful interference and retaliation.

84. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered:

    a.  Loss of wages, salary, and employment benefits

    b.  Loss of future earning capacity

**FIRST AMENDED COMPLAINT**

1          c.  Emotional distress and mental anguish

2          d.  Other economic and non-economic damages according to proof

3      85.  Defendant's conduct was willful, intentional, and carried out with reckless disregard

4  for Plaintiff's federally and state-protected rights, entitling Plaintiff to liquidated damages under

5  29 U.S.C. § 2617(a)(1)(A)(iii).

6                              **FOURTH CAUSE OF ACTION**

7  **(Wrongful Termination in Violation of FMLA (Family Medical Leave Act) (29 U.S.C § 2615);**

8  **(Gov. Code § 12945.2) —Against Defendants DENTONS, Coker, Mellon, Navarrete, Kekatos,**

9                    **·Bethke, Alvarez and Does 5 through 20, Inclusive)**

10     86.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

11     87.  At all relevant times, Plaintiff was an eligible employee under the Family and

12  Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the California Family Rights Act

13  ("CFRA"), Government Code § 12945.2.

14     88.  Defendant was at all relevant times an employer subject to the requirements of the

15  FMLA and CFRA.

16     89.  Plaintiff suffered from a serious health condition, or needed leave to care for a family

17  member with a serious health condition, qualifying Plaintiff for protected leave under the FMLA

18  and CFRA.

19     90.  Plaintiff provided Defendant with adequate notice of the need for protected medical

20  leave, or Defendant otherwise had sufficient information to know that Plaintiff's leave was

21  protected under the FMLA and CFRA.

22     91.  Plaintiff exercised rights protected by the FMLA and CFRA by requesting and/or

23  taking protected medical leave.

24     92.  Instead of honoring Plaintiff's protected rights, Defendant engaged in unlawful

25  conduct, including but not limited to:

26          a.  Interfering with Plaintiff's ability to take protected leave

27          b.  Discouraging Plaintiff from taking leave

28          c.  Failing to reinstate Plaintiff to the same or a comparable position

                                      - 23 -
                          **FIRST AMENDED COMPLAINT**

d. Retaliating against Plaintiff for requesting or taking protected leave

e. Terminating Plaintiff's employment because of Plaintiff's exercise of FMLA/CFRA rights

93. Defendant's conduct violated 29 U.S.C. § 2615(a)(1) and (a)(2), which prohibit employers from interfering with or retaliating against employees for exercising FMLA rights.

94. Defendant's conduct also violated Government Code § 12945.2(l), which prohibits employers from discharging or discriminating against employees for exercising rights under the CFRA.

95. Plaintiff's request for, use of, or intent to take protected leave was a substantial motivating factor in Defendant's decision to terminate Plaintiff.

96. Defendant's stated reasons for Plaintiff's termination were false, pretextual, and designed to conceal unlawful interference and retaliation.

97. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered damages including:

a. Loss of wages and employment benefits

b. Loss of future earning capacity

c. Emotional distress and mental anguish

d. Other economic and non-economic harm according to proof

98. Defendant's violations of the FMLA were willful, entitling Plaintiff to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

## FIFTH CAUSE OF ACTION

**(Violation of FEHA (Fair Employment and Housing Act)/Failure to Engage in the Interactive Process (Gov. Code §§ 12940 (m, n)) —Against Defendants DENTONS, Coker, Mellon, Navarrete, Kekatos, Bethke, Alvarez and Does 5 through 20, Inclusive)**

99. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

100. At all relevant times, Plaintiff was an employee of Defendants.

101. Plaintiff was, and is, a person with a disability within the meaning of the Fair Employment and Housing Act ("FEHA"), Government Code § 12900 et seq.

- 24 -

**FIRST AMENDED COMPLAINT**

102. Plaintiff's physical and/or mental impairment limited one or more major life activities, bringing Plaintiff within FEHA's protected class.

103. Plaintiff was able to perform the essential functions of the job with or without reasonable accommodation.

104. Defendants were aware of Plaintiff's disability and/or perceived disability, and had actual or constructive knowledge of Plaintiff's need for accommodation.

105. Plaintiff requested reasonable accommodations for the disability, or such accommodations were otherwise necessary and apparent to Defendants.

106. FEHA imposes two independent duties on employers:

107. Providing reasonable accommodations to employees with known disabilities under Gov. Code § 12940(m)

108. Engaging in a timely, good-faith interactive process to determine effective accommodations under Gov. Code § 12940(n)

109. Defendants violated these statutory duties by engaging in conduct including, but not limited to:

    a.  Ignoring or delaying responses to Plaintiff's accommodation requests

    b.  Failing to communicate with Plaintiff regarding available accommodations

    c.  Refusing to explore alternative accommodations even when Plaintiff's initial request was feasible

    d.  Unilaterally denying accommodations without meaningful dialogue

    e.  Failing to engage in any good-faith interactive process despite having notice of Plaintiff's limitations

    f.  Taking adverse employment actions, including termination, instead of accommodating Plaintiff

110. Defendants' failure to engage in the interactive process violated Government Code § 12940(n).

111. Defendants' failure to provide reasonable accommodations violated Government Code § 12940(m).

**FIRST AMENDED COMPLAINT**

112. Plaintiff's disability and requests for accommodation were substantial motivating factors in Defendants' adverse employment actions, including termination.

113. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages including:

      a.  Loss of wages and employment benefits

      b.  Loss of future earning capacity

      c.  Emotional distress and mental anguish

      d.  Other economic and non-economic harm according to proof

114. Defendants acted with oppression, fraud, and/or malice, entitling Plaintiff to punitive damages under Civil Code § 3294.

## SIXTH CAUSE OF ACTION

**(Retaliation in Violation of FEHA (Fair Employment and Housing Act) (Gov. Code §§ 12940 (h,m,n); 12945.2) —Against Defendants DENTONS, Coker, Mellon, Navarrete, Kekatos, Bethke, Alvarez and Does 5 through 20, Inclusive)**

115. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

116. At all relevant times, Plaintiff was an employee of Defendants and a person with a disability within the meaning of the Fair Employment and Housing Act ("FEHA"), Government Code § 12900 et seq.

117. Plaintiff had a physical and/or mental impairment that limited one or more major life activities, and therefore qualified as a person with a disability under FEHA.

118. Plaintiff was able to perform the essential functions of the job with or without reasonable accommodation.

119. Defendants were aware of Plaintiff's disability and/or perceived disability.

120. Plaintiff requested reasonable accommodations for the disability, or such accommodations were otherwise necessary and apparent to Defendants.

121. FEHA requires employers to:

      a.  Provide reasonable accommodations to employees with known disabilities under Gov. Code § 12940(m)

**FIRST AMENDED COMPLAINT**

1          b.   Engage in a timely, good-faith interactive process to determine effective
2               accommodations under Gov. Code § 12940(n)

3      122.  Defendants failed to comply with these statutory obligations by engaging in conduct
4  including, but not limited to:

5          a.   Ignoring or delaying responses to Plaintiff's accommodation requests
6          b.   Refusing to discuss potential accommodations despite having notice of Plaintiff's
7               limitations
8          c.   Failing to explore alternative accommodations even when Plaintiff's initial
9               request was feasible
10         d.   Unilaterally denying accommodations without meaningful dialogue
11         e.   Terminating Plaintiff's employment instead of accommodating the disability

12     123.  Defendants' failure to engage in the interactive process violated Government Code §
13  12940(n).

14     124.  Defendants' failure to provide reasonable accommodations violated Government
15  Code § 12940(m).

16     125.  Plaintiff's disability and requests for accommodation were substantial motivating
17  factors in Defendants' adverse employment actions, including termination.

18     126.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered
19  damages including:

20         a.   Loss of wages and benefits
21         b.   Loss of future earning capacity
22         c.   Emotional distress and mental anguish
23         d.   Other economic and non-economic harm according to proof

24     127.  Defendants acted with oppression, fraud, and/or malice, entitling Plaintiff to punitive
25  damages under Civil Code § 3294.

26

27

28

- 27 -
**FIRST AMENDED COMPLAINT**

## SEVENTH CAUSE OF ACTION

**(Violation of ADEA (Age Discrimination in Employment Act) (29 U.S.C. §§ 621 & 623); Gov. Code § 12940 (a)) —Against Defendants DENTONS, Coker, Mellon, Navarrete, Kekatos, Bethke, Alvarez and Does 5 through 20, Inclusive)**

128.  Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

129.  At all relevant times, Plaintiff was an employee of Defendants and was over the age of forty (40), placing Plaintiff within the class of individuals protected by the ADEA and FEHA.

130.  The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 & 623, prohibits employers from discriminating against employees who are forty years of age or older with respect to hiring, firing, compensation, terms, conditions, or privileges of employment because of age.

131.  California's Fair Employment and Housing Act ("FEHA"), Government Code § 12940(a), likewise prohibits employers from discharging or discriminating against employees on the basis of age.

132.  Plaintiff was qualified for the position held and performed job duties competently and satisfactorily.

133.  Defendants subjected Plaintiff to adverse employment actions, including but not limited to:

        a.  discriminatory treatment based on age

        b.  termination of employment motivated by Plaintiff's age

134.  Defendants' conduct was motivated, at least in substantial part, by Plaintiff's age. Defendants' stated reasons for Plaintiff's termination were false, pretextual, and designed to conceal unlawful age-based discrimination.

135.  Defendants' actions violated 29 U.S.C. § 623(a), which prohibits employers from discharging or otherwise discriminating against an employee because of age.

136.  Defendants' actions also violated Government Code § 12940(a), which prohibits age-based discrimination in employment.

137.  As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered

- 28 -

**FIRST AMENDED COMPLAINT**

1    damages including:

2              a.  loss of wages, salary, and employment benefits

3              b.  loss of future earning capacity

4              c.  emotional distress and mental anguish

5              d.  other economic and non-economic harm according to proof

6        138. Defendants' violations of the ADEA were willful, entitling Plaintiff to liquidated

7    damages under 29 U.S.C. § 626(b).

8                          **EIGHTH CAUSE OF ACTION**

9    **(Harassment in Violation of FEHA (Gov. Code §§ 12940 (k); 12945.2) —Against Defendants**

10                          **DENTONS and Coker)**

11        139. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

12        140. At all relevant times, Plaintiff was an employee of Defendants.

13        141. Plaintiff was a member of one or more protected classes under the Fair Employment

14    and Housing Act ("FEHA"), Government Code § 12900 et seq., including but not limited to

15    disability, medical condition, and/or the exercise of rights under the California Family Rights Act

16    ("CFRA"), Gov. Code § 12945.2.

17        142. FEHA prohibits employers and their agents from harassing an employee because of

18    disability, medical condition, age, protected leave status, or other protected characteristics.

19        143. FEHA further requires employers to take all reasonable steps necessary to prevent

20    harassment from occurring, as mandated by Government Code § 12940(k).

21        144. Plaintiff exercised rights protected under Gov. Code § 12945.2, including requesting

22    and/or taking protected medical leave.

23        145. After Plaintiff disclosed medical limitations, requested accommodations, or

24    exercised protected leave rights, DENTONS and Coker subjected Plaintiff to unwelcome, severe,

25    and pervasive conduct, including but not limited to:

26              a.  derogatory comments, dismissive remarks, or belittling statements related to

27                  Plaintiff's medical condition or need for leave

28              b.  hostile treatment, excessive scrutiny, or unreasonable performance demands not

**FIRST AMENDED COMPLAINT**

imposed on similarly situated employees

    c.  intimidation, ridicule, or pressure designed to discourage Plaintiff from exercising protected rights

    d.  creating or allowing a hostile work environment that interfered with Plaintiff's ability to perform job duties

146. The conduct by Defendants and Coker was not personnel management activity performed in a lawful manner, but rather harassment prohibited by FEHA.

147. The harassment was motivated by Plaintiff's protected characteristics and/or Plaintiff's exercise of rights under FEHA and CFRA.

148. The harassment was sufficiently severe or pervasive that it altered the conditions of Plaintiff's employment.

149. Defendants DENTONS and Coker knew or should have known of the harassment and failed to take immediate and appropriate corrective action.

150. Defendants also failed to take all reasonable steps necessary to prevent harassment, in violation of Government Code § 12940(k).

151. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered:

    a.  loss of wages and benefits

    b.  emotional distress, anxiety, and mental anguish

    c.  damage to professional reputation

    d.  other economic and non-economic harm according to proof

152. Defendants acted with malice, oppression, and/or fraud, entitling Plaintiff to punitive damages under Civil Code § 3294.

## NINTH CAUSE OF ACTION

**(Wrongful Termination in Violation of Internal Policy / Breach of the Implied Covenant of Good Faith and Fair Dealing—Against Defendants DENTONS, Coker, Mellon, Navarrete, Kekatos, Bethke, Alvarez and Does 5 through 20, Inclusive)**

153. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

154. At all relevant times, Plaintiff was employed by Defendants under an employment

- 30 -

**FIRST AMENDED COMPLAINT**

1  relationship governed by written policies, established practices, and implied contractual

2  obligations.

3      155. Plaintiff and Defendants entered into a valid and enforceable employment

4  agreement, whether written, oral, or implied-in-fact, under which Plaintiff agreed to perform work

5  for Defendants and Defendants agreed to employ and compensate Plaintiff.

6      156. Under California law, every employment agreement contains an implied covenant of

7  good faith and fair dealing, which prohibits either party from acting in a manner that unfairly

8  frustrates the other party's right to receive the benefits of the agreement.

9      157. Defendants maintained internal policies and procedures governing disability

10  accommodation, equal employment opportunity, discipline, and termination decisions. These

11  policies required Defendants to:

12          a.  engage in a fair and good faith interactive process

13          b.  honor approved accommodations

14          c.  refrain from retaliatory or pretextual discipline

15          d.  apply policies consistently and without discrimination

16      158. Plaintiff requested a reasonable accommodation for a disability, and Defendants

17  approved the ADA accommodation. Plaintiff relied on this approval and continued performing job

18  duties in accordance with the accommodation.

19      159. Despite approving the accommodation, Defendants terminated Plaintiff's

20  employment approximately one week later, without legitimate cause, without following internal

21  procedures, and in direct contradiction to their own accommodation and anti-retaliation policies.

22      160. Defendants' conduct—including approving an accommodation and then terminating

23  Plaintiff almost immediately afterward—was arbitrary, retaliatory, and inconsistent with the

24  parties' justified expectations, and constituted a breach of the implied covenant of good faith and

25  fair dealing.

26      161. Defendants' actions unfairly interfered with Plaintiff's right to receive the benefits of

27  the employment relationship, including continued employment, wages, benefits, and the

28  protections promised by Defendants' own internal policies.

**FIRST AMENDED COMPLAINT**

162. As a direct and proximate result of Defendants' breach, Plaintiff suffered economic damages, including lost wages, lost benefits, and other consequential losses according to proof.

163. Defendants' conduct was carried out with malice, oppression, or fraud, entitling Plaintiff to punitive damages to the extent permitted by law.

### TENTH CAUSE OF ACTION

**(Wrongful Termination in Violation of Public Policy (Gov. Code § 12940) —Against Defendants DENTONS, Coker, Mellon, Navarrete, Kekatos, Bethke, Alvarez and Does 5 through 20, Inclusive)**

164. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

165. Plaintiff was employed by Defendants and performed job duties competently, satisfactorily, and in accordance with Defendants' legitimate expectations.

166. California's Fair Employment and Housing Act ("FEHA"), Government Code § 12940, embodies a fundamental public policy prohibiting discrimination, retaliation, and adverse employment actions based on protected characteristics and protected activities, including disability, medical condition, age, and the exercise of rights under FEHA.

167. Plaintiff belonged to one or more protected classes and/or engaged in protected activity under FEHA, including but not limited to requesting accommodations, reporting discriminatory conduct, or exercising rights related to medical leave or disability.

168. Plaintiff's protected status and/or protected activity placed Plaintiff squarely within the public-policy protections codified in Gov. Code § 12940.

169. Defendants subjected Plaintiff to adverse employment actions, including termination, because of Plaintiff's protected characteristics and/or because Plaintiff engaged in protected activity.

170. Defendants' conduct violated the strong public policy of the State of California prohibiting discrimination and retaliation in employment, as reflected in Gov. Code § 12940 and related FEHA provisions.

171. DENTONS decision to terminate Plaintiff was a violation of Public Policy (Stevenson v. Superior Court, 16 Cal.4th, 880, 889-90 (1997)

- 32 -

172. Plaintiff's protected status and/or protected activity were substantial motivating factors in Defendants' decision to terminate Plaintiff.

173. Defendants' stated reasons for Plaintiff's termination were false, pretextual, and designed to conceal unlawful motives in violation of public policy.

174. As a direct and proximate result of Defendants' wrongful termination, Plaintiff suffered:

      a.   lost wages and benefits

      b.   loss of future earning capacity

      c.   emotional distress and mental anguish

      d.   damage to professional reputation

      e.   other economic and non-economic harm according to proof

175. Defendants acted with oppression, fraud, and/or malice, entitling Plaintiff to punitive damages under Civil Code § 3294.

**ELEVENTH CAUSE OF ACTION**

**(Negligent Infliction of Emotional Distress —Against Defendants DENTONS, Coker, Mellon, Navarrete, Kekatos, Bethke, Alvarez and Does 5 through 20, Inclusive)**

176. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

177. Plaintiff was employed by Defendants and performed job duties competently, satisfactorily, and in accordance with Defendants' legitimate expectations.

178. California's Fair Employment and Housing Act ("FEHA"), Government Code § 12940, embodies a fundamental public policy prohibiting discrimination, retaliation, and adverse employment actions based on protected characteristics and protected activities, including disability, medical condition, age, and the exercise of rights under FEHA.

179. Plaintiff belonged to one or more protected classes and/or engaged in protected activity under FEHA, including but not limited to requesting accommodations, reporting discriminatory conduct, or exercising rights related to medical leave or disability.

180. Plaintiff's protected status and/or protected activity placed Plaintiff squarely within the public-policy protections codified in Gov. Code § 12940.

**FIRST AMENDED COMPLAINT**

181. Defendants subjected Plaintiff to adverse employment actions, including termination, because of Plaintiff's protected characteristics and/or because Plaintiff engaged in protected activity.

182. Defendants' conduct violated the strong public policy of the State of California prohibiting discrimination and retaliation in employment, as reflected in Gov. Code § 12940 and related FEHA provisions.

183. Plaintiff's protected status and/or protected activity were substantial motivating factors in Defendants' decision to terminate Plaintiff.

184. Defendants' stated reasons for Plaintiff's termination were false, pretextual, and designed to conceal unlawful motives in violation of public policy.

185. As a direct and proximate result of Defendants' wrongful termination, Plaintiff suffered:

      a.   lost wages and benefits

      b.   loss of future earning capacity

      c.   emotional distress and mental anguish

      d.   damage to professional reputation

      e.   other economic and non-economic harm according to proof

186. Defendants acted with oppression, fraud, and/or malice, entitling Plaintiff to punitive damages under Civil Code § 3294.

**FIRST AMENDED COMPLAINT**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief as follows:

1.    For a declaration that Defendant's conduct, as alleged herein, violated Plaintiff's rights under applicable federal and/or state employment laws;

2.    For back pay, including lost wages, salary, bonuses, benefits, and other compensation, together with interest thereon, according to proof;

3.    For front pay in lieu of reinstatement;

4.    For compensation for loss of benefits, including but not limited to health insurance, retirement benefits, 2025 profit sharing and other employment-related benefits, according to proof;

5.    For compensatory damages for emotional distress, mental anguish, humiliation, and loss of enjoyment of life, to the extent permitted by law and according to proof;

6.    For injunctive and equitable relief as the Court deems just and proper, including but not limited to orders requiring Defendant to adopt and implement lawful employment policies, training, and procedures;

7.    For an award of reasonable attorneys' fees, expert fees, and costs of suit incurred herein, to the extent authorized by statute or other applicable law;

8.    For pre-judgment and post-judgment interest as allowed by law; and

9.    For such other and further legal and equitable relief as the Court may deem just and proper.

**REQUEST FOR ENTRY OF JUDGMENT**

WHEREFORE, Plaintiff subsequently and respectfully requests this Court enter judgment in Plaintiff's favor and against ALL DEFENDANTS and DOES 5 through 20, inclusive:

1.    Declaratory Judgment declaring that Defendant's termination of Plaintiff's employment was unlawful and in violation of Fundamental Public Policy Family Medical Leave Act (FMLA), California Family Rights Act (CFRA), Americans with Disabilities Amendments Act (ADAAA), Age Discrimination in Employment (ADEA), Fair Employment and Housing Act (FEHA), Public Policy and to adhere to Defendants own Internal Policy.

1    2.    Order an award of damages against ALL DEFENDANTS and DOES 5 through 20,

2    inclusive, including non-economic damages, special damages, and punitive damages and for

3    which Plaintiff requests judgment to include non-economic damages for deprivation of civil

4    rights, humiliation, for mental and emotional distress, and special damages in an amount to be

5    proven at trial.

6

7    Dated:  January 13, 2026

8

9

10   Adrienne Hankins
     In Pro Per

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial with respect to all issues triable of right by jury.

Dated: January 13, 2026

Adrienne Hankins
In Pro Per

- 37 -
**FIRST AMENDED COMPLAINT**

**EXHIBIT A**

## REVIEW COMMENTS FROM PRIOR ASSIGNMENTS

"Adrienne – I know that I am an asset to the firm and add value beyond what is expected of me. I utilize a variety of skills to effectively carry out my tasks. Comments and feedback from my assignments are as follows:

Jeffry Butler – "Adrienne is a superb assistant. While she only provides back-up support for me, she has been my full-time assistant before. She is truly top-notch. She is always looking for ways to improve the service she provides. Sometimes she catches things that just surprise me. I have consistently said there is no better legal assistant than Adrienne. Period. She's that good."

Emily Nozick stated the following, "Adrienne is resourceful and talented, personable and organized. She always goes above and beyond what is required and makes herself indispensable."

Megan Barker made the following comments, "I continually to be very lucky to have Adrienne as my assistant. She not only completes each task assigned with vigor and timeless but she anticipates what needs to be done and will make sure everything is going smoothly. Adrienne is a superb assistant. She is truly top-notch and is always using her brain and looking for ways to improve the service she provides." Adrienne is great to work with, the personality she brings to the office is key to enjoyable work environment and I have to say that the clients love her. She is professional and I can trust her to have contact with clients without worry."

Cynthia Liu made the following comment, "Adrienne is a very busy assistant who often has several attorneys requesting work product at the same time. She is able to balance those requests and perform in an efficient and timely manner."

Laura Geist stated, "I never worry a minute when my secretary is out, knowing Adrienne is my back-up. She is extremely diligent and skilled and takes on tasks with such a great attitude."

Sam Kohn mentioned, "I had occasion to work with Adrienne and she went above and beyond in helping me complete the task at hand. I really appreciate having someone so driven and results-oriented as my back-up assignment, and it leaves me with complete confidence, that she will complete projects with flying colors."

Elizabeth Papay - "Put simply, Adrienne is fantastic and I always enjoy working with her."

Staff Manager for 13 years:
Deidra Williams-Gainer - "Adrienne is one of the best secretaries in the office, probably in the firm."

**1**

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Waddell, Anne E. <anne.waddell@dentons.com> |
| **Sent:** | Tuesday, December 19, 2023 9:10 AM |
| **To:** | Hankins, Adrienne |
| **Subject:** | RE: Great job! |

Always. We all make mistakes, but I couldn't let the Court just steamroll you. Sorry that she still got one question in. Fortunately, you handled it well. Thanks again!

**Anne E. Waddell**
Senior Managing Associate

℗ +1 949 732 3727   |   US Internal 33727
Assistant: Adrienne Hankins +1 415 882 0170
Orange County

**From:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Sent:** Tuesday, December 19, 2023 8:49 AM
**To:** Waddell, Anne E. <anne.waddell@dentons.com>
**Subject:** RE: Great job!

YOU did a great job Anne! Thanks for such kind words and expressing your confidence in me to the judge.

**Adrienne Hankins**
Legal Secretary

℗ +1 415 882 0170   |   US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Jon Braunstein, Anne E. Waddell
San Francisco/Oakland

**From:** Waddell, Anne E. <anne.waddell@dentons.com>
**Sent:** Tuesday, December 19, 2023 8:47 AM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Subject:** Great job!

Thanks, Adrienne!

**Anne E. Waddell**
Senior Managing Associate

℗ +1 949 732 3727   |   US Internal 33727
Assistant: Adrienne Hankins +1 415 882 0170
Orange County

**2**

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Stevens, Anne L |
| **Sent:** | Monday, August 24, 2020 4:51 PM |
| **To:** | Waddell, Anne E.; Hankins, Adrienne |
| **Subject:** | RE: Great Job, Adrienne! |

Excellent news and great job Adrienne!!

Thank you Anne and Adrienne!!

大成 DENTONS    **Anne L. Stevens**
**Legal Support Manager**

Our **COVID-19 Client Resources Hub** is available to the public, part of Dentons' global commitment to help our clients and our communities navigate this pandemic's legal and business challenges.

D +1 415 882 0102   |   US Internal 40102
anne.stevens@dentons.com
Website

Dentons US LLP
One Market Plaza, Spear Tower, 24th Floor, San Francisco, CA 94105

Lee International > Kensington Swan > Bingham Greenebaum > Cohen & Grigsby > Sayarh & Menjra > Larrain Rencoret > Hamilton Harrison & Mathews > Mardemootoo Balgobin > HPRP > Zain & Co. > Delany Law > Dinner Martin > For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

**From:** Waddell, Anne E. <anne.waddell@dentons.com>
**Sent:** Monday, August 24, 2020 4:48 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Stevens, Anne L. <anne.stevens@dentons.com>
**Subject:** Great Job, Adrienne!

                                                              **REDACTED**

Adrienne,

Fantastic job on the very important and complicated filing in the ▮▮▮ case today!  You met every single one of our ever-changing requests (which myself and three different partners kept throwing at you).  Well done!  Thank you for making us look so good.

Best,
Anne

大成 DENTONS    **Anne E. Waddell**
**Managing Associate**

3

**2024 Year End-Self Appraisal**

Appraisers:

    A. Hankins (self-appraiser)
1. M. Boone
2. J. Butler
3. Coker
4. T. D'Antonio
5. E. Nozick
6. J. West

**4**

🔲 **2024 Business Services Professionals Year-End Self Appraisal**

Evaluated Employee: Williams, Nikki

| | Completed |

🔲 **Evaluated Employee Profile**

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Performance Rating Descriptions and Definitions

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

**O - Outstanding:**
The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

**E - Exceeds Expectations:**
Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

**M - Meets Expectations:**
Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

**N - Needs Development:**
Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

**U - Unsatisfactory:**
The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

## Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### Job Knowledge

**Demonstrates a solid understanding of the responsibilities and duties required in the position; is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.**

🔲 Meets Expectations

**Comments:**

- As a legal administrative assistant it is my responsibility to provide administrative and clerical support to lawyers and other legal professionals, including my legal assistant peers, records clerks, office services as well as attorneys of whom I am assigned as well as attorneys I am asked to cover on a regular ba

**5**

My position is very demanding performing tasks such as managing documents and files, scheduling depositions and court dates, and communicating with clients and other parties involved in legal matters.

On a persistent basis, I review the various court websites, local rules and the judges' standing orders for updates and new rules in place due to the recent changes in the legal environment. It is typically the attorney's responsibility to read and interpret the court local rules, however I am constantly requested to do so. I do welcome the accountability, however as it only enhances my knowledge and enables me to improve my job knowledge to the work I perform.

## Adaptable

**Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.**

☒ Exceeds Expectations

**Comments:**

* I am often time requested to shift my priorities and to learn new processes. On a routine basis, more common 4th quarter of the year, vendors reach out to inquire as to when they will receive payment for certain invoices, current and past due. Cost and billing with the exception of processing invoices in Chrome River, is normally an accounting/billing function, however I have been tasked with following-up, research whether payment was made or not and corresponding with the biller as to when they can expect payment.

From: Chipman, Matt
Sent: Thursday, November 07, 2024 3:21 PM
To: Hankins, Adrienne ; Nozick, Emily S.
Subject: RE: Amini - Exponent

Hi Adrienne – we have a call with the **REDACTED** tomorrow. Can you give us an update on the payment status for these invoices?

Matt Chipman

I have been tasked with actively interacting with our clients to obtain approval to process payments for vendor invoices. As well as communicating with our accounting department to provide the vendor with an expected time that they would receive payment. My role has increased this past year. Obtaining approval and corresponding with the client is normally the attorney's responsibility.

Dear Mr. Dwight:

At your convenience, please approve the attached invoices listed below from ▓▓▓▓▓▓▓▓▓▓▓▓ Thank you.

**REDACTED**

Sincerely and Thank you,

Adrienne Hankins

From: Broach, Lauren
Sent: Wednesday, November 01, 2024 12:58 PM
To: Hankins, Adrienne
Cc: Donner, Diane V.
Subject: RE: **REDACTED** 0193 - Expense Invoice

Adrienne,
Do you have Paul Dwight's approval?

Thanks,

Lauren Broach
Billing Coordinator

**Inclusive**

**Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.**

⬤ Meets Expectations

**Comments:**

- In legal administration, collaboration with team members is essential because the complex nature of legal work often requires diverse expertise from different team members to effectively serve clients, manage cases, and achieve successful outcomes, necessitating open communication, shared knowledge, skills and coordinated efforts across various roles within the legal team.

---

From: Kolev, Vlad                                              **REDACTED**
Sent: Monday, December 9, 2024 11:55:06 AM
To: Hankins, Adrienne
Subject: RE: Hattendorf v NYLife; ███████████      ████████

Hi, Adrienne. You are so correct that it was very helpful! There were some issues that made the attorneys revise the brief, but at least my part of the work was done on time.

Vlad Kolev
Legal Administrative Assistant

Hi Vlad, thanks for handling this monstrosity MSJ. Hope preparing the exhibits and compiling the components for the filing, while you were out, was helpful for you.

Have a great day!

Adrienne Hankins

From: Hankins, Adrienne
Sent: Thursday, December 05, 2024 4:33 PM
To: West, Jessica
Cc: D'Antonio, Thomas ; Kolev, Vlad
Subject: RE: Hattendorf MSJ Docs to Finalize

Hi, below is what I was able to complete. I have saved them in NYL's MSJ Components final folder in Imanage.

1. NYL Defs' Separate Statement
2. Azarmi Decl
   a. Exhs A-F bookmarked
3. Bils Decl
   a. Exhs bookmarked & 25 mb or less (AA-ZZ; AAA-WWW)
4. Proposed Order

**Focused**

**Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.**

⬤ Meets Expectations

**Comments:**

- To be clear on goals and priorities while taking personal ownership as a legal assistant is imperative. In the litigation practice there are deadlines and rules that set time limits for all actions in a legal case. These deadlines are set primarily the same in every litigation case.

  It is important to actively communicate with the attorney, prioritize tasks based on deadlines and case urgency, proactively manage my workload, demonstrate initiative by anticipating needs, and regularly review the progress against the set goals, ensuring to understand the bigger picture of each case and actively contribute to its success.

  Taking personal ownership and ensuring the filing is correct before submitting it to the court for filing is essential.

**Insightful**

**Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.**

⬤ Meets Expectations

**7**

**2024 Business Services Professionals Year-End Evaluation**

Appraiser: MONTEBELLO, ROSA    Evaluated Employee: Adrienne Hankins    [Completed]

**Evaluated Employee Profile**

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |

**8**

| Profile | Value |
|---|---|
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Evaluator Type

**Is this your primary or non-primary legal administrative assistant, or a business services professional?**

### Please select one.

⦿ Primary Legal Administrative Assistant

## Performance Rating Descriptions and Definitions

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### O - Outstanding:

The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

### E - Exceeds Expectations:

Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

### M - Meets Expectations:

Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

### N - Needs Development:

Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

### U - Unsatisfactory:

The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

## Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.
Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### Job Knowledge

Demonstrates a solid understanding of the responsibilities and duties required in the position, is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.

⦿ Exceeds Expectations

**Comments:**

* She really has a broad knowledge of pleadings and filings. operates as a paralegal at times.

**9**

**Adaptable**

Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.

⊛ Exceeds Expectations

**Comments:**

▪ Very flexible, responsive and pro active.

**Inclusive**

Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.

⊛ Exceeds Expectations

**Comments:**

▪ She always responds to the demands and needs of the team, even if it requires her to do more work.

**Focused**

Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.

⊛ Exceeds Expectations

**Comments:**

▪ She really epitomizes this type of focus. Always following up as necessary with depositions, filings, pleadings.

**Insightful**

Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.

⊛ Exceeds Expectations

**Comments:**

▪ She routinely knows who to contact both in and out of the firm to get tasks done.

**Overall Performance Rating**

Select the appropriate rating that captures your employee's overall performance during this period.

⊛ Exceeds Expectations

**Comments:**

▪ She is exceeding my expectations.

**Summary and Training & Development**

Performance Summary: Summarize your employee's performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.

▪ see above.

Training and Development: Describe what experience, skills or training would be helpful for your employee to broaden capabilities within current assignments to develop for potential growth opportunities.

▪ I think Adrienne should get her paralegal certificate.

Diversity and Inclusion: Comment on your employee's contributions to the Firm's diversity and inclusion efforts.

▪ She is fully supportive of our diverse team.

**10**

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 – 12/31/2024 |

## Evaluator Type

**Is this your primary or non-primary legal administrative assistant, or a business services professional?**

### Please select one.

⦿ Non-Primary Legal Administrative Assistant

## Non-Primary Assistant Assignment Comments

**Feedback: Summarize the employee's performance and/or contributions during this period.**

" There isn't a ton I can say here based on this review period. Adrienne has always been a terrific assistant (she used to be my full-time assistant) and nothing she did in this review period changed my assessment. That said, she did not need to assist me much in this period.

---

2024 Business Services Professionals Year-End Evaluation

Appraiser: Jeffrey Butler    Evaluated Employee: Adrienne Hankins    [Completed]

**11**

**2024 Business Services Professionals Year-End Evaluation**

Evaluated Employee: Adrienne Hankins

Completed

📖 Evaluated Employee Profile

**12**

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Performance Rating Descriptions and Definitions

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### O - Outstanding:
The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

### E - Exceeds Expectations:
Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

### M - Meets Expectations:
Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

### N - Needs Development:
Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

### U - Unsatisfactory:
The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

## Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.
Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

**Job Knowledge**

Demonstrates a solid understanding of the responsibilities and duties required in the position, is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.

◈ Meets Expectations

**Comments:**
- Adrienne has a solid understanding of her responsibilities and knows how to get the job done. She stays up to date on the required information.

**Adaptable**

Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.

◈ Exceeds Expectations

**Comments:**

**13**

* Adrienne works with the very busy commercial litigation team, and shifts her priorities as needed. I often hear feedback she is hard to get a hold of, when projects have a looming deadline, and this can add to a stressful situation. Adrienne is often busy with the project, but communicating the status would be beneficial for her team. That said, she is completing the projects requested, no missed deadlines and her desk is very appreciative. I believe she has made progress in this area, it should remain an ongoing goal.

## Inclusive

Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.

**Exceeds Expectations**

**Comments:**

* Adrienne works well with the other team members; they rely on each other to achieve a high standard of work product and Adrienne is a valued member of this process. She is collaborative, well-liked, and respected.

## Focused

Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.

**Meets Expectations**

**Comments:**

* Adrienne should remain focused on the small details of projects. Form documents should be proofread thoroughly and updated for each new project. She takes full ownership of projects given to her.

## Insightful

Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.

**Exceeds Expectations**

**Comments:**

* Adrelnne is great at finding solutions to problems. She utilizes the help desk and trainings, knows which vendors to use, and when to collaborate with her team.

## Overall Performance Rating

Select the appropriate rating that captures your employee's overall performance during this period.

**Meets Expectations**

**Comments:**

* Adrienne is a great and dedicated member of the team. The main goal for Adrienne should be consistency, to bring her usual level of enthusiasm and expertise to all projects.

## Summary and Training & Development

**Performance Summary:** Summarize your employee's performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.

* Adrienne is a great team member and wonderful at seeking out training opportunities that best assist her achieve goals. I appreciate another year of hard work!

**Training and Development:** Describe what experience, skills or training would be helpful for your employee to broaden capabilities within current assignments to develop for potential growth opportunities.

* We should look for proofreading trainings in the Dentons library, or general training in that area. Otherwise, Adrienne is great at utilizing the Dentons trainings.

**Diversity and Inclusion:** Comment on your employee's contributions to the Firm's diversity and inclusion efforts.

* Adrinne is very inclusive and helps foster a welcoming environment. She attends the DEI events as time permits. As an office wide goal, I would like to strengthen the BSP team, not only practice team connections.

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Evaluator Type

Is this your primary or non-primary legal administrative assistant, or a business services professional?

### Please select one.

⦿ Primary Legal Administrative Assistant

## Performance Rating Descriptions and Definitions

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### O - Outstanding:

The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

### E - Exceeds Expectations:

Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

### M - Meets Expectations:

Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

### N - Needs Development:

Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

### U - Unsatisfactory:

The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

## Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.
Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### Job Knowledge

Demonstrates a solid understanding of the responsibilities and duties required in the position, is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.

⦿ Exceeds Expectations

**Comments:**

**16**

- Adrienne is always willing to help out with requests when and where she can. She has been a great resource for me as I transitioned to the firm and if she or I don't know the answer to something, she will try and hunt it down. She is also always willing to check the docket, call chambers, or complete follow up tasks on filings as requested, which I really appreciate.

### Adaptable

**Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.**

⊙ Exceeds Expectations

**Comments:**

- See above. Adrienne is always willing to help when she can. She has stayed late for me while we are waiting on partner sign off on documents to be filed on multiple occasions, showing great commitment. She is responsive to emails when requested and provides follow up if she hasn't heard from me in a while (which is necessary sometimes!). One area for potential improvement is on time sensitive filings if she could update me with the status by either a CC on emails to others (like the filing service) or provide more frequent updates, that would be great. But that's more an issue for me and I am happy to ask for those updates. I also realize that sometimes we are working right up to the deadline to get something in, so status emails fall to the back burner.

### Inclusive

**Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.**

⊗ Exceeds Expectations

**Comments:**

- Adrienne is really a delightful person. She is always eager to help, and I've enjoyed getting to know her. I can't really speak with her collaboration with other team members, but I do share her with Jess, Emily, and Mordecai and she seems to treat them with the same kindness and respect she does me.

### Focused

**Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.**

⊙ Meets Expectations

**Comments:**

- See above. Adrienne is willing to jump in when and where she can, and complete requests (often with short lead time) with a smile on her face. My one area of improvement for Adrienne would be to have a more detailed eye when proofing and preparing things like a 'proof of service'—sometimes when we use old samples that Andrew had circulated an email noting that we should not have LAAs do that and, instead, it was a paralegal task. This was sent before I started, so I was unaware. Adrienne let me know and attached the email for me. She also suggested a paralegal we should go to for assistance. Just one example of how her experience and insight is valuable to me.

### Insightful

**Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.**

⊗ Exceeds Expectations

**Comments:**

- Adrienne is helpful as a problem solver and will often try and run down a solution before she brings a problem to me for input. I also really value her insights into resources for me to use or places to go for what I am looking for and she cannot provide it. For example, I asked her to follow up on a subpoena and she told me that Andrew had circulated an email noting that we should not have LAAs do that and, instead, it was a paralegal task. This was sent before I started, so I was unaware. Adrienne let me know and attached the email for me. She also suggested a paralegal we should go to for assistance. Just one example of how her experience and insight is valuable to me.

### Overall Performance Rating

**Select the appropriate rating that captures your employee's overall performance during this period.**

⊙ Exceeds Expectations

**Comments:**

- In my 6 months with Adrienne, I have really enjoyed her. She helps me stay on top of tasks daily and deliver quality work product to our clients and to partners here. Admittedly, I probably do not use her as much as I should, but I will try and be better about that because she is capable and offers a lot to the team. Looking forward to 2025 with Adrienne!

### Summary and Training & Development

**Performance Summary: Summarize your employee's performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**

- I believe that I put a lot of this above, but Adrienne is really a joy to work with. She's an extremely kind of friendly person who also has skills that makes my life easier. She is able to handle assignments without a ton of direction and has stayed late to get

things done. She already is not shy about reminding me if I have forgotten to give her something that she needs to complete an assignment--which I really appreciate. I'm very excited to continue to grow our working relationship in 2025.

**Training and Development: Describe what experience, skills or training would be helpful for your employee to broaden capabilities within current assignments to develop for potential growth opportunities.**

▪ My only critique is a closer eye on proof reading, which I think is a skill she currently has. To hone that, I think we continue to work together on proofing and finalizing documents for service or other distribution--which I am confident will happen this year.

**Diversity and Inclusion: Comment on your employee's contributions to the Firm's diversity and inclusion efforts.**

▪ I am not sure I can comment on the specifics here as to her efforts, but Adrienne has always struck me as an inclusive person. She has treated me with kindness since day 1. From my personal experience, I doubt anyone would say anything differently.

**2024 Business Services Professionals Year-End Evaluation**

Appraiser: Emily S Nobles          Evaluated Employee: Adrienne Hankins

📖 Evaluated Employee Profile

Completed

**19**

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Evaluator Type

**Is this your primary or non-primary legal administrative assistant, or a business services professional?**

### *Please select one.*

⦿ Primary Legal Administrative Assistant

## Performance Rating Descriptions and Definitions

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### O - Outstanding:

The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

### E - Exceeds Expectations:

Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

### M - Meets Expectations:

Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

### N - Needs Development:

Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

### U - Unsatisfactory:

The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

## Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### Job Knowledge

Demonstrates a solid understanding of the responsibilities and duties required in the position, is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.

⦿ Exceeds Expectations

Comments:

**20**

- Adrienne is very experienced and knowledgeable and knows what is required to get her job done.

## Adaptable

**Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.**

Exceeds Expectations

**Comments:**

- Adrienne is easily able to adapt and focus on changing priorities.

## Inclusive

**Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.**

Exceeds Expectations

**Comments:**

- Adrienne works well with paralegals, IT support, and other team members. Due to her schedule, she makes sure that the coverage is seamless.

## Focused

**Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.**

Exceeds Expectations

**Comments:**

- Adrienne takes ownership of her work and works with others to provide seamless service.

## Insightful

**Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.**

Exceeds Expectations

**Comments:**

- Adrienne delivers an excellent work product and is increasingly asked to draft notices and other documents, which she does well and without hesitation.

## Overall Performance Rating

**Select the appropriate rating that captures your employee's overall performance during this period.**

Exceeds Expectations

**Comments:**

- Adrienne overall is an excellent assistant - providing prompt and excellent service.

## Summary and Training & Development

**Performance Summary: Summarize your employee's performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**

- Adrienne is always a pleasure to work with and takes ownership of her tasks.

**Training and Development: Describe what experience, skills or training would be helpful for your employee to broaden capabilities within current assignments to develop for potential growth opportunities.**

- I can't think of any.

**Diversity and Inclusion: Comment on your employee's contributions to the Firm's diversity and inclusion efforts.**

- I know that Adrienne takes diversity and inclusion seriously.

**21**

2024 Business Services Professionals Year-End Evaluation

Appraiser: Jessica West    Evaluated Employee: Adrienne Hankins    Completed

Evaluated Employee Profile

| Profile | Value |
| --- | --- |
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Evaluator Type

Is this your primary or non-primary legal administrative assistant, or a business services professional?

### Please select one.

⦿ Primary Legal Administrative Assistant

## Performance Rating Descriptions and Definitions

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### O - Outstanding:
The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

### E - Exceeds Expectations:
Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

### M - Meets Expectations:
Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

### N - Needs Development:
Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

### U - Unsatisfactory:
The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

## Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### Job Knowledge

Demonstrates a solid understanding of the responsibilities and duties required in the position, is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.

⦿ Outstanding

Comments:

- Adrienne has a great wealth of knowledge and experience in her role. She is also always willing to help and advise when she is able.

## Adaptable

**Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.**

- Outstanding

**Comments:**

- Adrienne always is able to make time and balance her workload so that she can complete anything I ask her to do, even if it is time sensitive.

## Inclusive

**Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.**

- Outstanding

**Comments:**

- Adrienne is friendly and I am comforted y knowing I can ask her anything.

## Focused

**Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.**

- Outstanding

**Comments:**

- Adrienne does a great job on keeping me in the loop on where she is on assignments and getting things done.

## Insightful

**Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.**

- Outstanding

**Comments:**

- Adrienne is always willing to go the extra mile and contact the court or other resources in order to get me the information and work product I need.

## Overall Performance Rating

**Select the appropriate rating that captures your employee's overall performance during this period.**

- Outstanding

**Comments:**

- Great Job!

## Summary and Training & Development

**Performance Summary: Summarize your employee's performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**

- Adrienne has been a great resource to me and the firm. She is always willing to help out and does a great job.

**Training and Development: Describe what experience, skills or training would be helpful for your employee to broaden capabilities within current assignments to develop for potential growth opportunities.**

- n/a

**Diversity and Inclusion: Comment on your employee's contributions to the Firm's diversity and inclusion efforts.**

- n/a

24

# EXHIBIT B



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB:                **REDACTED**
CHUBB

Date: 10/31/2023
Next Appointment: 11/21/2023  08:45 AM
Claim#:                          **REDACTED**

Insurance Adjuster: Fabiola Vizcarra
Phone: 213-612-5453  Fax: 800-664-1765

Date of Injury: 11/01/2019

**WORK STATUS:**
Patient was previously deemed Permanent and Stationary by QME.

**Work Restrictions:**
- Patient is to to work part time, 3 days a week 7.5 hours per work day.

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.

# EXHIBIT C

Unum
P.O. Box 100158
Columbia, SC 29202-3158
Fax: 1-800-248-8631
www.unum.com



November 28, 2023

ADRIENNE HANKINS
807 DODD CT
BAY POINT, CA 94565

RE:     Hankins, Adrienne
        LMS Leave Number:                    REDACTED

Unum works with Dentons US LLP to administer family and medical leaves. This includes leave taken under the Family and Medical Leave Act of 1993 (FMLA) and any applicable state leave laws and corporate leave policies. Please read this entire notice for details and further information regarding your leave.

The current status of your leave due to your own serious health condition is:

| Protection | Begin Date | End Date | Schedule | Status |
|---|---|---|---|---|
| FMLA and California Family Rights Act (CFRA) | 10/31/2023 | 11/15/2023 | Reduced | Eligible and Approved |

## Information About Your Leave

Approval dates are subject to change if leave dates or treatment dates change. Please refer to your Employer's policies for any restrictions on scheduling leave and any requirements for reporting leave.

**Details About Your Reduced Leave Schedule:** The healthcare provider has certified that you may need to take leave up to:

• 15 hours off per week

If your leave usage indicates that you require absences beyond the healthcare provider's current estimate of the amount of leave needed, certification may be required to support additional leave.

## FMLA Entitlement

As of November 16, 2023, you will have used 0 week(s), 36 hour(s), and 0 minute(s) of FMLA.

1242-03     UNUM IS A REGISTERED TRADEMARK AND M                    NSURING SUBSIDIARIES.

26

**REDACTED**

Name: Hankins, Adrienne
LMS Leave Number:

November 28, 2023
Page 2 of 3

You will have 11 week(s), 1 hour(s), and 30 minute(s) of FMLA remaining.

This amount includes all approved FMLA leave taken within the applicable 12-month period. These totals do not include any requested leave that has not yet been approved and do not reflect entitlement available under any applicable state law or corporate policy.

If you are reporting intermittent absences, you will receive notice every 30 days communicating the amount of FMLA leave taken.

## Additional Information You Need to Know

Any qualifying leave that is approved will count against your FMLA and/or any state law or corporate policy entitlement(s). Upon return from FMLA leave, most employees must be restored to the same job or similar one with equivalent pay, benefits, and other employment terms and conditions. Any leave that is denied may be treated according to your employer's attendance policy.

Absences during the approved timeframe may be denied if:
- the reason for the absence does not qualify;
- you exhaust your leave entitlement;
- you do not report the absence to Unum timely, as applicable; or
- you are exhausting and/or replenishing your leave entitlement regularly.

For more information about your employer's specific leave policies, please read the attached *Important Information about Dentons US LLP's Family and Medical Leave Policy.*

## How To Contact Us Or View Information About Your Leave

As a convenience, we offer a secure website at www.unum.com/claimant where you have the option to:

- go paperless and choose online correspondence;
- report new leaves of absence and view the status of current claim/leave;
- report intermittent absences on active leaves; and
- provide us with updated information regarding your leave of absence.

You may also manage your claim/leave with the Unum Customer App. The Unum Customer App is available for Apple and Android.

In conjunction with our provision of services to you, you may receive a survey asking about your experience with Unum. Your thoughts and advice are critical drivers to our improvement, and we appreciate the opportunity to learn more about your experience.

If you have any questions, please contact Unum at (866) 779-1054.

Sincerely,

27

# EXHIBIT D

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Lopez, Dana S. |
| **Sent:** | Wednesday, November 1, 2023 8:12 PM |
| **To:** | Hankins, Adrienne |
| **Subject:** | Reduced Schedule/Leave Info |
| **Attachments:** | Unum - FMLA and STD Telephonic Claims Brochure.PDF |

Hi Adrienne,

I am sorry to hear that you have a need for a reduced schedule. I hope everything is okay and that you recover quickly. Your need for time off for your own serious health condition could qualify for a job-protected leave of absence under the FMLA. If you do *not* need to be on a continuous leave for more than 13-calendar days, you may be eligible to receive Non-Parental Leave *Self-Care* benefits.

**FMLA**

Up to 12 weeks of unpaid family and medical leave of absence within a rolling twelve-month period. May be taken on an intermittent or reduced schedule basis when medically necessary. Click here for more information on the FMLA. FMLA may run concurrently with Non-Parental Leave Self-Care.

**Non-Parental Leave Self-Care Benefits**

The Dentons Non-Parental Leave Self-Care policy allows up to 24 weeks of leave. Based on your position and tenure, the Firm will pay: 90% of pay for 6 weeks, then 50% for 6 weeks, then unpaid for 12 weeks, starting on day one if approved by Unum, the Firm's leave administrator. Non-Parental Leave Self-Care benefits will be paid through Dentons payroll.

**NOTE: Non-Parental Self-Care benefits are paid through Payroll and are only paid after Unum's approval is received and may be paid two weeks in arrears\*. The payment amount you receive may be different than the usual semi-monthly you normally get. Additionally, you may go 1-2 pay periods unpaid so please plan accordingly.**

\*If your PTO balance exceeds 37.5 hours, it will be applied to your unapproved time; once your leave is approved by Unum, the PTO will be returned to your PTO bank.

**State Specific Leave Entitlements:**

**ALL STATES:** When state leaves run concurrent with a Dentons paid leave, your Dentons leave pay will be reduced by an estimate or the actual payment depending on the state. As a California resident, you may be entitled to receive partial wage replacement for up to 52 weeks. You are responsible for applying for CA State Disability Insurance (SDI) benefits directly with state here.

**Leave Claim Process:** I see that you have already initiated your claim with Unum on 11/1/23, so I have crossed out that section.

~~To start a claim call Unum, the Firm's leave administrator, at 866-779-1054. The attached brochure provides information on what you need to know when filing a leave of absence claim.~~

You will need to provide Unum with your doctor's contact information so Unum can provide the necessary paperwork to be completed. We recommend you follow up with the doctor to ensure the paperwork is being completed and returned

**28**

to Unum. It is your responsibility to make sure Unum receives sufficient medical information in a timely manner to approve your claim.

**Communication**

You are responsible for communicating with and providing updates to the following individuals:

- **Unum:** You are not required to share any details about your medical condition with anyone outside of Unum. Should any leave plans change, keep them informed.
- **Supervisor:** Keep your supervisor updated should your current leave plans/reduced schedule change.
- **Benefits Team:** Keep me/Benefits updated should your current leave plans/reduced schedule change.

I know this is a lot of information. Please let me know if you have any questions or would like to discuss over the phone.

Sincerely,

Dana S. Lopez
Benefits Manager

☎ +1 619 699 2553  |  US Internal 32553

San Diego

**29**

# EXHIBIT E

# DENTONS

Dentons US LLP W2
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
312-876-7914

**Pay Statement**

| | |
|---|---|
| Period Start Date | 07/16/2024 |
| Period End Date | 07/31/2024 |
| Pay Date | 07/31/2024 |
| Document | 121716518 |

**Net Pay** **$10,056.54**

## Message

**NON EXEMPT ONLY: REG EARNINGS ARE PD CURRENT THROUGH 7/31/24. AST & OT ARE PD 6/23 - 7/6**

## Pay Details

**ADRIENNE HANKINS**

BAY POINT, CA 94565
USA   **REDACTED**

| | | | | |
|---|---|---|---|---|
| Employee Number | 200464 | Pay Group | Employee Payroll |
| SSN | XXX-XX-XXXX | Location | Oakland |
| Job | Lgl Admin Asst | GL COMPANY | 001 - Dentons US LLP |
| Pay Rate | $56.82 | GL LOCATION | 036 - CA - San Francisco - 303 |
| Pay Frequency | Semi-Monthly | GL DEPARTMNT | 040 - Secretarial |
| | | GL EMP GROUP | 12500 - Salaries-Secretarial |

## Earnings

| Pay Type | Date | Job | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|---|---|
| Admin Time | | | 0.000000 | $0.00 | $0.00 | $1,640.20 |
| CA Meal Penalty | | | 0.000000 | $0.00 | $0.00 | $277.36 |
| CA PTO Adjust | | | 0.000000 | $0.00 | $0.00 | $56.83 |
| Group Term Life | | | 0.000000 | $0.00 | $0.00 | $352.24 |
| Holiday Time | | | 0.000000 | $0.00 | $0.00 | $2,519.06 |
| HSA ER Contr | | | 0.000000 | $0.00 | $0.00 | $1,458.38 |
| Merit Bonus | | | 0.000000 | $0.00 | $0.00 | $3,500.00 |
| Office Closure | | | 0.000000 | $0.00 | $0.00 | $142.06 |
| Paid Leave | 07/31/2024 | Lgl Admin Asst | 157.750000 | $56.82 | $8,964.18 | |
| Paid Leave | 07/31/2024 | Lgl Admin Asst | 36.750000 | $55.13 | $2,026.13 | $11,574.29 |
| Paid Time Off | 07/31/2024 | Lgl Admin Asst | 79.500000 | $56.82 | $4,517.60 | |
| Paid Time Off | 07/31/2024 | Lgl Admin Asst | 4.500000 | $55.13 | $248.10 | $12,636.92 |
| Regular Pay | | | 0.000000 | $0.00 | $0.00 | $50,919.62 |
| Retro Meal Pen | | | 0.000000 | $0.00 | $0.00 | $6.77 |
| Retro Pay | | | 0.000000 | $0.00 | $0.00 | $745.92 |
| Unpaid Time | | | 0.000000 | $0.00 | $0.00 | ($15,410.31) |

Total Hours Worked  0.000000      Total Hours  278.500000

## Deductions

| Deduction | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|
| 401K Loan 1 | No | $0.00 | $4,449.48 | $0.00 | $0.00 |

## 30

| Deduction | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|
| 401K Loan 2 | No | $0.00 | $3,467.10 | $0.00 | $0.00 |
| 401K Roth % | No | $0.00 | $988.25 | $0.00 | $0.00 |
| Dental Pre Tax | Yes | $0.00 | $425.18 | $0.00 | $341.88 |
| Group Accident | No | $0.00 | $126.70 | $0.00 | $0.00 |
| Group Term Life | No | $0.00 | $352.24 | $0.00 | $0.00 |
| Grp Crit III EE | No | $0.00 | $470.40 | $0.00 | $0.00 |
| Grp Crit III Sp | No | $0.00 | $251.02 | $0.00 | $0.00 |
| HSA ER Contr | No | $0.00 | $1,458.38 | $0.00 | $0.00 |
| Medical Pre Tax | Yes | $0.00 | $1,549.24 | $0.00 | $8,250.06 |
| Personal Chgs | No | $0.00 | $61.72 | $0.00 | $0.00 |
| Supp Life EE | No | $0.00 | $757.82 | $0.00 | $0.00 |
| Supp Life Sp | No | $0.00 | $151.62 | $0.00 | $0.00 |

## Taxes

| Tax | Current | YTD |
|---|---|---|
| Federal Income Tax | $3,038.65 | $8,085.43 |
| Employee Medicare | $228.46 | $971.30 |
| Social Security Employee Tax | $976.88 | $4,153.17 |
| CA State Income Tax | $1,282.16 | $3,005.03 |
| CA Disability Employee | $173.32 | $749.02 |

## Paid Time Off

| Plan | Taken | Current | Balance |
|---|---|---|---|
| Paid Time Off | 7.5000 | 0.0000 | 23.0000 |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxxx0846 | Checking | $300.00 |
| xxxx6489 | Savings | $300.00 |
| xxxxxxxxx5805 | Checking | $1,500.00 |
| xxxxxx5064 | Checking | $7,956.54 |
| Total | | $10,056.54 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $15,756.01 | $15,756.01 | $5,699.47 | $0.00 | $10,056.54 |
| YTD | $70,419.34 | $66,986.54 | $16,963.95 | $14,509.15 | $38,946.24 |

**31**

**EXHIBIT F**



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~REDACTED~~ **REDACTED**
CHUBB

Date: 08/29/2024
Next Appointment: 09/26/2024 02:00 PM
Claim#: ~~REDACTED~~ **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 909-477-5505

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.

**32**

Unum
PO Box 100158
Columbia, SC 29202-3158
Fax: 1-800-447-2498
www.unum.com



November 25, 2024

ADRIENNE HANKINS
807 DODD CRT
BAY POINT, CA 94565

RE:    Hankins, Adrienne
       LMS Leave Number:                         **REDACTED**

Unum works with Dentons US LLP to administer family and medical leaves.  This includes leave taken under the Family and Medical Leave Act of 1993 (FMLA) and any applicable state leave laws and corporate leave policies.  Please read this entire notice for details and further information regarding your leave.

The current status of your leave due to your own serious health condition is:

| Protection | Begin Date | End Date | Schedule | Status |
|---|---|---|---|---|
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 10/31/2024 | 11/21/2024 | Reduced | Eligible and Approved |
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 11/22/2024 | 12/19/2024 | Reduced | Eligible and Approved |

### Information About Your Leave

Approval dates are subject to change if leave dates or treatment dates change.  Please refer to your Employer's policies for any restrictions on scheduling leave and any requirements for reporting leave.

**Details About Your Reduced Leave Schedule:**  The healthcare provider has certified that you may need to take leave up to:

- 7.5 hours off per week

1242-03    UNUM IS A REGISTERED TRADEMARK AR                    'S INSURING SUBSIDIARIES.

**REDACTED**

Name: Hankins, Adrienne
LMS Leave Number:

November 25, 2024
Page 2 of 2

If your leave usage indicates that you require absences beyond the healthcare provider's current estimate of the amount of leave needed, certification may be required to support additional leave.

**Additional Information You Need to Know**

Any qualifying leave that is approved will count against your FMLA and/or any state law or corporate policy entitlement(s). Upon return from FMLA leave, most employees must be restored to the same job or similar one with equivalent pay, benefits, and other employment terms and conditions. Any leave that is denied may be treated according to your employer's attendance policy.

Absences during the approved timeframe may be denied if:
- the reason for the absence does not qualify;
- you exhaust your leave entitlement;
- you do not report the absence to Unum timely, as applicable; or
- you are exhausting and/or replenishing your leave entitlement regularly.

For more information about your employer's specific leave policies, please read the attached *Important Information about Dentons US LLP's Family and Medical Leave Policy.*

**How To Contact Us Or View Information About Your Leave**

As a convenience, we offer a secure website at www.unum.com/claimant where you have the option to:

- go paperless and choose online correspondence;
- report new leaves of absence and view the status of current claim/leave;
- report intermittent absences on active leaves; and
- provide us with updated information regarding your leave of absence.

You may also manage your claim/leave with the MyUnum for Members Mobile App. The MyUnum for Members Mobile App is available for Apple and Android.

In conjunction with our provision of services to you, you may receive a survey asking about your experience with Unum. Your thoughts and advice are critical drivers to our improvement, and we appreciate the opportunity to learn more about your experience.

If you have any questions, please contact Unum at (866) 779-1054.

Sincerely,


Unum's Absence Operations Team


Enclosures:    Denton Report Groups 3, 4, 7, 8 Important Information

**34**

<u>**Important Information About Dentons Family and Medical Leave Policy**</u>

**How Is My FMLA Entitlement Calculated?**
If you are eligible and your leave qualifies, you have the right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

**What If I Need Additional Leave?**
If you need an extension of your leave, you should notify Unum. You will be required to provide additional certification of the serious health condition.

**What If I Need Work Place Assistance?** - If your leave request is for your own serious health condition and there is need for workplace assistance, please contact <u>your manager and the Benefits team</u> immediately for further discussion. Unum assists your Employer in identifying reasonable modifications that may assist you in performing your job. You will receive any future communications about a workplace assistance request in a separate communication.

**How Do I Notify Unum and My Supervisor of My Return to Work Plans?**
If you are able to return to work sooner than your current estimated return to work date, you should notify Unum and your supervisor as soon as practicable.

If your leave is for your own health condition, you will be required to present your employer with a fitness-for-duty certificate as a condition of being restored to employment.

**How Should I Report Intermittent Absences to Unum?**
If you have an intermittent leave, you must notify Unum within 2 business days each time you need to take intermittent leave. Please also notify your supervisor as soon as possible, no later than 2 business days before or after needing to take intermittent leave. Otherwise, your leave under the FMLA and/or State leave law, where applicable, may be delayed/denied.

**Do I Need to Use Vacation/Sick/PTO While on Leave?**
You must use any accrued PTO exceeding 37.50 hours during any otherwise unpaid FMLA and/or state leave unless otherwise mandated by state law.
Any paid time off used will be counted against your available leave under the FMLA and/or state leave law. Please contact the Benefits team regarding how much paid time off you have available. If you do not meet the terms and conditions of your employer paid leave program for your leave, your entitlement to take unpaid FMLA will not be affected.
After you have exhausted your paid leave, the remainder of your leave will be without pay. If you are receiving workers' compensation or disability benefits, then you may use your accrued paid time off.

**Will My Benefits Continue While I Am on Leave?**
*Health Insurance:*
During your leave, your employer will continue to pay its portion of your group health insurance premiums and you must pay your share, if any, of the health insurance premiums.

• During paid leave, your share of the premiums will continue to be paid through payroll deductions
• During unpaid leave, your employer will provide you with information regarding arrangements for payment of your share of the premiums. Please contact <u>the Benefits team</u> for more information regarding payments for benefit continuation during your leave.

You have a 30-day grace period in which to make such premium payments. If you do not pay your share of the insurance premiums on a timely basis, your insurance coverage for yourself and/or your dependents may be terminated for the remainder of your leave

*Other Benefits (Life, Disability, etc.):*
Your employer will continue other benefits (e.g., life insurance, disability insurance, etc.) while you are on leave. If your employer pays your premiums for other benefits, when you return from leave you will not be expected to reimburse your employer for your share of the payments made on your behalf. Please contact <u>the Benefits team</u> for information regarding your other benefits during your leave.

**Are There Other Types of Leave Available?**
For information regarding other types of leave possibly available through your employer, please contact <u>the Benefits team at benefits@dentons.com</u>.

**You and Your Spouse Work for Same Employer**
If you and your spouse work for the same employer (even if employed at different worksites/operating divisions) and are both eligible for FMLA leave, the two of you are limited to a combined total of 12 weeks of FMLA leave during the applicable 12-month period for any combination of leave taken for the following reasons:

• Birth of a child
• Adoption/foster care placement
• Care for a parent with a serious health condition
• Care for a covered servicemember (military caregiver leave)

**35**

# EXHIBIT G

# DENTONS

# DUS POLICIES AND PROCEDURES



# DUS Policies and Procedures

Main View          search for...                                    policies published since...

## Using This Manual

**Contact:** Mohan, Shannon
**Audience:** All (Entire Firm)
**Last Update:** August 23, 2023
**Copy Link to Policy:**
**Parent:** Benefits

**Family and Medical Leaves of Absence**

DUS is cognizant of the fact that certain situations occur in employees' lives that can require them to be away from work for limited periods of time. It is the policy of DUS to provide eligible employees unpaid leaves of absence to attend to personal, family, or medical needs which comply with federal and state laws. For purposes of this manual, the federal law, i.e., the Family and Medical Leave Act of 1993 ("FMLA"), is described.

Upon return from a leave of absence pursuant to the FMLA, an employee will be returned to the same or an equivalent position with no loss in the benefits which accrued prior to the leave of absence. Certain "key employees," as designated by the Firm, will be notified prior to the commencement of their leave if the job restoration provisions of the FMLA must be modified. DUS reserves the right to designate any period of employee absence as qualifying for the FMLA subject to the verification procedures of that act. Employees will be notified of such designations in a timely manner.

If an employee anticipates taking personal, family, or medical leave, or has questions regarding the application of the FMLA or any other applicable unrelated benefits as part of this policy, please contact the Human Resources Department's benefits team at benefits@dentons.com.

Definitions

- Family/Medical Leave of Absence:  Family/medical leave of absence is defined as an approved absence available to eligible employees for the birth of the child; the placement of a child with the employee for adoption or foster care; employee care of a child, spouse, or parent with a serious health condition; or a serious health condition which makes the employee unable to perform the essential functions of his or her position; or because of a "qualifying exigency" arising out of the fact that the spouse or a son, daughter, or parent of the employee is a member of the Armed Forces or on active duty or call to active duty status in the National Guard or Reserves, and is deployed to a foreign country or deployed in support of a contingency operation.

- **Military Caregiver Leave of Absence:** Military caregiver leave of absence is defined as an approved absence available to an eligible employee who is the spouse, son, daughter, parent, or next of kin (nearest blood relative) of a "covered service member."

- **Serious Medical Condition:** A serious health condition is defined as any illness, injury, impairment, or physical or mental condition which involves inpatient care in a hospital, hospice, or residential medical care facility, or continuing treatment by a health care provider (i.e., a doctor of medicine or osteopathy who is licensed to practice medicine or surgery by the state in which he or she practices). DUS requires employees to provide medical certification for all serious health conditions. Short-term health conditions, such as minor illnesses that last only a few days, or surgical procedures that typically involve no hospitalization and require only a brief recovery period, generally do not qualify as a serious health condition.

- **Qualifying Exigency:** Qualifying exigencies generally include the following. (1) Issues arising from a short notice deployment; (2) Military events and related activities; (3) Childcare and school activity arrangements; (4) Making financial and legal arrangements; (5) Attending to counseling; (6) Spending time with a covered military member on short-term leave for rest and recuperation; (7) Attending to Post-Deployment activities; and (8) Other activities upon which the Firm and an employee can agree is an appropriate exigency, and can agree as to the timing and duration of such leave.

- **Covered Service Member:** Covered servicemember is defined as a member of the Armed Forces (including a member of the National Guard or Reserves) who has a serious injury or illness incurred in the line-of-duty while on active duty, or pre-existing conditions which have been aggravated by service in the line of duty on active duty, that may render the service member medically unfit to perform his or her duties, for which he or she is undergoing medical treatment, recuperation, or therapy, or is otherwise in outpatient status, or otherwise on the temporary disability retired list, for a serious injury or illness. Leave for this purpose may also be taken when the service member is a veteran recovering from injuries or illness incurred in the line of duty on active duty at any point in the five years preceding the date of medical treatment.

### Eligibility

To be eligible for a family and medical leave of absence or a military caregiver leave of absence under this policy an employee must have been employed for at least twelve (12) months and must have worked at least 1,250 hours during the twelve-month period prior to the commencement of the leave. Leaves of absence for employees not eligible for FMLA are explained under the "Leaves of Absence for Non-FMLA Eligible Employees" section.

### Leave Duration

Eligible employees are entitled to take up to twelve weeks' unpaid family and medical leave of absence within a rolling twelve-month period measured backward from the date an employee uses family and medical leave without a loss of seniority or benefits. Eligible employees are entitled to take up to twenty-six weeks of unpaid military caregiver leave of absence within a single twelve-month period looking forward from the first day that leave is taken without loss of seniority or benefits. An employee is entitled to a maximum of twenty-six weeks of leave during any twelve-month period. Its military caregiver leave runs concurrently with any other leave granted pursuant to the FMLA. Eligible employees may be entitled to additional unpaid leave as outlined in the "Non-FMLA Medical Leave" section of this manual.

An employee who fails to return to work prior to or immediately following expiration of the authorized leave period may be subject to termination of employment. Other leaves of absence, i.e., workers' compensation and short-term disability, will be counted against the employee's leave entitlement under FMLA.

### Concurrent Use of PTO

Leaves of absence pursuant to the FMLA are generally unpaid. However, an employee will be required to use any accrued and unused PTO that exceeds 37.5 hours (equivalent to one week) before such leaves become unpaid. During a leave of absence related to the employee's serious health condition, the employee shall also exhaust any available paid short-term disability benefits before such leave becomes unpaid. An employee may choose to apply unused PTO during the FMLA-designated absence. No PTO will accrue during any unpaid portion of a family and medical leave.

### Notification and Medical Certification Procedures

- **Notification:** When the need for a leave of absence is foreseeable, an employee is to provide the Firm with at least thirty (30) days' notice. Where the need for the leave is either unforeseeable or it is impossible for the employee to provide thirty (30) days' notice, he or she is to provide as much notice as practicable. The Firm may require periodic updates regarding the employee's status, including the expected return to work date.

  Employees requesting leave will be informed whether they are eligible for family and medical leave, and, if they are not eligible, a reason they are not eligible. Leave taken for any reason which would qualify under this policy may be counted against the employee's leave entitlement under this policy. Any leave taken may be counted concurrently, to the extent permitted by law, against both an employee's maximum federal FMLA leave allowance as well as any applicable state leave allowance.

- **Medical Certification:** DUS requires medical certification to support a claim for leave for an employee's own serious health condition or to care for a seriously ill child, spouse, or parent. Employees must also complete various other FMLA and disability-related forms and submit them to DUS's disability and leave of absence administrator, Unum, at 866-779-1054. . For an absence due to an employee's own serious health condition, the medical certification must include why the employee is unable to perform the essential functions of his or her position. For leave to care for a seriously ill child, spouse, or parent, the medical certification must include why absences to the employee's absence are not possible, such as care by others, and as definitive an estimate as possible of the amount of time the employee needs to provide care. Additional medical opinions may be required consistent with the law. DUS will pay for any such additional opinions. Before being returned to work, an employee who is on leave of absence as a result of his or her own serious health condition must submit a health care provider's written certification that the employee is able to return to work and to perform the essential job requirements of his or her position. Failure to provide such certification may result in the delay or denial of job restoration.

- **Certification for a Qualifying Exigency:** DUS requires certification to support a claim for leave for a qualifying exigency. Employees must also complete various other FMLA and disability-related forms and submit them to DUS's disability and leave of absence administrator Unum, at 866-779-1054. For leave because of a qualifying exigency, the certification must include a copy of the active duty orders the first time the leave is requested. Each leave request because of a qualifying exigency, including the first leave request because of a qualifying exigency, must include a statement or description of appropriate facts regarding the qualifying exigency for which leave is requested and any available written documentation to support the request for leave.

- **Medical Certification for Military Caregiver Leave:** DUS requires medical certification to support a claim for leave to care for a covered servicemember with a serious injury or illness. Employees must also complete various other FMLA and disability-related forms and submit them to DUS's disability and leave of absence administrator, Unum, at 866-779-1054. For leave to care for a covered servicemember with a serious injury or illness, the medical certification must be

completed by an authorized health care provider of the covered service member, including a US Department of Defense ("DOD") health care provider, a US Department of Veteran Affairs health care provider, a DOD TRICARE network authorized private health care provider or a DOD non-network TRICARE authorized private health care provider. The medical certification shall also provide, among other things, an estimate as definitive as possible of the amount of time the employee needs to provide care.

### Intermittent or Reduced Schedule Leave

Leave taken because of the employee's or an employee's family member's serious health condition may be taken on an intermittent or reduced schedule basis when medically necessary. If an employee seeks leave on an intermittent or reduced schedule basis, the employee must submit medical certification, as noted above, and additional certification from the health care provider that the intermittent or reduced schedule leave is medically necessary. DUS may require an employee taking intermittent or reduced schedule leave to temporarily transfer to an alternate position for which the employee is qualified or may modify the employee's current position to better accommodate the employee's recurring periods of leave.

### Insurance Premiums

During a FMLA-designated leave of absence and any approved extension of that leave pursuant to the procedures described under the "Non-FMLA Medical Leave" section, DUS will continue to provide health insurance coverage for the employee. However, the employee will remain personally responsible for paying his or her portion of the insurance premium. Such payments must be made by the first day of each calendar month of the leave and should be submitted directly to the Human Resources Department's benefits team. Such payments also may be made prior to the leave. Failure to pay premiums in a timely manner may result in cancellation of coverage.

The employee's portion of payments for all other benefits must also be paid by the employee during the leave period. An employee who does not return from leave may be required to repay the portion of any insurance premiums paid on their behalf by DUS during such leave.

PLEASE NOTE: DUS benefits terminate after you have been an inactive employee for six months. You will be eligible to continue health coverage through COBRA. "Inactive Employee" means an employee who is not actively at work due to an approved leave of absence.

### Job Restoration

Upon return from a FMLA-designated leave of absence, the employee will be returned to the same or an equivalent position with no loss in benefits which accrued prior to the leave of absence.

Certain "key employees" or employees on an extended FMLA-designated leave may not be eligible to be restored to the same or an equivalent job at the conclusion of their leave. DUS will notify any such employees of their status and the conditions which may affect their job restoration prior to approval of the leave extension.

### State or Local Leave Laws

To the extent any state or local law contain different leave requirements, DUS will satisfy the federal, state, or local requirement which is the most advantageous to the employee. To the extent allowed by applicable law, all leave entitlements will run concurrently.

### Parental Leave

DUS provides for leaves to prepare, to the extent possible, for absences occasioned by the birth or adoption of a child and in recognition of the special needs and demands of new parents. These policies apply to full-time and part-time benefits-eligible employees of DUS. Requests for Parental Leave by hourly part-time employees will be considered on a case by case basis.

### Lawyers and Professionals

All lawyers and professionals will be granted leave for the period of time associated with childbirth, including recovery from delivery, and/or bonding with a newborn or newly-adopted child within the first 12 months following birth or award of guardianship. Total time, including paid and unpaid segments, is available once every 12 months in a rolling calendar year. Available paid leave may be used either consecutively or intermittently, but must be used before unpaid leave unless otherwise specified. If available paid leave is to be used intermittently, it must be used in blocks of time of no less than two (2) weeks.

| All Lawyers and Professionals | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| | 26 weeks | 18 weeks | 8 weeks |

### Business Services Professionals and Paralegals

#### Primary Caregiver'

Primary Caregivers will be granted leave for the period of time associated with childbirth, including recovery from delivery, and/or bonding with a newborn or newly-adopted child within the first 12 months following birth or award of guardianship. In order to be eligible for Primary Caregiver leave, the employee must be the parent primarily responsible for the care of the child for the duration of the leave. Documentation of the facts supporting the leave may be requested by the Firm. Total time, including paid and unpaid segments, is available once every 12 months in a rolling calendar year. Available paid leave may be used either consecutively or intermittently, but must be used before unpaid leave unless otherwise specified. If available paid leave is to be used intermittently, it must be used in blocks of time of no less than two (2) weeks.

| | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| Business Services Professionals (Chiefs/Directors/Managers) | 24 weeks | <1 year = 100% of pay for 8 weeks<br><br>1+ years = 100% of pay for 13 weeks,<br>then 50% of pay for 4 weeks | <1 year = unpaid for 16 weeks<br><br>1+ years = unpaid for 7 weeks |

**39**

| | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| Business Services Professionals and Paralegals (Other Exempt) | Up to 24 weeks | <1 year = 50% of pay for 8 weeks* <br> 1+ years = 100% of pay for 12 weeks | <1 year = unpaid for 4 weeks* <br> 1+ years = unpaid for 12 weeks* |
| Business Services Professionals and Paralegals (Non-Exempt) | Up to 24 weeks | <1 year = 50% of pay for 8 weeks* <br> 1 - <2 years = 75% of pay for 12 weeks* <br> 2+ years = 90% of pay for 12 weeks* | <1 years = unpaid or 4 weeks* <br> 1 - <2 years = unpaid for 12 weeks* <br> 2+ years = unpaid for 12 weeks* |

*The use of PTO to supplement regular earnings during any unpaid portion of leave is required. A maximum of 37.50 hours of banked PTO may be preserved.

### Non-primary Caregiver

Non-primary Caregivers will be granted leave for the period of time associated with bonding with and helping to care for a newborn or newly-adopted child within the first 12 months following birth or award of guardianship. Documentation of the facts supporting the leave may be requested by the Firm. Total time, including paid and unpaid segments, is available once every 12 months in a rolling calendar year. Available paid leave may be used either consecutively or intermittently, but must be used before unpaid leave unless otherwise specified. If available paid leave is to be used intermittently, it must be used in blocks of time of no less than two (2) weeks.

| | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| Business Services Professionals (Chiefs/Directors/Managers) | 17 weeks | <1 year = 100% of pay for 2 weeks <br> 1+ years = 100% of pay for 4 weeks | <1 year = unpaid for 15 weeks <br> 1+ years = unpaid for 13 weeks |
| Business Services Professionals and Paralegals (Other Exempt) | Up to 12 weeks | <1 year = 100% of pay for 1 week <br> 1+ years = 100% of pay for 2 weeks, then 50% for 2 weeks* | <1 year = unpaid for 3 weeks* <br> 1+ years = unpaid for 8 weeks* |
| Business Services Professionals and Paralegals (Non-Exempt) | Up to 12 weeks | <1 year = 100% of pay for 4 week <br> 1+ years = 90% of pay for 2 weeks, then 50% for 1 week* | <1 year = unpaid for 3 weeks* <br> 1+ years = unpaid for 9 weeks* |

*The use of PTO to supplement regular earnings during any unpaid portion of leave is required. A maximum of 37.50 hours of banked PTO may be preserved.

### Non-Parental Leave

DUS recognizes the challenges employees face when trying to balance work demands and familial needs. Accordingly, these Non-Parental Leave policies are designed to provide time off when you (self-care) have a serious health condition or a family member with a serious health condition needs assistance. Eligible family members include a spouse, domestic partner, child, parent, step-child and step-parent. Total time, including paid and unpaid segments, is available once every 12 months in a rolling calendar year. All available paid leave is to be used consecutively and before unpaid leave unless otherwise specified. Full-time and part-time benefits eligible employees of DUS are eligible. Requests for Non-Parental Leaves by hourly part-time employees will be considered on a case by case basis

### Primary Caregiver

Primary Caregivers will be granted leave for the period of time associated with providing care to an eligible family member with a certified serious health condition. In order to be considered a Primary Caregiver, the employee must be primarily responsible for the care of the family member for the duration of the leave. Documentation of the facts supporting the leave may be requested by the Firm. ,

| | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| Partners and Principals | 24 weeks | <1 year = 100% of pay for 6 weeks <br> 1+ years = 100% of pay for 12 weeks | <1 year = unpaid for 18 weeks <br> 1+ years = unpaid for 12 weeks |
| Counsel, Professionals, and Other Non-Partner Lawyers | 24 weeks | <1 year = 100% of pay for 6 weeks <br> 1+ years = 100% of pay for 12 weeks | <1 year = unpaid for 18 weeks <br> 1+ years = unpaid for 12 weeks |
| Business Service Professionals (Chiefs/Directors/Manager) | 24 weeks | <1 year = 100% of pay for 6 weeks <br> 1+ years = 100% of pay for 12. weeks | <1 year = unpaid for 18 weeks <br> 1+ years = unpaid for 12 weeks |
| Business Services Professionals and Paralegals (Other Exempt) | Up to 24 weeks | <1 year = 50% of pay for 6 weeks* <br> 1+ years = 100% of pay for 6 weeks, then 50% of pay for 6 weeks* | <1 year = unpaid for 6 weeks* <br> 1+ years = unpaid for 12 weeks* |

**40**

| | | | |
|---|---|---|---|
| | | | <1 year = unpaid for 8 weeks* |
| Business Services Professionals and Paralegals (Non-Exempt) | Up to 24 weeks | <1 year = 50% of pay for 4 weeks* | |
| | | 1 - <2 years = 75% of pay for 6 weeks, then 50% of pay for 6 weeks* | 1 - <2 years = unpaid for 12 weeks* |
| | | 2+ years = 90% of pay for 6 weeks, then 50% of pay for 6 weeks* | 2+ years = unpaid for 12 weeks* |

*The use of PTO to supplement regular earnings during any unpaid portion of leave is required. A maximum of 37.50 hours of banked PTO may be preserved.

**Non-Primary Caregiver**

Non-primary Caregivers will be granted leave for the period of time associated with providing support to a Primary Caregiver of an eligible family member with a certified serious health condition. Documentation of the facts supporting the leave may be requested by the Firm.

| | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| Partners and Principals | 17 weeks | <1 year = 100% of pay for 2 weeks | <1 year = unpaid for 15 weeks |
| | | 1+ years = 100% of pay for 2 weeks, then 50% for 2 weeks | 1+ years = unpaid for 13 weeks |
| Counsel, Professionals, and Other Non-Partner Lawyers | 17 weeks | <1 year = 100% of pay for 2 weeks | <1 year = unpaid for 15 weeks |
| | | 1+ years = 100% of pay for 2 weeks, then 50 % for 2 weeks | 1+ years = unpaid for 13 weeks |
| Business Services Professionals (Chiefs/Directors/Manager) | 17 weeks | <1 year = 100% of pay for 2 weeks | <1 year = unpaid for 15 weeks |
| | | 1+ years = 100% of pay for 2 weeks, then 50 % for 2 weeks | 1+ years = unpaid for 13 weeks |
| Business Services Professionals and Paralegals (Other Exempt) | Up to 12 weeks | <1 year = 50% of pay for 2 weeks* | <1 year = unpaid for 2 weeks* |
| | | 1+ years = 100% of pay for 2 weeks, then 50% for 1 week* | 1+ years = unpaid for 9 weeks* |
| Business Services Professionals and Paralegals (Non-Exempt) | Up to 12 weeks | <1 year = 50% of pay for 2 weeks* | <1 year = unpaid for 2 weeks* |
| | | 1 - <2 years = 50% of pay for 3 weeks* | 1 - <2 years = unpaid for 9 weeks* |
| | | 2+ years = 75% of pay for 3 weeks* | 2+ years = unpaid for 9 weeks* |

*The use of PTO to supplement regular earnings during any unpaid portion of leave is required. A maximum of 37.50 hours of banked PTO may be preserved.

**Self-Care**

Time off will be provided for self-care consistent in alignment with the 'Non-Parental Primary Caregiver' allocation schedule above. Requests for self-care leave by hourly part-time employees will be considered on a case-by-case basis. You will be granted leave for the period of time associated with taking care of yourself when you have a certified serious health condition. Self-care leave will primarily be used to cover the time needed to treat a certified serious health condition that does not otherwise qualify for short term disability, i.e., absences that do not meet the 13-day elimination period. Documentation of the facts supporting the leave may be requested by the Firm.

**Leaves of Absence for Non-FMLA Eligible Partners and Employees**

Employees who are not eligible for leave pursuant to the FMLA may apply for a leave of absence for medical disabilities or for any other situation covered under the FMLA. DUS will evaluate the circumstances surrounding the request for leave (e.g., duration and nature of the leave) in determining approval of the request. If the leave is approved, the Firm will advise the employee, prior to commencement of the leave, whether he or she will be reinstated to the same or an equivalent position upon their return from leave.

The notification and medical certification process for these types of leaves is the same as those outlined under the "Family and Medical Leave of Absence" section. Benefits for employees on Non-FMLA leaves are also handled in the same manner as for employees on FMLA-designated leaves.

Partners who are not eligible for leave pursuant to the FMLA may apply for a leave of absence for medical disabilities or for any other situation covered under the FMLA. The Firm will evaluate the circumstances surrounding the request for leave (e.g., duration and nature of the leave, impact on DUS, length of employment) in determining approval of the request. If the leave is approved, the Firm will advise the Partner, prior to commencement of the leave, whether he or she will be reinstated to the same or an equivalent position upon their return from leave.

Partners must provide the Firm with at least thirty (30) days' notice of a need for leave. Where the need for the leave is either unforeseeable or it is impossible for the Partner to provide thirty (30) days' notice, he or she is to provide as much notice as practicable. The Partner must complete and submit medical certification to DUS's benefits team at benefits@dentons.com. Benefits for Partners on Non-FMLA leaves are handled in the same manner as for employees on FMLA-designated leaves.

DUS will not interfere with, restrain, or deny the exercise of any right provided under FMLA or any other applicable state family and medical leave law. DUS will not discriminate against or terminate the employment of any person for opposing any practice made unlawful by FMLA or any other applicable state family and medical leave law or for involvement in any proceeding under or relating to FMLA or any other applicable state family and medical leave law.

**Non-FMLA Medical Leave**

DUS recognizes that an employee's illness or injury may sometimes require a prolonged absence from work and offers medical leaves of absence to address those situations.

**Eligibility**

All employees are eligible upon hire to request a medical leave of absence.

Employees who are absent for longer than three consecutive work days must provide documentation from their Health Care Provider verifying that they are unable to work for medical reasons and providing the expected duration of the illness or injury. The employee will be required to provide a Return to Work release note from their Health Care Provider before returning to work for any absences exceeding three consecutive days, unless prohibited by state law.

DUS may require an employee seeking a medical leave to be examined, at the Firm's expense, by a Health Care Provider of the Firm's choosing.

Employees should contact the Benefits department at benefits@dentons.com for any questions regarding medical leaves.

**Duration**

Approved medical leaves may last for up to six (6) consecutive months, and will run concurrently with Family and Medical Leave, and any state leave laws. Employees must notify their manager and the Benefits department at benefits@dentons.com as soon as they learn that they need a medical leave.

Employees requesting an extension of an approved medical leave must provide documentation from their Health Care Provider supporting their need for additional time off. Leave extension requests must be made at least three (3) business days prior to the conclusion of the current approved leave in order to enable time for proper consideration and approval before the end of the previously approved leave period. Employees who remain away from work without obtaining a timely extension of their leave will be considered to be on an unauthorized leave and may be subject to termination of employment.

**Compensation**

Employees may be eligible for compensation during all or a portion of their medical leave. For example, employees may be entitled to DUS's Short Term Disability benefit and/or receive compensation from their state's disability program, not to exceed an employee's base pay.

Employees are required to use available PTO or sick time for all work days during the thirteen-calendar day elimination period during which they are absent due to illness or injury prior to beginning an approved medical leave.

Employees will receive Short Term Disability benefits only upon approval by DUS's disability insurance carrier. PTO or sick time must be used during any unpaid portions of an approved medical leave. See the Short Term Disability policy.

Employees who are unable to return to work after six months on an approved medical leave of absence may be eligible for DUS's Long Term Disability benefit. Employees will receive Long Term Disability benefits only upon approval by DUS's disability insurance carrier. See the Long Term Disability policy.

**Health Insurance**

Firm health care coverage generally continues during an approved medical leave, subject to employee's payment of applicable contributions to premiums. Employees should contact the Benefits team at benefits@dentons.com to understand benefits continuation during a medical leave.

**PLEASE NOTE:** DUS benefits terminate after you have been an inactive employee for six months. You will be eligible to continue health coverage through COBRA. "Inactive Employee" means an employee who is not actively at work due to an approved leave of absence.

**Return To Work**

Employees returning from an approved medical leave under this policy will be reinstated to the same or similar position they held prior to their leave, unless the position is no longer available for reasons unrelated to the leave. As soon as practicable prior to their return, employees must provide the Benefits department with documentation from their Health Service Provider confirming that they are able to return to work, with or without restrictions. If an employee is returning to work with restrictions, the Firm will engage in discussion with the employee about the restrictions and any requested accommodations. See the Disability Accommodation policy.

Employees who are nearing five (5) months of consecutive leave should contact the Benefits department to discuss their ability to return to work and their timeframe for returning. If additional leave is requested, DUS will consider the employee's expected timeframe for being able to return to work, along with the needs of the business and any legal requirements. DUS will not grant requests for indefinite leave.

An employee's failure to return from a medical leave after being released by a Health Care Provider will result in termination of employment.

**Personal Leave**

In certain extraordinary circumstances, an unpaid leave of absence of up to 90 days in one calendar year may be granted to an employee. The Firm will evaluate the circumstances surrounding the request for leave (e.g., duration and nature of the leave, impact on the Firm, length of employment) in determining approval of the request. If the leave is approved, the Firm will advise the employee, prior to commencement of the leave, whether he or she will be reinstated to the same or an equivalent position upon their return.

An employee seeking this type of leave must submit a written request to his or her Supervisor/Manager at least 30 days in advance of the leave. For a leave to be granted, the request must be approved by both the employee's Supervisor/Manager and the HR Director. If a leave is granted, the employee cannot extend the duration of the leave as specifically approved; an employee will be terminated if he or she does not return to work upon expiration of an authorized leave.

During a personal leave of absence there will be no accrual of any Vacation or PTO. Access to certain benefits will also be suspended. The employee will continue to bear the responsibility of paying his or her portion of insurance premiums and/or outstanding Profit Sharing loan repayments during the leave.

Leave Duration

Eligible employees are entitled to take up to twelve weeks' paid family leave within a rolling twelve-month period measured backward from the date an employee uses family and medical leave without a loss of seniority or benefits. Beginning in 2019, the maximum paid leave duration is ten weeks; in 2021 the maximum paid leave duration will increase to twelve weeks.

Notification and Medical Certification Procedures

Notification: When the need for a leave of absence is foreseeable, an employee is to provide the Firm with at least thirty (30) days' notice. Where the need for the leave is either unforeseeable or it is impossible for the employee to provide thirty (30) days' notice, he or she is to provide as much notice as practicable. The Firm may require periodic updates regarding the employee's status, including the expected return to work date.

Employees requesting leave will be informed whether they are eligible for paid family leave, and, if they are not eligible, a reason they are not eligible. Leave taken for any reason which would qualify under this policy may be counted against the employee's leave entitlement under this policy. Any leave taken will be counted concurrently, to the extent permitted by law, against both an employee's maximum FMLA and PFL leave allowances, as well as any other applicable leave allowance.

Medical Certification: DUS requires medical certification to support a claim for leave to care for a seriously ill family member. Employees must also complete various other FMLA/PFL related forms and submit them to DUS's leave of absence administrator, Unum, at 866-779-1054. For leave to care for a seriously ill child, spouse, or parent, the medical certification must include why alternatives to the employee's absence are not possible, such as care by others, and as definitive an estimate as possible of the amount of time the employee needs to provide care.

Certification for a Qualifying Exigency: DUS requires certification to support a claim for leave for a qualifying exigency. Employees must also complete various other FMLA related forms and submit them to DUS's leave of absence administrator, Unum, at 866-779-1054. For leave because of a qualifying exigency, the certification must include a copy of the active duty orders the first time the leave is requested. Each leave request because of a qualifying exigency, including the first leave request because of a qualifying exigency, must include a statement or description of appropriate facts regarding the qualifying exigency for which leave is requested and any available written documentation to support the request for leave.

Intermittent Schedule Leave: Leave taken because of an employee's family member's serious health condition or to bond with a minor child within 1 year of birth, adoption, or foster placement may be taken on an intermittent schedule basis when medically necessary. If an employee seeks leave on an intermittent schedule basis, the employee must submit medical certification, as noted above, and additional certification from the health care provider that the intermittent schedule leave is medically necessary. Intermittent leave under PFL must be taken in whole day increments.

Insurance Premiums: During an FMLA or PFL-designated leave of absence, DUS will continue to provide health insurance coverage for the employee. However, the employee will remain personally responsible for paying his or her portion of the insurance premium. Such payments must be made by the first day of each calendar month of the leave and should be submitted directly to the Human Resources Department's benefits team. Such payments also may be made prior to the leave. Failure to pay premiums in a timely manner may result in cancellation of coverage.

The employee's portion of payments for all other benefits must also be paid by the employee during the leave period. An employee who does not return from leave may be required to repay the portion of any insurance premiums paid on their behalf by the Firm during such leave.

PLEASE NOTE: DUS benefits terminate after you have been an inactive employee for six months. You will be eligible to continue health coverage through COBRA. "Inactive Employee" means an employee who is not actively at work due to an approved leave of absence.

Job Restoration: Upon return from an FMLA or PFL-designated leave of absence, the employee will be returned to the same or an equivalent position with no loss in benefits which accrued prior to the leave of absence.

Certain "key employees" or employees on an extended FMLA-designated leave may not be eligible to be restored to the same or an equivalent job at the conclusion of their leave. The Firm will notify any such employees of their status and the conditions which may affect their job restoration prior to approval of the leave extension.

Under ordinary circumstances, an employee who fails to return to work upon expiration of the leave period will be terminated.

An employee may not accept other employment or become self-employed while on a family and medical leave of absence. An employee obtaining or seeking other employment while on a family and medical leave of absence may be terminated.

DUS will not interfere with, restrain, or deny the exercise of any right provided under FMLA or any other applicable state family and medical leave law. DUS will not discriminate against or terminate the employment of any person for opposing any practice made unlawful by FMLA or any other applicable state family and medical leave law or for involvement in any proceeding under or relating to FMLA or any other applicable state family and medical leave law.

**43**

The employee's portion of payments for all other benefits must also be paid by the employee during the leave period. An employee who does not return from leave may be required to repay the portion of any insurance premiums paid on their behalf by the Firm during such leave.

**PLEASE NOTE:** DUS benefits terminate after you have been an inactive employee for six months. You will be eligible to continue health coverage through COBRA. "Inactive Employee" means an employee who is not actively at work due to an approved leave of absence.

- Job Restoration: Upon return from an FMLA-designated leave of absence, the employee will be returned to the same or an equivalent position with no loss in benefits which accrued prior to the leave of absence.

  Certain "key employees" or employees on an extended FMLA-designated leave may not be eligible to be restored to the same or an equivalent job at the conclusion of their leave. The Firm will notify any such employees of their status and the conditions which may affect their job restoration prior to approval of the leave extension.

  Under ordinary circumstances, an employee who fails to return to work upon expiration of the leave period will be terminated.

  An employee must not accept other employment or become self-employed while on a family and medical leave of absence. An employee obtaining or seeking other employment while on a family and medical leave of absence may be terminated.

  DUS will not interfere with, restrain, or deny the exercise of any right provided under FMLA or any other applicable state family and medical leave law. DUS will not discriminate against or terminate the employment of any person for opposing any practice made unlawful by FMLA or any other applicable state family and medical leave law or for involvement in any proceeding under or relating to FMLA or any other applicable state family and medical leave law.

Leaves of Absence for Non-FMLA/CFRA Eligible Employees

Employees who are not eligible for leave pursuant to the FMLA or CFRA may apply for a leave of absence pursuant to applicable leave policy for medical disabilities other than those qualifying as Pregnancy Disability Leave; or for any other situation covered under the FMLA or CFRA. DUS's disability and leave of absence administrator, Unum, will evaluate the circumstances surrounding the request for leave (e.g., duration and nature of the leave) in determining approval of the request. If the leave is approved, the Firm will advise the employee, prior to commencement of the leave, whether he or she will be reinstated to the same or an equivalent position upon his or her return from leave.

The notification and medical certification process for these types of leaves is the same as those outlined under the "Family and Medical Leave of Absence" section. Benefits for employees on Non-FMLA/CFRA leaves are also handled in the same manner as for employees on FMLA- or CFRA-designated leaves.

Partners who are not eligible for leave pursuant to the FMLA or CFRA may apply for a leave of absence for medical disabilities or for any other situation covered under the FMLA or CFRA. The Firm will evaluate the circumstances surrounding the request for leave (e.g., duration and nature of the leave, impact on the Firm, length of employment) in determining approval of the request. If the leave is approved, the Firm will advise the Partner, prior to commencement of the leave, whether he or she will be reinstated to the same or an equivalent position upon their return from leave.

Partners must provide the Firm with at least thirty (30) days' notice of a need for leave. Where the need for the leave is either unforeseeable or it is impossible for the Partner to provide thirty (30) days' notice, he or she is to provide as much notice as practicable. The Partner must complete and submit medical certification to DUS's benefits team at benefits@dentons.com. Benefits for Partners on Non-FMLA/CFRA leaves are handled in the same manner as for employees on FMLA- or CFRA-designated leaves.

Paid Family Leave

Any employee who is absent from work to care for a family member with a "serious health condition" or to bond with a minor child within 1 year of birth, adoption, or foster placement may be entitled to partial wage replacement from the Employment Development Department ("EDD") of the state of California for up to six (6) weeks in any twelve (12) month period under the Paid Family Leave law ("PFL"). Employees are solely responsible for applying for any PFL benefits to which they may be entitled, and for complying with all requirements established by the EDD for qualification of PFL benefits. For further information, please contact the EDD directly, or the Human Resources Department's benefits team.

DUS requires that employees applying for wage replacement under PFL first exhaust up to two weeks of accrued and unused PTO before receiving benefits. Employees may elect to use more than the required two weeks of accrued and unused PTO.

School Visitation

DUS will grant employees, upon reasonable notice, a defined amount of unpaid leave to attend their dependent child(ren)'s school-related events. Eligible dependents include children in grades kindergarten through high school. Verification of attendance at the school-related event will be required. Employees may apply PTO to their absence. For specific information, contact the appropriate Administrative Director/Office Administrator or Supervisor/Manager.

LEAVE OF ABSENCE POLICY SPECIFIC TO NEW YORK EMPLOYEES

This New York Supplement to DUS's Policy and Procedure Manual is a summary of benefits which are specific to New York. Except as noted, all policies in the Policy and Procedure Manual also apply to New York Firm employees. While it is the intention of the Firm to have policies and practices in all its offices as uniform as possible, New York employment laws differ in some respects from those of other states.

Paid Family Leave

Any eligible employee who is absent from work to care for an eligible family member with a "serious health condition" or to bond with a minor child within 1 year of birth, adoption, or foster placement, or other events related to a family member's active-duty military status may be entitled to partial wage replacement from the state of New York in any twelve (12) month period under the Paid Family Leave law ("PFL"). Employees are solely responsible for applying for any PFL benefits to which they may be entitled, and for complying with all requirements established by the state of New York for qualification of PFL benefits. For further information, please contact DUS's leave administrator, Unum, directly, or DUS's benefits team.

If the employee is eligible for leave under the federal Family and Medical Leave Act (FMLA), the Firm will count the employee's paid family leave, up to a maximum of 12 work weeks, against their family and medical leave entitlement.

Eligible employees are those defined as a full-time employee (defined as working 20 or more hours per week) who has worked for their employer for 26 weeks; or a part-time employee (less than 20 hours per week) who has worked 175 days.

To be eligible for a family and medical leave of absence or a military caregiver leave of absence under this policy, an employee must have been employed for at least twelve (12) months and must have worked at least 1,250 hours during the twelve-month period prior to the commencement of the leave (or the 12-month period preceding the first day of an FMLA-qualifying pregnancy disability leave taken immediately before the requested family and medical leave). Leaves of absence for employees not eligible for FMLA or CFRA are explained under the "Leaves of Absence for Non-FMLA/CFRA Eligible Employees" section.

Leave Duration

Eligible employees are entitled to take up to twelve weeks' unpaid family and medical leave of absence within a rolling twelve-month period measured backward from the date an employee uses family and medical leave without a loss of seniority or benefits. A female employee who is eligible for family and medical leave and who takes a disability leave of absence for pregnancy, childbirth, or related medical conditions, may take 12 workweeks of family and medical leave in addition to her pregnancy disability leave.

Eligible employees are entitled to take up to twenty-six weeks of unpaid military caregiver leave within a single twelve-month period looking forward from the first day that leave is taken without loss of seniority or benefits. An employee is entitled to a maximum of twenty-six weeks of leave during any twelve-month period, as military caregiver leave runs concurrently with any other leave granted pursuant to the FMLA.

Eligible employees may be entitled to additional unpaid leave as outlined in the "Non-FMLA Medical Leave" section of this manual.

An employee who fails to return to work prior to or immediately following expiration of the authorized leave period may be subject to termination of employment. Other leaves of absence, i.e., workers' compensation and short-term disability, will be counted against the employee's leave entitlement under FMLA.

Concurrent Uses of PTO

Leaves of absence pursuant to the FMLA/CFRA are generally unpaid. However, an employee will be required to use any accrued and unused PTO that exceeds 37.5 hours (equivalent to one week) before such leaves become unpaid. During a leave of absence related to the employee's serious health condition, the employee must also exhaust any available paid short-term disability benefits before such leave becomes unpaid. An employee may choose to apply unused PTO during the FMLA, or CFRA-designated absence. No PTO will accrue during any unpaid portion of a family and medical leave.

Notification and Medical Certification Procedures

- **Notification:** When the need for a leave of absence is foreseeable, an employee is to provide the Firm with at least thirty (30) days' notice. Where the need for the leave is either unforeseeable or it is impossible for the employee to provide thirty (30) days' notice, he or she is to provide as much notice as practicable. The Firm may require periodic updates regarding the employee's status, including the expected return to work date.

  Employees requesting leave will be informed whether they are eligible for family and medical leave, and, if they are not eligible, a reason they are not eligible. Leave taken for any reason which would qualify under this policy may be counted against the employee's leave entitlement under this policy. Any leave taken will be counted concurrently, to the extent permitted by law, against both an employee's maximum FMLA and CFRA leave allowances, as well as any other applicable leave allowance.

- **Medical Certification:** DUS requires medical certification to support a claim for leave for an employee's own serious health condition or to care for a seriously ill child, spouse, or parent. Employees must also complete various other FMLA/CFRA and disability-related forms and submit them to DUS's disability and leave of absence administrator, Unum, at 866-779-1054. For an absence due to an employee's own serious health condition, the medical certification must include why the employee is unable to perform the essential functions of his or her position. For leave to care for a seriously ill child, spouse, or parent, the medical certification must include why alternatives to the employee's absence are not possible, such as care by others, and as definitive an estimate as possible of the amount of time the employee needs to provide care. Additional medical opinions may be required consistent with the law. DUS will pay for any such additional opinions.

  Before being returned to work, an employee who is on leave of absence as a result of his or her own serious health condition must submit a health care provider's written certification that the employee is able to return to work and to perform the essential job requirements of his or her position. Failure to provide such certification may result in the delay or denial of job restoration.

- **Certification for a Qualifying Exigency:** DUS requires certification to support a claim for leave for a qualifying exigency. Employees must also complete various other FMLA and disability-related forms and submit them to DUS's disability and leave of absence administrator, Unum, at 866-779-1054. For leave because of a qualifying exigency, the certification must include a copy of the active duty orders the first time the leave is requested. A leave request because of a qualifying exigency, including the first leave request because of a qualifying exigency, must include a statement or description of appropriate facts regarding the qualifying exigency for which leave is requested and any available written documentation to support the request for leave.

- **Medical Certification for Military Caregiver Leave:** DUS requires medical certification to support a claim for leave to care for a covered servicemember with a serious injury or illness. Employees must also complete various other FMLA and disability-related forms and submit them to DUS's disability and leave of absence administrator, Unum, at 866-779-1054. For leave to care for a covered servicemember with a serious injury or illness, the medical certification must be completed by an authorized health care provider of the covered servicemember, including a US Department of Defense ("DOD") health care provider, a US Department of Veteran Affairs health care provider, a DOD TRICARE network authorized private health care provider or a DOD non-network TRICARE authorized private health care provider. The medical certification shall also provide, among other things, an estimate as definitive as possible of the amount of time the employee needs to provide care.

- **Intermittent Reduced Schedule Leave:** Leave taken because of the employee's or an employee's family member's serious health condition may be taken on an intermittent or reduced schedule basis when medically necessary. If an employee seeks leave on an intermittent or reduced schedule basis, the employee must submit medical certification, as noted above, and additional certification from the health care provider that the intermittent or reduced schedule leave is medically necessary. DUS may require an employee taking intermittent or reduced schedule leave to temporarily transfer to an alternate position for which the employee is qualified or may modify the employee's current position to better accommodate the employee's recurring periods of leave.

- **Insurance Premiums:** During an FMLA or CFRA-designated leave of absence and any approved extension of that leave pursuant to the procedures described under the "Non-FMLA Medical Leave" section, the Firm will continue to provide health insurance coverage for the employee. However, the employee will remain personally responsible for paying his or her portion of the insurance premium. Such payments must be made by the first day of each calendar month of the leave and should be submitted directly to the Human Resources Department's benefits team. Such payments also may be made prior to the leave. Failure to pay premiums in a timely manner may result in cancellation of coverage.

During pregnancy disability leave, DUS will continue to provide health insurance coverage for the employee. However, the employee will remain personally responsible for paying her portion of the insurance premium. Such payments must be made by the first day of each calendar month of the leave and should be submitted directly to the Human Resources Department's benefits team. Such payments also may be made prior to the leave. Failure to pay premiums in a timely manner may result in cancellation of coverage.

The employee's portion of payments for all other benefits must also be paid by the employee during the leave period. An employee who does not return from leave may be required to repay the portion of any insurance premiums paid on their behalf by the Firm during such leave.

An employee shall provide at least verbal notice sufficient to make the Firm aware that the employee needs a pregnancy disability leave or transfer and of the anticipated timing and duration of the leave or transfer. An employee must provide at least 30 days' advance notice before pregnancy disability leave or transfer is to begin if the need for the leave or transfer is foreseeable because of pregnancy. The employee shall consult with the Firm and make a reasonable effort to schedule any planned medical treatment or supervision so as to minimize disruption to DUS's operations, subject to the approval of the health care provider of the employee. If 30-days' advance notice is not practicable, such as because of a lack of knowledge of approximately when leave or transfer will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable.

An employee requesting pregnancy disability leave must provide written certification from her health care provider. The certification indicating disability necessitating a leave should contain: (1) the date on which the employee became disabled due to pregnancy; (2) the probable duration of the period or periods of disability; and (3) an explanatory statement that, due to the disability, the employee is unable to work at all or is unable to perform one or more of the essential functions of her position without undue risk to herself, the successful completion of her pregnancy, or to other persons. The certification indicating the medical advisability of the transfer should contain: (1) the date on which the need to transfer became medically advisable; (2) the probable duration of the period or periods of the need to transfer; and (3) an explanatory statement that, due to the employee's pregnancy, the transfer is medically advisable.

While on leave, the employee must contact the Human Resources Department's benefits team every 30 days regarding the status of her condition and intent to return to work. In addition, notice must be given as soon as practicable (within two business days if feasible) if the dates of leave change, are extended, or were initially unknown.

Upon expiration of the time period which the health care provider originally estimated that the employee needed, the Firm may require the employee to obtain recertification if additional leave or time for a transfer is requested.

As a condition of the employee's return from pregnancy disability leave or transfer, the employee must obtain a release to "return-to-work" from her health care provider that she is able to resume her original job duties

An employee returning from a pregnancy disability leave of up to four months will be reinstated to her same or a comparable position, subject to any defense allowed under the law.

An employee granted a leave of absence must resume work on the first scheduled workday following the expiration date of the leave. If the employee does not return on the specified date, she will be considered to have resigned.

An employee must not accept other employment or become self-employed while on a pregnancy disability leave of absence. An employee obtaining or seeking other employment while on a pregnancy disability leave of absence may be terminated.

### Family And Medical Leave: FMLA and CFRA

#### Definitions

- **Family And Medical Leave of Absence:** Family/medical leave of absence is defined as an approved absence available to eligible employees for the birth of the employee's child; the placement of a child with the employee for adoption or foster care; the employee's care of a child, spouse, registered domestic partner, parent, parent-in-law, grandparent, grandchild, sibling or "designated person" with a serious health condition; or for a serious health condition which makes the employee unable to perform the essential functions of his or her position. For purposes of this policy, a "designated person" means any person related to you by blood or whose association with you is the equivalent of a family relationship and can be identified by the employee at the time the employee requests a family-care and medical leave. Employees are limited to one designated person per 12-month period for family care and medical leave. Additionally, an FMLA-eligible employee whose spouse, domestic partner, son, daughter, or parent, is a member of the Armed Forces or on active duty or called to active duty status in the National Guard or Reserves, and is deployed to a foreign country or deployed in support of a contingency operation, may use their 12-week FMLA leave entitlement to address certain "qualifying exigencies."

- **Military Caregiver Leave of Absence:** Military caregiver leave of absence is defined as an approved absence available to an eligible employee who is the spouse, domestic partner, son, daughter, parent, or next of kin (nearest blood relative) of a "covered servicemember."

- **Serious Health Condition:** A serious health condition is defined as any illness, injury, impairment, or physical or mental condition which involves inpatient care in a hospital, hospice, or residential medical care facility, or continuing treatment by a health care provider (i.e., a doctor of medicine or osteopathy who is licensed to practice medicine or surgery by the state in which he or she practices). DUS requires employees to provide medical certification for all serious health conditions; Short-term health conditions, such as minor illnesses that last only a few days, or surgical procedures that typically involve no hospitalization and require only a brief recovery period, generally do not qualify as a serious health condition.

- **Qualifying Exigency:** Qualifying exigencies generally include the following: (1) issues arising from a short notice deployment; (2) military events and related activities; (3) childcare and school activity arrangements; (4) making financial and legal arrangements; (5) attending counseling; (6) spending time with a covered military member on short-term leave for rest and recuperation; (7) attending Post-Deployment activities; and (8) other activities upon which the Firm and an employee can agree is an appropriate exigency, and can agree as to the timing and duration of such leave.

- **Covered Servicemember:** Covered servicemember is defined as a member of the Armed Forces (including a member of the National Guard or Reserves) who has a serious injury or illness incurred in the line of duty while on active duty, or pre-existing conditions which have been aggravated by service in the line of duty on active duty, that may render the service member medically unfit to perform his or her duties, for which he or she is undergoing medical treatment, recuperation, or therapy, or is otherwise in an outpatient status, or otherwise on the temporary disability retired list, for a serious injury or illness. Leave for this purpose may also be taken when the service member is a veteran recovering from injuries or illness incurred in the line of duty on active duty at any point in the five years preceding the date of medical treatment.

#### Eligibility

**Military Leave**

DUS will grant time off, without loss of seniority or benefits, in accordance with the law for any employee who requests leave to fulfill a military obligation. Such leaves may be unpaid; however, an employee may choose to apply available Vacation time or PTO. After duty is completed, the employee will be reemployed in as favorable a position as the employee would have attained had he or she not entered the service but remained on the job if the employee satisfies all applicable legal requirements and reapplies for his or her position as required by law.

DUS will grant leave, as required by applicable state law, to employees whose military spouses are home on leave from deployment.

**Bereavement Leave**

Employees are eligible for 3 days of paid bereavement leave and 2 days of unpaid bereavement leave for the death of an immediate family member, including pregnancy loss, as defined below. Employees may use accrued but unused paid time off to substitute for any unpaid bereavement leave. Bereavement leave must be completed within three months of the family member's date of death, although the days do not need to be consecutive.

For purposes of this policy, a family member includes an employee's:

- spouse or domestic partner,
- (step-)children,
- (step-)parents,
- (step-)brothers,
- (step-)sisters,
- (step-)grandparents,
- (step-)grandchildren and
- in-laws (mother, father, brother, or sister).

Parent and child relationships also include foster, and adopted relationships, and relationships based on one individual's legal guardianship or in loco parentis relationship to another.

Full-time, salaried employees will be granted one day off from work without loss of pay for the death of a close relative not a member of his or her immediate family, which is defined as the employee's aunt, uncle, niece, or nephew.

Bereavement leave will be applied instead of any other PTO if a death occurs which is covered under this policy. DUS reserves the right to request verification upon return to work.

## LEAVES OF ABSENCE POLICIES SPECIFIC TO CALIFORNIA EMPLOYEES

This California Supplement to DUS's Policy and Procedure Manual is a summary of Firm policies, practices, and benefits which are specific to California. Except as noted, all policies in the Policy and Procedure Manual also apply to California Firm employees. While it is the intention of DUS to have policies and practices in all its offices as uniform as possible, California employment leave differ in some respects from those of other states.

### Pregnancy Disability and Family and Medical Leaves of Absences

DUS is cognizant of the fact that certain situations occur in employees' lives that can require them to be away from work for limited periods of time. It is the policy of DUS to provide eligible employees unpaid leaves of absence to attend to personal, family, or medical needs which comply with federal and state laws. This policy, which applies only to California employees, describes Pregnancy Disability Leave, the California Family Rights Act ("CFRA"), and California's Paid Family Leave ("PFL") law.

#### Pregnancy Disability Leave

Consistent with the requirements of California law, a maximum of four months' leave (88 working days for a full-time employee) will be granted to an employee whose doctor certifies that the employee is disabled and cannot perform her job because of pregnancy, childbirth, or related medical conditions.

An employee affected by pregnancy or a related medical condition may also request a transfer to a less strenuous position or to less strenuous or hazardous duties, provided that the employee's request is based on the certification of her health care provider that a transfer is medically advisable and such transfer can be reasonably accommodated by the Firm.

A pregnancy disability leave need not be taken in one continuous period of time but can be taken on an as-needed basis. If it is medically advisable for an employee to take intermittent leave or leave on a reduced work schedule and it is foreseeable based on planned medical treatment because of pregnancy, the Firm may require the employee to transfer temporarily to an available alternative position. Transfer to an alternative position may include altering an existing job to better accommodate the employee's need for intermittent leave or a reduced work schedule.

An employee may elect to use accrued PTO during the four month pregnancy disability leave. Following the utilization of all accrued PTO, the remainder of the leave will be on an unpaid basis.

No PTO will accrue during any unpaid portion of a pregnancy disability leave.

If the employee is eligible for leave under the federal Family and Medical Leave Act (FMLA), the Firm will count the employee's pregnancy disability leave, up to a maximum of 12 work weeks, against her family and medical leave entitlement.

Employees may be eligible for disability payments under DUS's insurance plans or from the State of California pursuant to state law.

# EXHIBIT H

Unum
PO Box 100158
Columbia, SC 29202-3158
Fax: 1-800-447-2498
www.unum.com



July 28, 2025

ADRIENNE HANKINS
807 DODD CT
BAY POINT, CA 94565

RE:    Hankins, Adrienne
       LMS Leave Number:                    REDACTED

Unum works with Dentons US LLP to administer family and medical leaves.  This includes leave
taken under the Family and Medical Leave Act of 1993 (FMLA) and any applicable state leave
laws and corporate leave policies.  Please read this entire notice for details and further
information regarding your leave.

The current status of your leave due to your own serious health condition is:

| Protection | Begin Date | End Date | Schedule | Status |
|---|---|---|---|---|
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 10/31/2024 | 11/21/2024 | Reduced | Eligible and Approved |
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 11/22/2024 | 12/19/2024 | Reduced | Eligible and Approved |
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 12/20/2024 | 1/30/2025 | Reduced | Eligible and Approved |
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 2/28/2025 | 3/16/2025 | Reduced | Eligible and Approved |
| FMLA, California Family Rights Act (CFRA) and Non-Parental Leave - | 3/17/2025 | 5/5/2025 | Intermittent | Eligible and Approved |

1242-03    UNUM IS A REGISTERED TRADEMARK AN      IS INSURING SUBSIDIARIES.

Name: Hankins, Adrienne                       **REDACTED**                                    July 28, 2025
LMS Leave Number: ▓▓▓▓▓                                                                         Page 2 of 3

| Primary Caregiver - All employees (24 weeks) | | | | |
|---|---|---|---|---|
| FMLA, California Family Rights Act (CFRA) and Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 5/6/2025 | 6/17/2025 | Reduced | Eligible and Approved |
| FMLA, California Family Rights Act (CFRA) and Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 7/11/2025 | 1/10/2026 | Intermittent | Eligible and Approved |

## Information About Your Leave

Approval dates are subject to change if leave dates or treatment dates change. Please refer to your Employer's policies for any restrictions on scheduling leave and any requirements for reporting leave.

**Details About Your Intermittent Leave Schedule:** The healthcare provider has certified that you may need to take leave up to:

- 1 per month lasting 24 hours for treatment/medical visits
- 3 per month lasting 24 hours for care/recovery during episodes of incapacity

If your leave usage indicates that you require absences beyond the healthcare provider's current estimate of the amount of leave needed, certification may be required to support additional leave.

## FMLA Entitlement

As of July 25, 2025, you will have used 2 week(s), 19 hour(s), and 14 minute(s) of FMLA.

You will have 9 week(s), 18 hour(s), and 16 minute(s) of FMLA remaining.

This amount includes all approved FMLA leave taken within the applicable 12-month period. These totals do not include any requested leave that has not yet been approved and do not reflect entitlement available under any applicable state law or corporate policy.

If you are reporting intermittent absences, you will receive notice every 30 days communicating the amount of FMLA leave taken.

## Additional Information You Need to Know

**49**

Any qualifying leave that is approved will count against your FMLA and/or any state law or corporate policy entitlement(s). Upon return from FMLA leave, most employees must be restored to the same job or similar one with equivalent pay, benefits, and other employment terms and conditions. Any leave that is denied may be treated according to your employer's attendance policy.

Absences during the approved timeframe may be denied if:
- the reason for the absence does not qualify;
- you exhaust your leave entitlement;
- you do not report the absence to Unum timely, as applicable; or
- you are exhausting and/or replenishing your leave entitlement regularly.

For more information about your employer's specific leave policies, please read the attached *Important Information about Dentons US LLP's Family and Medical Leave Policy.*

### How To Contact Us Or View Information About Your Leave

As a convenience, we offer a secure website at www.unum.com/claimant where you have the option to:

- go paperless and choose online correspondence;
- report new leaves of absence and view the status of current claim/leave;
- report intermittent absences on active leaves; and
- provide us with updated information regarding your leave of absence.

You may also manage your claim/leave with the MyUnum for Members Mobile App. The MyUnum for Members Mobile App is available for Apple and Android.

In conjunction with our provision of services to you, you may receive a survey asking about your experience with Unum. Your thoughts and advice are critical drivers to our improvement, and we appreciate the opportunity to learn more about your experience.

If you have any questions, please contact Unum at (866) 779-1054.

Sincerely,


Unum's Absence Operations Team


Enclosures:       Denton Report Groups 3, 4, 7, 8 Important Information

**50**

**Important Information About Dentons Family and Medical Leave Policy**

**How Is My FMLA Entitlement Calculated?**
If you are eligible and your leave qualifies, you have the right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

**What if I Need Additional Leave?**
If you need an extension of your leave, you should notify Unum. You will be required to provide additional certification of the serious health condition.

**What If I Need Work Place Assistance?** – If your leave request is for your own serious health condition and there is need for workplace assistance, please contact your manager and the Benefits team immediately for further discussion. Unum assists your Employer in identifying reasonable modifications that may assist in performing your job. You will receive any future communications about a workplace assistance request in a separate communication.

**How Do I Notify Unum and My Supervisor of My Return to Work Plans?**
If you are able to return to work sooner than your current estimated return to work date, you should notify Unum and your supervisor as soon as practicable.

If your leave is for your own health condition, you will be required to present your employer with a fitness-for-duty certificate as a condition of being restored to employment.

**How Should I Report Intermittent Absences to Unum?**
If you have an intermittent leave, you must notify Unum within 2 business days each time you need to take intermittent leave. Please also notify your supervisor as soon as possible, no later than 2 business days before or after needing to take intermittent leave. Otherwise, your leave under the FMLA and/or State leave law, where applicable, may be delayed/denied.

**Do I Need to Use Vacation/Sick/PTO While on Leave?**
You must use any accrued PTO exceeding 37.50 hours during any otherwise unpaid FMLA and/or state leave unless otherwise mandated by state law.
Any paid time off used will be counted against your available leave under the FMLA and/or state leave law. Please contact the Benefits team regarding how much paid time off you have available. If you do not meet the terms and conditions of your employer paid leave program for your leave, your entitlement to take unpaid FMLA will not be affected.
After you have exhausted your paid leave, the remainder of your leave will be without pay. If you are receiving workers' compensation or disability benefits, then you may use your accrued paid time off.

**Will My Benefits Continue While I Am on Leave?**
*Health Insurance:*
During your leave, your employer will continue to pay its portion of your group health insurance premiums and you must pay your share, if any, of the health insurance premiums.

- During paid leave, your share of the premiums will continue to be paid through payroll deductions
- During unpaid leave, your employer will provide you with information regarding arrangements for payment of your share of the premiums. Please contact the Benefits team for more information regarding payments for benefit continuation during your leave.

You have a 30-day grace period in which to make such premium payments. If you do not pay your share of the insurance premiums on a timely basis, your insurance coverage for yourself and/or your dependents may be terminated for the remainder of your leave

*Other Benefits (Life, Disability, etc.):*
Your employer will continue other benefits (e.g., life insurance, disability insurance, etc.) while you are on leave. If your employer pays your premiums for other benefits, when you return from leave you will not be expected to reimburse your employer for your share of the payments made on your behalf. Please contact the Benefits team for information regarding your other benefits during your leave.

**Are There Other Types of Leave Available?**
For information regarding other types of leave possibly available through your employer, please contact the Benefits team at benefits@dentons.com.

**You and Your Spouse Work for Same Employer**
If you and your spouse work for the same employer (even if employed at different worksites/operating divisions) and are both eligible for FMLA leave, the two of you are limited to a combined total of 12 weeks of FMLA leave during the applicable 12-month period for any combination of leave taken for the following reasons:
- Birth of a child
- Adoption/foster care placement
- Care for a parent with a serious health condition
- Care for a covered servicemember (military caregiver leave)

**51**

# EXHIBIT I



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins

Date: 10/31/2023

DOB: ██████████    **REDACTED**

Next Appointment: 11/21/2023  08:45 AM

CHUBB

Claim#: ████████    **REDACTED**

Insurance Adjuster: Fabiola Vizcarra
Phone: 213-612-5453  Fax: 800-664-1765

Date of Injury: 11/01/2019

## WORK STATUS:
Patient was previously deemed Permanent and Stationary by QME.

## Work Restrictions:
- Patient is to to work part time, 3 days a week 7.5 hours per work day.

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.


**Boomerang Healthcare**
Restoring Hope. Returning Health.

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ████████ **REDACTED**
CHUBB

Date: 12/21/2023
Next Appointment: 01/25/2024  09:15 AM
Claim#: ████████ **REDACTED**

Insurance Adjuster: Fabiola Vizcarra
Phone: 213-612-5453  Fax: 800-664-1765

Date of Injury: 11/01/2019

**WORK STATUS:**
Patient was previously deemed Permanent and Stationary by QME.

**Work Restrictions:**
- Patient is to to work part time, 3 days a week 7.5 hours per work day.



Kang, Sally

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE:



**Boomerang Healthcare**
Restoring Hope. Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ▓▓▓▓▓ **REDACTED**
CHUBB

Insurance Adjuster: Fabioli Vizcarra
Phone: 213-612-5453  Fax: 213-612-5785

Date: 04/30/2024
Next Appointment: 06/11/2024  02:15 PM
Claim#: ▓▓▓▓▓▓▓ **REDACTED**

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 3 days a week 7.5 hours a day Patient was previously deemed Permanent and Stationary.

Kang, Sally

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



## Boomerang Healthcare
Restoring Hope. Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

**Patient Name:** Adrienne Hankins
**DOB:** ████████ **REDACTED**
CHUBB

**Date:** 06/11/2024
**Next Appointment:** 07/11/2024  01:30 PM
**Claim#:** ████████ **REDACTED**

**Insurance Adjuster:** Fabioli Vizcarra
**Phone:** 213-612-5453  **Fax:** 800-664-1765

**Date of Injury:** 03/12/2014

### WORK STATUS:
Patient is to work part time 3 days a week 7.5 hours a day Patient was previously deemed Permanent and Stationary.



Kang, Sally

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



**Boomerang Healthcare**
Restoring Hope. Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: **REDACTED**
CHUBB

Date: 07/11/2024
Next Appointment: 08/06/2024  01:30 PM
Claim#: **REDACTED**

Insurance Adjuster: Fabioli Vizcarra
Phone: 213-612-5453  Fax: 800-664-1765

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 3 days a week 7.5 hours a day Patient was previously deemed Permanent and Stationary.

Kang, Sally

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598.
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ███████ 7   **REDACTED**
CHUBB

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 909-477-5505

Date: 08/06/2024
Next Appointment: 08/29/2024 01:15 PM
Claim#: ████████   **REDACTED**

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 3 days a week 7.5 hours a day Patient was previously deemed Permanent and Stationary.

Kang, Sally

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.

**57**



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ████████        **REDACTED**
CHUBB

Date: 08/29/2024
Next Appointment: 09/26/2024  02:00 PM
Claim#: ██████        **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 909-477-5505

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ████ **REDACTED**
CHUBB

Date: 09/26/2024
Next Appointment: 10/24/2024 01:15 PM
Claim#: ████ **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 909-477-5505

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



**Boomerang Healthcare**
Restoring Hope. Returning Health.

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ▮▮▮▮ **REDACTED**
CHUBB

Date: 10/24/2024
Next Appointment: 11/21/2024 01:00 PM
Claim#: ▮▮▮▮▮▮9 **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 909-477-5505

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT, THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~REDACTED~~    **REDACTED**
CHUBB

Date: 11/21/2024
Next Appointment: 12/19/2024  01:15 PM
Claim#: ~~REDACTED~~    **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.

**61**



**Boomerang Healthcare**
Restoring Hope. Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~REDACTED~~ **REDACTED**
CHUBB

Date: 12/19/2024
Next Appointment: 01/30/2025 01:15 PM
Claim#: ~~REDACTED~~ / **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Kang, Sally

*[signature]*

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT, THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



**Boomerang Healthcare**
Restoring Hope, Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~REDACTED~~ **REDACTED**
CHUBB

Date: 01/30/2025
Next Appointment: 02/27/2025  01:15 PM
Claim#: ~~REDACTED~~ **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533 Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.



450 North Wiget Lane,
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: **REDACTED**
CHUBB

Date: 02/27/2025
Next Appointment: 04/08/2025  01:30 PM
Claim#: **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ▮▮▮▮▮▮▮  **REDACTED**
CHUBB

Date: 04/08/2025
Next Appointment: 05/06/2025  01:30 PM
Claim#: ▮▮▮▮▮▮▮  **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ▮▮▮▮▮    **REDACTED**
CHUBB ＿ ＿ ＿ ＿ ＿ ＿ ＿

Date: 05/06/2025
Next Appointment: 06/17/2025  01:15 PM
Claim#: ▮▮▮▮▮    **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ▓▓▓▓    **REDACTED**
CHUBB

Date: 06/17/2025
Next Appointment: 08/19/2025 01:15 PM
Claim#: ▓▓▓▓▓▓▓▓    **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

### WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT, THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ████    **REDACTED**
CHUBB

Date: 08/19/2025
Next Appointment: 09/04/2025 08:45 AM
Claim#: █████    **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Tareque, Timothy

Boparai, Navjeet MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT, THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: **REDACTED**
CHUBB

Date: 09/04/2025
Next Appointment: 10/09/2025  01:00 PM
Claim#: **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



**Boomerang Healthcare**
Restoring Hope. Returning Health.

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ◼◼◼◼◼◼◼  **REDACTED**
CHUBB

Date: 10/09/2025
Next Appointment: 11/20/2025  11:00 AM
Claim#: ◼◼◼◼◼◼◼◼  **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Tareque, Timothy

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT, THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Adrienne Hankins <adrn.hankins@yahoo.com> |
| **Sent:** | Thursday, August 29, 2024 1:40 PM |
| **To:** | Coker, Ashley; Lopez, Dana S. |
| **Cc:** | Hankins, Adrienne |
| **Subject:** | Hankins Work status |
| **Attachments:** | 1Work Status  FORMS_08292024.PDF |

## [WARNING: EXTERNAL SENDER]

Hello Dana and Ashley, good afternoon, see attached my work status from my doctor.  Starting tomorrow, Friday, Aug 30, I will be working 4 days per week.  Out on every Friday.

Have a great weekend!

**REDACTED**

Adrienne Hankins

-7369 (cell)

Yahoo Mail: Search, Organize, Conquer

----- Forwarded Message -----
**From:** "IPMCARE.donotreply@ipmdoctors.com" <IPMCARE.donotreply@ipmdoctors.com>
**To:** "adrn.hankins@yahoo.com" <adrn.hankins@yahoo.com>

**71**





450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-5806
F: 925-691-5807

Patient Name: Adrienne Hankins

DOB: ████ **REDACTED**

CHUBB

Date: 08/29/2024

Next Appointment: 09/26/2024  02:00 PM

Claim#: ████  **REDACTED**

Insurance Adjuster: Odetta Robinson

Phone: 909-477-5533  Fax: 909-477-5505

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.

# EXHIBIT J

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Benefits |
| **Sent:** | Tuesday, July 29, 2025 8:13 AM |
| **To:** | Hankins, Adrienne; Coker, Ashley |
| **Cc:** | Bethke, Laura; Alvarez, Antonia; De Rosa, Anne V.; Kledzik, Barbie; Ramirez, Vanessa; HRIS Requests; Qualls, Michele; Ward, Anna; Benefits; Cary, Gary; Kekatos, Arianna; Navarrete, Brenda |
| **Subject:** | UPDATE: Intermittent Leave of Absence | Adrienne Hankins (OAK/EMPL) |
| **Attachments:** | Intermittent Leave Time Entry 90.PDF |

| Intermittent Leave of absence for: | **Adrienne Hankins** |
|---|---|
| **Leave Number:** | **REDACTED** |
| **Leave start date:** | **10/31/2024** |
| **Leave approved through date:** | **01/10/2026** |
| **Possible frequency:** | **3 times per month** |

@Hankins, Adrienne
Your entitlement is 24 Weeks; please reference the below table for breakdown.

| Entitlement |
|---|
| 90% pay for 6 weeks (225 hours) |
| 50% pay for 6 weeks (225 hours) |
| Unpaid for 12 weeks (450 hours) |

Intermittent absences must be communicated to your supervisor or manager as soon as possible and you must indicate that the absence is for an approved LOA-qualifying reason. You must also notify Unum no later than 2 business days before or after needing to take intermittent leave.

In addition to notifying Unum within 2 business days of an intermittent absence, **you are responsible for logging your own intermittent time in UKG Workforce Management**, just like you enter other Time Off Requests. The following codes should be used, as applicable:

- **Intermittent Leave** = Paid time (90% or 50%) related to your approved leave
- **PTO Cascade** = Paid Time Off (10% or 50% PTO) related to your approved leave

To enter approved intermittent leave in UKG Workforce Management, go to "Time-Off Request" in the My Accrual Hours tile. Select the date and then "Apply"; under "Duration" select if the time off is in Hours or Full Day. If duration is In Hours enter In Start Time of leave and the amount in decimals and select the applicable leave type per the instructions in this email.
You need to account for a 37.50-hour work week; therefore, you will only be required to enter intermittent leave time when you have worked less than a 37.50-hour week. See attached Intermittent Leave Time Entry instructions for 90% pay. If you move to 50% pay, further instructions will be sent.

Your intermittent time should be entered at the end of the week, rather than day-by-day. This is to ensure the correct amount of intermittent time is entered after your regular work hours are taken into account. Please see Intermittent Time Entry for UKG document attached.

**73**

147

investigating a suspected violation of law; made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal; or, in the event of a lawsuit for reporting a suspected violation of law, to the Employee's attorney and for use in the court proceeding, if any document containing the trade secret is filed under seal and not disclosed, except pursuant to court order.

6. References. In the event any prospective employer requests that the Firm provide a reference for the Employee, the reference request should be referred to the Human Resources Director who shall state that it is the Firm's policy to provide only dates of employment and position held and shall provide only that information on the Employee to the party requesting reference.

7. Non-Disparagement. The Employee agrees not to disparage the Firm, its projects, work, and services, either verbally or in writing, except as may be required for truthful testimony compelled by judicial or administrative process. Nothing in this Waiver prevents the Employee from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that the Employee has reason to believe is unlawful.

8. Arbitration of Claims. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT, OR OTHERWISE) RELATING TO THIS RELEASE AGREEMENT. All claims, disputes, or other controversies concerning compliance with or alleged breach of this Waiver and any and all other potential disputes of any kind between the Employee and the Firm, including, but not limited to, statutory claims of any kind, shall be resolved by final and binding private arbitration in the State of California by a sole arbitrator in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect, provided that the arbitrator shall have no authority to add to, amend, modify or ignore any of the provisions of this Waiver. The Firm will pay the arbitrator's fees and arbitration expenses and any other costs unique to the arbitration hearing (recognizing that each side bears its own deposition, witness, expert and attorney's fees, and other expenses to the same extent as if the matter were being heard in court). If, however, any party prevails on a statutory claim that affords the prevailing party attorney's fees and costs, then the arbitrator may award reasonable attorney's fees and costs to the prevailing party. Any dispute as to who is a prevailing party or the reasonableness of any fee or costs shall be resolved by the arbitrator. All proceedings, correspondence, documents and communication concerning such arbitration shall be and remain confidential. Judgment on the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. Notwithstanding the foregoing, the parties agree that the Firm shall be able to seek emergency, preliminary, temporary, or permanent injunctive relief from a court of competent jurisdiction with respect to any actual or threatened breach of paragraphs 4 or 7 of this Waiver, and the Employee consents to the jurisdiction of the state and federal courts in the State of California for this purpose.

9. Acknowledgment of Notice to Seek Counsel, and Acknowledgment of Consideration Period, Revocation Period. The Employee acknowledges: (a) that the Employee has hereby been advised in writing to consult with an attorney before signing this document; and (b) that the

**146**

that employment, as well as those known and anticipated claims, and the Employee does hereby knowingly waive any and all rights and protections under California Civil Code Section 1542 and also specifically acknowledges that the Employee is aware of and familiar with the provisions of California Civil Code Section 1542, which provides as follows:

"**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**"

The Employee, being aware of this section, hereby expressly waives and relinquishes all rights and benefits the Employee may have under this Section as well as under any other statutes or common law principles of similar effect.

Provided, however, (1) the Firm will not contest any claim which the Employee may file for unemployment benefits; and (2) nothing herein shall limit or impede the Employee's right to file or pursue an administrative charge with, or participate in, any investigation before the Equal Employment Opportunity Commission, or any other local, state or federal agency, and/or any cause of action which by law the Employee may not legally waive. The Employee agrees, however, that if the Employee or anyone acting on the Employee's behalf, brings any action concerning or related to any cause of action or liability released in this Waiver, the Employee waives any right to, and will not accept, any payments, monies, damages, or other relief, awarded in connection therewith.

4.   Confidentiality.   The Employee acknowledges and agrees that, in the course of the Employee's employment with the Firm, the Employee received information which is proprietary and confidential. The Employee covenants and agrees not to use or disclose any proprietary and confidential information of the Firm or any of its affiliates or of any person or entity with which the Firm does business, including, but not limited to, the following: (1) financial information or data of the Firm or its clients; (2) client lists or client-related information; (3) business strategies, processes, know-how, project plans, practice information, and data of the Firm; (4) personnel information, hours or timekeeping information and employment practices; (5) emails or other communications from any Firm personnel or email address (except as relates to the Employee's personal compensation or benefits); and (6) any other business plan, trade secret, or other business information of the Firm or of any person or entity with which the Firm does business. Nothing in this Waiver prevents the Employee from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that the Employee has reason to believe is unlawful.

5.   Defend Trade Secrets Act.   Pursuant to the Defend Trade Secrets Act of 2016, the Employee shall not be held criminally or civilly liable under any federal, or state trade secret law for the disclosure of a trade secret made in confidence to a federal, state or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or

- **Example: you are approved for 3 hours of intermittent time every day for a week. Instead of working 4.5 hours per day though, you worked 5 hours per day. Therefore, at the end of the week, you should enter 2.5 hours of intermittent leave per day, rather than 3 hours per day.**

If you do not have sufficient PTO, the approved time will be unpaid. You must send an email to hris.requests@dentons.com to report approved intermittent time that should be coded as unpaid. Please include the date and amount of unpaid hours; entering the intermittent paid portion is still your responsibility. Before intermittent time can be coded as unpaid, available PTO that exceeds 37.5 hours must be exhausted concurrently with approved leave.  If 37.50 hours or less of PTO are available, you can opt to use or save the hours. Please note that Benefits will be monitoring your intermittent hours.


Please connect with brenda.navarrete@dentons.com if there are any questions. Thank you!


**From:** Benefits <benefits@dentons.com>
**Sent:** Thursday, June 05, 2025 6:52 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>; Coker, Ashley <ashley.coker@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>; Alvarez, Antonia <antonia.alvarez@dentons.com>; De Rosa, Anne V. <anne.derosa@dentons.com>; Kledzik, Barbie <barbie.kledzik@dentons.com>; Ramirez, Vanessa <vanessa.ramirez@dentons.com>; HRIS Requests <hris.requests@dentons.com>; Qualls, Michele <michele.qualls@dentons.com>; Ward, Anna <anna.ward@dentons.com>; Benefits <benefits@dentons.com>; Cary, Gary <gary.cary@dentons.com>; Kekatos, Arianna <arianna.kekatos@dentons.com>; Navarrete, Brenda <brenda.navarrete@dentons.com>
**Subject:** Intermittent Leave of Absence | Adrienne Hankins (OAK/EMPL)

| | |
|---|---|
| Intermittent Leave of absence for: | **Adrienne Hankins** |
| Leave Number: | REDACTED |
| Leave start date: | 10/31/2024 |
| Leave approved through date: | 06/17/2025 |
| Possible frequency: | 3 times per month |

**@Hankins, Adrienne**
Your entitlement is 24 Weeks; please reference the below table for breakdown.

| Entitlement |
|---|
| 90% pay for 6 weeks (225 hours) |
| 50% pay for 6 weeks (225 hours) |
| Unpaid for 12 weeks (450 hours) |

Intermittent absences must be communicated to your supervisor or manager as soon as possible and you must indicate that the absence is for an approved LOA-qualifying reason.  You must also notify Unum no later than 2 business days before or after needing to take intermittent leave.

In addition to notifying Unum within 2 business days of an intermittent absence, **you are responsible for logging your own intermittent time in UKG Workforce Management**, just like you enter other Time Off Requests.  The following codes should be used, as applicable:

- **Intermittent Leave** = Paid time (90% or 50%) related to your approved leave

**74**

- **PTO Cascade** = Paid Time Off (10% or 50% PTO) related to your approved leave

To enter approved **intermittent leave in UKG Workforce Management**, go to "Time-Off Request" in the My Accrual Hours tile. Select the date and then "Apply"; under "Duration" select if the time off is in Hours or Full Day. If duration is in Hours enter in Start Time of leave and the amount in decimals and select the applicable leave type per the instructions in this email.

You need to account for a 37.50-hour work week; therefore, you will only be required to enter intermittent leave time when you have worked less than a 37.50-hour week. See attached Intermittent Leave Time Entry instructions for 90% pay. If you move to 50% pay, further instructions will be sent.

Your intermittent time should be entered at the end of the week, rather than day-by-day. This is to ensure the correct amount of intermittent time is entered after your regular work hours are taken into account. Please see Intermittent Time Entry for UKG document attached.

- **Example: you are approved for 3 hours of intermittent time every day for a week. Instead of working 4.5 hours per day though, you worked 5 hours per day. Therefore, at the end of the week, you should enter 2.5 hours of intermittent leave per day, rather than 3 hours per day.**

If you do not have sufficient PTO, the approved time will be unpaid. You must send an email to hris.requests@dentons.com to report approved intermittent time that should be coded as unpaid. Please include the date and amount of unpaid hours; entering the intermittent paid portion is still your responsibility. Before intermittent time can be coded as unpaid, available PTO that exceeds 37.5 hours must be exhausted concurrently with approved leave. If 37.50 hours or less of PTO are available, you can opt to use or save the hours. Please note that Benefits will be monitoring your intermittent hours.

Please connect with brenda.navarrete@dentons.com if there are any questions. Thank you!

## How to enter time while out on Intermittent Leave
90% Pay

| Hours of Leave Taken | Enter as Intermittent Leave | Enter as: PTO Cascade if have over 37.5 hours of PTO* If do not, see below** |
|---|---|---|
| Hours/Minutes | Hours/Minutes | Hours/Minutes |
| 7:30 | 6.75 | 0.75 |
| 7:15 | 6.50 | 0.75 |
| 7:00 | 6.25 | 0.75 |
| 6:45 | 6.00 | 0.75 |
| 6:30 | 5.75 | 0.75 |
| 6:15 | 5.50 | 0.75 |
| 6:00 | 5.50 | 0.50 |
| 5:45 | 5.25 | 0.50 |
| 5:30 | 5.00 | 0.50 |
| 5:15 | 4.75 | 0.50 |
| 5:00 | 4.50 | 0.50 |
| 4:45 | 4.25 | 0.50 |
| 4:30 | 4.00 | 0.50 |
| 4:15 | 3.75 | 0.50 |
| 4:00 | 3.50 | 0.50 |
| 3:45 | 3.25 | 0.50 |
| 3:30 | 3.25 | 0.25 |
| 3:15 | 3.00 | 0.25 |
| 3:00 | 2.75 | 0.25 |
| 2:45 | 2.50 | 0.25 |
| 2:30 | 2.25 | 0.25 |
| 2:15 | 2.00 | 0.25 |
| 2:00 | 1.75 | 0.25 |
| 1:45 | 1.50 | 0.25 |
| 1:30 | 1.25 | 0.25 |
| 1:15 | 1.25 | 0.00 |
| 1:00 | 1.00 | 0.00 |
| 0:45 | 0.75 | 0.00 |
| 0:30 | 0.50 | 0.00 |
| 0:15 | 0.25 | 0.00 |

*PTO Cascade - to be used when PTO balance is above 37.5 hours

** If you have 37.5 hours or less of PTO, your time will be unpaid. You must email the HRIS Team at hris.requests@dentons.com to report approved intermittent time that should be coded as unpaid. Please include the date and missed hours.

In UKG, minutes must be entered as decimal hours. Here is the simple conversion:

| Minutes of leave | Decimal Hours to be entered into UKG |
|---|---|
| 15 | .25 |
| 30 | .5 |
| 45 | .75 |

**76**



# *Filing*

## a Leave Request and/or Short Term Disability Claim by Telephone or on the Unum Website

**Dentons US LLP**



**Short Term Disability**
**Policy #:** ███ REDACTED
**FMLA Policy #:**

**Telephone: 866-779-1054**
**Fax: 800-447-2498**

**Monday-Friday**

**7:00 a.m.**
**to**
**7:00 p.m.**

**Central**

### WHEN TO CALL UNUM

- When your health care provider has determined you are unable to work due to illness, injury or pregnancy.
- When you need to be absent from work to care for a family member who has a serious health condition.
- When you need to care for a child due to birth, adoption or foster care placement.
- When you need to be absent from work for a qualifying exigency leave because your spouse, son, daughter or parent is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.
- When you need to care for your spouse, child, parent or next of kin undergoing medical treatment, recuperation, or therapy, is in outpatient status, or is on the temporary disability retired list for a serious illness or injury incurred or aggravated in the line of duty on active duty in the Armed Forces (includes the National Guard or Reserves). This includes a veteran who was discharged from the Armed Forces for reasons other than dishonorable within the 5 year period before the employee's first day of leave.
- When you need any other type of leave that may be covered by applicable state leave laws.
- Thirty days before a planned leave based on prescheduled medical treatment related to a serious health condition for you or your family member, or the expected birth, adoption or foster care placement of a child.
- Thirty days before a disability based on the expected delivery date of a child or prescheduled medical treatment.

### WHAT TO DO NEXT

- Notify your manager or supervisor of your absence from work.
- To submit your claim and/or leave request via telephone, call the toll-free number listed to the left. Please be prepared with the information requested on page 2 of this brochure.
- To submit your claim and/or leave request via the Unum website, go to www.unum.com and follow the claim submission instructions.
- If you are eligible for leave, a certification of health care provider form may be required. If so, it will be mailed in your initial leave packet within 2 business days of filing your leave. You will be provided a minimum of 15 days from the date the leave is requested to complete and return this form.

### FOR SHORT TERM DISABILITY CLAIMS

- Provide your health care provider with a signed and dated copy of the authorization form (last page of brochure). This form authorizes the release of medical information needed to evaluate your disability claim.
- Once you have filed your Short Term Disability claim, please fax a copy of the signed and dated disability authorization to the Unum Benefits Center at the following toll-free number, 800-447-2498. If you prefer, you may sign and submit your authorization electronically at www.unum.com/claims.

### OUR COMMITMENT TO YOU

We understand that a disabling illness or injury creates emotional, physical and financial challenges and we want to do whatever we can to help you. You have our commitment to provide you with responsive service and to be understanding and sensitive to your circumstances during the claim process.

G-73650-WEB (04/16)

**77**

## INFORMATION NEEDED TO SUBMIT A SHORT TERM DISABILITY CLAIM AND/OR REQUEST FOR LEAVE

**Please be prepared to provide the following information when you call to submit your claim/leave. If someone else makes the call on your behalf, he/she may need to provide this information.**

- Name of the company where you work
- Policy number: ~~REDACTED~~            REDACTED
- Your name and Social Security number or employee ID number
- Complete address and phone number
- Date of birth
- Marital status
- Occupation (or job title)
- Supervisor's name and telephone number
- Your last day worked and your first day absent from work due to your claim and/or leave request
- The date you expect to return to work (if you know), or the actual date if you have already returned to work at the time you call

**Please note:** Leave is job protection under federal and state laws whereas a disability is income replacement. In many situations the two coverages overlap when you are missing work due to your own illness or injury.

**In addition, the following information will be needed when submitting a disability claim.**

- Healthcare provider's name, address, fax and telephone number
- A brief description of your medical condition including cause of condition (illness or injury), date of injury or beginning of illness, and whether it's work-related
- The dates of your first visit, your most recent visit, and your next scheduled visit with your healthcare provider for this condition
- Work restrictions or limitations stated by your healthcare provider, if any.

Prompt and complete information from you and your healthcare provider will help assure a timely decision and payment if you are eligible.

Unum may require additional medical information to better understand your disability claim. The timing of the decision depends on how quickly the information is received.

Unum will partner with you to gather all required information for the duration of your disability claim.

## INFORMATION THAT MAY BE IMPORTANT TO YOU

**Check your claim status, correspondence, and updates online – anytime.**

Unum has developed a secure and easy way for you to manage your disability claim online at www.unum.com/claims. Our secure web services allow you to access and make changes to your open claims, as well as view updates and correspondence when they become available.

Our secure site helps eliminate delays and is simple to use. Here are a few main features:

- Sign and submit your electronic disability authorization form.
- Upload documents for disability claims from your personal computer.
- Register for direct deposit of your claim payment, when applicable.
- Check claim status, correspondence, and most recent payment information.
- Verify and change personal information and monitor your claim progress.

**You may also manage your claim with the Unum Customer App. The Unum Customer App is available for Apple and Android devices.**

Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries. Services provided by subsidiaries of Unum Group.

**Unum Group**, 1 Fountain Square, Chattanooga, TN 37402

unum.com

## Claim Fraud Statements

### Fraud Warning

For your protection, the laws of several states, including Alaska, Arizona, Arkansas, Delaware, Idaho, Indiana, Louisiana, Maine, Maryland, New Mexico, Ohio, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, Washington, and West Virginia require the following statement to appear on this claim form:

Any person who knowingly and with the intent to injure, defraud or deceive an insurance company presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### Fraud Warning for Alabama Residents

For your protection, Alabama law requires the following to appear on this claim form:

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### Fraud Warning for California Residents

For your protection, California law requires the following to appear on this claim form:

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

### Fraud Warning for Colorado Residents

For your protection, Colorado law requires the following to appear on this claim form:

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

### Fraud Warning for District of Columbia Residents

For your protection, the District of Columbia requires the following to appear on this claim form:

WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

### Fraud Warning for Florida Residents

For your protection, Florida law requires the following to appear on this claim form:

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing false, incomplete or misleading information is guilty of a felony of the third degree.

### Fraud Warning for Kentucky Residents

For your protection, Kentucky law requires the following to appear on this claim form:

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

### Fraud Warning for Minnesota Residents

For your protection, Minnesota law requires the following to appear on this claim form:

A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### Fraud Warning for New Hampshire Residents

For your protection, New Hampshire law requires the following to appear on this claim form:

Any person who, with a purpose to injure, defraud, or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638.20.

### Fraud Warning for New Jersey Residents

For your protection, New Jersey law requires the following to appear on this claim form:

Any person who knowingly and with intent to defraud any insurance company or other persons, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and civil penalties.

### Fraud Warning for New York Residents

For your protection, New York law requires the following to appear on this claim form:

Any person who knowingly and with the intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

### Fraud Warning for Pennsylvania Residents

For your protection, Pennsylvania law requires the following to appear on this claim form:

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

### Fraud Warning for Puerto Rico Residents

For your protection, Puerto Rico law requires the following to appear on this claim form:

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation with the penalty of a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. If aggravating circumstances are present, the penalty thus established may be increased to a maximum of five (5) years; if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**79**

**ᴜᴎᴜᴍ**

Fax or mail a completed copy of this authorization to:
**Unum Benefits Center**
P.O. Box 100158
Columbia, SC 29202-3158
Fax: 800-447-2498

Please sign and return this authorization to The Benefits Center at the address above. You are entitled to receive a copy of this authorization. This authorization is designed to comply with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule.

## Authorization to Collect and Disclose Information
### (Not for FMLA Requests)

**I authorize the following persons:** health care professionals, hospitals, clinics, laboratories, pharmacies and all other medical or medically related providers, facilities or services, rehabilitation professionals, vocational evaluators, health plans, insurance companies, third party administrators, insurance producers, insurance service providers, consumer reporting agencies including credit bureaus, GENEX Services, LLC, The Advocator Group and other Social Security advocacy vendors, professional licensing bodies, employers, attorneys, financial institutions and/or banks, and governmental entities;

**To disclose information,** whether from before, during or after the date of this authorization, about my health, including HIV, AIDS or other disorders of the immune system, use of drugs or alcohol, mental or physical history, condition, advice or treatment (except this authorization does not authorize release of psychotherapy notes), prescription drug history, earnings, financial or credit history, professional licenses, employment history, insurance claims and benefits, and all other claims and benefits, including Social Security claims and benefits ("My Information");

**To Unum Group and its subsidiaries,** Unum Life Insurance Company of America, Provident Life and Accident Insurance Company, The Paul Revere Life Insurance Company, and persons who evaluate claims for any of those companies ("Unum");

**So that Unum may evaluate and administer my claims, including providing assistance with return to work.** For such evaluation and administration of claims, this authorization is valid for two years, or the duration of my claim for benefits, whichever is shorter. I understand that once My Information is disclosed to Unum, any privacy protections established by HIPAA may not apply to the information, but other privacy laws continue to apply. Unum may then disclose My Information only as permitted by law, including, state fraud reporting laws or as authorized by me.

**I also authorize Unum to disclose My Information to the following persons** (for the purpose of reporting claim status or experience, or so that the recipient may carry out health care operations, claims payment, administrative or audit functions related to any benefit, plan or claim): any employee benefit plan sponsored by my employer; any person providing services or insurance benefits to (or on behalf of) my employer, any such plan or claim, or any benefit offered by Unum; or, the Social Security Administration. Unum will not condition the payment of insurance benefits on whether I authorize the disclosures described in this paragraph. For the purposes of these disclosures by Unum, this authorization is valid for one year or for the length of time otherwise permitted by law.

**Information authorized for use or disclosure may include information which may indicate the presence of a communicable or non-communicable disease.**

If I do not sign this authorization or if I alter or revoke it, except as specified above, Unum may not be able to evaluate or administer my claim(s), which may lead to my claim(s) being denied. I may revoke this authorization at any time by sending written notice to the address above. I understand that revocation will not apply to any information that Unum requests or discloses prior to Unum receiving my revocation request.

_____     _____
Insured's Signature                                    Date Signed

_____     _____
Printed Name                                           Social Security Number

If signed on behalf of the Insured as _____ (Relationship). If Power of Attorney Designee, Guardian, or Conservator, please attach a copy of the document granting authority.

G-73650-WEB (04/16)                 **80**                          TELEPHONIC

# EXHIBIT K



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ███████  **REDACTED**
CHUBB

Date: 08/19/2025
Next Appointment: 09/04/2025 08:45 AM
Claim#: ███████  **REDACTED**

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

This form has been electronically signed by Tareque, Timothy

*N/B~~~*

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.

# EXHIBIT L

## Adrienne Hankins

| | |
|---|---|
| **From:** | Navarrete, Brenda <brenda.navarrete@dentons.com> |
| **Sent:** | Tuesday, August 19, 2025 3:37 PM |
| **To:** | Hankins, Adrienne |
| **Cc:** | Kekatos, Arianna |
| **Subject:** | RE: Adrienne Hankins | Work Status, Aug 19 |

Hi Adrienne,

If you are unable to meet the in-office days, I believe your doctor is referring to a work accommodation form. I will send the work accommodation info in a separate email. I'll schedule a time to connect and go over this process as well as the Unum leaves; we currently have 2 leaves on file and want to confirm the information we received from Unum.

Thank you,

**Brenda Navarrete**
Benefits and LOA Specialist

☎ +1 602 508 3953   |   ✆ +1 602 245 5498   |   US Internal 63953

---

**From:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Sent:** Tuesday, August 19, 2025 3:32 PM
**To:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Cc:** Kekatos, Arianna <arianna.kekatos@dentons.com>
**Subject:** RE: Adrienne Hankins | Work Status, Aug 19

It is intermittent leave, I do not have a designated full day. Also see attached designation notice I downloaded from my Unum portal.

I advised my doctor that I am being required to commute into the office 4 days a week. I was then advised to request an "exemption" form (an "exception" form?) from my job for them to fill out on my behalf.

I do not know what the difference in these two forms.

**Adrienne Hankins**
Legal Administrative Assistant

☎ +1 415 882 0170   |   US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

**82**

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Tuesday, August 19, 2025 3:12 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Kekatos, Arianna <arianna.kekatos@dentons.com>
**Subject:** Adrienne Hankins | Work Status, Aug 19

Hi Adrienne,

Thank you for connecting with us.

To confirm, you are requesting intermittent/reduced leave starting 8/14/25 and working 4 full days per week (30 hours per week)? If yes, is there a dedicated day that you will be out on leave each week? Please keep Unum posted as well.

The work exception form that you are requesting, is this regarding a work accommodation request?

# WORK STATUS:
## Patient is to work part time 4 days a week 7.5 h
## Permanent and Stationary.

Thank you,

Brenda Navarrete
Benefits and LOA Specialist

☎ +1 602 508 3953  |  ✆ +1 602 245 5498  |  US Internal 63953

-----Original Message-----
From: Hankins, Adrienne <adrienne.hankins@dentons.com>
Sent: Tuesday, August 19, 2025 2:36 PM
To: HRIS Requests <hris.requests@dentons.com>; Navarrete, Brenda <brenda.navarrete@dentons.com>
Subject: FW: Work Status, Aug 19

Please find attached my work status letter from my doctor.

My doctor is also requesting the Dentons work exemption form.  Please send it to me and I will send it to my doctor.

Thank you.

Adrienne Hankins

**83**

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Benefits <benefits@dentons.com> |
| **Sent:** | Tuesday, August 19, 2025 3:40 PM |
| **To:** | Hankins, Adrienne |
| **Cc:** | Navarrete, Brenda |
| **Subject:** | Adrienne Hankins | Work Accommodation Request |
| **Attachments:** | Request for Medical Information from Health Care Provider.pdf; Employee Request & Medical Release Form.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hi Adrienne,

If you are looking for a work accommodation, the following forms are required to begin the process:

1. **Employee Request & Medical Release Form** – To be completed by you and returned immediately
    - ? Must contain an actual (wet or electronic) signature
    - ? Must indicate the start & end date and/or possible duration for your accommodation request.

2. **Request for Medical Information from Health Care Provider Form** – Have your doctor complete this form and return it ASAP
    - ? It can be faxed to our confidential fax number: 312-277-5126 or emailed to Benefits benefits@dentons.com or @Navarrete, Brenda
    - ? Do not use a substitute form of any kind.
    - ? Must contain an actual (wet or electronic) signature
    - ? Must indicate the start & end date and/or possible duration for your accommodation
    - ? Must indicate the nature of the disability and accommodation/work limitations.

As with all personal and medical information received in HR, the contents of submitted documents will be treated confidentially and will not be disclosed to anyone not involved in the accommodation determination.

Upon receipt of both completed forms, Benefits and Human Resources will engage in the interactive process with you, beginning with a review of the documents. Until we receive the completed forms and a decision is made, the expectation would be that you work from the office per Firm policy.

Please let me know if you have any questions or would like to discuss over the phone.

Thank you,

Benefits Team

## DENTONS

### REQUEST FOR MEDICAL INFORMATION FROM HEALTH CARE PROVIDER

A request for a reasonable accommodation has been made by our employee _____
In order to assist with the interactive process, we are requesting you to provide feedback to the following questions based on your medical expertise.

Background

An employee has a disability if he or she has an impairment that substantially limits one or more major life activities or a record of such an impairment. "Substantially limits" under the ADA Amendments Act of 2008 ("ADAAA") has been broadened to allow someone with an impairment to be "regarded as" having a disability, even without the perception that the impairment limits a major life activity, provided that the impairment does not have an actual or expected duration less than or equal to six months.

The ADAAA provides examples of "major life activities," including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, working, and the operation of a major bodily function, such as functions of the immune system, normal cell growth and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine and reproductive functions."

Please answer these questions to help determine disability and reasonable accommodation. **Fax completed form to Dentons' confidential fax number: 312-277-5126.**

1) Please review the attached job description. (If no job description is attached, please discuss the position with the employee to determine essential job duties.) Is the employee able to perform the essential job functions of this position with or without reasonable accommodation? **Yes / No**

If yes, please continue to next question.

If no, how long will the employee be unable to perform these job duties?

_____ # of weeks _____ # of months _____ permanently

2) Does the employee have a physical or mental impairment? **Yes / No**

If yes, what is the impairment?

**85**

3) What limitation(s) is interfering with job performance, and how does it interfere with the employee's ability to perform the job function(s)?

4) What adjustments to the work environment or position responsibilities would enable the employee to perform the essential functions of that position?

5) The employee's typical schedule is _____. What, if any, adjustments need to be made to the employee's work schedule to enable the employee to perform the essential functions of that position?

6) How would your suggestions improve the employee's job performance?

7) How long will the employee need the reasonable accommodation? If unable to provide date, when will he or she be medically reevaluated?

| Start Date: | End Date: | Duration: |
|---|---|---|

Any additional comments or suggestions:

Provider's name and business address: _____

Telephone: (_____) _____    Fax: (_____) _____

Type of practice/medical specialty: _____

Provider's signature: _____

Date: _____

**DENTONS**

## EMPLOYEE REQUEST & MEDICAL RELEASE

1. Name: _____

2. Phone Number: _____

3. Position: _____

4. Department: _____

5. Office Location: _____

5. Manager: _____

6. Nature of the Qualifying Disability: _____

_____

_____

7. Requested Accommodation/Work Schedule: (Please describe the accommodations you believe are needed to enable you to perform the essential functions of this job.) _____

| Start Date: | End Date: | Duration: |
|-------------|-----------|-----------|

8. Health care Provider Contact Information (Please provide name, address, telephone and fax numbers) The physician may receive a letter/fax from us requesting information on your impairment/disability and recommendations for accommodations: _____

_____

*I authorize the release of necessary confidential medical information regarding my disability to Dentons US LLP Human Resources. I also attest to the fact that a copy of the position description has been given to me for review and reference.*

Signature: _____

Date: _____

**87**

# EXHIBIT M

Unum
P.O. Box 100158
Columbia, SC 29202-3158
Fax: 1-866-249-3831
www.unum.com



August 28, 2025

ADRIENNE HANKINS
807 DODD COURT
BAY POINT, CA 94565

RE:    Hankins, Adrienne              REDACTED
       LMS Leave Number:

Unum works with Dentons US LLP to administer family and medical leaves. This includes leave
taken under the Family and Medical Leave Act of 1993 (FMLA) and any applicable state leave
laws and corporate leave policies. Please read this entire notice for details and further
information regarding your leave.

The current status of your leave due to your own serious health condition is:

| Protection | Begin Date | End Date | Schedule | Status |
|---|---|---|---|---|
| FMLA, California Family Rights Act (CFRA) and Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 8/14/2025 | 2/13/2026 | Reduced | Eligible and Approved |

### Information About Your Leave

Approval dates are subject to change if leave dates or treatment dates change. Please refer to
your Employer's policies for any restrictions on scheduling leave and any requirements for
reporting leave.

**Details About Your Reduced Leave Schedule:**  The healthcare provider has certified that you
may need to take leave up to:

* 2.00 hours off per week

If your leave usage indicates that you require absences beyond the healthcare provider's
current estimate of the amount of leave needed, certification may be required to support
additional leave.

1242-03    UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Name: Hankins, Adrienne
LMS Leave Number: ▓▓▓▓

**REDACTED**

August 28, 2025
Page 2 of 2

------------------------

## Additional Information You Need to Know

Any qualifying leave that is approved will count against your FMLA and/or any state law or corporate policy entitlement(s).  Upon return from FMLA leave, most employees must be restored to the same job or similar one with equivalent pay, benefits, and other employment terms and conditions.  Any leave that is denied may be treated according to your employer's attendance policy.

Absences during the approved timeframe may be denied if:
- the reason for the absence does not qualify;
- you exhaust your leave entitlement;
- you do not report the absence to Unum timely, as applicable; or
- you are exhausting and/or replenishing your leave entitlement regularly.

For more information about your employer's specific leave policies, please read the attached *Important Information about Dentons US LLP's Family and Medical Leave Policy.*

## How To Contact Us Or View Information About Your Leave

As a convenience, we offer a secure website at www.unum.com/claimant where you have the option to:

- go paperless and choose online correspondence;
- report new leaves of absence and view the status of current claim/leave;
- report intermittent absences on active leaves; and
- provide us with updated information regarding your leave of absence.

You may also manage your claim/leave with the MyUnum for Members Mobile App.  The MyUnum for Members Mobile App is available for Apple and Android.

In conjunction with our provision of services to you, you may receive a survey asking about your experience with Unum.  Your thoughts and advice are critical drivers to our improvement, and we appreciate the opportunity to learn more about your experience.

If you have any questions, please contact Unum at (866) 779-1054.

Sincerely,


Unum's Absence Operations Team


Enclosures:    Denton Report Groups 3, 4, 7, 8 Important Information


**89**

**Important Information About Dentona Family and Medical Leave Policy**

**How is My FMLA Entitlement Calculated?**
If you are eligible and your leave qualifies, you have the right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

**What if I Need Additional Leave?**
If you need an extension of your leave, you should notify Unum. You will be required to provide additional certification of the serious health condition.

**What if I Need Work Place Assistance? -** If your leave request is for your own serious health condition and there is need for workplace assistance, please contact your manager and the Benefits team immediately for further discussion. Unum assists your Employer in identifying reasonable modifications that may assist you in performing your job. You will receive any future communications about a workplace assistance request in a separate communication.

**How Do I Notify Unum and My Supervisor of My Return to Work Plans?**
If you are able to return to work sooner than your current estimated return to work date, you should notify Unum and your supervisor as soon as practicable.

If your leave is for your own health condition, you will be required to present your employer with a fitness-for-duty certificate as a condition of being restored to employment.

**How Should I Report Intermittent Absences to Unum?**
If you have an intermittent leave, you must notify Unum within 2 business days each time you need to take intermittent leave. Please also notify your supervisor as soon as possible, no later than 2 business days before or after needing to take intermittent leave. Otherwise, your leave under the FMLA and/or State leave law, where applicable, may be delayed/denied.

**Do I Need to Use Vacation/Sick/PTO While on Leave?**
You must use any accrued PTO exceeding 37.50 hours during any otherwise unpaid FMLA and/or state leave unless otherwise mandated by state law.
Any paid time off used will be counted against your available leave under the FMLA and/or state leave law. Please contact the Benefits team regarding how much paid time off you have available. If you do not meet the terms and conditions of your employer paid leave program for your leave, your entitlement to take unpaid FMLA will not be affected.
After you have exhausted your paid leave, the remainder of your leave will be without pay. If you are receiving workers' compensation or disability benefits, then you may use your accrued paid time off.

**Will My Benefits Continue While I Am on Leave?**
*Health Insurance:*
During your leave, your employer will continue to pay its portion of your group health insurance premiums and you must pay your share, if any, of the health insurance premiums.

- During paid leave, your share of the premiums will continue to be paid through payroll deductions
- During unpaid leave, your employer will provide you with information regarding arrangements for payment of your share of the premiums. Please contact the Benefits team for more information regarding payments for benefit continuation during your leave.

You have a 30-day grace period in which to make such premium payments. If you do not pay your share of the insurance premiums on a timely basis, your insurance coverage for yourself and/or your dependents may be terminated for the remainder of your leave

*Other Benefits (Life, Disability, etc.):*
Your employer will continue other benefits (e.g., life insurance, disability insurance, etc.) while you are on leave. If your employer pays your premiums for other benefits, when you return from leave you will not be expected to reimburse your employer for your share of the payments made on your behalf. Please contact the Benefits team for information regarding your other benefits during your leave.

**Are There Other Types of Leave Available?**
For information regarding other types of leave possibly available through your employer, please contact the Benefits team at benefits@dentons.com.

**You and Your Spouse Work for Same Employer**
If you and your spouse work for the same employer (even if employed at different worksites/operating divisions) and are both eligible for FMLA leave, the two of you are limited to a combined total of 12 weeks of FMLA leave during the applicable 12-month period for any combination of leave taken for the following reasons:
- Birth of a child
- Adoption/foster care placement
- Care for a parent with a serious health condition
- Care for a covered servicemember (military caregiver leave)

# EXHIBIT O

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Hankins, Adrienne <adrienne.hankins@dentons.com> |
| **Sent:** | Thursday, September 18, 2025 5:13 PM |
| **To:** | Navarrete, Brenda |
| **Cc:** | Bethke, Laura; Kekatos, Arianna |
| **Subject:** | RE: In Office Exception vs. Work Accommodation Request |
| **Attachments:** | memo rev.pdf |

Please see attached and respond as soon as possible.

Thank you.

**Adrienne Hankins**
Legal Administrative Assistant

✆ +1 415 882 0170  |  US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

---

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Monday, September 15, 2025 3:23 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>; Kekatos, Arianna <arianna.kekatos@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

This is for provider to clarify and include in his/her form. Provider can update the last copy OR provider
can include in new copy (attached).

Thank you,

**Brenda Navarrete**
Benefits and LOA Specialist

✆ +1 602 508 3953  |  ✆ +1 602 245 5498  |  US Internal 63953

---

**From:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Sent:** Monday, September 15, 2025 3:21 PM
**To:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>; Kekatos, Arianna <arianna.kekatos@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

**91**

I will see my doctor on Sept., Thursday 9/18 for a follow-up appointment and I will discuss the work accommodation with her. Are we just updating the existing form?

Also, the commuting question "particularly by public transportation" is that for me or my doctor to clarify?

6. Nature of the Qualifying Disability: Taking into consideration, I have a cer~ which causes chronic debilitating pain, a 3 or 4 day commute into the offic~ and more frequent flare-ups of my condition. I also attend on-going self-ca~ for pain management.

Adrienne Hankins
Legal Administrative Assistant

☎ +1 415 882 0170  |  US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Monday, September 15, 2025 3:14 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>; Kekatos, Arianna <arianna.kekatos@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

Hi Adrienne,

Hope you are feeling better and thanks for the update. I am back to work and please keep me posted once you have the updated form from your provider.

Thank you,

**Brenda Navarrete**
Benefits and LOA Specialist

☎ +1 602 508 3953  |  ⊘ +1 602 245 5498  |  US Internal 63953

**From:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Sent:** Thursday, September 11, 2025 3:34 PM
**To:** Kekatos, Arianna <arianna.kekatos@dentons.com>; Navarrete, Brenda <brenda.navarrete@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

Thank you, not doing too good today, but I will talk with my doctor.

**Adrienne Hankins**
**Legal Administrative Assistant**

☏ +1 415 882 0170  |  US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

---

**From:** Kekatos, Arianna <arianna.kekatos@dentons.com>
**Sent:** Thursday, September 11, 2025 3:30 PM
**To:** Navarrete, Brenda <brenda.navarrete@dentons.com>; Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

Hello Adrienne,

Hope you are doing well! Would you be able to have your doctor update the form for question 2? It seems that the information provided pertains to a symptom rather than a diagnosis. Additionally, we need clarification on how commuting, particularly by public transit, aggravates the condition.

Thanks!

**Arianna Kekatos**
**HR/Benefits Coordinator**

☏ +1 312 876 8241  |  US Internal 18241

---

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Tuesday, September 02, 2025 4:04 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

Hi Adrienne,

Hope all is well. I have not received your doctor's completed form. Can you please check with your doctor?

Also, can you please sign/date the "employee request" form?

I will check with Unum on your 2nd leave request and follow-up.

Thank you,

**93**

# EXHIBIT N

📁 Sent

# Work accommodation 📎

 AH  **Adrienne Hankins**
To: adrienne · Thu, Sep 4 at 2:59 PM ⌄

**To:**  adrienne.hankins@dentons.com <adrienne.hankins
@dentons.com>

**1 attachment**                                    **Download** ⬇

 **BRWEC5C68B1E369...**
**PDF · 138.5 KB**



DENTONS

## REQUEST FOR MEDICAL INFORMATION FROM HEALTH CARE PROVIDER

A request for a reasonable accommodation has been made by our employee **Adrienne Hankins**
In order to assist with the interactive process, we are requesting you to provide feedback to the following
questions based on your medical expertise.

Background

An employee has a disability if he or she has an impairment that substantially limits one or more major
life activities or a record of such an impairment. "Substantially limits" under the ADA Amendments Act
of 2008 ("ADAAA") has been broadened to allow someone with an impairment to be "regarded as"
having a disability, even without the perception that the impairment limits a major life activity, provided
that the impairment does not have an actual or expected duration less than or equal to six months.

The ADAAA provides examples of "major life activities," including "caring for oneself, performing
manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,
learning, reading, concentrating, thinking, communicating, working, and the operation of a major bodily
function, such as functions of the immune system, normal cell growth and digestive, bowel, bladder,
neurological, brain, respiratory, circulatory, endocrine and reproductive functions."

Please answer these questions to help determine disability and reasonable accommodation. Fax
completed form to Dentons' confidential fax number: 312-277-5126.

1) Please review the attached job description. (If no job description is attached, please discuss the position
with the employee to determine essential job duties.) Is the employee able to perform the essential job
functions of this position with or without reasonable accommodation? Yes / No

If yes, please continue to next question.

If no, how long will the employee be unable to perform these job duties?

____ # of weeks ____ # of months ____ permanently

2) Does the employee have a physical or mental impairment? Yes / No

If yes, what is the impairment?

chronic neck pain.

95

3) What limitation(s) is interfering with job performance, and how does it interfere with the employee's ability to perform the job function(s)?

Chronic neck pain

4) What adjustments to the work environment or position responsibilities would enable the employee to perform the essential functions of that position?

Patient should be able to work from home

5) The employee's typical schedule is _____. What, if any, adjustments need to be made to the employee's work schedule to enable the employee to perform the essential functions of that position?

No change in schedule needed

6) How would your suggestions improve the employee's job performance?

By working from home there will be fewer flareups caused by commuting allowing her to compute job related tasks.

7) How long will the employee need the reasonable accommodation? If unable to provide date, when will he or she be medically reevaluated?

(12 mo) - 9/4/2025 - 9/4/2026

| Start Date: 9/4/2025 | End Date: 9/4/2026 | Duration: 1 year |

Any additional comments or suggestions:

Provider's name and business address: _____

Telephone: (925) 691 9806        Fax: (925) 691 9807

Type of practice/medical specialty: PM + R

Provider's signature: _____

Date: 9/4/2025

# EXHIBIT O

## Adrienne Hankins

| | |
|---|---|
| **From:** | Hankins, Adrienne <adrienne.hankins@dentons.com> |
| **Sent:** | Thursday, September 18, 2025 5:13 PM |
| **To:** | Navarrete, Brenda |
| **Cc:** | Bethke, Laura; Kekatos, Arianna |
| **Subject:** | RE: In Office Exception vs. Work Accommodation Request |
| **Attachments:** | memo rev.pdf |

Please see attached and respond as soon as possible.

Thank you.

**Adrienne Hankins**
Legal Administrative Assistant

✆ +1 415 882 0170  |  US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

---

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Monday, September 15, 2025 3:23 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>; Kekatos, Arianna <arianna.kekatos@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

This is for provider to clarify and include in his/her form. Provider can update the last copy OR provider can include in new copy (attached).

Thank you,

**Brenda Navarrete**
Benefits and LOA Specialist

✆ +1 602 508 3953  |  ✆ +1 602 245 5498  |  US Internal 63953

---

**From:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Sent:** Monday, September 15, 2025 3:21 PM
**To:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>; Kekatos, Arianna <arianna.kekatos@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

**91**

I will see my doctor on Sept., Thursday 9/18 for a follow-up appointment and I will discuss the work accommodation with her. Are we just updating the existing form?

Also, the commuting question "particularly by public transportation" is that for me or my doctor to clarify?

**6. Nature of the Qualifying Disability:** Taking into consideration, I have a cer~ which causes chronic debilitating pain, a 3 or 4 day commute into the office and more frequent flare-ups of my condition. I also attend on-going self-ca~ for pain management.

Adrienne Hankins
Legal Administrative Assistant

☎ +1 415 882 0170  |  US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

From: Navarrete, Brenda <brenda.navarrete@dentons.com>
Sent: Monday, September 15, 2025 3:14 PM
To: Hankins, Adrienne <adrienne.hankins@dentons.com>
Cc: Bethke, Laura <laura.bethke@dentons.com>; Kekatos, Arianna <arianna.kekatos@dentons.com>
Subject: RE: In Office Exception vs. Work Accommodation Request

Hi Adrienne,

Hope you are feeling better and thanks for the update. I am back to work and please keep me posted once you have the updated form from your provider.

Thank you,

Brenda Navarrete
Benefits and LOA Specialist

☎ +1 602 508 3953  |  ✆ +1 602 245 5498  |  US Internal 63953

From: Hankins, Adrienne <adrienne.hankins@dentons.com>
Sent: Thursday, September 11, 2025 3:34 PM
To: Kekatos, Arianna <arianna.kekatos@dentons.com>; Navarrete, Brenda <brenda.navarrete@dentons.com>
Cc: Bethke, Laura <laura.bethke@dentons.com>
Subject: RE: In Office Exception vs. Work Accommodation Request

Thank you, not doing too good today, but I will talk with my doctor.


**Adrienne Hankins**
Legal Administrative Assistant


☏ +1 415 882 0170   |   US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

---

**From:** Kekatos, Arianna <arianna.kekatos@dentons.com>
**Sent:** Thursday, September 11, 2025 3:30 PM
**To:** Navarrete, Brenda <brenda.navarrete@dentons.com>; Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

Hello Adrienne,

Hope you are doing well! would you be able to have your doctor update the form for question 2? It seems that the information provided pertains to a symptom rather than a diagnosis. Additionally, we need clarification on how commuting, particularly by public transit, aggravates the condition.

Thanks!


**Arianna Kekatos**
HR/Benefits Coordinator


☏ +1 312 876 8241   |   US Internal 18241

---

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Tuesday, September 02, 2025 4:04 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

Hi Adrienne,

Hope all is well. I have not received your doctor's completed form. Can you please check with your doctor?

Also, can you please sign/date the "employee request" form?

I will check with Unum on your 2nd leave request and follow-up.

Thank you,

**93**

**DENTONS**

## EMPLOYEE REQUEST & MEDICAL RELEASE

1. Name: Adrienne Hankins                REDACTED

2. Phone Number: ▓▓▓7369

3. Position: Legal Administrative Assistant

4. Department: Commercial Litigation

5. Office Location: Oakland

5. Manager: Ashley Coker

6. Nature of the Qualifying Disability: Taking into consideration, I have a cervical spine injury

which causes chronic debilitating pain, a 3 or 4 day commute into the office, I would risk aggravation

and more frequent flare-ups of my condition. I also attend on-going self-care medical appointments weekly
for pain management.

7. Requested Accommodation/Work Schedule: (Please describe the accommodations you believe are
needed to enable you to perform the essential functions of this job.) I currently travel into the office one

day per week and I am requesting to keep this current accommodation.

| Start Date: 9/4/2025 | End Date: 9/4/2026 | Duration: 1 year |

8. Health care Provider Contact Information (Please provide name, address, telephone and fax numbers)
The physician may receive a letter/fax from us requesting information on your impairment/disability and
recommendations for accommodations: Dr. Navjeet Boparai, 450 N. Wiget Lane, Walnut Creek, CA

925.691.9806 (phone) 925.691.9807 (fax)

*I authorize the release of necessary confidential medical information regarding my disability to Dentons US LLP
Human Resources. I also attest to the fact that a copy of the position description has been given to me for review
and reference.*

Signature: *Adrienne Hankins*

Date: 9/4/2025

**97**

dentons.com

**MEMORANDUM**

To:    HRIS
        Laura Lemke
        laura.bethke@dentons.com
        Navarrete, Brenda
        brenda.navarrete@dentons.com
        Kekatos, Arianna
        arianna.kekatos@dentons.com

From:   Adrienne Hankins
        Date of Hire: March 10, 2008

Date:   September 18, 2025

Subject:  Employee Request & Medical Release / In Office Exception

**Response requested no later than Tuesday, September 23 or sooner.**

I hope this memo will assist you in evaluating my disabilities and whether I am eligible for an in-office 3-day exception. My situation is unique, and I respectfully request that it be evaluated appropriately and assessed based on my individual disability. My ability to work remotely for the last several years has not created an undue hardship on the firm, nor has it created an administrative burden. I am requesting that Dentons continue to allow me to work from home to accommodate my medical condition and so that I can stay in compliant with my medical treatment plan and medical appointments that I attend several times per week. I am allotted 7.5 hours of intermittent leave per week to attend medical appointments, including travel time.

Note: I see my doctor every 6 weeks, and at my doctor's discretion, I am open to commuting in at least one day per week depending on my symptoms from day to day.

I have been diagnosed with various serious health conditions, which are well documented, these conditions are chronic in nature. Under the direction and supervision of my doctor/healthcare provider, I am required to work from home due to my current medical condition.

I travelled by public transportation yesterday, 9/17, to try it out. It literally took me 2 hours to get to the office. I left my home at 7:35 a.m., at a time where traffic should have been smoother, instead of leaving at 6:45 a.m. but as usual, it was unpredictable. I arrived in the office at 9:36 a.m. I left the office to head home at 2:30 p.m., took a train to a bus, I arrived home at 4:32 p.m. Almost 4 extra hours lost when

Puyat Jacinto & Santos ► Link Legal ► Zaanouni Law Firm & Associates ► LuatViet ► For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

US_ACTIVE\131236804\V-1

**98**

dentons.com

taking public transportation, approximately 2 hours of PTO used to commute and off the clock away from my very demanding position.  [8:30am-9:36am, PTO; 2:30pm-3:30p (lunch hour); 3:30pm to 4:32 pm, PTO] with only 30 minutes remaining to handle the requests that were waiting for me in my email inbox.

Due to my chronic debilitating neck, back and right shoulder pain, commuting on public transportation for example walking down two flights of steep stairs with my carry bag that weighs about 15-18 lbs., just to get to the train platform, continuously will cause aggravation and exacerbation of my back injury and cause neck strain, as well as risk re-injury.  Changing my schedule at this point, it is going to cause unreasonable stress that can negatively impact my physical, mental and emotional well-being.  In closing, I am requesting to continue to remote work, to maintain a healthy quality of life.

Respectfully submitted, Adrienne Hankins

**Diagnosis:**
(See question 2, request for medical info)

**Attachments:**

1) Att. A - QME Report - 11/20/2020
2) Att. B – Initial therapy/treatment order for lower back - 7/18/2025
3) Att. C - Work Status letter - 9/4/2025
4) Att. D - photos of steep stairs at BART station -9/17/2025

# Attachment A

# James D. Mays, M.D.

### Board Certified Orthopaedic Surgeon
### Qualified Medical Evaluator

**MAILING ADDRESS**
8221 N. Fresno St
Fresno, CA 93720
(559) 222-2294

## PANEL QUALIFIED MEDICAL EVALUATION

**Disability Evaluation Unit**
1515 Clay Street, 6th Floor
Oakland, CA 94612

| | |
|---|---|
| RE: | Hankins, Adrienne |
| DATE OF EVALUATION: | November 23, 2020 |
| EMPLOYER: | Dentons US LLP |
| DATE OF INJURY: | March 12, 2014 |
| CLAIM NO: | REDACTED |
| FILE NO: | 190-0 |

## FEE DISCLOSURE

**ML 104-95:** This is an Qualified Medical Evaluation with Extraordinary Circumstances as a result of meeting the requirements of 4 complexity factors, which are listed below:

- 12 hour(s) of record review time
- 35 minutes of face to face time
- 2 ½ hour(s) of report preparation time
- 15 total hours of combined time
- Four hours or more of any combination of 2 complexity factors (2 factors)
- Addressing issues of causation (1 factor)
- Addressing issues of apportionment when the physician addresses: (1 factor)
    - 3+ injuries to the **SAME** body system or region
    - 2+ injuries to 2 **DIFFERENT** body system or regions

**\*\*This is a medical legal report and does not qualify for a PPO/Network discount.**

**101**

RE: Hankins, Adrienne
Page 3

She continued under the care of Stephen Chen, MD and was allowed to return to regular work with five minute breaks every 30 minutes.

01/21/2016, Jeffrey Peterson, MD began treatment and diagnosed lumbar strain, cervical strain, biceps tendinitis.    Recommended acupuncture, physical therapy, and home exercise.

01/11/2017 Manijehy Ryan, MD began treatment with diagnosis of C6 radiculopathy. C5-6 disc herniation.  Recommended cervical MRI, continue full duty.

01/30/2017 Teresa Simonson, MD, MRI of the cervical spine revealed multi-level degenerative disc and facet disease.  Straightening and kyphosis of the cervical spine suggest muscle spasm and/or cervical strain.  Moderate to severe degenerative disc disease at the mid-cervical level with endplate edema at C4-5 and C3-4 suggesting segmental stress.  Severe bilateral C3, C4 foraminal stenosis due to degenerative disease.

02/04/2017 Manijehy Ryan, MD, EMG/nerve conduction studies, bilateral upper extremity and cervical spine did not reveal abnormality of cervical spine brachial plexus or indications of polyneuropathy or myopathy.

02/13/2017 Manijehy Ryan, MD delivered a P&S report diagnosis of C6 radiculitis, C5-6 disc herniation.  Cervical facet arthropathy with initially a 28% whole person impairment with a DRE Cervical Category IV.  The following paragraph indicated that Adrienne Hankins had a 7% whole person impairment from a DRE Cervical Category II rating.

11/29/2017 Adrienne Hankins care was transferred to Navjeet Boparai, MD with a diagnosis of arthropathy unspecified.  Cervical disc disorder.  Strain of muscle, fascia, and tendon at neck level.  Other muscle spasms and recommended diagnostic medical branch block at C4, C5 and C6.

06/13/2018 Navjeet Boparai, MD performed cervical facet nerve blocks on the left at C4, C5 and C6 with partial relief.

08/22/2018 Navjeet Boparai, MD did a medial branch radiofrequency neurotomy at C4, C6 and C6 branch on the left for a total of three lesions with good result.

Adrienne Hankins states that her cervical symptoms kept increasing an on 05/01/2019, had a repeat cervical facet block on the right C3, C4, C5 with positive results.

RE: Hankins, Adrienne
Page 5

01/21/2016 Jeffery Peterson, MD noted that the neck pain, right shoulder pain and low back pain, Diagnosed as having lumbar strain, cervical strain, biceps tendinitis, continue acupuncture, physical therapy, hot and cold compresses, and modified work consisting of five minute breaks every 30 minutes.

03/08/2016, 04/08/2016, 04/26/2016, 05/27/2016 and 06/15/2016 multiple reports from Robert Yee, MD and Angelica Caserta, Nurse Practitioner were reviewed noting the symptoms were continuing in the cervical spine and lumbar spine. It was also noted that a new date of injury of 03/11/2016 for right hand, wrist and digit finger pain was initiated with treatment consisting of anti-inflammatory and occupational therapy.

Manijehy Ryan, MD.    Doctor's First Report on 01/11/2017 diagnosed as C6 radiculopathy. C5-6 disc herniation. Recommended a cervical MRI.

01/30/2017 Teresa Simonson, MD MRI of the cervical spine without contrast. Impression was multi-level degenerative disc and facet disease, straightening of the kyphosis of the cervical spine suggesting muscle spasm or cervical strain. Moderate to severe degenerative disc disease at the mid-cervical level with endplate edema at C4-5 and C3-4 suggesting segmental stress. Severe bilateral C3-4 foraminal stenosis, degenerative disease.

02/04/2017 Manijehy Ryan, MD, EMG/nerve conduction study bilateral upper extremity and cervical spine and interpreted as normal.

02/13/2017 Manijehy Ryan, MD, P&S report. Initially a 28% whole person impairment with a DRE IV with the following paragraph of 7% whole person impairment with a DRE Category II.

05/17/2017, Manijehy Ryan, MD, office report. Diagnosis C6 radiculitis. C5-6 disc degeneration. Cervical facet arthropathy. Continue oral anti-inflammatories, begin chiropractic care, and continue full duty.

07/19/2017 Manijehy Ryan, MD. Office report.

09/20/2017 Manijehy Ryan, MD office report.

10/25/2017 Manijehy Ryan office report.

RE: Hankins, Adrienne
Page 7

04/21/2014 through 04/09/2020 multiple physical therapy reports by John Lovejoy, PT and Heather O'Meara, PT, Nai-Huang Nguyen, PT, Marcie Fitzsimmons, PT, Thomas Lawrence, PT, Robert Lin, DPT and Kyles PT were reviewed.

## WORK STATUS

Adrienne Hankins is continuing to work as a legal secretary with self-modification of work.

## RELEVANT MEDICAL HISTORY

She states she has not had similar problems with or injuries to the body part or parts involved in this claim.

She states that she has had other work injuries since the injury involved in this claim. These are to the right thumb, hand, index finger and wrist, left shoulder and arm, left shoulder and left knee pain.

She continues to experience discomfort in her cervical spine.

She had not had any other work-related injuries. She has never been involved in a motor vehicle accident.

She is not currently being treated for any serious accidents, sport injuries or illnesses.

She has not received a permanent disability settlement.

She does not have any medical problems or serious illnesses for which she is being treated.

## MEDICATIONS

None.   Allergies to medicine: None.

## PREVIOUS SURGERIES

None.

**104**

RE: Hankins, Adrienne
Page 9

Range of motion of the cervical spine, flexion 10 degrees, extension 11 degrees, lateral bending was 33 degrees to the right which produced mild achiness into the left contralateral left upper extremity. She had 25 degrees of lateral bending to the left produced right neck pain. Rotation 38 degrees right, 41 degrees left. Compression produced pain in the upper neck traction. There is negative Spurling's on the left, positive on the right. Adson's maneuver is positive on the right, negative on the left. Venous distention dissipated at 90 degrees right and left. There was a positive overhead stress, Wright's maneuver and traction on the right upper extremity and trace on the left upper extremity.

Negative Phalen's, negative reverse Phalen's, negative Hoffman's test.

Sensation was noted to be intact in all cervical dermatomes.

Motor strength was noted to be 5/5 through deltoid, biceps, triceps and brachioradialis, wrist, finger, and thumb flexions/extensors and intrinsics.

Grip strength using the Dynatron in the second note in kilograms on the right 35, 25 and 15. On the left 18, 18, and 18.

Reflexes are 0 right and left biceps, triceps and brachioradialis.

Examination of the shoulders right and left. There was positive empty and full can test and tender over the greater tuberosity.

Range of motion right over left, flexion 145/140, abduction was 151/145, external rotation was 90/75, internal rotation was 68/60, adduction was 30/30 and extension was 50/50.

## IMPRESSION

1. Sprain/strain cervical spine.
2. C5 radiculopathy right greater than left.
3. Post-rhizotomy right C4, 5 and 6.
4. Post-rhizotomy left C4, 5 and 6.
5. Thoracic outlet syndrome, trace right upper extremity.

## DISCUSSION

RE: Hankins, Adrienne
Page 11

## WORK STATUS

Adrienne Hankins may continue working as a legal secretary.

## FUTURE MEDICAL CARE

She will require the availability of provisional visits for the appropriate medication as needed for any flare.

This would entail re-evaluation, appropriate diagnostic studies as indicated as well as provision with medication, physical therapy, repeat rhizotomies, possible discectomy, possible foraminotomies, possible anterior cervical discectomy and fusion and physical therapy up to 12 visits per year.

Thank you for the opportunity to evaluate this examinee. If I may be of additional assistance please correspond with me, in writing, at 8221 N. Fresno St, Fresno, Ca. 93720.

### ATTESTATION

I, James D. Mays, M.D., personally took the examinee's history, reviewed the medical records, performed the physical examination, and dictated this report. All of the opinions expressed in the report are mine. In the preparation of the report Gloria Guisando, MT, arranged all of the records in chronological order and prepared a list and excerpt of records for my review. I personally then reviewed all of the available medical records and the excerpt prior to the preparation of my report. Staff time has not been included in the calculation of time spent on this report. The entire report was personally reviewed by me and signed on the date and county as indicated.

I hereby declare under penalty of perjury that I have not violated Labor Code Section 139.3 to the best of my knowledge and have not offered, delivered, received or accepted any rebate, refund, commission, preference, patronage, dividend, discount or other consideration for any referral for examination or evaluation by a physician.

I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.

Sincerely,

*James D. Mays, MD*

James D. Mays, M.D.
Board Certified Orthopaedic Surgeon
Signed this _28_ day of _Dec_ 2020 in _Contra Costa_ County in the State of California.

# Attachment B



**Boomerang Healthcare**
Restoring Hope. Returning Health.

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

## THERAPY/TREATMENT ORDER
### Please fax all reports to 925-691-9807

**Requesting Provider**

| | |
|---|---|
| **Provider Name:** | Navjeet Boparai, MD |
| **Address:** | 450 North Wiget Lane Walnut Creek, CA 945982408 |
| **Phone/Fax:** | 925-691-9806 Phone / 925-691-9807 Fax   Tax ID #: 680477806 |

**NPI #: 1407025299**

**Patient Information**

REDACTED

| | |
|---|---|
| **Patient Name:** | Ms. Adrienne Hankins |
| **Address:** | ████████, Bay Point, CA 94565 |
| **Phone:** | — x        REDACTED |

**DOB:**

**Alternate Phone:**  ████-7389   REDACTED

Diagnosis: M12.9
Arthropathy, unspecified
M50.90
Cervical disc disorder, unspecified, unspecified cervical region
S16.1XXS
Strain of muscle, fascia and tendon at neck level, sequela
M62.838
Other muscle spasm
M53.82
Other specified dorsopathies, cervical region
M62.830
Muscle spasm of back
M47.812
Spondylosis without myelopathy or radiculopathy, cervical region
M79.10
Myalgia, unspecified site
M25.511
Pain in right shoulder
F45.42
Pain disorder with related psychological factors
G89.29
Other chronic pain
M54.2
Cervicalgia
M54.50
Low back pain

**Insurance Information**

108

Ins. #1:                    REDACTED                Ins. #2:
ID #/Claim #:                                       ID #:
Billing Address:   PO Box 60007                     Billing Address:
                   Los Angeles, CA 90060
Adjuster Contact: - Ph.: , Fax:                                    DOI:    01/01/2024

**Order:**
**Requested Treatment:**

**Physical Therapy:** Initial trial, 6 visits to the low back.


                07/18/2025                                          N/B

_____                           _____
            Date                                              Signature

**109**

# Attachment C



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

**Patient Name:** Adrienne Hankins          **Date:** 09/04/2025
**DOB:** ███████          REDACTED          **Next Appointment:** 10/09/2025  01:00 PM
**CHUBB**          **Claim#:** ███████          REDACTED

**Insurance Adjuster:** Odetta Robinson          **Date of Injury:** 03/12/2014
**Phone:** 909-477-5533  **Fax:** 213-612-5785

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.

**111**

# Attachment D



113

114

DENTONS

## REQUEST FOR MEDICAL INFORMATION FROM HEALTH CARE PROVIDER

A request for a reasonable accommodation has been made by our employee  Adrienne Hankins  .
In order to assist with the interactive process, we are requesting you to provide feedback to the following
questions based on your medical expertise.

Background

An employee has a disability if he or she has an impairment that substantially limits one or more major
life activities or a record of such an impairment. "Substantially limits" under the ADA Amendments Act
of 2008 ("ADAAA") has been broadened to allow someone with an impairment to be "regarded as"
having a disability, even without the perception that the impairment limits a major life activity, provided
that the impairment does not have an actual or expected duration less than or equal to six months.

The ADAAA provides examples of "major life activities," including "caring for oneself, performing
manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,
learning, reading, concentrating, thinking, communicating, working, and the operation of a major bodily
function, such as functions of the immune system, normal cell growth and digestive, bowel, bladder,
neurological, brain, respiratory, circulatory, endocrine and reproductive functions:"

Please answer these questions to help determine disability and reasonable accommodation. Fax
completed form to Dentons' confidential fax number: 312-277-5126.

1) Please review the attached job description. (If no job description is attached, please discuss the position
with the employee to determine essential job duties.) Is the employee able to perform the essential job
functions of this position with or without reasonable accommodation? Yes / No

If yes, please continue to next question.

If no, how long will the employee be unable to perform these job duties?

____ # of weeks ____ # of months  _P_ permanently

2) Does the employee have a physical or mental impairment? (Yes) / No

If yes, what is the impairment?

chronic neck pain.

physical impairment, facet arthropathy, cervical
disc disorder, intervertebral disc degeneration (cervical &
lumbar spine)
spondylosis, lumbar region, right shoulder biceps tendinitis,
R AC joint degenerative changes.

**115**

**3) What limitation(s) is interfering with job performance, and how does it interfere with the employee's ability to perform the job function(s)?**

~~Chronic neck pain~~ st

chronic neck pain

**4) What adjustments to the work environment or position responsibilities would enable the employee to perform the essential functions of that position?**

Patient should be able to work from home

**5) The employee's typical schedule is _____. What, if any, adjustments need to be made to the employee's work schedule to enable the employee to perform the essential functions of that position?**

No change in schedule needed

**6) How would your suggestions improve the employee's job performance?**

By working from home there will be fewer flareups caused by commuting allowing her to compute job related tasks.

**7) How long will the employee need the reasonable accommodation? If unable to provide date, when will he or she be medically reevaluated?**

(12 mo) - 9/4/2025 - 9/4/2026

| Start Date: 9/4/2025 | End Date: 9/4/2026 | Duration: 1 year |

**Any additional comments or suggestions:**

Forcing patient to take public transit multiple times a week in order to go to work will increase patients risk for fall, trauma, reinjury and also aggravate current injuries. and hinder the progress she is making by being compliant with her medical treatm

**Provider's name and business address:** _____

**Telephone:** (925) 691 9806    **Fax:** (925)691 9807

**Type of practice/medical specialty:** PM + R

**Provider's signature:** _____

**Date:** 9/4/2025

**116**

# DENTONS

## EMPLOYEE REQUEST & MEDICAL RELEASE

1. Name: Adrienne Hankins

2. Phone Number: 650.291.7369

3. Position: Legal Administrative Assistant

4. Department: Commercial Litigation

5. Office Location: Oakland

5. Manager: Ashley Coker

6. Nature of the Qualifying Disability: Taking into consideration, I have a cervical spine injury which causes chronic debilitating pain, a 3 or 4 day commute into the office, I would risk aggravation and more frequent flare-ups of my condition. I also attend on-going self-care medical appointments weekly for pain management.

7. Requested Accommodation/Work Schedule: (Please describe the accommodations you believe are needed to enable you to perform the essential functions of this job.) I currently travel into the office one day per week and I am requesting to keep this current accommodation.

| Start Date: 9/4/2025 | End Date: 9/4/2026 | Duration: 1 year |

8. Health care Provider Contact Information.(Please provide name, address, telephone and fax numbers) The physician may receive a letter/fax from us requesting information on your impairment/disability and recommendations for accommodations: Dr. Navjeet Boparai, 450 N. Wiget Lane, Walnut Creek, CA

925.691.9806 (phone) 925.691.9807 (fax)

*I authorize the release of necessary confidential medical information regarding my disability to Dentons US LLP Human Resources. I also attest to the fact that a copy of the position description has been given to me for review and reference.*

Signature: Adrienne Hankins

Date: 9/4/2025

# EXHIBIT P

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Hankins, Adrienne |
| **Sent:** | Friday, October 3, 2025 2:24 PM |
| **To:** | Navarrete, Brenda |
| **Cc:** | Bethke, Laura |
| **Subject:** | RE: Adrienne Hankins | Remote Accommodation Approved Through 03/03/26 |
| **Attachments:** | RE: In Office Exception vs. Work Accommodation Request |

Hi again Brenda, this process started Aug 20.  I came into the office 3 days per week in Sept, so actually this is only 5 months.   This should be pushed to April, which is 6 months.

Adrienne Hankins
Legal Administrative Assistant

☎ +1 415 882 0170  |  US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

From: Navarrete, Brenda <brenda.navarrete@dentons.com>
Sent: Thursday, October 02, 2025 1:54 PM
To: Hankins, Adrienne <adrienne.hankins@dentons.com>
Subject: RE: Adrienne Hankins | Remote Accommodation Approved Through 03/03/26

Hi Adrienne,

**This means your office/department policy for the days that you have to be in-office. Keep Benefits posted if you need a remote extension beyond 3/3/26.**

Thank you,

Brenda Navarrete
Benefits and LOA Specialist

☎ +1 602 508 3953  |  ⊘ +1 602 245 5498  |  US Internal 63953

From: Hankins, Adrienne <adrienne.hankins@dentons.com>
Sent: Thursday, October 02, 2025 1:52 PM
To: Navarrete, Brenda <brenda.navarrete@dentons.com>
Subject: RE: Adrienne Hankins | Remote Accommodation Approved Through 03/03/26

Thank you Brenda. Can you send me a link to the return-to-office-policy, I cannot find it in the Policies and Procedures?

**118**

Adrienne Hankins
Legal Administrative Assistant

✆ +1 415 882 0170  |  US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

---

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Thursday, October 02, 2025 1:29 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Subject:** Adrienne Hankins | Remote Accommodation Approved Through 03/03/26

Hi Adrienne,

Thank you for contacting the Benefits Team regarding your request for a reasonable accommodation pursuant to the ADA.

Your remote accommodation has been approved from 09/04/25 through 03/03/26 (6-month duration).

Should you need an accommodation beyond 03/03/26, you can reapply for an extension and provide updated ADA forms/medical documentation. Please ensure you submit your updated/new request ahead of time so that your team leaders have time to review before your current accommodation ends.

If there is no need for an extension, the expectation would be that you follow the return-to-office policy. Please let us know if you have any questions.

Thank you,

**Brenda Navarrete**
Benefits and LOA Specialist

✆ +1 602 508 3953  |  ⊘ +1 602 245 5498  |  US Internal 63953

# FW: Adrienne Hankins | Remote Accommodation Approved Through 04/03/26

| | |
|---|---|
| **From** | Bethke, Laura <laura.bethke@dentons.com> |
| **To** | adrn.hankins<adrn.hankins@protonmail.com> |
| **Date** | Tuesday, October 21st, 2025 at 1:55 PM |

Is this the email you are looking for?

Laura Bethke

Human Resources Business Partner

☺ +1 213 243 6183

Hi Adrienne,

Thank you for contacting us regarding your date approvals. Your remote extension has been approved through 04/03/25.

Please continue to keep us posted if you need an extension beyond the above date.

Thank you,

**120**

**Brenda Navarrete**

**Benefits and LOA Specialist**

⊕ +1 602 508 3953 | ⊘ +1 602 245 5498 | US Internal 63953

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Thursday, October 02, 2025 1:29 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Subject:** Adrienne Hankins | Remote Accommodation Approved Through 03/03/26

Hi Adrienne,

Thank you for contacting the Benefits Team regarding your request for a reasonable accommodation pursuant to the ADA.

Your remote accommodation has been approved from 09/04/25 through 03/03/26 (6-month duration).

Should you need an accommodation beyond 03/03/26, you can reapply for an extension and provide updated ADA forms/medical documentation. Please ensure you submit your updated/new request ahead of time so that your team leaders have time to review before your current accommodation ends.

If there is no need for an extension, the expectation would be that you follow the return-to-office policy. Please let us know if you have any questions.

Thank you,

**121**

**Brenda Navarrete**

**Benefits and LOA Specialist**

⊗ +1 602 508 3953   |   ⊘ +1 602 245 5498   |   US Internal 63953

---

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Friday, October 03, 2025 3:51 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>
**Subject:** Adrienne Hankins | Remote Accommodation Approved Through 04/03/26

# EXHIBIT Q

## Personal & Confidential

| | |
|---|---|
| From | Bethke, Laura <laura.bethke@dentons.com> |
| To | adrn.hankins<adrn.hankins@protonmail.com> |
| CC | antonia.alvarez@dentons.com, Bethke, Laura<laura.bethke@dentons.com> |
| Date | Wednesday, October 8th, 2025 at 3:19 PM |

Dear Adrienne:

As a follow-up to today's call with your supervisor, I am attaching the following documents for your review:

- Cover Letter, explaining details of the 2025 Business Services Staffing Review and Organizational Alignment Program;
- Waiver and Release Agreement;
- Staff Severance Pay Plan;
- Employee Resource Guide;
- Overview of career transition services; and
- An Acknowledgment of Documents related to the above.

If you require a hard copy of the Waiver & Release Agreement, please notify me, and one will be provided. I remain available to address questions. Please do not hesitate to email or call me at (213) 243-6183. You may also reach the HR department at dentonsushumanresources@dentons.com or toll-free at 833-220-2255.

Thank you for all of your contributions to the Firm, and best of luck in your future endeavors.

Best,

Laura

123

**Laura Bethke**

Human Resources Business Partner

@ +1 213 243 6183

laura.bethke@dentons.com   |   Website

Dentons US LLP

DENTONS

Our Legacy Firms   |   Client Experience (CX)

Dentons is a global legal practice providing client services worldwide through its member firms and affiliates. This email may be confidential and protected by legal privilege. If you are not the intended recipient, disclosure, copying, distribution and use are prohibited; please notify us immediately and delete this copy from your system. Please see dentons.com for Legal Notices.

**1.72 MB**   10 files attached

OWBPA List.pdf 140.27 KB     Employee Resource Guide 2025.pdf 287.55 KB     Cover Letter - AH.pdf 54.04 KB

2025 Action - WR-AH.pdf 36.93 KB     CA-Notice of Change in Relationship - AH.pdf 15.42 KB

Acknowledgement of Receipt of Separation Notification Documents - AH.pdf 3.26 KB

Staff Severance Plan-2025.pdf 332.27 KB     CA-HIPP.pdf 82.86 KB     CA-UI.pdf 587.92 KB

Dentons- INTOO Outplacement Program Description - Flex - 3 Months.pdf 221.53 KB

**NOTICE TO EMPLOYEE AS TO CHANGE IN RELATIONSHIP**
(Issued pursuant to provisions of Section 1089
of the California Unemployment Insurance Code)

Name <u>Adrienne Hankins</u>     SSN# <u>REDACTED</u>

1. You were/will be laid off/discharged on <u>October 8</u> 20<u>25</u>
                                                    (date)

2. You were/will be on leave of absence starting _____ 20_____
                                                        (date)

3. On _____ employment status changed/will change as follows:
        (date)

_____

_____

_____

<u>Dentons US LLP</u>
(Name of Employer)

<u>Laura Bethke</u>
(By)

**126**



**Antonia Alvarez**
Head of Human Resources

antonia.alvarez@dentons.com
D   +1 602-508-3983

Dentons US LLP
2398 East Camelback Road, Suite 850
Phoenix, AZ 85016-9007
United States

dentons.com

October 8, 2025

**BY E-MAIL**

**PERSONAL AND CONFIDENTIAL**

Adrienne Hankins
adm.hankins@protonmail.com

Re:    Information Regarding the 2025 Business Services Staffing Review and Organizational Alignment
         Program and the Waiver and Release

Dear Adrienne,

As part of our ongoing commitment to operational excellence, the Firm regularly evaluates staffing needs.
We recently completed a review of our administrative and professional services staffing.   We have
determined after a careful review that it is necessary to eliminate your position.  Your employment with the
Firm will terminate effective today, October 8, 2025 ("Release Date").   We thank you for all you have
contributed during your tenure with us.  The impact of your service and devotion to helping support the Firm
and our clients is immeasurable.

To qualify for payment under the Program, and the career transition support, it will be necessary for you to
sign a Waiver and Release Agreement ("Waiver") within the time frame specified by the Firm.  Information
regarding eligibility for payment and other important information is contained in the Waiver.  Attached is a
copy of the Waiver for your review.  Please note the following specific items with regard to the Waiver:

1.  The Waiver discusses rights and obligations concerning severance pay and other matters.

2.  You will have forty-five (45) days after the date of your receipt of the Waiver to decide whether
     to accept or reject the Waiver.  You may sign the Waiver prior to the end of such forty-five (45)
     day period, but you are not required to do so.

3.  If you sign the Waiver, you will then have seven (7) days after you sign it to change your mind
     and revoke the Waiver.

4.  If you sign the Waiver and do not revoke it, the Waiver will be effective on the 8th day after you
     sign it ("Effective Date").  Depending upon the amount of time between the Effective Date and
     the next regularly scheduled payroll date, the severance payment will be paid either on the next
     payroll date following the Effective Date or on the next payroll date thereafter.

Puyat Jacinto & Santos ► Link Legal ► Zaanouni Law Firm & Associates ► LuatViet ► For more information on the firms that have come
together to form Dentons, go to dentons.com/legacyfirms

127

**DENTONS**

October 8, 2025
Page 2

dentons.com

If you elect to accept the Waiver, please sign and date the Waiver and return it to me in the time frame noted above.  I will sign on behalf of the Firm and return a copy to you.  If you have any questions regarding this or your benefit options, please contact me.

If you have any questions, please feel free to contact me.

Sincerely,
Antonia Alvarez
Head of Human Resources

**128**

# EXHIBIT R

# DENTONS US LLP

# STAFF SEVERANCE PAY PLAN

**DENTONS US LLP**
**STAFF SEVERANCE PAY PLAN**
**AND**
**PLAN DESCRIPTION**

## I.  INTRODUCTION

Dentons US LLP, a Delaware limited liability partnership (the "Firm"), hereby amends and restates the Dentons US LLP Staff Severance Pay Plan (the "Plan") as originally adopted effective October 11, 2007, and as amended from time to time.  This amendment and restatement of the Plan is effective July 20, 2022.

The Plan is governed by a federal law called the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). This document is both the formal plan document and the summary plan description required by ERISA. This document replaces all prior severance plans, programs or policies, whether formal or informal. If you have any questions about the Plan, you should contact Antonia Alvarez, Head of Human Resources at Dentons US LLP, at 2398 E. Camelback Road, Suite 850 Phoenix, AZ 85016-9007, or at +1 602-508-3983, or her successor.

## II.  WHO IS ELIGIBLE TO RECEIVE BENEFITS UNDER THE PLAN?

In order to receive benefits under the Plan, you must meet <u>all</u> of the following conditions:

(a)  you must be an "Eligible Employee" as described in Section III below; AND

(b)  you must have a "Qualified Termination" as described in Section IV below; AND

(c)  you must have been employed with Dentons US LLP, including any predecessor or successor in interest, for at least six months before your "Qualified Termination"; AND

(d)  you continue actively working in your position through and including your date of release from employment by the Firm ("Release Date"). "Actively working" means performing your everyday responsibilities at a level meeting Firm performance expectations, policies and practices or being on a Firm-approved Leave of Absence; AND

(e)  you must sign, within the time limits specified by the Firm, a general waiver and release agreement provided by the Firm which says, among other things, that you release any claims you may have against the Firm, its current and former partners, employees, and certain others determined by the Firm; AND

(f)  if you are given a certain period of time in which to revoke your general waiver and release agreement, you do not revoke the agreement within that time period; AND

(g)   you return all Firm property (including keys, credit cards, identification cards, office equipment, portable computers and cellular telephones) and confidential information of the Firm (including all copies, duplicates, reproductions or excerpts thereof).

## III.   WHO IS AN "ELIGIBLE EMPLOYEE"?

Generally, you are an "Eligible Employee" for Plan purposes if you are classified by the Firm as a full-time employee or a part-time employee of the Firm.

However, you are not an "Eligible Employee" if you are: (a) a lawyer practicing as such on behalf of the Firm, (b) paralegal or other professional timekeeper; (c) an employee who has any other agreement with the Firm providing for continuation of employment or the payment of specified benefits upon termination of employment or is otherwise eligible to receive severance benefits payable under any other plan, policy or arrangement maintained by the Firm; (d) classified by the Firm as a temporary employee, leased employee, independent contractor or consultant, even if you are later determined by a court or governmental agency to be, or to have been, a full-time or part-time employee of the Firm; or (e) not classified by the Firm as a full-time or part-time employee.

## IV.   WHAT IS A "QUALIFIED TERMINATION"?

You will become a participant in the Plan if the Firm eliminates your job position in connection with a workforce reduction. However, in order to be eligible to receive benefits under the Plan, you must also have a "Qualified Termination." You have a "Qualified Termination" only when the Firm eliminates your job position in connection with a workforce reduction and you are not offered a "Comparable Position" (as defined below):

You do not have a "Qualified Termination" if your job with the Firm ends for any other reason, including but not limited to:

(a)   your voluntary resignation;

(b)   your job is eliminated by the Firm, but you are offered a "Comparable Position" (as defined below);

(c)   the functional area of the Firm in which you work, is transferred or "outsourced" to a successor firm or other entity, and the successor or other entity offers you a "Comparable Position" (as defined below); or

(d)   you are discharged by the Firm for failing to perform your responsibilities at a level meeting Firm expectation, or a similar reason.

A "Comparable Position" for this purpose means a position with the Firm or any affiliate, successor, or related entity, as applicable, for which the scheduled base salary or hourly rate offered is more than, the same as, or not more than 15% less than, your current salary or hourly rate.

**131**

The Firm is solely responsible for determining whether your termination is a "Qualified Termination" and whether you have been offered a "Comparable Position" as those terms are defined above.

## V.    HOW MUCH SEVERANCE PAY CAN I RECEIVE UNDER THE PLAN?

If you meet all of the conditions in Section II, you will receive the amount of severance pay described in the Severance Pay Calculation Schedule, which is attached to this document and labeled "Appendix A." The amount depends on your years of continuous service with the Firm before your employment termination date and your base weekly wages immediately prior to your employment termination date. Base weekly wages means (i) if you are a salaried employee, your base weekly salary or (ii) if you are paid on an hourly basis, your hourly rate of pay multiplied by 37.5 if you are a full-time employee or the number or hours you are regularly scheduled to work each week if you are a part-time employee. Base weekly wages does not include overtime, bonuses, benefits or other types of additional compensation.

The amount of your severance pay determined under the Schedule will be _reduced_ by:

(a)    any other unemployment or severance benefits payable to you directly by the Firm under any federal, state or local law, including but not limited to the Federal Worker Adjustment and Retraining Notification Act (but not including statutory unemployment compensation benefits that are not payable to you directly by the Firm);

(b)    any amount you owe the Firm when your job ends; and

(c)    applicable federal, state, and local income and employment tax withholdings.

## VI.    WHEN WILL MY SEVERANCE BENEFITS BE PAID?

Your severance benefits under the Plan will be calculated based on the Calculation Schedule set forth in Appendix A. At the sole discretion of the Firm, your severance benefits will either be paid to you in a single payment or in installment payments made at the time of the Firm's regular payroll payment dates.

Your payment will be made or, if your benefits will be paid in installments, payments will start on the first regular payroll payment date after the waiver and release agreement referred to in Section II(e) becomes effective, or the next following regular payroll payment date. You will not receive any payments under the Plan until your revocation period, if any, expires.

## VII.    WHAT IF I AM REHIRED AFTER RECEIVING SEVERANCE PAY UNDER THE PLAN?

If you are rehired by the Firm or any affiliate, successor, or related entity in any capacity (including full-time or part-time employee or consultant) while you are receiving severance payments under the Plan, your entitlement to severance payments will cease as of the date of your rehire or re-engagement by the Firm. In the Firm's discretion, you may be required to repay all or any part of the severance pay you have already received as a condition of your rehire.

If you are rehired and if your employment with the Firm later terminates again under circumstances that make you eligible for severance benefits under Section II, you will be entitled to the amount of severance pay described in the Severance Pay Calculation Schedule attached to this document as "Appendix A;" however, in this event, your years of service will not include any period of service before your rehire date. Your years of service will only include the period of continuous service from your rehire date to your next employment termination date.

## VIII.    CAN SEVERANCE BENEFITS BE PAID IN ANY OTHER CIRCUMSTANCES?

Nothing in this Plan prevents the Firm from entering into a severance arrangement with any employee or former employee pursuant to which the Firm agrees to make severance or other payments on terms different than those provided in this Plan.

## IX.    WHO ADMINISTERS THE PLAN?

The Firm is the "Plan Administrator" of the Plan and is responsible for the performance of all reporting and disclosure obligations under ERISA and all other obligations required to be performed by a plan administrator under ERISA, except those obligations and responsibilities it delegates another person or to a Plan committee. The Firm is the "named fiduciary" for ERISA purposes. The Firm may establish such ongoing administrative procedures as it deems necessary to fulfill its responsibilities under the Plan.

The Plan Administrator has the sole and complete authority with absolute discretion to interpret the terms of the Plan, to manage, administer and operate the Plan, to make factual findings, to determine all questions arising in connection with the administration, interpretation and application of the Plan, to determine eligibility of employees or former employees for benefits and the amount of benefits payable under the Plan, to approve or deny claims for payment of such benefits, and to adopt, alter and repeal such administrative rules, regulations and practices governing the operation of the Plan as it from time to time deems advisable. The decisions of the Plan Administrator are final and conclusive with respect to all questions concerning the administration of the Plan. The Plan Administrator may delegate to other persons responsibility for performing certain of the duties of the Plan Administrator under the terms of the Plan and may seek such expert advice as the Plan Administrator deems reasonably necessary with respect to the Plan. The Plan Administrator is entitled to rely upon the information and advice furnished by such delegates and experts, unless actually knowing such information and advice to be inaccurate or unlawful.

## X.    WHAT CAN I DO IF I DO NOT RECEIVE BENEFITS I AM ENTITLED TO?

The Plan Administrator will notify you in writing if you have a Qualified Termination and are eligible to receive severance benefits under the Plan. If, however, you believe you have had a Qualifying Termination and you are eligible for severance benefits under the Plan and have not received written notice of your eligibility for benefits, you or your authorized representative may file a claim for benefits by writing to the Plan Administrator. Your letter must state the reason why you believe you are entitled to benefits, and your letter must be received no later than three (3) months after your termination of employment with the Firm. If your claim is not filed within three (3) months of your termination of employment, neither the Plan nor the Firm has any obligation to pay the disputed benefits and you will have no further rights under the Plan.

If you file a timely claim for disputed Plan benefits, the following procedures will be followed:

(a)  You will be notified by the Plan Administrator or its delegate of the approval or denial of your claim for benefits within 90 days after the receipt of the claim, unless special circumstances require an extension of time for processing the claim.

(b)  If an extension of time is required by the Plan Administrator or its delegate, you will be notified in writing prior to the end of the initial 90-day period. This written notice will specify the special circumstances requiring the extension and will provide the date by which a final decision will be reached (which will not be later than 180 days after the date on which your claim was filed).

(c)  If your claim is denied, in whole or in part, you will be given a written notice containing:

(1)  the reason for the denial;

(2)  references to pertinent Plan provisions on which the denial is based;

(3)  a description of any additional material or information necessary to perfect the claim, if it is possible to perfect, and an explanation of why such material or information is necessary; and

(4)  your rights to seek review of the denial.

(d)  If your claim is denied, in whole or in part, you have the right to have the Plan Administrator or its delegate review the denial. You must file a written request for review with the Plan Administrator or its delegate within 60 days after the date you receive notice of the denial.

(e)  You or your authorized representative may review pertinent documents, records and other information relating to your claim and may submit to the Plan Administrator or its delegate written comments, documents, records and other information relating to your claim. The review will take account of all pertinent comments, documents, records or other information you or your authorized representative timely submit.

(f)  Within 60 days after your request for review is received by the Plan Administrator or its delegate, you will be advised in writing of the decision on review, unless special circumstances require an extension of time for processing the review.

(g)  If an extension of time is required by the Plan Administrator or its delegate to process the review, you will be notified in writing within the initial 60-day period. The written notice will specify the special circumstances requiring an extension and provide the date by which the review will be completed (which will not be later than 120 days after the date on which your request for review was filed).

134

(h)    The decision on review will be given to you in writing and will include the specific reason or reasons for the decision and specific references to Plan provisions on which the decision is based.

(i)    A decision on review is final and binding on all persons for all purposes.

(j)    If you fail to file a request for review in accordance with the above procedures, you will have no further rights to review and will have no right to bring an action in any court. In addition, you may not bring an action in any court until you either received a final decision on review or the period of time for providing a written decision on review has expired without the issuance of final decision on review. Any such action must be filed within 120 days after you have either received a final decision on review or the period of time for providing a written decision on review has expired without the issuance of a final decision on review.

## XI.    CAN THE PLAN BE CHANGED OR TERMINATED?

The Firm can amend or terminate the Plan at any time and for any reason or no reason. An amendment or termination must be adopted and executed by the Firm's Chief Executive Officer, Managing Partner, Chief Operating Officer or HR Director, or if there is no individual with such title then by a partner or officer of the Firm having comparable responsibilities. The Firm does not promise you the continuation of any benefits or any specific level of benefits before or after termination or retirement.

You should keep in mind that the terms of the Plan cannot be amended by any oral statements made by any partner, employee, officer, or agent of the Firm, or by any other person, and you should not rely on any such statements. In the event any oral statement conflicts with any term of the Plan, the Plan term always will control.

## XII.    WHAT OTHER RIGHTS DO I HAVE UNDER THE PLAN?

Participants in the Plan are entitled to certain rights and protections under ERISA, as described below.

### Information About Plan and Benefits

ERISA provides that all Plan participants are entitled to:

(a)    Examine, without charge, at the Plan Administrator's office and at other specified locations, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 series) filed by the Plan with the U.S. Department of Labor.

(b)    Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, and copies of the latest annual report (Form 5500 series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

**135**

   (c)  Receive a summary of the Plan's annual financial report, if any.

Prudent Action by Plan Fiduciaries

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interests of Plan participants and beneficiaries. No one, including the Firm, or any other person, may fire or otherwise discriminate against you in any way to prevent you from obtaining a Plan benefit or exercising your rights under ERISA.

Enforce Participant Rights

If your claim for a Plan benefit is denied or ignored in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days, you can file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim was frivolous.

Assistance With Questions

If you have any questions about the Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Regional Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in the telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

XIII. **GENERAL PLAN INFORMATION**

   (a)  The name of the Plan is the Dentons US LLP Staff Severance Pay Plan.

   (b)  The Plan is an employee welfare benefit plan providing severance benefits.

   (c)  The Plan Sponsor is:

Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606

(d)    The Employer Identification Number of the Plan Sponsor is: 36-1796730

(e)    The Plan Administrator is:

Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606
(312) 876-8000

(f)    The Named Fiduciary of the Plan is the Plan Administrator, Dentons US LLP:

(g)    The Plan's records are kept on a calendar year basis.

(h)    The Plan Number is: 522.

(i)    The agent for service of legal process on the Plan is:

Dentons US LLP
c/o Edward J. Reich
Partner and General Counsel
1221 Avenue of the Americas
New York, NY 10020

(j)    The Plan is unfunded. This means that benefits are paid by the Firm out of its
general assets. There is no trust or trust fund. Severance benefits are not insured.

## XIV.    NO EMPLOYMENT RIGHTS

Nothing in the Plan or done pursuant to the Plan may be construed to create a contract of
employment between you and the Firm, or to give you a right to continue in the employ of the Firm
for any particular period of time, or to limit the right of the Firm to discharge you with or without
cause or for any reason or no reason, or otherwise to alter your status as an employee at will.

## XV.    RECOVERY OF PAYMENTS MADE BY MISTAKE

In the event any payments under the Plan are made to you (or your beneficiary in the event of
your death) on account of a mistake of fact or law, you are required (or your beneficiary is required
in the event of your death) to immediately return such payment or overpayment to the Firm upon
request of the Firm.

## XVI.  NO ASSIGNMENT

Under no circumstances can benefits provided under the Plan be subject to anticipation, alienation, pledge, sale, transfer, assignment, garnishment, attachment, execution, encumbrance, levy, lien or charge, and any attempt to cause any such benefits to be so subjected will be void and of no effect, except to the extent required by law. This means, among other things, that you cannot pledge your right to benefits under the Plan as security for a loan and your creditors generally may not garnish or otherwise reach your benefits under the Plan before they are paid to you.

## XVII.  BENEFICIARY

If a participant dies after becoming eligible for severance benefits, but before such severance benefits are fully paid, any unpaid severance benefits will be paid in a single payment as soon as administratively practicable after the participant's death to the following person or persons, according to the following order of priority: (1) the participant's surviving spouse; then if none (2) the participant's surviving children (including adopted children) equally; then if none (3) the participant's surviving parents; then if none (4) the participant's estate or, if there is no estate in existence at the time the benefit is to be paid, to any person or persons the Firm reasonably believes to be responsible for winding up the participant's affairs.

## XVIII.  GOVERNING LAW

The Plan will be interpreted in accordance with the laws of the State of Delaware (determined without regard to any conflicts of law provisions), to the extent not preempted by federal law.

## XIX.  INDEMNIFICATION

The Firm will fully protect and indemnify each Firm partner and employee serving as a fiduciary of the Plan against any and all liabilities, damages, costs and expenses (including reasonable attorney's fees) incurred by such individual by reason of any act or failure to act made in good faith and consistent with the provisions of the Plan, including costs and expenses incurred in defense or settlement of any claim relating thereto.

## XX.  SEVERABILITY

Plan provisions are severable, so that if any Plan provision is held invalid or unenforceable that invalid or unenforceable provision will be severed from the Plan and the Plan will operate without regard to such severed provision.

## XXI.  HEADINGS

All headings and captions used in the Plan are used as a matter of convenience and for reference only, and they will not be considered in determining the scope or intent of the Plan or in interpreting or construing any Plan provisions.

* * * * * *

IN WITNESS WHEREOF, DENTONS US LLP has caused this amendment and restatement of the DENTONS US LLP STAFF SEVERANCE PAY PLAN to be executed by its duly authorized officer or representative as of the 20th day of July 2022.

DENTONS US LLP

By:

Buck Owen
Chief Operating Officer

**139**

# APPENDIX A

## SEVERANCE PAY CALCULATION SCHEDULE

| | | | |
|---|---|---|---|
| Non-Exempt | 2 weeks of base weekly wages | 1 week of base weekly wages per year of service | Minimum of 2 weeks of base weekly wages<br><br>Maximum of 20 weeks of base weekly wages |
| Exempt | 4 weeks of base weekly wages | 1 week of base weekly wages per year of service | Minimum of 4 weeks of base weekly wages<br><br>Maximum of 25 weeks of base weekly wages |

An employee who completes at least nine (9) months of service following the most recent anniversary of his/her date of hire is considered to have completed a year of service.

Minimum and maximum payment amounts, as outlined under Payment Parameters above, for both Non-Exempt and Exempt employees, includes the Base Payment of two and four weeks of base weekly wages, respectively.

In no event will severance pay exceed the maximum duration and amount permitted for involuntary separation pay plans by Treas. Reg. § 1.409A-1(b)(9)((iii) (or further or successor applicable regulations) under Section 409A of the Internal Revenue Code of 1986, or for welfare plans exempt from treatment as pension plans by DOL Reg. 29 C.F.R. § 2510.3-2(b) (or further or successor applicable regulations) under Section ERISA.

# EXHIBIT S

# DENTONS

**Dentons US LLP W2**
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
312-876-2624

REDACTED

**Pay Statement**

| | |
|---|---|
| Period Start Date | 10/01/2025 |
| Period End Date | 10/15/2025 |
| Pay Date | 10/08/2025 |
| Document | 001 |
| **Net Pay** | **$0.00** |

**Pay Details**

Adrianne Hankins

Bay Point, CA 94565
USA

| | | | | |
|---|---|---|---|---|
| | Number | 200464 | Pay Group | Employee Payroll |
| SSN | XXX-XX-XXXX | | Location | Oakland |
| Job | Lgl Admin Asst | | GL SECTION | 0001 - Default-US |
| Pay Rate | $58.36 | | GL LOCATION | 8029 - Oakland |
| Pay Frequency | Semi-Monthly | | GL DEPARTMNT | 5100 - Secretarial Services |
| | | | GL EMP GROUP | 12500 - Salaries-Secretarial |

## Earnings

| Pay Type | Date | Job | Hours | Pay Rate | Current |
|---|---|---|---|---|---|
| Straight Time | | | 0.000000 | $0.00 | $0.00 |
| Admin Time | | | 0.000000 | $0.00 | $0.00 |
| Retro Meal Pen | | | 0.000000 | $0.00 | $0.00 |
| Retro Overtime | | | 0.000000 | $0.00 | $0.00 |
| Retro Pay | | | 0.000000 | $0.00 | $0.00 |
| Retro Strt Time | | | 0.000000 | $0.00 | $0.00 |
| Merit Bonus | | | 0.000000 | $0.00 | $0.00 |
| Unpaid Time | | | 0.000000 | $0.00 | $0.00 |
| LOA Pay | | | 0.000000 | $0.00 | $0.00 |
| Profit Sharing | | | 0.000000 | $0.00 | $0.00 |
| Overtime | | | 0.000000 | $0.00 | $0.00 |
| CA PTO Adjust | | | 0.000000 | $0.00 | $0.00 |
| CA Meal Penalty | | | 0.000000 | $0.00 | $0.00 |
| Office Closure | | | 0.000000 | $0.00 | $0.00 |
| Holiday Time | | | 0.000000 | $0.00 | $0.00 |
| Paid Leave | | | 0.000000 | $0.00 | $0.00 |
| Paid Time Off | | | 0.000000 | $0.00 | $0.00 |
| Regular Pay | | | 0.000000 | $0.00 | $0.00 |
| Group Term Life | 10/15/2025 | Lgl Admin Asst | 0.000000 | $0.00 | $26.02 |
| HSA ER Contr | 10/15/2025 | Lgl Admin Asst | 0.000000 | $0.00 | $104.17 |
| Regular Pay | 10/15/2025 | Lgl Admin Asst | 0.000000 | $0.00 | $2,586.57 |

Total Hours Worked  0.000000          Total Hours  0.000000

## Deductions

**141**

**DENTONS**

Dentons US LLP W2
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
312-876-2624

| Pay Statement | |
|---|---|
| Period Start Date | 09/16/2025 |
| Period End Date | 09/30/2025 |
| Pay Date | 09/30/2025 |
| Document | 211703365 |
| **Net Pay** | **$2,179.51** |

**Message**

EXEMPT & NON-EXEMPT REG EARNINGS ARE PD CURRENT THROUGH 9/30. NON-EXEMPT OT HRS ARE PD 8/24 – 9/6.

**Pay Details**

REDACTED

ADRIENNE HANKINS          nber 200464

BAY POINT, CA 94565          SSN

USA

| | |
|---|---|
| Job | Lgl Admin Asst |
| Pay Rate | $58.36 |
| Pay Frequency | Semi-Monthly |

| | |
|---|---|
| Pay Group | Employee Payroll |
| Location | Oakland |
| GL SECTION | 0001 - Default-US |
| GL LOCATION | 8029 - Oakland |
| GL DEPARTMNT | 5100 - Secretarial Services |
| GL EMP GROUP | 12500 - Salaries-Secretarial |

SSN          XXX-XX-XXXX

**Earnings**

| Pay Type | Date | Job | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|---|---|
| Admin Time | | | 0.000000 | $0.00 | $0.00 | $786.37 |
| CA Meal Penalty | | | 0.000000 | $0.00 | $0.00 | $115.19 |
| CA PTO Adjust | | | 0.000000 | $0.00 | $0.00 | $551.00 |
| Group Term Life | 09/30/2025 | Lgl Admin Asst | | | $26.02 | $468.36 |
| Holiday Time | 09/30/2025 | Lgl Admin Asst | 7.500000 | $58.36 | $437.73 | $3,668.77 |
| HSA ER Contr | 09/30/2025 | Lgl Admin Asst | | | $104.17 | $1,875.06 |
| LOA Pay | | | 0.000000 | $0.00 | $0.00 | $7,874.40 |
| Merit Bonus | | | 0.000000 | $0.00 | $0.00 | $3,500.00 |
| Office Closure | 09/30/2025 | Lgl Admin Asst | 2.750000 | $58.36 | $160.50 | $204.27 |
| Overtime | | | 0.000000 | $0.00 | $0.00 | $385.88 |
| Paid Leave | 09/30/2025 | Lgl Admin Asst | 5.500000 | $58.36 | $321.00 | $3,636.05 |
| Paid Time Off | 09/30/2025 | Lgl Admin Asst | 2.750000 | $58.36 | $160.50 | $8,293.56 |
| Regular Pay | 09/30/2025 | Lgl Admin Asst | 62.750000 | $58.36 | $3,662.32 | $67,892.78 |
| Retro Meal Pen | | | 0.000000 | $0.00 | $0.00 | $1.54 |
| Retro Overtime | | | 0.000000 | $0.00 | $0.00 | $8.08 |
| Retro Pay | | | 0.000000 | $0.00 | $0.00 | $872.25 |
| Retro Strt Time | | | 0.000000 | $0.00 | $0.00 | $0.38 |
| Straight Time | | | 0.000000 | $0.00 | $0.00 | $28.42 |
| Unpaid Time | | | 0.000000 | $0.00 | $0.00 | ($1,091.62) |

**Total Hours Worked** 62.750000          **Total Hours** 81.250000

**142**

## Deductions

| Deduction | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|
| 401(K) Flat $ | Yes | $200.00 | $1,600.00 | $0.00 | $0.00 |
| 401K Loan 1 | No | $317.82 | $5,720.76 | $0.00 | $0.00 |
| 401K Loan 2 | No | $247.65 | $4,457.70 | $0.00 | $0.00 |
| Dental Pre Tax | Yes | $33.80 | $608.40 | $27.18 | $489.24 |
| Group Accident | No | $9.05 | $162.90 | $0.00 | $0.00 |
| Group Term Life | No | $26.02 | $468.36 | $0.00 | $0.00 |
| Grp Crit III EE | No | $33.60 | $604.80 | $0.00 | $0.00 |
| Grp Crit III Sp | No | $17.93 | $322.74 | $0.00 | $0.00 |
| Health Savings | Yes | $293.75 | $5,287.50 | $0.00 | $0.00 |
| HSA ER Contr | No | $104.17 | $1,875.06 | $0.00 | $0.00 |
| Medical Pre Tax | Yes | $120.43 | $2,167.74 | $641.31 | $11,543.58 |
| Personal Chgs | No | $0.00 | $71.74 | $0.00 | $0.00 |
| Roth Flat $ | No | $300.00 | $2,400.00 | $0.00 | $0.00 |
| Supp Life EE | No | $54.13 | $974.34 | $0.00 | $0.00 |
| Supp Life Sp | No | $10.83 | $194.94 | $0.00 | $0.00 |

## Taxes

| Tax | Current | YTD |
|---|---|---|
| Federal Income Tax | $385.91 | $9,675.37 |
| Employee Medicare | $62.64 | $1,292.41 |
| Social Security Employee Tax | $267.85 | $5,526.19 |
| CA State Income Tax | $150.85 | $3,984.02 |
| CA Disability Employee | $56.30 | $1,149.91 |

## Paid Time Off

| Plan | Taken | Current | Balance |
|---|---|---|---|
| Paid Time Off | 2.7500 | 0.0000 | 27.5000 |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx1018 | Checking | $250.00 |
| xxxxxxx0846 | Checking | $800.00 |
| xxxx6489 | Savings | $400.00 |
| xxxxxxxxx5805 | Checking | $650.00 |
| xxxxxx5064 | Checking | $79.51 |
| Total | | $2,179.51 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $4,872.24 | $4,120.09 | $923.55 | $1,769.18 | $2,179.51 |
| YTD | $99,070.74 | $87,532.04 | $21,627.90 | $26,916.98 | $50,525.86 |

**143**

# EXHIBIT T

## WAIVER AND RELEASE AGREEMENT

This Waiver and Release Agreement ("Waiver") is entered into between Dentons US LLP (the "Firm") and Adrienne Hankins (the "Employee").

WHEREAS, it is anticipated that the Employee's employment with the Firm will end effective October 8, 2025 ("Separation Date"), in accordance with the 2025 Business Services Staffing Review and Organizational Alignment Program ("Program");

WHEREAS, the Firm has determined that the Employee will receive severance pay under the Dentons US LLP Staff Severance Pay Plan (the "Plan") provided all other conditions of eligibility for the Employee to receive such severance pay are fulfilled and the Employee executes and complies with the terms of this Waiver; and

WHEREAS, the Employee acknowledges that the Employee is being offered the opportunity to receive severance pay from the Firm to which the Employee would not be otherwise entitled, in exchange for execution of this Waiver.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements set forth below, the parties hereby acknowledge and agree as follows:

1. <u>Severance Pay</u>. In consideration for the Employee's agreements contained herein, the Firm will pay the Employee a lump sum severance payment in an amount equivalent to 19 weeks' pay, based on the Employee's annual base salary in effect on the Employee's Separation Date, a total gross payment of $41,584.07, less applicable deductions, plus provide up to three months of career transition services. Depending upon the amount of time between the "Effective Date" of this Waiver as such term is defined below and the next regularly scheduled payroll date, the severance payment will be paid on either the next payroll date following the Effective Date or on the next payroll date thereafter.

2. <u>Final Wages and Paid Time Off</u>. In addition to the payment provided in Paragraph 1 above, the Employee will receive unpaid wages accrued during the final pay period for time worked through and including the Employee's Separation Date, as well as payment for any accrued but unused paid time off and whatever other benefits and payments to which the Employee is entitled by virtue of the Employee's service with the Firm up to and including the Separation Date pursuant to the terms of the applicable Firm benefit and incentive plans that do not relate to the severance payment. Except as specifically provided in this Waiver, the Employee understands that the Employee shall not be entitled to any other severance payment, benefits, or other consideration from the Firm.

3. <u>Waiver and Release</u>. In consideration for the payment described above in Paragraph 1 and to be provided to the Employee, the Employee, on behalf of the Employee and the Employee's heirs, executors, administrators and assigns, hereby waives, releases and forever discharges the

**144**

Firm and all affiliated entities, including, but not limited to, Dentons Group (a Swiss Verein) and its members, and all partners, supervisors, employees, agents, representatives, attorneys and their predecessors and successors, and all persons acting by, through or under any of them ("the Releasees") from any and all known or unknown causes of action, or liabilities of any kind which have been, or could be asserted, against the Releasees up to and including the date the Employee executes this Release, including but not limited to:

causes of action or liabilities arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Older Workers' Benefit Protection Act, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the US Equal Pay Act of 1963 and any equal and/or fair pay acts of any state, the Arizona Civil Rights Act, the California Fair Employment and Housing Act, the California Family Rights Act, the California Labor and Government Codes, the Colorado Anti-Discrimination Act, the Colorado Revised Statutes, the District of Columbia Human Rights Act, the District of Columbia Wage Payment and Wage Collection Law, the District of Columbia Wage and Hour Laws, the District of Columbia Family and Medical Leave Act, the Georgia Fair Employment Practices Act, the Georgia Age Discrimination Act, the Georgia Equal Employment for Persons with Disabilities Code, the Atlanta Human Relations Code, the Florida Civil Rights Act, the Hawaii Wage and Hour Laws, the Hawaii Family Leave Law, the Hawaii Employment Practices Law, the Hawaii Civil Rights Act, the Hawaii Discriminatory Practices Law, the Illinois Human Rights Act, the Chicago Human Rights Ordinance, the Cook County Human Rights Ordinance, the Louisiana Employment Discrimination Law, the Maryland Fair Employment Practices Act, the Maryland Parental Leave Act, the Fairness for all Marylanders Act, the Maryland Code, the Massachusetts Wage Act, the Massachusetts Fair Employment Practices Act, the Missouri Human Rights Act, the Missouri Service Letter Statute, the New Jersey Family and Medical Leave Act, the New Jersey Law Against Discrimination, the New Jersey Conscientious Employee Protection Act, the New York State Human Rights Law, the New York City Human Rights Law, the New York State Labor Law, the Texas Payday Law, the Texas Labor Code, the Virginians with Disabilities Act, and the Virginia Human Rights Act, as such Acts have been amended, and/or any other federal, state, municipal, or local employment statutes, ordinances or codes; and/or causes of action or liabilities arising under any other federal, state, municipal, or local statute, law, ordinance or regulation (including, but not limited to, claims based on age, sex, attainment of benefit plan rights, race, religion, national origin, marital status, sexual orientation, ancestry, harassment, parental status, handicap, disability, retaliation, and veteran status); and/or any other cause of action including, but not limited to, actions seeking compensation, retention or separation pay, except as provided for herein, actions based upon breach of contract, wrongful termination, defamation, intentional infliction of emotional distress, tort, personal injury, invasion of privacy, violation of public policy, negligence and/or any other common law, or other cause of action whatsoever arising out of or relating to employment with and/or separation from employment with the Firm and/or any of the other Releasees.

The Employee hereby agrees that this Waiver shall apply to all unknown or unanticipated claims resulting from the Employee's employment with the Firm and the Firm's termination of

**145**

Employee has had at least forty-five (45) days after receipt of this information and Waiver to consider whether to accept or reject this Waiver. The Employee understands that the Employee may voluntarily sign this Waiver prior to the end of such forty-five (45) day period, but is not required to do so. In addition, the Employee has seven (7) days after the Employee signs this Waiver to revoke it. Such revocation must be in writing and delivered either by hand, e-mail or mailed and postmarked within the seven (7) day period. If by email, send to antonia.alvarez@dentons.com; if by mail, send by certified mail, return receipt requested to Antonia Alvarez, Head of Human Resources, c/o Dentons US LLP, 2398 East Camelback Road, Suite 850, Phoenix, AZ 85016-9007. If the Employee revokes this Waiver as provided herein, it shall be null and void. If the Employee does not revoke this Waiver within seven (7) days after signing it, this Waiver shall become enforceable and effective on the eighth (8th) day after the Employee signs this Waiver ("Effective Date"). By Attachment A to this Waiver, the Employee has been informed in writing of the organizational unit affected by the Firm's 2025 Business Services Staffing Review and Organizational Alignment Program; the job titles and the ages of all affected individuals in the organizational unit and the job titles and the ages of all individuals in the organizational unit who were not affected; and the eligibility requirement for payment of severance pay.

10. Governing Law; Disputes. This Waiver shall be governed by, and construed and enforced in accordance with the laws of the State of California to the extent not covered by federal law.

11. Miscellaneous. No provision of this Waiver may be modified, waived, or discharged unless such waiver, modification, or discharge is agreed to in writing signed by the Employee and the Firm. This Waiver shall be enforced in accordance with its terms and shall not be construed against either party.

12. Counterparts. This Waiver may be executed in two counterparts, each of which shall be deemed to be an original but both of which together will constitute one and the same instrument.

13. Successors and Assigns. This Waiver binds and inures to the benefit of the Employee's heirs, administrators, representatives, executors, successors, and assigns, and the Firm's partners, employees, representatives, agents, successors, and assigns.

14. Entire Agreement - Termination of Prior Agreements. This Waiver contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby and supersedes any previous oral and written agreements or representations relating to the subject matters herein.

15. Compliance with Section 409A. The provisions of this Waiver shall be interpreted at all times to comply with applicable exemptions from the requirements of Section 409A of the Internal Revenue Code and guidance issued thereunder.

The Employee hereby acknowledges and agrees that the Employee has carefully read and fully understands all the provisions of this Waiver, has had an opportunity to seek counsel, and has voluntarily entered into this Waiver by signing below as of the date set forth below.

DENTONS US LLP

Dated:_____          By:_____
                                   Name:___Antonia Alvarez_____
                                   Title:_____Head of Human Resources____


Dated:_____          _____
                                      Adrienne Hankins

**149**

## ATTACHMENT A TO WAIVER AND RELEASE AGREEMENT

The following information is provided to comply with the Older Workers' Benefit Protection Act.

(a)    The organizational unit is composed of all Business Services Staff employees of Dentons US LLP (the "Firm").

(b)    All persons in the above organizational unit whose employment will be terminated in the 2025 Business Services Staffing Review and Organizational Alignment Program are eligible for severance pay.

(c)    This attachment includes a listing of (1) the ages and job titles of all persons in the organizational unit whose employment will be terminated in the 2025 Business Services Staffing Review and Organizational Alignment Program and who therefore are eligible to receive severance pay in consideration for signing a release of claims, and (2) the ages and job titles of all persons in the organizational unit not so selected.

(d)    All persons age forty (40) and over who choose to sign the Waiver and Release Agreement must sign the Waiver and Release Agreement and return it to Antonia Alvarez at the Firm within forty-five (45) days after receiving the Waiver and Release Agreement.  Once the Waiver and Release Agreement is signed, employees age forty (40) and over shall have seven (7) days to revoke the Waiver and Release Agreement.

# EXHIBIT U

**DENTONS**

# Dentons US LLP
# Employee Resource Guide

**DENTONS**

# DENTONS US LLP
## BUSINESS SERVICES EMPLOYEE GUIDE

| | |
|---|---|
| Introduction | 2 |
| HR & Payroll Contact Information | 3 |
| Employee Benefits | 4-6 |
| Payroll | 7 |
| Q&A | 9-10 |

**DENTONS**

# Employee Guide

This Employee Guide provides information and guidance that may be helpful.

Included herein you will find contact information for our HR representatives and an overview of the changes to your health and other benefits plans upon your transition from the Firm.

In addition to contacting your HR Business Partner, you can reach the HR team at dentonsushumanresources@dentons.com or toll-free at 833-220-2255.

**DENTONS**

## Who Can I Contact at Dentons?

| Contact | Phone | Email |
|---|---|---|
| Human Resources | (833) 220-2255 | dentonsushumanresources@dentons.com |
| **HR Business Partner** | | |
| **Tracy Wakup** | **(312) 876-8209** | tracy.wakup@dentons.com |
| **Laura Bethke** | **(213) 243-6183** | laura.bethke@dentons.com |
| Benefits & Wellness | | benefits@dentons.com |
| **Gary Cary** | **(312) 876-3141** | gary.cary@dentons.com |
| **Brenda Navarrete** | **(603) 508-3953** | brenda.navarrete@dentons.com |
| Payroll | | payroll@dentons.com |
| **Vanessa Ramirez** | **(312) 876-2624** | vanessa.ramirez@dentons.com |
| **Anne De Rosa** | **(312) 876 8146** | anne.derosa@dentons.com |
| **Barbie Kledzik** | **(312) 876-3182** | barbie.kledzik@dentons.com |

DENTONS

# What Happens To My Benefits

## Health Insurance

### A. Medical, Dental, and/or Vision Insurance

Medical, dental, and/or vision coverage ends on the last day of the month in which employment concludes. Those covered under the medical plan receive a Certificate of Creditable Coverage from your carrier that provides evidence of coverage. HealthEquity/WageWorks, the Firm's COBRA administrator, will mail a Notification of Continuation Rights under COBRA to the home address on file. This notice provides details about the rights to continue coverage under the medical, dental, and/or vision plan(s) pursuant to the provisions of COBRA. *Any questions regarding COBRA should be directed to HealthEquity/WageWorks at 888-678-4881.*

### B. Flexible Spending Accounts (FSAs)

Health Care, Limited Purpose and/or Dependent Care FSA plans end on the last day of the month in which employment concludes. *FSA cards are deactivated on the date the plan ends.* Participants may continue to submit paper claims for reimbursement until March 31st of the following year for expenses incurred up to the last day of the month in which employment concludes, but not after that date. Claim forms can be found at www.inspirafinancial.com.

Those covered under the Health Care or Limited Purpose FSA will receive a Notification of Continuation Rights under COBRA. HealthEquity/WageWorks, the Firm's COBRA administrator, will mail this notification to the home address on file. This notice provides details about the rights to continue coverage under the Health Care FSA pursuant to the provisions of COBRA. *Any questions regarding COBRA should be directed to HealthEquity/WageWorks at 877-502-6272.*

### C. Health Savings Account (HSA)

HSAs are portable and individually owned. Participants can take their HSA with them upon termination of employment and continue to use the funds that remain. Funds left in an HSA continue to grow tax-free. If an individual is later covered by a qualified High Deductible Health Plan, s/he can resume making contributions to their HSA. Note: enrollment in Medicare Part A and/or B makes you ineligible to contribute to an HSA. *Any questions regarding Health Savings Account (HSA) should be directed to Inspira Financial at 800-284-4885.*

## Life and AD&D Insurance

### A. Basic Life, Supplemental Life, and AD&D Insurance

Coverage under the Unum Basic Life, Supplemental Life, and AD&D plans end upon termination of employment. Participants have the option to either continue ("port") or convert their coverage. Those who wish to continue or convert coverage must apply within 31 days from the date coverage ends. Unum will mail portability and/or conversion forms to your home address shortly after your last day of employment.

**155**

DENTONS

**B. Travel/Accident Insurance**

Coverage under the Chubb Travel and Accident plan ends upon termination of employment.

**C. Accident Insurance**

Coverage under the Unum Accident Insurance plan ends upon termination of employment. Participants have the option to continue ("port") their coverage. Those who wish to continue coverage must apply within 31 days from the date coverage ends. Unum will mail portability forms to your home address shortly after your last day of employment.

**D. Critical Illness Insurance**

Coverage under the Unum Critical Illness Insurance plan ends upon termination of employment. Participants have the option to continue ("port") their coverage. Those who wish to continue coverage must apply within 31 days from the date coverage ends. Unum will mail portability forms to your home address shortly after your last day of employment.

**E. Long Term Care Insurance**

Coverage under the Unum Long Term Care plan ends on the last day of the month in which employment terminates. Participants have the option to continue their coverage. Those who wish to continue coverage must apply within 31 days from the date coverage ends. Unum will mail portability forms to your home address shortly after your last day of employment.

## Disability Insurance

**A. Short Term Disability Insurance**

Coverage under the Short-Term Disability plan ends upon termination of employment.

**B. Long Term Disability Insurance**

Coverage under the Unum Long Term Disability plan ends upon termination of employment. Participants may obtain converted disability insurance coverage if they have been insured for at least 12 consecutive months just before coverage under the plan ends. Those who wish to convert coverage must apply for and pay the first quarterly premium within 31 days from the date coverage ends. Unum will mail conversion forms to your home address shortly after your last day of employment.

## Commuter Benefits

### HealthEquity/WageWorks Commuter

If you have any remaining funds on your Transit Commuter card, you will have 90 days from termination date to use the funds. If you have remaining funds on your Parking Commuter Card or in your Pay Me Back balance, funds will be forfeited on termination date and cannot be reimbursed. *Any questions regarding Commuter Benefits should be directed to Health Equity/ WageWorks at 877-924-3967.*

DENTONS

## Retirement

### Retirement – 401(k) (Schwab)

401(k) Plan participants will receive a package from Schwab at the home address on file with information about their options, including rolling over their account to another employer's plan, rolling retirement funds into a personal IRA or taking a lump-sum distribution; you may also leave funds in the Plan subject to the Plan document. The money in your account will remain in the investments you previously selected and will continue to be subject to the market fluctuation. It is important that you continue to manage your account as you had while actively employed with Dentons.

If you leave the Firm and you have a 401(k) loan, your 401(k) loan(s) must be repaid in full within 80 days of termination or the date you receive a distribution of your entire account balance, whichever is earlier. It is important for you to contact Schwab directly at **(800) 724-7526** or **www.workplace.schwab.com**.

## Back-up Childcare

### Bright Horizons

Back-up child and eldercare will end upon termination of employment.

## PTO and Vacation

### Paid Time Off and Vacation

Accrued but unused PTO/Vacation will be paid no later than the payroll date following your last day.

## Other

### Pet Insurance (Nationwide)

Participants will transition to direct bill after the last day of employment. Nationwide will mail the bill directly to your home address. Nationwide can be reached at **800-540-2016**.

### LifeLock Identity Theft Protection

Norton LifeLock offers you the ability to continue to receive a membership at a discounted rate. In order to keep your membership, you must contact Norton LifeLock Member Services & Support at **800-607-9174** to provide a credit card for billing, and select from one of the retail plans available.

DENTONS

# How Do I Access My Pay and Tax Statements

## Accessing Pay and Tax Information

Through UKG Pro, our payroll provider, we are able to offer you access to your earnings statements 24 hours a day, 7 days a week via a secure internet website. The UKG Pro self-service portal enables you to view your pay statements and access your W-2's. You can access your account with the same login credentials you had as an active employee. This means you can view and print from your home or office at any time in the event you need them for your personal financial objectives. These features are available to you even after you leave the Firm.

UKG Pro is the Firm's payroll system which can be accessed here:
https://n14.ultipro.com/Login.aspx?ReturnUrl=%2fLogin

If you have never logged onto your UKG account or have questions concerning your pay statements or tax forms, please contact Vanessa Ramirez, Payroll Manager at vanessa.ramirez@dentons.com.

**158**

**DENTONS**

# Q&A

**Will my severance be paid as a lump sum or In installments?**

> Receipt of severance is subject to your executing and not revoking a Waiver and Release Agreement. Employee severance will be paid in a single lump payment via direct deposit. Payment will be on the first possible payroll date following your Waiver and Release Agreement becoming effective.

**When will my last day be?**

> Your last day of employment is October 8, 2025.

**When would I receive my severance payment?**

> A Waiver and Release Agreement is being provided to you as part of the notice meeting. Depending upon the amount of time between the effective date of the Agreement (as defined in the Waiver) and the next regularly scheduled payroll date, the severance payment will be paid either on the next payroll date following the effective date or on the next payroll date thereafter. Note: once the Waiver is signed, HR can advise of the date on which severance will be paid. If you do not sign the agreement within the specific allowed time, you will not be eligible to receive a severance payment.

**Do I need to consult a lawyer?**

> It is up to you. You may do so if you choose.

**What happens if I do not sign the Waiver and Release Agreement?**

> An employee who chooses not to sign their Waiver will not be eligible to receive a severance payment.

**Can I stay on payroll for the length of the severance?**

> No. Severance will be paid as a lump sum payment, as described above.

**If I receive a severance payment, will I still receive payout of my PTO/Vacation?**

> Yes, PTO will be paid in the pay period following your release date (unless required by law to be provided on your last day of employment).

**What happens to my health insurance benefits?**

> If you are currently enrolled in the Firm's health insurance benefits (medical, dental and/or vision), you will remain covered until the last day of the month in which you are employed. You will be eligible for continuation of coverage under COBRA thereafter. See the **What Happens To My Benefits** section for more information on your health insurance benefits.

**159**

DENTONS

**What happens to my life insurance, long-term disability, long-term care (LTC), accident, critical illness benefits?**

UNUM will contact you via US mail with paperwork regarding your life, LTC, disability, accident and critical illness policies. See **What Happens To My Benefits** section for more information on these benefits.

**Am I eligible for Medicare?**

Generally, Medicare is available for people age 65 or older, younger people with disabilities and people with End-Stage Renal Disease (permanent kidney failure requiring dialysis or transplant).

To find out if you are Medicare-eligible and to see your expected premium, visit the Medicare.gov Eligibility Tool page. If you or your spouse are Medicare eligible and have questions about how to enroll or the potential cost, Dentons has a dedicated Medicare consultant you can contact anytime, For more information, please email at MedicareHub@HUBInternational.com or call at 844-972-0228.

**When can I apply for Social Security?**

You may be able to start your Social Security benefit as early as age 62. To learn more about applying for Social Security you can visit the Retirement Benefits section of the Social Security website.

**Will I still receive my Profit Sharing contribution for 2025?**

In order to be eligible for the Profit Sharing contribution, you must be an employee as of December 31, 2025, or if your last day of employment occurs during the year after turning 65 years of age or due to disability or death.

**What happens to my 401(k) loan?**

Your 401(k) loan(s) must be repaid in full within 80 days following your last day of employment or the date you receive a distribution of your entire account balance, whichever is earlier. It is important for you to contact Schwab directly at **800-724-7526**. You may also contact Gary Cary at 312-876-3141 for benefits questions. See **What Happens To My Benefits** for more information on your 401(k) plan.

**If I receive a severance payment, will I still be eligible to collect unemployment insurance benefits?**

Eligibility for unemployment insurance benefits is determined by the various states, and not Dentons. However, the Firm will not contest claims for unemployment insurance benefits for affected employees. Generally, employees separated in a staff reduction are determined eligible for unemployment benefits by the states in which they've worked.

We recommend contacting your State unemployment department for further information and to apply. Click on "State's unemployment Insurance program".

DENTONS

You will most likely need to have the following information available when applying for unemployment insurance:

- Social Security number
- Home address and mailing address (if different)
- Telephone number
- Email address
- Your bank name, address, account number and routing number for direct deposit
- Your Dentons office address and phone number
- Dentons' EIN (federal taxpayer ID number): 36-1796730
- First and last day worked.

If you have questions or need assistance with your application, please contact the HR department at **833-220-2255** or email at dentonsushumanresources@dentons.com.

**Can I apply for another open position within the Firm?**

If there were to be an open position for which you are qualified, you could apply and be considered along with other qualified candidates.

**What should I tell a future employer about the reason for my departure?**

This is your decision. However, per Firm policy, if contacted for a verification of employment, HR will confirm your title and dates of employment only and state that it is HR policy to provide only that information. We will not confirm nor deny your stated reason for departure.

**What will the Firm say if called for a reference?**

As with the above, per Firm policy, if contacted for a verification of employment, HR will confirm your title and dates of employment only and state that it is HR policy to provide only that information. We will not confirm nor deny your stated reason for departure.

**How do I return my home access kit and/or other Firm equipment?**

The Firm will provide you with a FedEx mailing label and shipping materials so that you may ship any equipment, furniture or other Firm property from your home to your local office at the Firm's expense.

**With whom can I speak if I have specific questions or would like additional information about severance payments?**

You may direct all questions to the Human Resources Department. Please call **833-220-2255** or email at dentonsushumanresources@dentons.com.

Additionally, we encourage you to review the Staff Severance Pay Plan, a copy of which was recently made available to you.

**161**

# EXHIBIT V

# EXHIBIT W

HealthEquity | WageWorks

Adrienne Hankins
(0900705414)   AH

Home    Support    Logout

Home  ▸   One-Time Payments

## Make a One-Time Premium Payment

**Submission Confirmation**

We received your payment request. This confirmation verifies that you've authorized Wageworks to initiate an electronic payment from your bank account. Please print this page as a receipt of your submission.

This is a one-time payment request. Be sure to visit this site each time you wish to make an online payment. If you don't make a payment or your payment is returned, your account will be marked as unpaid. Make sure your payments are up-to-date because we can't guarantee that we'll be able to notify you in time for you to correct the issue — which could cause your coverage to end permanently.

IMPORTANT: Paying your premium directly does not guarantee coverage under your plan. If your employer/plan sponsor terminates the plan, your group health coverage may be terminated retroactively. If your plan is terminated, Wageworks can't guarantee a refund of your premium payment if they've already forwarded it to the employer/plan sponsor for payment on your behalf.

Payments are generally processed within three business days.

Reference Number: 52961043
Order Date: 10/23/2025
Total: $952.42
Routing Number: xxxxx1184
Account Number: xxxxx0846

## 162

REDACTED

▬▬▬▬▬▬
Bay Point, CA  94565
adrn.hankins@protonmail.com

October 10, 2025

By E-Mail

**Personal and Confidential**

Dentons US LLP
Head of Human Resources
2398 East Camelback Road, Ste.850
Phoenix, AZ  85016
Antonia Alvarez
antonia.alvarez@dentons.com

Dear Antonia,

I have received the Waiver and Release Agreement.  The severance agreement does not support my best interests.

First of all, I currently have two active medical conditions of which I am protected under FMLA and CFRA.  I am eligible and approved through February 13, 2026, which provides "job-protected" leave for my serious health conditions.

Secondly, Dentons has approved my ADAAA request for a reasonable accommodation to work remotely, through April 30, 2026, to accommodate my disabilities.

Finally, I am requesting to remain on Dentons payroll and keep my benefits in place for the duration of my leave.

Respectfully,
Adrienne Hankins

**163**

## Re: Dentons Staff Severance Pay Plan

From   adrn.hankins <adrn.hankins@protonmail.com>

To     antonia.alvarez@dentons.com

Date   Monday, October 13th, 2025 at 9:57 AM

Thank you.

Sent from ProtonMail mobile

-------- Original Message --------
On Oct 13, 2025, 9:54 AM, Alvarez, Antonia < antonia.alvarez@dentons.com> wrote:

I will have the reach work on the performance review.  For the private files, I will route your request to the appropriate team for handling.

Antonia Alvarez, MSHRM

Head of Human Resources

🔾 +1 602 508 3983  |  🔾 +1 708 285 1624

From: adrn.hankins <adrn.hankins@protonmail.com>
Sent: Monday, October 13, 2025 9:52 AM
To: Alvarez, Antonia <antonia.alvarez@dentons.com>
Subject: Re: Dentons Staff Severance Pay Plan

**164**

**[WARNING: EXTERNAL SENDER]**

Can you please provide the following docs, I need the requested information asap by Oct 17: 1) performance review 2024; 2) from my private profile all docs saved in Imanage 2022-2025.

thank you.

Sent from ProtonMail mobile

-------- Original Message --------
On Oct 10, 2025, 5:06 PM, Alvarez, Antonia < antonia.alvarez@dentons.com > wrote:

Hi Adrienne,

I wanted to address your concerns regarding your job protection under FMLA and ADA accommodation. To clarify, job protection would only apply if the decision to terminate your employment was related to your intermittent leave. In this case, the decision to eliminate your position was based solely on the organizational review and is unrelated to your intermittent leave or ADA accommodation.

Your ADA accommodation is applicable while you are employed, but as you are no longer employed with the Firm due to the organizational review, neither your accommodation nor your intermittent leave was the basis of the decision, and therefore, they are irrelevant in this context.

As outlined in your waiver and release agreement, you have 45 days from the date you received the waiver to decide whether you would like to accept or reject it.

Antonia

**165**

Antonia Alvarez, MSHRM

Head of Human Resources

℗ +1 602 508 3983  |  ⊗ +1 708 285 1624

---

**From:** adrn.hankins <adrn.hankins@protonmail.com>
**Sent:** Friday, October 10, 2025 9:23 AM
**To:** Alvarez, Antonia <antonia.alvarez@dentons.com>
**Subject:** Dentons Staff Severance Pay Plan

[WARNING: EXTERNAL SENDER]

Dear Antonia –

Please find attached letter.

Adrienne Hankins

## RE: Profit Sharing Contribution for 2025

From    antonia.alvarez@dentons.com <antonia.alvarez@dentons.com>

To      adrn.hankins<adrn.hankins@protonmail.com>

Date    Monday, October 13th, 2025 at 9:34 AM

Hi Adrienne –

Your separation would need to be due to disability for you to be eligible for profit sharing.  Your separation was not due to disability so you will not be eligible for profit sharing for 2025.

Antonia Alvarez, MSHRM

Head of Human Resources

☎ +1 602 508 3983  |  ✎ +1 708 285 1624

[WARNING: EXTERNAL SENDER]

Dear Antonia, with regards to Profit Sharing Contribution, due to my disability, in the Employee Resource packet, page 9, it states I am eligible to receive the contribution.

Please advise.

Thank you!
Adrienne Hankins

Sent from ProtonMail mobile

**From:** adrn.hankins <adrn.hankins@protonmail.com>
**Sent:** Saturday, October 11, 2025 11:13 AM
**To:** Alvarez, Antonia <antonia.alvarez@dentons.com>
**Subject:** Profit Sharing Contribution for 2025

# EXHIBIT W

**HealthEquity** | **WageWorks**

Adrienne Hankins
(0908705414)  AH

My Account    One-Time Payments    My Resources    My Notices

Home  >  One-Time Payments

# Make a One-Time Premium Payment

**Submission Confirmation**

We received your payment request. This confirmation verifies that you've authorized Wageworks to initiate an electronic payment from your bank account. Please print this page as a receipt of your submission.

This is a one-time payment request. Be sure to visit this site each time you wish to make an online payment. If you don't make a payment or your payment is returned, your account will be marked as unpaid. Make sure your payments are up-to-date because we can't guarantee that we'll be able to notify you in time for you to correct the issue — which could cause your coverage to end permanently.

**IMPORTANT:** Paying your premium directly does not guarantee coverage under your plan. If your employer/plan sponsor terminates the plan, your group health coverage may be terminated retroactively. If your plan is terminated, Wageworks can't guarantee a refund of your premium payment if they've already forwarded it to the employer/plan sponsor for payment on your behalf.

Payments are generally processed within three business days.

Reference Number: 52961043
Order Date: 10/23/2025
Total: $952.42
Routing Number: xxxxx1184
Account Number: xxxxx0846

**162**

# EXHIBIT X

**BALOGH LAW LTD.**
6680 Alhambra Ave., Ste 101
Martinez, CA 94553
925-575-8056



Jason Balogh
jason@baloghlaw.com
510-473-2697 (direct)

November 10, 2025

Antonia Alvarez
Head of Human Resources
Dentons US LLP
2398 East Camelback Road, Suite 850
Phoenix, AZ 85016-9007
antonia.alvarez@dentons.com

### RE: Adrienne Hankins Demand Letter for Severance and Benefits

Dear Ms. Alvarez:

I represent Adrienne Hankins ("Adrienne" or "my client"), who served as a legal administrative assistant at Dentons US LLP in Oakland, California, for over seventeen years. This letter constitutes a formal demand for enhanced severance and benefits in connection with her recent termination. Specifically, Adrienne demands payment of **52 weeks of severance, one year of paid health insurance coverage, and inclusion in the 2025 profit sharing contribution**, with confirmation of all terms by **November 14, 2025**. If Dentons US LLP fails to comply by this date, Adrienne will pursue all available legal remedies, including but not limited to claims for disability discrimination, age discrimination, retaliation, and wrongful termination.

Adrienne dedicated more than seventeen years to Dentons US LLP, consistently performing at an exceptional level as a legal administrative assistant in the Oakland, Walnut Creek, and San Francisco offices. Throughout her tenure, she received outstanding performance reviews and was recognized by attorneys and colleagues for her professionalism, reliability, and value to the firm.

During her employment, Adrienne sustained multiple repetitive motion injuries directly attributable to her job duties. These injuries, documented over several years, include cervical and lumbar spine injuries, right and left shoulder injuries, and right upper extremity impairments. Despite chronic pain, she maintained her work responsibilities, using paid time off only for necessary medical appointments until the pain became unmanageable in recent years.

In the past two years, as her injuries worsened, Adrienne obtained FMLA leave to address her serious health conditions. She had requested, and the week prior to her termination was approved for full work-from-home medical accommodation. Nevertheless, on October 8, 2025, while still on FMLA leave and immediately following Denton's approval of her accommodation, Dentons US LLP terminated her employment as part of a workforce reduction.

During her tenure at Dentons US LLP, Adrienne Hankins was subjected to repeated harassment, discriminatory conduct, and retaliatory behavior by her direct supervisor, Ashley Coker. This conduct included repeated demands that Ms. Hankins disregard medical advice to work additional days in the office while injured and she made threatening gestures towards her. Ms. Coker's conduct materially affected the terms and conditions of Ms. Hankins' employment and contributed to a hostile work environment, in violation of California law.

**169**

Dentons US LLP
November 10, 2025
Page 2 of 4

At the time of her termination, Adrienne was 57 years old and facing ongoing medical needs, including scheduled procedures and care for her own injuries as well as her husband's cancer treatment, both of which require continued health insurance coverage. She was offered 19 weeks of severance, which does not reflect her long-standing contributions, the circumstances of her separation, or her ongoing medical and financial needs.

Adrienne's record of service, the timing of her termination, and the context of her medical accommodations and protected leave form the basis for this demand.

The Dentons US LLP Staff Severance Pay Plan ("Severance Plan") governs severance benefits for employees affected by workforce reductions. Under the Plan, eligible employees are entitled to severance based on years of service, with a cap of 20 weeks for non-exempt and 25 weeks for exempt staff. However, the Plan expressly reserves Dentons US LLP's discretion to enter into severance arrangements on terms different from those set forth in the Plan, including enhanced severance and benefits, where warranted by the circumstances.

The Employee Resource Guide confirms that health insurance coverage ends on the last day of the month in which employment terminates, with COBRA continuation available at the employee's expense unless otherwise negotiated. The Guide further provides that employees are eligible for a profit sharing contribution for the year if their employment ends due to disability, as documented by medical evidence and work status reports.

Adrienne's situation is exceptional. She suffered multiple, well-documented repetitive motion injuries during her employment, resulting in chronic pain and permanent impairment. She was approved for FMLA leave to address her serious health conditions and, immediately prior to her termination, was granted a full work-from-home medical accommodation. Despite these accommodations and her ongoing medical needs, Dentons US LLP terminated her employment, while she was still on protected leave.

Federal and California law provide robust protections against discrimination and retaliation in employment. The California Fair Employment and Housing Act (FEHA) prohibits discrimination and retaliation based on disability and age, and requires employers to provide reasonable accommodations to qualified employees (California Government Code §§ 12940, 12945.2). The Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA) provide similar protections at the federal level (42 U.S.C. §§ 12101 et seq.; 29 U.S.C. §§ 621 et seq.). The Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA) prohibit interference with protected leave and retaliation for exercising leave rights (29 U.S.C. § 2615; Cal. Gov. Code § 12945.2).

Courts have recognized that adverse employment actions taken shortly after an employee requests or receives a medical accommodation or protected leave may support claims for disability discrimination, retaliation, and wrongful termination in violation of public policy. See, e.g., Stevenson v. Superior Court, 16 Cal.4th 880, 889-90 (1997); Diaz v. Federal Express Corp., 373 F. Supp. 2d 1034, 1050-51 (C.D. Cal. 2005). The timing of Adrienne's termination—immediately following her request for and approval of a medical accommodation, and while on FMLA leave—raises a strong inference of unlawful motive.

**170**

Dentons US LLP
November 10, 2025
Page 3 of 4

Further. Dentons US LLP's own policies and procedures require supervisors to foster an equitable work environment and prohibit harassment, discrimination, and retaliation. The failure to prevent and address Ms. Coker's conduct represents a breach of these obligations and exposes the Firm to liability for both direct and vicarious harassment.

Given Adrienne's long tenure, exemplary performance, documented disability, and the circumstances of her termination, the default severance offer is inadequate. The Plan's discretionary provision, combined with the significant legal exposure Dentons US LLP faces under state and federal law, justifies the enhanced severance, health insurance, and profit sharing demands set forth below.

In light of the facts and legal authority outlined above, Adrienne hereby demands the following as a condition for resolving all claims arising from her employment and separation from Dentons US LLP:

- **Payment of 52 weeks of severance pay**, calculated at her base weekly wage in effect as of her termination date, to be paid in a single lump sum no later than November 14, 2025.

- **Payment of one year of employer-paid health insurance coverage**, including medical, dental, and vision benefits, for Adrienne and her covered dependents, commencing immediately upon the expiration of her active coverage and continuing through October 31, 2026.

- **Inclusion in the 2025 profit sharing contribution**, consistent with the Employee Resource Guide's provision for employees whose employment ends due to disability, with payment to be made on the same schedule as for active employees.

Adrienne requires written confirmation of Dentons US LLP's agreement to these terms by **November 14, 2025.** If Dentons US LLP fails to provide such confirmation by the deadline, Adrienne will consider the offer rejected and reserves her right to pursue all available legal remedies, including but not limited to claims for disability discrimination, age discrimination, retaliation, and wrongful termination under FEHA, ADA, ADEA, FMLA, and related statutes.

This demand is made in good faith and with the intent to resolve all disputes efficiently and without litigation.

The facts and timing of Adrienne's termination expose Dentons US LLP to substantial liability under multiple state and federal statutes. First, the California Fair Employment and Housing Act (FEHA) and the Americans with Disabilities Act (ADA) prohibit discrimination and retaliation against employees with disabilities, and require employers to provide reasonable accommodations to qualified individuals. Adrienne Hankins was terminated immediately after requesting and receiving a full work-from-home medical accommodation, and while on FMLA leave for documented, work-related injuries. This sequence of events strongly supports claims for disability discrimination and retaliation under both FEHA and ADA (California Government Code § 12940; 42 U.S.C. § 12112).

**171**

Dentons US LLP
November 10, 2025
Page 4 of 4

Second, the Age Discrimination in Employment Act (ADEA) and FEHA prohibit adverse employment actions based on age. At 58 years old and with over seventeen years of service, Adrienne falls squarely within the protected class. The proximity of her termination to her protected leave and accommodation, combined with her age and long tenure, further supports a claim for age discrimination (29 U.S.C. § 623; Cal. Gov. Code § 12941).

Third, the Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA) prohibit employers from interfering with, restraining, or retaliating against employees for exercising their rights to protected leave (29 U.S.C. § 2615; Cal. Gov. Code § 12945.2). Terminating an employee while on FMLA/CFRA leave, especially after granting a medical accommodation, is a textbook basis for a retaliation claim.

Finally, California law recognizes a cause of action for wrongful termination in violation of public policy, including terminations based on disability, age, or protected leave. The Supreme Court of California has held that such claims are actionable when grounded in statutes like FEHA and the ADEA (*Stevenson v. Superior Court*, 16 Cal.4th 880, 889-90 (1997)).

If this matter proceeds to litigation, Dentons US LLP faces the risk of significant compensatory damages, statutory penalties, attorneys' fees, and reputational harm. The evidence of pretext and retaliatory motive is compelling, and the legal exposure far exceeds the cost of resolving this matter on the terms demanded.

Adrienne reiterates her demand for **payment of 52 weeks of severance, one year of employer-paid health insurance, and inclusion in the 2025 profit sharing contribution**, with written confirmation of these terms by **November 14, 2025.**

Sincerely yours,

*Jason Balogh*
Jason Balogh

**172**

# EXHIBIT Y

**DENTONS**

Katharine E. Mellon
Partner and Deputy General Counsel

katharine.mellon@dentons.com
D   +1 312-876-8162

Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606-6361
United States

dentons.com

December 1, 2025

Jason Balogh, Esq.
Balogh Law LTD.
6680 Alhambra Ave., Ste 101
Marinez, CA 94553

Via Email: jason@baloghlaw.com

Re:    Adrienne Hankins

<u>**Confidential Settlement Communication**</u>

Dear Jason,

I write in response to your November 10, 2025 letter.

We have reviewed your allegations regarding Adrienne Hankins's inclusion in Dentons US LLP ("Dentons" or the "Firm") recent reduction-in-force and your claims of "repeated harassment, discriminatory conduct and retaliatory behavior" by her supervisor Ashley Coker.

We have found no support for your assertion that the Firm's treatment of Ms. Hankins was based on her disability, age, retaliation or any other proscribed reason. Rather, the Firm's decision to include Ms. Hankins in the RIF was based on legitimate nondiscriminatory business reasons.

Consistent with our Firm's long-term strategic priorities, this past summer the Firm completed a comprehensive review of our administrative and professional services staffing across the country. Among other things, the Firm concluded that two Legal Administrative Assistant roles would be eliminated from the Oakland office. After careful consideration, Ms. Hankins was one of those selected. Factors considered included the overall operational impact of the role eliminations. The determination was made that reassigning the work of the attorneys to whom Ms. Hankins and one other Legal Administrative Assistance were assigned would be the least disruptive decision to be made, given the need for continued operational efficiency. Material to the determination that Ms. Hankins would be one of the two was that she had repeatedly made statements to others in the Oakland office that she planned to retire soon. Thus, in contrast to the Legal Administrative Assistants who were retained, the likelihood was that Ms. Hankins would soon leave, causing future disruption in work assignments and the unnecessary layoff of an employee who had not signaled a forthcoming plan to leave employment. Thus, based on the anticipated lack of disruption in reassigning her attorneys and, in the context of her previous statements regarding an approaching retirement, the concern that she would soon retire if retained at that time, Ms. Hankins was selected.

Puyat Jacinto & Santos ▶ Link Legal ▶ Zaanouni Law Firm & Associates ▶ LuatViet ▶ For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

US_ACTIVE\131788228\V-1

**173**

**DENTONS**

December 1, 2025
Page 2

dentons.com

Regarding your allegations that Ashley Coker subjected her to harassment, discriminatory conduct, and retaliatory behavior, the Firm has no record of Ms. Hankins ever having made a complaint against Ms. Coker during her employment, whether harassment or discrimination or any other complaint, to Human Resources, the Office of General Counsel or anyone in leadership.

We do agree that throughout her tenure Ms. Hankins requested and was granted multiple leaves of absence and workplace accommodations. From November 31, 2023, through November 30, 2024, Hankins requested — and was granted — a reduced schedule of 3 days a week; subsequently, she requested, and was also granted, a reduced schedule of 4 days a week. Throughout the period, she also requested and was granted intermittent leave three times a month for appointments. We have found no support for the allegation that Ms. Hankins' supervisor, Ms. Coker, made repeated demands that Ms. Hankins disregard medical advice.

Your suggestion that Ms. Hankins was among those whose position was included in the reduction-in-force due to her request for a remote work accommodation is demonstrably not the case. Ms. Hankins was identified for inclusion in the reduction-in-force prior to her request for full work-from-home medical accommodation. Notably, two of the Legal Administrative Assistants in the Oakland office who were not selected for the reduction-in-force had previously requested and were granted remote work accommodations.

The claim that Ms. Hankins was selected for the reduction-in-force because of her age is also unsubstantiated, given the undisputable facts. As you state in your email, Ms. Hankins was 57 years old at the time of her termination. 173 of the Business Services Staff employee from amongst whom layoff decisions were made and not selected for layoff were the same age or older than Ms. Hankins; 73 of the Legal Administrative Assistants from amongst whom layoff decisions were made and not selected for layoff were the same age or older than Ms. Hankins; and the five Legal Administrative Assistants in Oakland who were not selected for layoff were ages 71, 70, 67, 61, and 52.

We are of the strong view that the actual record regarding Ms. Hankins and Dentons will not support the claims you have asserted in your November 10, 2025 letter. If Ms. Hankins were to decide to file litigation, Dentons will vigorously defend against her claims.

Again, Ms. Hankins was selected for the Firm's reduction-in-force for legitimate and non-discriminatory business reasons. We have found no evidence of discrimination, harassment, retaliation, hostile work environment, or any other conduct that could support a viable claim against the Firm. If you believe such evidence exists, I would be happy to discuss it with you.

We reserve all rights.

Very truly yours,

*Katharine Mellon*

Katharine E. Mellon
Partner and Deputy General Counsel

**174**

# EXHIBIT Z



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**
KEVIN KISH, DIRECTOR
661 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

December 8, 2025

RE:   **Notice of Filing of Discrimination Complaint**
        CRD Matter Number: 202512-32531508
        Right to Sue: Hankins / Dentons US LLP et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

**175**

CRD - ENF 80 RS (Revised 2025/11)

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
Civil Rights Department
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

In the Matter of the Complaint of

Adrienne Hankins

CRD No. 202512-32531508

Complainant,

vs.

Dentons US LLP
233 South Wacker Drive
Chicago, IL 60606

Dentons US LLP
1999 Harrison Street, Suite 1210
Oakland, CA 94612

Respondents

1. Respondent **Dentons US LLP** is an employer subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant is naming **Dentons US LLP** business as Co-Respondent(s).

3. Complainant **Adrienne Hankins**, resides in the City of **Bay Point**, State of **CA**.

4. Complainant alleges that on or about **December 1, 2025**, respondent took the following adverse actions:

Complainant was harassed because of complainant's age (40 and over), disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

Complainant was discriminated against because of complainant's age (40 and over), disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies and as a result of the discrimination was terminated, laid off, denied accommodation for a disability, denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

-1-
*Complaint – CRD No. 202512-32531508*

Date Filed: December 8, 2025

CRD-ENF 80 RS (Revised 2025/11)

1

2  **Complainant experienced retaliation** because complainant requested or used a disability-
related accommodation, requested or used family care and medical leave (cfra) related to

3  serious health condition of employee or family member, child bonding, or military exigencies
and as a result was terminated, laid off, denied family care and medical leave (cfra) related

4  to serious health condition of employee or family member, child bonding, or military
exigencies.

5

6  **Additional Complaint Details:** Complainant was terminated on October 8, 2025 apparently
due to a RIF.  There were 5 other Legal Administrative Assistants, Supv. Coker could have

7  terminated any one of us, we all had very similar skill sets and tenure at DENTONS, Supv.
Coker could have selected any one of them, but she selected me, the employee with injuries

8  and on an approved leave with a reduced schedule due to FMLA, CFRA and was granted
an approved full remote work from home ADAAA accommodation and terminated the day

9  the accommodation was to begin.  It appears discriminatory due to Plaintiff's medical
disability.  It seems as though Supv. Coker made the decision to terminate Plaintiff's position

10  due to Plaintiff's health condition and multiple medical appointments attended per weekly
basis.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-
Complaint – CRD No. 202512-32531508

Date Filed: December 8, 2025

**177**

CRD-ENF 80 RS (Revised 2025/11)

1  VERIFICATION

2  I, **Adrienne Hankins**, am the **Complainant** in the above-entitled complaint.  I have
   read the foregoing complaint and know the contents thereof. The matters alleged are
3  based on information and belief, which I believe to be true. The same is true of my
4  own knowledge, except as to those matters which are therein alleged on information
   and belief, and as to those matters, I believe it to be true.
5
6  On December 8, 2025, I declare under penalty of perjury under the laws of the State
   of California that the foregoing is true and correct.
7
                                                        **Bay Point California**
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                            -3-
                            Complaint – CRD No. 202512-32531508
27
   Date Filed: December 8, 2025
28
                                    **178**                    CRD-ENF 80 RS (Revised 2025/11)

## PROOF OF SERVICE BY FIRST CLASS-MAIL
### CRD CIVIL RIGHTS DEPARTMENT
### CRD MATTER #202512-32531508

I am over 18 years of age.  I am a resident in the county where the mailing took place.

My residence address is: 807 Dodd Court, Bay Point, CA  94565.

On December 8, 2025: I mailed from Bay Point, California: the following documents California Civil Rights Department,

- Notice of Filing of Discrimination Complaint; and Notice of Right to Sue:

a. depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.

The envelope was addressed and mailed as follows:

- a.  Katharine E. Melion, Partner and Deputy General Counsel, Dentons US LLP, 233 South Wacker Drive, Suite 5900, Chicago, IL  60606
- b.  Ashley Coker, Staff Supervisor, Dentons US LLP, 1999 Harrison Street, Suite 1210, Oakland, CA  94612

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 8, 2025

Adrienne Hankins

*(signature)*

## PROOF OF SERVICE BY FIRST CLASS-MAIL
### CRD CIVIL RIGHTS DEPARTMENT
### CRD MATTER #202512-32531508

## 179

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda

**12/18/2025**

Chad Finke, Executive Officer / Clerk of the Court

By_____A. Gospel_____Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

DENTONS US LLP, ASHLEY COKER, KATHARINE E. MELLON, AND DOES 1-20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ADRIENNE HANKINS, an individual

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Alameda County Superior Court

1225 Fallon Street, Oakland, CA 94612

CASE NUMBER:
*(Número del Caso):*

**25CV160714**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
ADRIENNE HANKINS, 807 DODD COURT, BAY POINT, CA 94565

DATE: 12/18/2025              Clerk, by _____, Deputy
*(Fecha)* Chad Finke, Executive Officer / Clerk of the Court  *(Secretario)*          *(Adjunto)*
A. Gospel

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☑ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

Print this form    Save this form    Clear this form

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>12/18/2025<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Andre Boyd_ Deputy<br>A. Gospel |
| PLAINTIFF(S):<br>Adrienne Hankins, an individual | |
| DEFENDANT(S):<br>DENTONS US LLP et al | |
| **NOTICE OF CASE ASSIGNMENT** | CASE NUMBER:<br>25CV160714 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

ASSIGNED JUDGE: Peter Borkon
DEPARTMENT: 15
LOCATION: Rene C. Davidson Courthouse
Administration Building, 1221 Oak Street, Oakland, CA 94612
PHONE NUMBER: (510) 267-6931
FAX NUMBER:
EMAIL ADDRESS: Dept15@alameda.courts.ca.gov

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedures section 170.6 must be exercised within the time period by law. (See Code of Civ. Proc. §§ 170.6, subd. (a.)(2) and 1013)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording. Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

GENERAL PROCEDURES

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the Rene C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544 and through Civil e-filing. Information regarding Civil e-filing can be found on the courts website. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

**ASSIGNED FOR ALL PURPOSES TO**

**JUDGE** Peter Borkon

**DEPARTMENT** 15

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processed (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days." The court's website contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

COURT RESERVATIONS

The use of the Court Reservation System (CRS) is now mandated in many civil courtrooms within the Alameda County Superior Court. Instead of calling or emailing the courtroom to make a reservation, parties with a case assigned to a courtroom using CRS are directed to utilize CRS to make and manage their own reservations, within parameters set by the courtrooms. CRS is available 24 hours a day, seven days a week and reservations can be made from a computer or smart phone. Please note, you are prohibited from reserving more than one hearing date for the same motion.

Prior to scheduling any motion on CRS, including any Applications for Orders for Appearance and Examination, or continuing any motion, please review the online information (if any) for the courtroom in which you are reserving. There may be specific and important conditions associated with certain motions and proceedings. Information is available on the court's eCourt Public Portal at www.eportal.alameda.courts.ca.gov.

Chad Finke, Executive Officer / Clerk of the Court

By

A. Gospel, Deputy Clerk

**NOTICE OF CASE ASSIGNMENT**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>12/18/2025<br>Clad Finke, Executive Officer / Clerk of the Court<br>By: _Andre' Gospel_ Deputy<br>A. Gospel |
| PLAINTIFF:<br>Adrienne Hankins, an individual | |
| DEFENDANT:<br>DENTONS US LLP et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>25CV160714 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

> Date: 05/19/2026    Time: 2:30 PM    Dept.: 15
>
> Location: Rene C. Davidson Courthouse
> Administration Building, 1221 Oak Street, Oakland, CA 94612

TO DEFENDANT(S)/ATTORNEY(S) FOR DEFENDANT(S) OF RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer,** in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

Expedited Jury Trials

> If the parties agree, they may try the case in an Expedited Jury Trial. Code of Civ. Proc. § 630.01 et seq. In short, the parties would agree to the following: 8 jurors (6 must agree); 3 peremptory challenges per side; 5-hour time limit per side, unless otherwise agreed and approved; one to two court days for completion, unless otherwise agreed and approved; high/low arrangement option; and limited right to appeal. For additional information, please see the following links:
>
> - EJT-010-INFO* Expedited Jury Trial Information Sheet (ca.gov)
> - EJT-008 Agreement of Parties (Mandatory Expedited Jury Trial Procedures) (ca.gov)
> - EJT-020 [Proposed] Consent Order for Voluntary Expedited Jury Trial (ca.gov)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA CIV-100 [Rev. 10/2021]

**NOTICE OF
CASE MANAGEMENT CONFERENCE**

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>12/18/2025<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _André Gospel_ Deputy<br>A. Gospel |
| PLAINTIFF/PETITIONER:<br>Adrienne Hankins, an individual | |
| DEFENDANT/RESPONDENT:<br>DENTONS US LLP et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>25CV160714 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the attached document upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Adrienne Hankins, an individual
807 Dodd Court
Bay Point, CA 94612

Chad Finke, Executive Officer / Clerk of the Court

Dated: 12/22/2025

By:

_André Gospel_

A. Gospel, Deputy Clerk

**CERTIFICATE OF MAILING**

ADRIENNE HANKINS
807 Dodd Court
Bay Point, CA  94565
Phone Number: 650-291-7369
Fax Number:  925-709-3096
Email:  adrn.hankins@protonmail.com

ADRIENNE HANKINS, IN PRO PER

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**12/18/2025 at 05:20:50 PM**
By: Andrel Gospel,
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

ADRIENNE HANKINS, an individual,

Plaintiff,

vs.

DENTONS US LLP, ASHLEY COKER, KATHARINE E. MELLON, and DOES 1 through 20, inclusive,

Defendants.

Case No.: 25CV160714

**COMLAINT FOR:**

1. **Wrongful Termination in Violation of ADA Amendments Act (Americans with Disabilities Act Amendments) (Gov. Code § 12940 (m))**

2. **Retaliation in Violation of ADA Amendments Act (Americans with Disabilities Act Amendments) (Gov. Code § 12940 (m))**

3. **Wrongful Termination and Retaliation in Violation FMLA (Family Medical Leave Act) (29 U.S.C § 2615)**

4. **Wrongful Termination in Violation of CFRA (California Family Rights Act) (Gov. Code § 12945.2)**

5. **Violation of ADEA (Age Discrimination in Employment Act) (29 U.S.C. § 623; Gov. Code § 12940)**

6. **Wrongful Termination in Violation of FEHA (Fair Employment and Housing Act) (Gov. Code §§ 12940, 12945.2)**

7. **Retaliation in Violation of FEHA (Fair Employment and Housing Act) (Gov. Code §§ 12940, 12945.2)**

(continues on next page)

- 1 -
**COMPLAINT**

1

2

3

4

5

6

7

8

9

10   //

11   //

12   //

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

8.  Harassment in Violation of FEHA (Gov.
    Code §§ 12940, 12945.2)

9.  Wrongful Discharge in Violation of
    Internal Policy

10. Negligent Infliction of Emotional Distress

    **DEMAND FOR JURY TRIAL**

- 2 -
**COMPLAINT**

## I.  NATURE OF ACTION

1.    Plaintiff ADRIENNE HANKINS ("Plaintiff"), an individual demanding a jury trial, brings action against DENTONS US LLP, ASHLEY COKER, KATHARINE E. MELLON and DOES 1 through 20, inclusive, (collectively "Defendants"), to remedy and redress Defendants' employment practices and policies of wrongful termination, harassment and discrimination, retaliation, failure to prevent discrimination and harassment and other unlawful conduct.

## II.  JURISDICTION AND VENUE

2.    This Court has jurisdiction in this matter because Plaintiff is a resident of the State of California and Defendants regularly conduct business in, Alameda County in the State of California.

3.    Venue is proper in the of County of Alameda because Plaintiff was employed for Defendants in the County of Alameda, and the unlawful actions and omissions, set forth herein, occurred in the County of Alameda.

## III.  PLAINTIFF

4.    Plaintiff is a resident of the State of California.  At all relevant times herein, Plaintiff was employed by Defendants and Does 1-20 in the County of Alameda, State of California.

## IV.  DEFENDANTS

5.    Plaintiff is informed and believes and thereon alleges that at all relevant times herein, Defendant DENTONS US LLP (hereinafter "DENTONS" or "The Firm") is a global law firm with an office in Alameda County of approximately 40 employees, 1999 Harrison Street, Suite 1210, Oakland, California 94612.

6.    Plaintiff is informed and believes and thereon alleges that at all relevant times herein, that Defendant Ashley Coker (herein "Coker") is the staff manager at DENTONS, 1999 Harrison Street, Suite 1210, Oakland, California 94612.

7.    Plaintiff is informed and believes and thereon alleges that at all relevant times herein, that Defendant Katharine E. Mellon (hereinafter "Mellon") is a Partner and Deputy General Counsel at DENTONS.

8.     The true names and capacities of DOES 1 through 20, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants under fictitious names.  Plaintiff is informed and believes, and thereon alleges, that each Defendant designated as a DOE is responsible for the events and happenings referred to herein, and legally caused the injuries and damages alleged in this Complaint. All claims against Defendants are therefore also pled against Does 1 through 20.  Plaintiff will seek leave of the court to amend this Complaint to allege their true names and capacities when ascertained.

9.     Plaintiff is informed and believes and thereon alleges that each and every defendant was the authorized agent, principal, partner, joint venture, guarantor, actual or ostensible, of the other defendants and had full authority to do as alleged herein, unless alleged otherwise. Furthermore, each and every defendant was operating within the course and scope of their agency, or as a principal, partner, joint venture, guarantor, actual or ostensible, relationship with the other defendants during the course of events described herein unless alleged otherwise. Whenever reference is made in this complaint to any act or failure by a defendant or defendants, such allegations and reference shall also be deemed to mean the acts and failures of each defendant acting individually, jointly, and severally, unless alleged otherwise. Whenever reference is made to individuals who are not named as a defendant in this complaint, but who were employees of Defendants such individuals acted on behalf of Defendants within the course and scope of their employment.

## V. **STATEMENT OF FACTS**

10.     Plaintiff was hired as a legal secretary at DENTONS (*formerly Sonnenschein Nath & Rosenthal, SNR Denton*) on March 10, 2008.  Plaintiff dedicated more than seventeen years to DENTONS, consistently performing at an exceptional level as a legal administrative assistant (hereinafter "LAA", *title changed from legal secretary to legal administrative assistant*). Throughout her tenure, she received outstanding performance reviews and was recognized by attorneys and colleagues for her professionalism, reliability, and value to The Firm. (*See* **Exhibit A; Exhibit A(a)**)

11.    During her employment, Plaintiff sustained multiple, documented repetitive motion injuries directly attributable to her job duties.  From approximately 2009 through 2025, Plaintiff experienced ongoing and worsening injuries as a direct result of her job duties (*workers comp*). These injuries, documented over several years, include cervical and lumbar spine injuries, right and left shoulder injuries, and right upper extremity impairments.  Despite chronic pain, she maintained her work responsibilities, using paid time off only for necessary medical appointments and procedures, until the pain became unmanageable in recent years.

12.    Between 2023 to current, Plaintiff's injuries worsened.  She experienced chronic, persistent and debilitating pain, in various body parts, throughout the day and while sleeping at night.  Plaintiff contemplated options for an early retirement, with hopes of a productive life and career of which would offer job security and allow for self-sufficiency, gainful employment and income comparable to Plaintiff's DENTONS salary.  She remained hopeful, despite chronic pain. However, Plaintiff was concerned as to what type of job she could do, since she had been doing the same work that caused multiple injuries for 17 years.

13.    In October 2023, Plaintiff consulted with her authorized treating physician by telephone and discussed her need for a modified work schedule.  At that time, Plaintiff's physician prescribed that Plaintiff work on a reduced schedule three days per week for 7.5 hours per day (instead of 5 days per week) to reduce her risk of constant flare-ups, repeat injury, aggravation and exacerbation of injuries and to get some relief.  (*See* **Exhibit B**)

14.    Shortly after Plaintiff discussed the aforementioned with her medical doctor, in October 2023, Plaintiff reviewed The Firm's DUS Policies and Procedures and discovered that she was eligible and covered under FMLA[1] (Family and Medical Leave Act) for a job-protected leave to address her own medical condition.  Plaintiff also learned that she qualified for CFRA[2]

---

[1] The Family and Medical Leave Act (FMLA) entitles eligible employees of covered employers to take unpaid, job-protected leave for specified family and medical reasons with continuation of group health insurance coverage under the same terms and conditions as if the employee had not taken leave. dol.gov

[2] The California Family Rights Act (CFRA) authorizes eligible employees to take up to a total of 12 weeks of paid or unpaid job-protected leave during a 12-month period. While on leave, employees keep the same employer-paid health benefits they had while working. calcivilrights.ca.gov

COMPLAINT

1   (California Family Rights Act) a job-protected leave, for her own serious health condition.

2   *"UNUM works with DENTONS US LLP to administer family and medical leaves. This includes*

3   *leave taken under the Family and Medical Leave Act of 1993 (FMLA) and any applicable state*

4   *leave laws and corporate leave policies."* (*See* **Exhibit C**)

5       15.   On November 1, 2023, a DENTONS human resources manager provided an email

6   with information regarding leave entitlement. Among other information provided, Plaintiff was

7   responsible for informing UNUM and DENTONS in the event any leave plans changed. Plaintiff

8   noticed that the reduced work schedule helped her physical health, however it caused immediate

9   financial stress. (*See* **Exhibit D**)

10      16.   Plaintiff received payment on July 31, 2024 (for leave October 2023 through June

11  2024). The reduced schedule allowed Plaintiff to freely attend weekly medical appointments

12  (acupuncture, physical therapy, chiropractic care, and massage therapy) at her own expense (e.g.

13  PTO exhaustion, travel, gas costs, etc.). Plaintiff attended multiple appointments on a consistent

14  weekly basis for approximately 2 years. Because Plaintiff continued to grapple with chronic pain

15  and work related injuries, she considered an early retirement, but with the FMLA and CFRA

16  leaves, Plaintiff had a glimpse of her financial situation, receiving pay at 60% of Plaintiff's

17  regular full-time pay. (*See* **Exhibit E**)

18      17.   Plaintiff's reduced schedule continued through 2024. Per doctor's orders, "Patient is

19  to work part-time four days a week 7.5 hours a day." Plaintiff's condition improved around

20  August 2024. DENTONS coordinated with UNUM approved CFRA and FMLA leave

21  entitlement for Plaintiff to care for herself and for her husband, who was diagnosed with cancer in

22  September 2024 and had surgery in October that same year. Plaintiff was grateful that

23  DENTONS allowed her to work remotely and on a reduced schedule for Plaintiff's health reasons,

24  self-care and for her spouse's very serious health condition, it allowed Plaintiff to balance her

25  work commitments and personal life simultaneously. (*See* **Exhibit F; Exhibit F (a)**)

26      18.   On April 9, 2025, Plaintiff met with Coker to discuss Plaintiff's prior year 2024

27  performance review, at the end of the review, Coker stated, "I know all about your injuries, your

28  doctor appointments, and your self-care, but I am going to need you to come into the office three

times per week." Plaintiff did not respond. After the aforementioned meeting, Plaintiff read through DENTONS DUS Policies and Procedures and found nothing in writing that in-office appearance three days per week was mandatory. (*See* **Exhibit G**)

19.    Plaintiff went into the office one day per week, because that was all she was able to accommodate, physically and mentally, considering her on-going medical compliance. Plaintiff used FMLA and CFRA benefits, which entitled her to medically necessary leave, certified by her healthcare provider to work on a reduced and/or intermittent schedule, four days per week. In reality, Plaintiff was challenged to commute into the office, to work, when it was simply more efficient to work from home, considering Plaintiff's medical providers were all near Plaintiff's home. When DENTONS provided work-life balance, it helped with Plaintiff's medical condition and mental stability. (*See* **Exhibit H**)

20.    Plaintiff obtained a work status from Boomerang Healthcare after each 6-week medical appointment to provide DENTONS. The work statuses also included the next 6-week follow-up appointment date. Plaintiff provided a copy to Coker by email and DENTONS human resource representative, every 6-weeks. Because Plaintiff was primarily working remotely, Plaintiff made reasonable efforts to schedule medical appointments close to home to help minimize disruption. Plaintiff provided advance notice when possible. (*See* **Exhibit I; Exhibit I**)

21.    July 29, 2025, DENTONS benefits team sent Plaintiff and Coker an email and copied various employees on the DENTONS benefits team. The email outlined, among other benefits, Plaintiff's 24-week leave entitlement. (*benefits eligible and approved through January 10, 2026). (See* **Exhibit J**)

33.    In August 2025, Plaintiff was eligible and approved for CFRA and FMLA - Non-Parental Leave[3] -- FMLA (Non-Parental leave is designed to provide time off when you (self-care) have a serious health condition, it is aimed to protect employees' rights to take necessary

---

[3] DUS recognizes the challenges employees face when trying to balance work demands and familial needs. Accordingly, these Non-Parental Leave policies are designed to provide time off when you (self-care) have a serious health condition or a family member with a serious health condition needs assistance. Eligible family members include a spouse …"

1    time off without fear of retaliation or termination.  Further, DENTONS violated their own Internal

2    Policy by terminating Plaintiff's employment, "Unum coordinates with DENTONS to administer

3    leave due to disability and insures the employee's return and/or restoration to the same or an

4    equivalent job at the conclusion of their leave."  The timing of the termination, while Plaintiff was

5    on a job-protected leave, appears to violate DENTONS DUS Policies and Procedures.  (*See*

6    **Exhibit G)**

7        22.    On August 18, 2025, Coker conducted an impromptu staff meeting with all the

8    LAAs, she stated, "all employees are to appear to work in the office three times per week, this is

9    coming from the higher-ups."

10       23.    On August 19, 2025, Plaintiff attended a routine appointment with her treating

11   physician and advised him what Coker stated, requiring all employees to appear in the office three

12   times per week.  He asked Plaintiff to obtain the in-office exception form for doctor's approval.

13   Plaintiff sent an email to ask DENTONS Benefits and Leave of Absence Specialist for the form

14   and she provided an ADAAA Accommodation[4] form the same day.  (*See* **Exhibit K, Exhibit**

15   **K(a); Exhibit K(b))**

16       24.    On August 26, 2025 Plaintiff received a harassing phone call from Coker.  Coker

17   stated, "since you are <u>not</u> in the office today (*Tuesday*), are you coming in Wednesday, Thursday

18   and Friday?"  Plaintiff stated, "I am in the office today.  I will do the best I can, I have a medical

19   appointment today, and I have a contractor arriving at my home on tomorrow morning

20   (*Wednesday*) and another medical appointment on Thursday."  Coker stated, "Your contractor is

21   not a work excuse."   Coker asked again while I was in the office, with an irritated tone, "ARE

22   YOU COMING INTO THE OFFICE?"  Plaintiff responded "I will do the best I can, I am

23

24

25

26   [4] An employee has a disability if he or she has an impairment that substantially limits one or more major life
     activities or a record of such impairment.  "Substantially limits" under the ADA Amendments Act of 2008 ("ADAAA")
     has been broadened to allow someone with an impairment to be "regarded as" having a disability, even without the
27   perception that the impairment limits a major life activity, provided that the impairment does not have an actual or
     expected duration less than or equal to six months.  The American with Disabilities Act of 1990: Prohibits employers
28   from discriminating against individuals with disabilities.  ada.gov

1    working on getting an ADA accommodation/exception", she then exclaimed, "YOU ARE TO

2    COME INTO THE OFFICE THREE DAYS PER WEEK UNTIL YOUR ACCOMMODATION

3    GETS APPROVED OR DENIED!"  Coker stated again, "What days are you coming in this

4    week?" Plaintiff told her, "I am not sure."  She then harassingly, stated, YOU ARE TO COME

5    INTO THE OFFICE THREE DAYS PER WEEK UNTIL YOUR ACCOMMODATION IS

6    APPROVED!  Plaintiff, after hearing Coker's repeated demand several times, Plaintiff responded

7    to Coker "I understand; I get it."  As Coker mentioned previously, she was aware that Plaintiff

8    was dealing with chronic pain and challenges dealing with injuries, as well as Plaintiff had

9    multiple medical appointments to attend, yet Coker demanded Plaintiff in a bullying and

10   harassing manner, to commute into the office three days per week.

11           25.    Considering the series of events, it appears Coker knew in August that Plaintiff's

12   position was being terminated unlawfully, Coker knew that Plaintiff was dealing with medical

13   issues and that Plaintiff was on a job-protected leave.  Several other DENTONS human resources

14   representative employees were aware of Plaintiff's FMLA and CFRA job-protected leaves.

15   DENTONS unlawfully terminated Plaintiff's position and used the reduction in force as an excuse

16   to eliminate Plaintiff without facing accountability.  Coincidentally, Defendant Katharine E.

17   Mellon, Partner and Deputy General Counsel, wrote "this past summer the Firm completed a

18   comprehensive review of staffing …among other things", the Firm concluded that two LAA roles

19   in the Oakland office would be eliminated.  (*See* **Exhibit W**)

20           26.    Plaintiff's treating practitioner completed the ADAAA accommodation form on

21   September 4 and Plaintiff emailed it to human resources on the same day.  After, DENTONS

22   review of the completed form on September 11, the HR/Benefits Coordinator asked "would you

23   be able to have your doctor update the form for question 2?  It seems that the information

24   provided pertains to a symptom rather than a diagnosis.  Additionally, we need clarification on

25   how commuting, particularly by public transit, aggravates the condition."  Plaintiff responded,

26   "… not doing too good today, but I will talk with my doctor."  There were subsequent email

27   communications between Plaintiff and human resources representatives on September 11 and 15,

28   2025. (*See* **Exhibit L**)

- 9 -
COMPLAINT

27.     On September 18, 2025, Plaintiff had a doctor's appointment to discuss the revisions requested by the human resources representative.  Plaintiff's doctor revised the ADAAA accommodation form and Plaintiff prepared a cover memorandum to send the revised ADAAA accommodation to the Firm's human resources.  The memorandum from Plaintiff, provided more information as to the response requested by human resources.  It included four attachments and a reference to the diagnosis and request for medical info that the HR/Benefits Coordinator requested.  Plaintiff's doctor revised the form, among other edits stating, "forcing patient to take public transit multiple times a week in order to go to work will increase patients risk for fall, trauma, re-injury and also aggravate current injuries, and hinder the progress she is making by being compliant with her medical treatment."  Although challenging, Plaintiff commuted into the office, 3 days per week for the remainder of August and through the entire month of September, while waiting for approval by DENTONS for Plaintiff's ADAAA accommodation. (*See* **Exhibit M**)

28.     On September 30, 2025, Plaintiff received an email from DENTONS, advising that Plaintiff's ADAAA accommodation was approved for 6 months, through March 2026.  Plaintiff replied asking, "How is this fair, I commuted into the office through the entire month of September, but my accommodation is approved through March 2026, this is only 5 months, this approval needs to be approved through April 2026." The HR/Benefits Coordinator agreed, and stated, "the accommodation is approved through April 2026." Although Plaintiff's doctor prescribed a September 4, 2026 re-evaluation, DENTONS approved Plaintiff's ADAAA accommodation only through April 2026.  Under the direction and order of Plaintiff's doctor, Plaintiff was granted a full work-from-home medical ADAAA accommodation due to Plaintiff's health condition. DENTONS approved Plaintiff's reasonable accommodation. (*See* **Exhibit N**)

29.     October 8, 2025, DENTONS sent Plaintiff a Notice to Employee as to Change in Relationship.  Plaintiff, at termination was age 57, performed her job duties competently and met or exceeded expectations.  Plaintiff received outstanding performance reviews with no disciplinary issues.  Plaintiff was recognized by attorneys and colleagues for work ethic, professionalism, reliability and value to the Firm. Coker's decision to discharge Plaintiff was

1    discriminatory based on her disability and age.  Plaintiff was humiliated and appalled, because

2    Plaintiff had an approved ADAAA accommodation and was on a job-protected leave.  Perhaps the

3    comprehensive review, that Mellon mentioned, and the careful consideration did not take into

4    account federal, state and local laws, the rights and protections, including job security,

5    continuation of benefits and the entitlement for employees on a job-protected leave.  Plaintiff was

6    on an approved reduced/intermittent FMLA and CFRA, and a Non-Parental leave approved

7    through February 2026. (*See* **Exhibit O**)

8        30.    Federal and California law provide robust protections against discrimination and

9    retaliation in employment.  The California Fair Employment and Housing Act (FEHA) prohibits

10   discrimination and retaliation based on disability and age, and requires employers to provide

11   reasonable accommodations to qualified employees (California Government Code §§ 12940,

12   12945.2).  The California Americans with Disabilities Amendment Act (ADAAA) and Age

13   Discrimination in Employment Act (ADEA) provide similar protections at the federal level (42

14   U.S.C §§ 12101 et seq.; 29 U.S.C §§ 621 et. seq).  The Family and Medical Leave Act (FMLA)

15   and the California Family Rights Act (CFRA) prohibit interference with protected leave and

16   retaliation for exercising leave rights (29 U.S.C. § 2615; Cal. Gov. Code § 12945.2).  (*See*

17       31.    It seems that Coker made the decision to unlawfully terminate Plaintiff due to

18   discrimination based on her disability and her age.  It appears Plaintiff was retaliated against by

19   Coker due to Plaintiff's inability to appear in the office three days per week and due to Plaintiff's

20   approved ADAAA accommodation.  There were 5 other LAAs, Coker could have selected, with

21   very similar skill sets and tenure at DENTONS.  We are all over 40 years of age, and members of

22   a protected class based on age.  Coker could have selected any one of them, but she selected

23   Plaintiff, the employee with injuries and on an approved reduced schedule due to FMLA, CFRA

24   and an approved full remote work from home ADAAA accommodation.  Coker's treatment of

25   Plaintiff appears discriminatory and retaliatory.

26       32.    It seems DENTONS used the guise of downsizing or financial strain to wrongfully

27   terminate Plaintiff and has thrust her out of the workforce and into early retirement.  Despite

28   Plaintiff's ongoing medical needs and job-protected leave DENTONS terminated her

employment. DENTONS decision to terminate Plaintiff was also a violation of Public Policy (Stevenson v. Superior Court, 16 Cal.4th, 880, 889-90 (1997). Wrongful termination for taking approved medical leave and age-based discrimination are unlawful. This has inflicted chronic emotional stress upon Plaintiff, feelings of isolation and uncertainty about her future, as well as financial strain.

33.    Upon Plaintiff's wrongful termination on October 8, 2025, DENTONS offered a severance package—the DENTONS Staff Severance Pay Plan ("Severance Plan")—which governs severance benefits for employees affected by workforce reductions along with DENTONS Employee Resource Guide received after termination. *"Under the Plan, eligible employees are entitled to severance based on years of service, with a cap of 20 weeks for non-exempt and 25 weeks for exempt staff. However, the Plan expressly reserves DENTONS US LLP's discretion to enter into severance arrangements on terms different from those set for in the Plan, including enhanced severance and benefits, where warranted by the circumstances."* DENTONS offered Plaintiff 19 weeks of severance pay, which was not sufficient for Plaintiff to continue addressing her serious health condition and cover her living expenses. DENTONS appeared to disregard Plaintiff's approved FMLA, CFRA leaves and ADAAA accommodation. (*See* **Exhibit P, Exhibit P(a)**)

34.    At termination, Plaintiff was approaching 58 years old and facing ongoing medical needs, including scheduled procedures and care for her own injuries as well as her husband's cancer treatment, both of which require continued health insurance coverage. At the time of her termination, Plaintiff's rate of compensation was $58.36/hour. (*See* **Exhibit Q**) DENTONS's waiver and release agreement only offered 19 weeks of severance and medical benefits would terminate on October 31, 2025. The severance plan did not reflect Plaintiff's long-standing contributions, the circumstances of her separation, nor her ongoing medical and financial needs. (*See* **Exhibit R**)

35.    On October 10, 2025, Plaintiff sent DENTONS a letter regarding her job-protected leave under FMLA and CFRA, approved through February 13, 2026. DENTONS response was Plaintiff's ADAAA accommodation and FMLA leaves only applied when Plaintiff was employed.

1    The timing of Plaintiff's termination was immediately after approval of the ADAAA

2    accommodation which appears retaliatory. (*See* **Exhibit S**)

3        36.    DENTONS Employee Resource Guide states that health insurance coverage ends the

4    last day of the month in which employment terminates, with COBRA continuation available at

5    employee's own expense unless otherwise negotiated.  Plaintiff had major costly procedures

6    scheduled in October and November. COBRA was paid by Plaintiff for the month of November

7    ($952), however Plaintiff could not afford to pay for COBRA for the month of December and had

8    to forgo the medical and dental appointments she had planned and scheduled.  The financial

9    burden of the healthcare cost and Plaintiff's inability to obtain the medical and dental care needed

10   due to financial constraints, caused emotional distress. (*See* **Exhibit T**)

11       37.    October 13, 2025, Plaintiff sent a letter to DENTONS regarding her eligibility for

12   DENTONS profit sharing contribution for 2025 and DENTONS responded that Plaintiff was

13   ineligible. The Employee Resource Guide provides that employees are eligible for a profit sharing

14   contribution for the year, if their employment ends due to disability, as documented by medical

15   evidence and work status reports. At the time of Plaintiff's termination, she believes she was and

16   is eligible to participate in DENTONS's 2025 Profit Sharing. (*See* **Exhibit U**)

17       38.    On November 10, 2025, Plaintiff emailed a demand letter to DENTONS requesting

18   enhanced severance and benefits.  The demand was made in good faith and with the intent to

19   resolve all disputes efficiently and without litigation.  (*See* **Exhibit V**)

20       39.    On December 1, 2025, Mellon responded to Plaintiff's demand letter, yet there was

21   no mention as to whether or not DENTONS was willing to enhance the severance and benefits.

22   The response defended DENTONS's position regarding the reduction in force and seemed to

23   invite ligation.  Plaintiff has exhausted all administrative remedies.  (*See* **Exhibit W**)

24       40.    On December 8, 2025, at the direction of Plaintiff's doctor, she signed up for a

25   Functional Restoration Program which is a multi-disciplinary 6-week program designed to

26   increase physical function, improve pain coping skills and promote the return to a productive

27   lifestyle.  Plaintiff is hoping to return to work, return to life and rediscover a state of enhanced

28   well-being. Plaintiff also filed a complaint with the California Civil Rights Department ("CRD")

1    and received a right to sue.  The Right to Sue notice was served on DEFENDANTS December 8,

2    2025.  (*See* **Exhibit X**)

3                                        **CAUSES OF ACTION**

4                                    **FIRST CAUSE OF ACTION**

5    **(Wrongful Termination in Violation of ADAAA Americans with Disabilities Amendments**

6                              **Act Gov. Code § 12940 (m)**

7    **Against DEFENDANTS, DENTONS, ASHLEY COKER, KATHARINE E. MELLON**

8                              **and DOES 1 through 20)**

9           41.    Plaintiff repeats and realleges each and every other paragraph of this complaint and

10   incorporates them herein by this reference as if fully restated.

11          42.    It is an unlawful employment practice "For an employer or other entity covered by

12   this part to fail to make reasonable accommodation for the known physical or mental disability of

13   an applicant or employee."

14          43.    Plaintiff was granted an ADAAA accommodation by Defendants, which aims to

15   ensure equal opportunity for individuals with disabilities.

16          44.    Plaintiff was terminated upon exercising her ADAAA accommodation.

17          45.    The American with Disabilities Amendments Act was enacted for this specific

18   reason to eliminate discrimination against individuals with disabilities and to ensure their full

19   participation in society.

20          46.    Defendants decision to terminate Plaintiff's employment was unlawful and signals

21   discrimination for Plaintiff's disability.

22                                   **SECOND CAUSE OF ACTION**

23   **(Retaliation in Violation of ADAAA American with Disabilities Amendments Act**

24                              **Gov. Code § 12940 (m)**

25   **Against DEFENDANTS, DENTONS, ASHLEY COKER, KATHARINE E. MELLON**

26                              **and DOES 1 through 20)**

27          47.    Plaintiff repeats and realleges each and every other paragraph of this complaint and

28   incorporates them herein by this reference as if fully restated.

48.   It is an unlawful employment practice for an employer to "retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted."

49.   Plaintiff was granted an ADAAA accommodation by Defendants, but was terminated upon exercising the accommodation.

50.   Defendants deliberately delayed in responding to Plaintiff's request for a reasonable accommodation.

51.   Defendants decision to terminate Plaintiff's employment was unlawful and signals retaliation for Plaintiff's disability.

## THIRD CAUSE OF ACTION

### (Wrongful Termination in Violation of FMLA – 29 U.S.C § 2615

### Against DEFENDANTS, DENTONS, ASHLEY COKER, KATHARINE E. MELLON

### and DOES 1 through 20)

52.   Plaintiff repeats and realleges each and every other paragraph of this complaint and incorporates them herein by this reference as if fully restated.

53.   "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." (29 U.S.C. § 2615(a)(1))

54.   Additionally, it prohibits employers from discharging or discriminating against individuals for opposing any unlawful practices related to FMLA.  This section provides employees with a cause of action against employers who violate their rights to FMLA leave or restoration to the same or equivalent position.

55.   Plaintiff obtained a required medical certification from her medical provider, provided work statuses to Defendants and was an eligible employee and granted FMLA leave for her serious health issues, ensuring job protection and uninterrupted health benefits.  Plaintiff was discharged after exercising her right of FMLA.

56.   Defendants decision to discharge Plaintiff is a violation and signals retaliation and discrimination for disability.

## FOURTH CAUSE OF ACTION

COMPLAINT

**(Wrongful Termination in Violation of CFRA – Gov. Code § 12945.2**

**Against DEFENDANTS, DENTONS, ASHLEY COKER, KATHARINE E. MELLON**

**and DOES 1 through 20)**

57.    Plaintiff repeats and realleges each and every other paragraph of this complaint and incorporates them herein by this reference as if fully restated.

58.    "It shall be an unlawful employment practice for any employer, to refuse to grant a request by any employee with more than 12 months of service with the employer, and who has at least 1,250 hours of service with the employer during the previous 12-month period to take up to a total of 12 workweeks in any 12-month period for family care and medical leave. Family care and medical leave requested pursuant to this subdivision shall not be deemed to have been granted unless the employer provides the employee, upon granting the leave request, a guarantee of employment in the same or a comparable position upon the termination of the leave."

59.    Plaintiff obtained medical certification from her medical provider and Plaintiff was an eligible employee and granted CFRA leave for her spouses' serious health condition, as well as her own serious health issues, ensuring job protection and uninterrupted health benefits.

60.    Plaintiff was discharged after exercising her rights under the California Family Rights Act laws.

61.    Defendants decision to discharge Plaintiff signals retaliation and discrimination for medical reasons and/or disability.

**<u>FIFTH CAUSE OF ACTION</u>**

**(Violation of ADEA Age Discrimination in Employment Act**

**Gov. Code § 12941**

**Against DEFENDANTS, DENTONS, ASHLEY COKER, KATHARINE E. MELLON**

**and DOES 1 through 20)**

62.    Plaintiff repeats and realleges each and every other paragraph of this complaint and incorporates them herein by this reference as if fully restated.

63.    Plaintiff was age 57 at the time of termination and is a member of a protected class based on age. "The Legislature further reaffirms and declares its intent that the courts interpret the

state's statutes prohibiting age discrimination in employment broadly and vigorously, in a manner comparable to prohibitions against sex and race discrimination, and with the goal of not only protecting older workers as individuals, but also of protecting older workers as a group, since they face unique obstacles in the later phases of their careers."

64.    Plaintiff performed job duties competently and met or exceeded expectations.

65.    Defendants decision to terminate Plaintiff's employment signals discrimination based on Plaintiff's age. As a direct and proximate result, Plaintiff suffered loss wages and benefits, emotional distress and other consequential damages.

## SIXTH CAUSE OF ACTION

### (Wrongful Termination in Violation of FEHA - Fair Employment and Housing Act

### Gov. Code §§ 12940, 12945.2

### Against DEFENDANTS, DENTONS, ASHLEY COKER, KATHARINE E. MELLON

### and DOES 1 through 20)

66.    Plaintiff repeats and realleges each and every other paragraph of this complaint and incorporates them herein by this reference as if fully restated.

67.    Plaintiff was employed by defendant as a legal administrative assistant from March 10, 2008 to October 8, 2025.  At all relevant times, Plaintiff was a member of a protected class under FEHA, including (race, gender, age, disability, etc.), and/or engaged in protected activity under FEHA.

68.    Plaintiff is informed and believes, and thereon alleges that the October 8, 2025 discharge of Plaintiff constituted an adverse employment action under FEHA and was substantially motivated by Plaintiff's protected status and protected activity.

69.    The stated reasons for termination, reduction in force, were pretextual and not the true reason for Defendant's actions.

## SEVENTH CAUSE OF ACTION

### (Retaliation in Violation of FEHA - Fair Employment and Housing Act

### Gov. Code §§ 12940, 12945.2

### Against DEFENDANTS, ASHLEY COKER, KATHARINE E. MELLON

**and DOES 1 through 20)**

70.   Plaintiff repeats and realleges each and every other paragraph of this complaint and incorporates them herein by this reference as if fully restated.

71.   Plaintiff was employed by defendant as a legal administrative assistant from March 10, 2008 to October 8, 2025.  At all relevant times, Plaintiff was a member of a protected class under FEHA, including (race, gender, age, disability, etc.), and/or engaged in protected activity under FEHA.

72.   Plaintiff is informed and believes, and thereon alleges that the October 8, 2025 discharge of Plaintiff constituted an adverse employment action under FEHA and was substantially motivated by Plaintiff's protected status and protected activity of age and disability.

73.   The stated reasons for termination, reduction in force, were pretextual and not the true reason for Defendant's actions.

## EIGHTH CAUSE OF ACTION

**(Harassment in Violation of FEHA – Fair Employment and Housing Act**

**Gov. Code § 12940(j)**

**Against DEFENDANTS, DENTONS, ASHLEY COKER and DOES 1 through 20)**

74.   Plaintiff repeats and realleges each and every other paragraph of this complaint and incorporates them herein by this reference as if fully restated.

75.   Plaintiff was employed by defendant as a legal administrative assistant from March 10, 2008 to October 8, 2025.  At all relevant times, Plaintiff was a member of a protected class under FEHA, including (race, gender, age, disability, etc.), and/or engaged in protected activity under FEHA.

76.   Plaintiff is informed and believes, and thereon alleges that the August 26, 2025 Coker harassed Plaintiff constituted an adverse employment action under FEHA and was substantially motivated by Plaintiff's protected status and/or protected activity. "An employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate

1    corrective action."

2        77.    This section prohibits harassment and requires an employer to take reasonable steps

3    to prevent harassment. "Harassment of an employee… pursuant to a contract by an employee,

4    other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors,

5    knows or should have known of this conduct and fails to take immediate and appropriate

6    corrective action. An entity shall take all reasonable steps to prevent harassment from occurring."

7        78.    The stated reason for termination, reduction in force, were pretextual and not the true

8    reason for Defendant's actions.

9        79.    Plaintiff was subject to unwelcome conduct based on her protected class of age and

10   disability.

11                        **NINTH CAUSE OF ACTION**

12                **(Wrongful Discharge in Violation of Internal Policy**

13   **Against DEFENDANTS, DENTONS, ASHLEY COKER, KATHARINE E. MELLON**

14                    **and DOES 1 through 20)**

15       80.    Plaintiff repeats and realleges each and every other paragraph of this complaint and

16   incorporates them herein by this reference as if fully restated.

17       81.    Plaintiff was employed by Defendant as a legal administrative assistant from March

18   10, 2008 to October 8, 2025.  Plaintiff performed all job duties competently and in accordance

19   with the Firm standards DUS Policies and Procedures.

20       82.    Defendants terminated Plaintiff while on two concurrent job-protected leaves, one

21   approved through January 10, 2026 and the other approved through February 13, 2026.  "Unum

22   coordinates with DENTONS to administer leave due to disability and insures the employee's

23   return and/or restoration to the same or an equivalent job at the conclusion of their leave."  The

24   timing of the termination, while Plaintiff was on two job-protected leaves, appears to violate

25   DENTONS internal policy.

26                        **TENTH CAUSE OF ACTION**

27                **(Negligent Infliction of Emotional Distress**

28   **Against DEFENDANTS, DENTONS, ASHLEY COKER, KATHARINE E. MELLON**

**and DOES 1 through 20)**

83.    Plaintiff repeats and realleges each and every other paragraph of this complaint and incorporates them herein by this reference as if fully restated.

84.    Plaintiff was employed by Defendant as a legal administrative assistant March 10, 2008.  On October 8, 2025, Defendant unlawfully terminated Plaintiff.

85.    The shock of Defendant terminating Plaintiff on a job-protected leave and shortly after approving the ADAAA accommodation, spawned confusion.  Plaintiff's traumatic experience has caused feelings of anxiety, sadness, hopelessness and feeling restlessness.

86.    Plaintiff's state of mental anguish includes anxiety, depression and insomnia.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for relief as follows:

1.    For a declaration that Defendant's conduct, as alleged herein, violated Plaintiff's rights under applicable federal and/or state employment laws;

2.    For back pay, including lost wages, salary, bonuses, benefits, and other compensation, together with interest thereon, according to proof;

3.    For front pay in lieu of reinstatement;

4.    For compensation for loss of benefits, including but not limited to health insurance, retirement benefits, and other employment-related benefits, according to proof;

5.    For compensatory damages for emotional distress, mental anguish, humiliation, and loss of enjoyment of life, to the extent permitted by law and according to proof;

6.    For injunctive and equitable relief as the Court deems just and proper, including but not limited to orders requiring Defendant to adopt and implement lawful employment policies, training, and procedures;

7.    For an award of reasonable attorneys' fees, expert fees, and costs of suit incurred herein, to the extent authorized by statute or other applicable law;

8.    For pre-judgment and post-judgment interest as allowed by law; and

9.    For such other and further legal and equitable relief as the Court may deem just and proper.

1

2 ## **REQUEST FOR JUDGMENT**

3 WHEREFORE, Plaintiff subsequently and respectfully requests this Court enter judgment in

4 Plaintiff's favor and against Defendant DENTONS US LLP; ASHLEY COKER and

5 KATHARINE E. MELLON:

6       1.    Declaratory Judgment declaring that Defendant's termination of Plaintiff's

7 employment was unlawful and in violation of Family Medical Leave Act (FMLA), California

8 Family Rights Act (CFRA), Americans with Disabilities Amendments Act (ADAAA), Age

9 Discrimination in Employment (ADEA), Fair Employment and Housing Act (FEHA), and to

10 adhere to Defendants own Internal Policy.

11       2.    Order an award of damages against DENTONS US LLP, ASHLEY COKER,

12 KATHARINE E. MELLON, and DOES 1 through 20, inclusive, including non-economic

13 damages, special damages, and punitive damages and for which Plaintiff requests judgment to

14 include non-economic damages for deprivation of civil rights, humiliation, for mental and

15 emotional distress, and special damages in an amount to be proven at trial.

16

17 Dated: December 18, 2025

18                                          */s/ Adrienne Hankins*

19                                         Adrienne Hankins
                                        In Pro Per

20

21

22

23

24

25

26

27

28

1
## DEMAND FOR JURY TRIAL

2    Plaintiff hereby demands a jury trial with respect to all issues triable of right by jury.

3

4    Dated: December 18, 2025

5

6                                                              _/s/ Adrienne Hankins_
                                                              Adrienne Hankins
7                                                              In Pro Per

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## REVIEW COMMENTS FROM PRIOR ASSIGNMENTS

*Adrienne -- I know that I am an asset to the firm and add value beyond what is expected of me. I utilize a variety of skills to effectively carry out my tasks.  Comments and feedback from my assignments are as follows:

Jeffry Butler -- "Adrienne is a superb assistant.  While she only provides back-up support for me, she has been my full-time assistant before.  She is truly top-notch.  She is always looking for ways to improve the service she provides.  Sometimes she catches things that just surprise me. I have consistently said there is no better legal assistant than Adrienne.  Period.  She's that good."

Emily Nozick stated the following, "Adrienne is resourceful and talented, personable and organized. She always goes above and beyond what is required and makes herself indispensable."

Megan Barker made the following comments, "I continually to be very lucky to have Adrienne as my assistant. She not only completes each task assigned with vigor and timeless but she anticipates what needs to be done and will make sure everything is going smoothly. Adrienne is a superb assistant. She is truly top-notch and is always using her brain and looking for ways to improve the service she provides." Adrienne is great to work with, the personality she brings to the office is key to enjoyable work environment and I have to say that the clients love her.  She is professional and I can trust her to have contact with clients without worry."

Cynthia Liu made the following comment, "Adrienne is a very busy assistant who often has several attorneys requesting work product at the same time. She is able to balance those requests and perform in an efficient and timely manner."

Laura Geist stated, "I never worry a minute when my secretary is out, knowing Adrienne is my back-up. She is extremely diligent and skilled and takes on tasks with such a great attitude."

Sam Kohn mentioned, "I had occasion to work with Adrienne and she went above and beyond in helping me complete the task at hand. I really appreciate having someone so driven and results-oriented as my back-up assignment, and it leaves me with complete confidence, that she will complete projects with flying colors."

Elizabeth Papay - "Put simply, Adrienne is fantastic and I always enjoy working with her."

Staff Manager for 13 years:
Deidra Williams-Gainer - "Adrienne is one of the best secretaries in the office, probably in the firm."

# EXHIBIT A (a)

2024 Year End-Self Appraisal

Appraisers:

    A.  Hankins (self-appraiser)
1. M. Boone
2. J. Butler
3. Coker
4. T. D'Antonio
5. E. Nozick
6. J. West

## 📖 2024 Business Services Professionals Year-End Self Appraisal

**Evaluated Employee: Adrienne  Hankins**                    `Completed`

### 🆔 Evaluated Employee Profile

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

### Performance Rating Descriptions and Definitions

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

**O - Outstanding:**
The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

**E - Exceeds Expectations:**
Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

**M - Meets Expectations:**
Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

**N - Needs Development:**
Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

**U - Unsatisfactory:**
The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

### Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.
Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

#### Job Knowledge

**Demonstrates a solid understanding of the responsibilities and duties required in the position, is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.**

- ☀ Meets Expectations

**Comments:**

- As a legal administrative assistant it is my responsibility to provide administrative and clerical support to lawyers and other legal professionals, including my legal assistant peers, records clerks, office services as well as attorneys of whom I am assigned as well as attorneys I am asked to cover on a regular basis.

My position is very demanding performing tasks such as managing documents and files, scheduling depositions and court dates, and communicating with clients and other parties involved in legal matters.

On a persistent basis, I review the various court websites, local rules and the judges' standing orders for updates and new rules in place due to the recent changes in the legal environment. It is typically the attorney's responsibility to read and interpret the court local rules, however I am constantly requested to do so. I do welcome the accountability, however as it only enhances my knowledge and enables me to improve my job knowledge to the work I perform.

## Adaptable

### Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.

- ⦿ Exceeds Expectations

**Comments:**

- I am often time requested to shift my priorities and to learn new processes: On a routine basis, more common 4th quarter of the year, vendors reach out to inquire as to when they will receive payment for certain invoices, current and past due. Cost and billing with the exception of processing invoices in Chrome River, is normally an accounting/billing function, however I have been tasked with following-up, research whether payment was made or not and corresponding with the biller as to when they can expect payment.

  From: Chipman, Matt
  Sent: Thursday, November 07, 2024 3:21 PM
  To: Hankins, Adrienne ; Nozick, Emily S.
  Subject: RE: Amini - Exponent

  Hi Adrienne – we have a call with the Exponent folks tomorrow. Can you give us an update on the payment status for these invoices?

  Matt Chipman

  I have been tasked with actively interacting with our clients to obtain approval to process payments for vendor invoices. As well as communicating with our accounting department to provide the vendor with an expected time that they would receive payment. My role has increased this past year. Obtaining approval and corresponding with the client is normally the attorney's responsibility.

  Dear Mr. Dwight:

  At your convenience, please approve the attached invoices listed below from claim consultant/expert Paul Hamilton, in the SFBVC, LLC, Buena Vista Cafe' v. Scottsdale Insurance matter. Thank you.

  Invoice # 54049 – Services rendered through August 31, 2024 (Amount $3,372.00)
  Invoice # 54299 – Services rendered through September 30, 2024 (Amount $22,470.40)
  Invoice # 54579 – Services rendered through October 31, 2024 ($30,690.00)

  Sincerely and Thank you,

  Adrienne Hankins

  From: Broach, Lauren
  Sent: Wednesday, November 01, 2024 12:58 PM
  To: Hankins, Adrienne
  Cc: Donner, Diane V.
  Subject: RE: 20009400-000193 - Expense Invoice

  Adrienne,
  Do you have Paul Dwight's approval?

  Thanks,

  Lauren Broach
  Billing Coordinator

**Inclusive**

**Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.**

- ☀ Meets Expectations

**Comments:**

- In legal administration, collaboration with team members is essential because the complex nature of legal work often requires diverse expertise from different team members to effectively serve clients, manage cases, and achieve successful outcomes, necessitating open communication, shared knowledge, skills and coordinated efforts across various roles within the legal team.

---

From: Kolev, Vlad
Sent: Monday, December 9, 2024 11:55:06 AM
To: Hankins, Adrienne
Subject: RE: Hattendorf v NYLife; Sacramento Sup. Ct. Case No. 34-2018-00247432-CU-FR-GDS

Hi, Adrienne. You are so correct that it was very helpful! There were some issues that made the attorneys revise the brief, but at least my part of the work was done on time.

Vlad Kolev
Legal Administrative Assistant

Hi Vlad, thanks for handling this monstrosity MSJ. Hope preparing the exhibits and compiling the components for the filing, while you were out, was helpful for you.

Have a great day!

Adrienne Hankins

From: Hankins, Adrienne
Sent: Thursday, December 05, 2024 4:33 PM
To: West, Jessica
Cc: D'Antonio, Thomas ; Kolev, Vlad
Subject: RE: Hattendorf MSJ Docs to Finalize

Hi, below is what I was able to complete. I have saved them in NYL's MSJ Components final folder in Imanage.

1. NYL Defs' Separate Statement
2. Azarmi Decl
   a. Exhs A-F bookmarked
3. Bils Decl
   a. Exhs bookmarked & 25 mb or less (AA-ZZ; AAA-WWW)
4. Proposed Order

**Focused**

**Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.**

- ☀ Meets Expectations

**Comments:**

- To be clear on goals and priorities while taking personal ownership as a legal assistant is imperative. In the litigation practice there are deadlines and rules that set time limits for all actions in a legal case. These deadlines are set primarily the same in every litigation case.

  It is important to actively communicate with the attorney, prioritize tasks based on deadlines and case urgency, proactively manage my workload, demonstrate initiative by anticipating needs, and regularly review the progress against the set goals, ensuring to understand the bigger picture of each case and actively contribute to its success.

  Taking personal ownership and ensuring the filing is correct before submitting it to the court for filing is essential.

**Insightful**

**Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.**

- ☀ Meets Expectations

**Comments:**

- As a legal assistant, the ability to accomplish and or complete a task while demonstrating a thorough concern for all of the areas involved, no matter how small, is of crucial importance. In my role, this can range from correcting spelling errors in an email to reviewing and correcting a letter or formatting a court document pleading or brief.

  Although, attention to detail is important in every profession, the work we do in the legal field is held to a higher standard, and things like typos, wrong addresses, and incorrect captions can be a huge detriment to the case.

  It is very important to stay focused on details and the big picture, both are equally key. As a legal assistant, you cannot get the big picture without the small details.

## Overall Performance Rating

**Select the appropriate rating that captures your overall performance during this period.**

- ◉ Meets Expectations

**Comments:**

- I believe on a regular basis that I constantly demonstrate resourcefulness, efficiency and creativity in completing assignments. I often use creative thinking to develop fresh ideas, for example creating a deposition chart to keep track of scheduled depositions, this chart provided a solution to the case team. I am always eager to learn new and exciting technologies that allows me to achieve maximum productivity.

  From: Haevernick, Joshua
  Sent: Wednesday, August 02, 2024
  To: Hankins, Adrienne
  Subject: Depositions

  Adrienne,

  Could you send that list of all depositions you prepared? Thanks!

  -Josh

  Joshua Haevernick

## Summary and Training and Development:

**Performance Summary: Summarize your performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**

- There is always more to learn and I welcome the opportunity and challenge. My goals are always to demonstrate outstanding professional conduct, strong work ethic as well as dedication to the firm. I continue to upgrade my knowledge and skills in every aspect of my job. I strive to take ownership of all tasks assigned to me.

**Training and Development: Describe what experience, skills or training would be helpful for you to broaden capabilities within current assignments to develop for potential growth opportunities**

- Since 85 percent of our communication is via email, it would be helpful for the firm to offer an email etiquette course that teaches you not only the technical aspects of sending emails, but also the proper use of language, tone, emojis and salutations in order to establish and maintain professional relationships.

**Diversity and Inclusion: Describe your contributions to the Firm's diversity and inclusion efforts.**

- A diverse and inclusive workplace is one that makes everyone, regardless of who they are or what they do for the business, feel equally involved in and supported in all areas of the workplace. Diversity and inclusion in the workplace foster a culture of empathy. When we work with many different people, we learn to communicate with other people better. I have participated in the awareness and unconscious bias training sessions.

### 2024 Business Services Professionals Year-End Evaluation

**Appraiser: Mordecai D Boone**    Evaluated Employee: Adrienne  Hankins    | Completed |

#### ▦ Evaluated Employee Profile

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |

| Profile | Value |
|---------|-------|
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Evaluator Type

**Is this your primary or non-primary legal administrative assistant, or a business services professional?**

### *Please select one.*

- ◉ Primary Legal Administrative Assistant

## Performance Rating Descriptions and Definitions

**Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.**

### O - Outstanding:
The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

### E - Exceeds Expectations:
Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

### M - Meets Expectations:
Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

### N - Needs Development:
Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

### U - Unsatisfactory:
The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

## Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.

**Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.**

### Job Knowledge

**Demonstrates a solid understanding of the responsibilities and duties required in the position, is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.**

- ◉ Exceeds Expectations

**Comments:**

- ▪ She really has a broad knowledge of pleadings and filings. operates as a paralegal at times.

**Adaptable**

**Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.**

- Exceeds Expectations

**Comments:**

- Very flexible, responsive and pro active.

**Inclusive**

**Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.**

- Exceeds Expectations

**Comments:**

- She always responds to the demands and needs of the team, even if it requires her to do more work.

**Focused**

**Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.**

- Exceeds Expectations

**Comments:**

- She really epitomizes this type of focus. Always following up as necessary with depositions, filings, pleadings.

**Insightful**

**Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.**

- Exceeds Expectations

**Comments:**

- She routinely knows who to contact both in and out of the firm to get tasks done.

**Overall Performance Rating**

**Select the appropriate rating that captures your employee's overall performance during this period.**

- Exceeds Expectations

**Comments:**

- She is exceeding my expectations.

**Summary and Training & Development**

**Performance Summary: Summarize your employee's performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**

- see above.

**Training and Development: Describe what experience, skills or training would be helpful for your employee to broaden capabilities within current assignments to develop for potential growth opportunities.**

- I think Adrienne should get her paralegal certificate.

**Diversity and Inclusion: Comment on your employee's contributions to the Firm's diversity and inclusion efforts.**

- She is fully supportive of our diverse team.

accuracy.

❋ Meets Expectations

**Comments:**

▪ As a legal assistant, the ability to accomplish and or complete a task while demonstrating a thorough concern for all of the areas involved, no matter how small, is of crucial importance. In my role, this can range from correcting spelling errors in an email to reviewing and correcting a letter or formatting a court document pleading or brief.

Although, attention to detail is important in every profession, the work we do in the legal field is held to a higher standard, and things like typos, wrong addresses, and incorrect captions can be a huge detriment to the case.

It is very important to stay focused on details and the big picture, both are equally key. As a legal assistant, you cannot get the big picture without the small details.

**Overall Performance Rating**

**Select the appropriate rating that captures your overall performance during this period.**

❋ Meets Expectations

**Comments:**

▪ I believe on a regular basis that I constantly demonstrate resourcefulness, efficiency and creativity in completing assignments. I often use creative thinking to develop fresh ideas, for example creating a deposition chart to keep track of scheduled depositions, this chart provided a solution to the case team. I am always eager to learn new and exciting technologies that allows me to achieve maximum productivity.

From: Haevernick, Joshua
Sent: Wednesday, August 02, 2024
To: Hankins, Adrienne
Subject: Depositions

Adrienne,

Could you send that list of all depositions you prepared? Thanks!

-Josh

Joshua Haevernick

**Summary and Training and Development:**

**Performance Summary: Summarize your performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**

▪ There is always more to learn and I welcome the opportunity and challenge. My goals are always to demonstrate outstanding professional conduct, strong work ethic as well as dedication to the firm. I continue to upgrade my knowledge and skills in every aspect of my job. I strive to take ownership of all tasks assigned to me.

**Training and Development: Describe what experience, skills or training would be helpful for you to broaden capabilities within current assignments to develop for potential growth opportunities**

▪ Since 85 percent of our communication is via email, it would be helpful for the firm to offer an email etiquette course that teaches you not only the technical aspects of sending emails, but also the proper use of language, tone, emojis and salutations in order to establish and maintain professional relationships.

**Diversity and Inclusion: Describe your contributions to the Firm's diversity and inclusion efforts.**

▪ A diverse and inclusive workplace is one that makes everyone, regardless of who they are or what they do for the business, feel equally involved in and supported in all areas of the workplace. Diversity and inclusion in the workplace foster a culture of empathy. When we work with many different people, we learn to communicate with other people better. I have participated in the awareness and unconscious bias training sessions.

### 2024 Business Services Professionals Year-End Evaluation

**Appraiser:  Jeffry  Butler**      **Evaluated Employee:  Adrienne  Hankins**      | Completed |

📖 **Evaluated Employee Profile**

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Evaluator Type

**Is this your primary or non-primary legal administrative assistant, or a business services professional?**

*Please select one.*

- ⦿ Non-Primary Legal Administrative Assistant

## Non-Primary Assistant Assignment Comments

**Feedback: Summarize the employee's performance and/or contributions during this period.**

- There isn't a ton I can say here based on this review period. Adrienne has always been a terrific assistant (she used to be my full-time assistant) and nothing she did in this review period changed my assessment. That said, she did not need to assist me much in this period.

accuracy.
- ◉ Meets Expectations

**Comments:**
- As a legal assistant, the ability to accomplish and or complete a task while demonstrating a thorough concern for all of the areas involved, no matter how small, is of crucial importance. In my role, this can range from correcting spelling errors in an email to reviewing and correcting a letter or formatting a court document pleading or brief.

  Although, attention to detail is important in every profession, the work we do in the legal field is held to a higher standard, and things like typos, wrong addresses, and incorrect captions can be a huge detriment to the case.

  It is very important to stay focused on details and the big picture, both are equally key. As a legal assistant, you cannot get the big picture without the small details.

**Overall Performance Rating**

**Select the appropriate rating that captures your overall performance during this period.**
- ◉ Meets Expectations

**Comments:**
- I believe on a regular basis that I constantly demonstrate resourcefulness, efficiency and creativity in completing assignments. I often use creative thinking to develop fresh ideas, for example creating a deposition chart to keep track of scheduled depositions, this chart provided a solution to the case team. I am always eager to learn new and exciting technologies that allows me to achieve maximum productivity.

  From: Haevernick, Joshua
  Sent: Wednesday, August 02, 2024
  To: Hankins, Adrienne
  Subject: Depositions

  Adrienne,

  Could you send that list of all depositions you prepared? Thanks!

  -Josh

  Joshua Haevernick

**Summary and Training and Development:**

**Performance Summary: Summarize your performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**
- There is always more to learn and I welcome the opportunity and challenge. My goals are always to demonstrate outstanding professional conduct, strong work ethic as well as dedication to the firm. I continue to upgrade my knowledge and skills in every aspect of my job. I strive to take ownership of all tasks assigned to me.

**Training and Development: Describe what experience, skills or training would be helpful for you to broaden capabilities within current assignments to develop for potential growth opportunities**
- Since 85 percent of our communication is via email, it would be helpful for the firm to offer an email etiquette course that teaches you not only the technical aspects of sending emails, but also the proper use of language, tone, emojis and salutations in order to establish and maintain professional relationships.

**Diversity and Inclusion: Describe your contributions to the Firm's diversity and inclusion efforts.**
- A diverse and inclusive workplace is one that makes everyone, regardless of who they are or what they do for the business, feel equally involved in and supported in all areas of the workplace. Diversity and inclusion in the workplace foster a culture of empathy. When we work with many different people, we learn to communicate with other people better. I have participated in the awareness and unconscious bias training sessions.

**2024 Business Services Professionals Year-End Evaluation**

**Appraiser: Ashley Coker**    **Evaluated Employee: Adrienne Hankins**    Completed

🖳 Evaluated Employee Profile

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Performance Rating Descriptions and Definitions

**Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.**

### O - Outstanding:
The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

### E - Exceeds Expectations:
Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

### M - Meets Expectations:
Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

### N - Needs Development:
Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

### U - Unsatisfactory:
The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

## Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.

**Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.**

### Job Knowledge

**Demonstrates a solid understanding of the responsibilities and duties required in the position, is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.**

- ❀ Meets Expectations

**Comments:**

- ▪ Adrienne has a solid understanding of her responsibilities and knows how to get the job done. She stays up to date on the required information.

### Adaptable

**Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.**

- ❀ Exceeds Expectations

**Comments:**

- Adrienne works with the very busy commercial litigation team, and shifts her priorities as needed. I often hear feedback she is hard to get a hold of, when projects have a looming deadline, and this can add to a stressful situation. Adrienne is often busy with the project, but communicating the status would be beneficial for her team. That said, she is completing the projects requested, no missed deadlines and her desk is very appreciative. I believe she has made progress in this area, it should remain an ongoing goal.

## Inclusive

**Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.**

- ☀ Exceeds Expectations

**Comments:**

- Adrienne works well with the other team members; they rely on each other to achieve a high standard of work product and Adrienne is a valued member of this process. She is collaborative, well-liked, and respected.

## Focused

**Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.**

- ☀ Meets Expectations

**Comments:**

- Adrienne should remain focused on the small details of projects. Form documents should be proofread thoroughly and updated for each new project. She takes full ownership of projects given to her.

## Insightful

**Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.**

- ☀ Exceeds Expectations

**Comments:**

- Adreinne is great at finding solutions to problems. She utilizes the help desk and trainings, knows which vendors to use, and when to collaborate with her team.

## Overall Performance Rating

**Select the appropriate rating that captures your employee's overall performance during this period.**

- ☀ Meets Expectations

**Comments:**

- Adrienne is a great and dedicated member of the team. The main goal for Adrienne should be consistency, to bring her usual level of enthusiasm and expertise to all projects.

## Summary and Training & Development

**Performance Summary: Summarize your employee's performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**

- Adrienne is a great team member and wonderful at seeking out training opportunities that best assist her achieve goals. I appreciate another year of hard work!

**Training and Development: Describe what experience, skills or training would be helpful for your employee to broaden capabilities within current assignments to develop for potential growth opportunities.**

- We should look for proofreading trainings in the Dentons library, or general training in that area. Otherwise, Adrienne is great at utilizing the Dentons trainings.

**Diversity and Inclusion: Comment on your employee's contributions to the Firm's diversity and inclusion efforts.**

- Adrinne is very inclusive and helps foster a welcoming environment. She attends the DEI events as time permits. As an office wide goal, I would like to strengthen the BSP team, not only practice team connections.

**accuracy.**

❀ Meets Expectations

**Comments:**

- As a legal assistant, the ability to accomplish and or complete a task while demonstrating a thorough concern for all of the areas involved, no matter how small, is of crucial importance. In my role, this can range from correcting spelling errors in an email to reviewing and correcting a letter or formatting a court document pleading or brief.

  Although, attention to detail is important in every profession, the work we do in the legal field is held to a higher standard, and things like typos, wrong addresses, and incorrect captions can be a huge detriment to the case.

  It is very important to stay focused on details and the big picture, both are equally key. As a legal assistant, you cannot get the big picture without the small details.

**Overall Performance Rating**

**Select the appropriate rating that captures your overall performance during this period.**

❀ Meets Expectations

**Comments:**

- I believe on a regular basis that I constantly demonstrate resourcefulness, efficiency and creativity in completing assignments. I often use creative thinking to develop fresh ideas, for example creating a deposition chart to keep track of scheduled depositions, this chart provided a solution to the case team. I am always eager to learn new and exciting technologies that allows me to achieve maximum productivity.

  From: Haevernick, Joshua
  Sent: Wednesday, August 02, 2024
  To: Hankins, Adrienne
  Subject: Depositions

  Adrienne,

  Could you send that list of all depositions you prepared? Thanks!

  -Josh

  Joshua Haevernick

**Summary and Training and Development:**

**Performance Summary: Summarize your performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**

- There is always more to learn and I welcome the opportunity and challenge. My goals are always to demonstrate outstanding professional conduct, strong work ethic as well as dedication to the firm. I continue to upgrade my knowledge and skills in every aspect of my job. I strive to take ownership of all tasks assigned to me.

**Training and Development: Describe what experience, skills or training would be helpful for you to broaden capabilities within current assignments to develop for potential growth opportunities**

- Since 85 percent of our communication is via email, it would be helpful for the firm to offer an email etiquette course that teaches you not only the technical aspects of sending emails, but also the proper use of language, tone, emojis and salutations in order to establish and maintain professional relationships.

**Diversity and Inclusion: Describe your contributions to the Firm's diversity and inclusion efforts.**

- A diverse and inclusive workplace is one that makes everyone, regardless of who they are or what they do for the business, feel equally involved in and supported in all areas of the workplace. Diversity and inclusion in the workplace foster a culture of empathy. When we work with many different people, we learn to communicate with other people better. I have participated in the awareness and unconscious bias training sessions.

**2024 Business Services Professionals Year-End Evaluation**

**Appraiser: Thomas D'Antonio**    **Evaluated Employee: Adrienne Hankins**    `Completed`

🔲 **Evaluated Employee Profile**

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Evaluator Type

**Is this your primary or non-primary legal administrative assistant, or a business services professional?**

### *Please select one.*

- ◉ Primary Legal Administrative Assistant

## Performance Rating Descriptions and Definitions

**Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.**

**O - Outstanding:**
The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

**E - Exceeds Expectations:**
Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

**M - Meets Expectations:**
Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

**N - Needs Development:**
Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

**U - Unsatisfactory:**
The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

## Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.

**Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.**

### Job Knowledge

**Demonstrates a solid understanding of the responsibilities and duties required in the position, is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.**

- ◉ Exceeds Expectations

**Comments:**

- Adrienne is always willing to help out with requests when and where she can. She has been a great resource for me as I transitioned to the firm and if she or I don't know the answer to something, she will try and hunt it down. She is also always willing to check the docket, call chambers, or complete follow up tasks on filings as requested, which I really appreciate.

## Adaptable

### Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.

⊛ Exceeds Expectations

### Comments:

- See above. Adrienne is always willing to help when she can. She has stayed late for me while we are waiting on partner sign off on documents to be filed on multiple occasions, showing great commitment. She is responsive to emails when requested and provides follow up if she hasn't heard from me in a while (which is necessary sometimes!). One area for potential improvement is on time sensitive filings if she could update me with the status by either a CC on emails to others (like the filing service) or provide more frequent updates, that would be great. But that's more an issue for me and I am happy to ask for those updates. I also realize that sometimes we are working right up to the deadline to get something in, so status emails fall to the back burner.

## Inclusive

### Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.

⊛ Exceeds Expectations

### Comments:

- Adrienne is really a delightful person. She is always eager to help, and I've enjoyed getting to know her. I can't really speak with her collaboration with other team members, but I do share her with Jess, Emily, and Mordecai and she seems to treat them with the same kindness and respect she does me.

## Focused

### Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.

⊛ Meets Expectations

### Comments:

- See above. Adrienne is willing to jump in when and where she can, and complete requests (often with short lead time) with a smile on her face. My one area of improvement for Adrienne would be to have a more detailed eye when proofing and preparing things like a proof of service--sometimes when we use old samples they are not updated to include recent changes (like adding a new party to the list) or will contain names from the initial draft that are not applicable to this case. Overall, I think Adrienne is a valued member of our team and she always works hard to provide great results for our clients.

## Insightful

### Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.

⊛ Exceeds Expectations

### Comments:

- Adrienne is helpful as a problem solver and will often try and run down a solution before she brings a problem to me for input. I also really value her insights into resources for me to use or places to go for what I am looking for and she cannot provide it. For example, I asked her to follow up on a subpoena and she told me that Andrew had circulated an email noting that we should not have LAAs do that and, instead, it was a paralegal task. This was sent before I started, so I was unaware. Adrienne let me know and attached the email for me. She also suggested a paralegal we should go to for assistance. Just one example of how her experience and insight is valuable to me.

## Overall Performance Rating

### Select the appropriate rating that captures your employee's overall performance during this period.

⊛ Exceeds Expectations

### Comments:

- In my 6 months with Adrienne, I have really enjoyed her. She helps me stay on top of tasks daily and deliver quality work product to our clients and to partners here. Admittedly, I probably do not use her as much as I should, but I will try and be better about that because she is capable and offers a lot to the team. Looking forward to 2025 with Adrienne!

## Summary and Training & Development

### Performance Summary: Summarize your employee's performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.

- I believe that I put a lot of this above, but Adrienne is really a joy to work with. She's an extremely kind of friendly person who also has skills that makes my life easier. She is able to handle assignments without a ton of direction and has stayed late to get

things done. She already is not shy about reminding me if I have forgotten to give her something that she needs to complete an assignment--which I really appreciate. I'm very excited to continue to grow our working relationship in 2025.

**Training and Development: Describe what experience, skills or training would be helpful for your employee to broaden capabilities within current assignments to develop for potential growth opportunities.**

- My only critique is a closer eye on proof reading, which I think is a skill she currently has. To hone that, I think we continue to work together on proofing and finalizing documents for service or other distribution--which I am confident will happen this year.

**Diversity and Inclusion: Comment on your employee's contributions to the Firm's diversity and inclusion efforts.**

- I am not sure I can comment on the specifics here as to her efforts, but Adrienne has always struck me as an inclusive person. She has treated me with kindness since day 1. From my personal experience, I doubt anyone would say anything differently.

accuracy.

◉ Meets Expectations

**Comments:**

▪ As a legal assistant, the ability to accomplish and or complete a task while demonstrating a thorough concern for all of the areas involved, no matter how small, is of crucial importance. In my role, this can range from correcting spelling errors in an email to reviewing and correcting a letter or formatting a court document pleading or brief.

Although, attention to detail is important in every profession, the work we do in the legal field is held to a higher standard, and things like typos, wrong addresses, and incorrect captions can be a huge detriment to the case.

It is very important to stay focused on details and the big picture. Both are equally key. As a legal assistant, you cannot get the big picture without the small details.

## Overall Performance Rating

**Select the appropriate rating that captures your overall performance during this period.**

◉ Meets Expectations

**Comments:**

▪ I believe on a regular basis that I constantly demonstrate resourcefulness, efficiency and creativity in completing assignments. I often use creative thinking to develop fresh ideas, for example creating a deposition chart to keep track of scheduled depositions, this chart provided a solution to the case team. I am always eager to learn new and exciting technologies that allows me to achieve maximum productivity.

From: Haevernick, Joshua
Sent: Wednesday, August 02, 2024
To: Hankins, Adrienne
Subject: Depositions

Adrienne,

Could you send that list of all depositions you prepared? Thanks!

Josh

Joshua Haevernick

## Summary and Training and Development:

**Performance Summary: Summarize your performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**

▪ There is always more to learn and I welcome the opportunity and challenge. My goals are always to demonstrate outstanding professional conduct, strong work ethic as well as dedication to the firm. I continue to upgrade my knowledge and skills in every aspect of my job. I strive to take ownership of all tasks assigned to me.

**Training and Development: Describe what experience, skills or training would be helpful for you to broaden capabilities within current assignments to develop for potential growth opportunities**

▪ Since 85 percent of our communication is via email, it would be helpful for the firm to offer an email etiquette course that teaches you not only the technical aspects of sending emails, but also the proper use of language, tone, emojis and salutations in order to establish and maintain professional relationships.

**Diversity and Inclusion: Describe your contributions to the Firm's diversity and inclusion efforts.**

▪ A diverse and inclusive workplace is one that makes everyone, regardless of who they are or what they do for the business, feel equally involved in and supported in all areas of the workplace. Diversity and inclusion in the workplace foster a culture of empathy. When we work with many different people, we learn to communicate with other people better. I have participated in the awareness and unconscious bias training sessions.

### 2024 Business Services Professionals Year-End Evaluation

**Appraiser: Emily S Nozick**    **Evaluated Employee: Adrienne Hankins**    `Completed`

🔲 **Evaluated Employee Profile**

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Evaluator Type

**Is this your primary or non-primary legal administrative assistant, or a business services professional?**

### *Please select one.*

◉ Primary Legal Administrative Assistant

## Performance Rating Descriptions and Definitions

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### O - Outstanding:

The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

### E - Exceeds Expectations:

Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

### M - Meets Expectations:

Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

### N - Needs Development:

Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

### U - Unsatisfactory:

The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

## Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### Job Knowledge

**Demonstrates a solid understanding of the responsibilities and duties required in the position, is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.**

◉ Exceeds Expectations

**Comments:**

- Adrienne is very experienced and knowledgeable and knows what is required to get her job done.

**Adaptable**

**Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.**

- Exceeds Expectations

**Comments:**

- Adrienne is easily able to adapt and focus on changing priorities.

**Inclusive**

**Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.**

- Exceeds Expectations

**Comments:**

- Adrienne works well with paralegals, IT support, and other team members. Due to her schedule, she makes sure that the coverage is seamless.

**Focused**

**Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.**

- Exceeds Expectations

**Comments:**

- Adrienne takes ownership of her work and works with others to provide seamless service.

**Insightful**

**Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.**

- Exceeds Expectations

**Comments:**

- Adrienne delivers an excellent work product and is increasingly asked to draft notices and other documents, which she does well and without hesitation.

**Overall Performance Rating**

**Select the appropriate rating that captures your employee's overall performance during this period.**

- Exceeds Expectations

**Comments:**

- Adrienne overall is an excellent assistant - providing prompt and excellent service.

**Summary and Training & Development**

**Performance Summary: Summarize your employee's performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**

- Adrienne is always a pleasure to work with and takes ownership of her tasks.

**Training and Development: Describe what experience, skills or training would be helpful for your employee to broaden capabilities within current assignments to develop for potential growth opportunities.**

- I can't think of any.

**Diversity and Inclusion: Comment on your employee's contributions to the Firm's diversity and inclusion efforts.**

- I know that Adrienne takes diversity and inclusion seriously.

accuracy.
- ◉ Meets Expectations

**Comments:**
- As a legal assistant, the ability to accomplish and or complete a task while demonstrating a thorough concern for all of the areas involved, no matter how small, is of crucial importance. In my role, this can range from correcting spelling errors in an email to reviewing and correcting a letter or formatting a court document pleading or brief.

  Although, attention to detail is important in every profession, the work we do in the legal field is held to a higher standard, and things like typos, wrong addresses, and incorrect captions can be a huge detriment to the case.

  It is very important to stay focused on details and the big picture, both are equally key. As a legal assistant, you cannot get the big picture without the small details.

**Overall Performance Rating**

**Select the appropriate rating that captures your overall performance during this period.**
- ◉ Meets Expectations

**Comments:**
- I believe on a regular basis that I constantly demonstrate resourcefulness, efficiency and creativity in completing assignments. I often use creative thinking to develop fresh ideas, for example creating a deposition chart to keep track of scheduled depositions, this chart provided a solution to the case team. I am always eager to learn new and exciting technologies that allows me to achieve maximum productivity.

  From: Haevernick, Joshua
  Sent: Wednesday, August 02, 2024
  To: Hankins, Adrienne
  Subject: Depositions

  Adrienne,

  Could you send that list of all depositions you prepared? Thanks!

  -Josh

  Joshua Haevernick

**Summary and Training and Development:**

**Performance Summary: Summarize your performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**
- There is always more to learn and I welcome the opportunity and challenge. My goals are always to demonstrate outstanding professional conduct, strong work ethic as well as dedication to the firm. I continue to upgrade my knowledge and skills in every aspect of my job. I strive to take ownership of all tasks assigned to me.

**Training and Development: Describe what experience, skills or training would be helpful for you to broaden capabilities within current assignments to develop for potential growth opportunities**
- Since 85 percent of our communication is via email, it would be helpful for the firm to offer an email etiquette course that teaches you not only the technical aspects of sending emails, but also the proper use of language, tone, emojis and salutations in order to establish and maintain professional relationships.

**Diversity and Inclusion: Describe your contributions to the Firm's diversity and inclusion efforts.**
- A diverse and inclusive workplace is one that makes everyone, regardless of who they are or what they do for the business, feel equally involved in and supported in all areas of the workplace. Diversity and inclusion in the workplace foster a culture of empathy. When we work with many different people, we learn to communicate with other people better. I have participated in the awareness and unconscious bias training sessions.

**2024 Business Services Professionals Year-End Evaluation**

**Appraiser: Jessica West**    **Evaluated Employee: Adrienne Hankins**    | Completed |

🔲 **Evaluated Employee Profile**

| Profile | Value |
|---|---|
| Legal Practice Area / Department | Secretarial Services |
| 2024 Job Title | Legal Administrative Assistant |
| 2024 Start Date | 03/10/2008 |
| 2024 Reports To | Coker, Ashley |
| 2024 Review Period | 1/1/2024 - 12/31/2024 |

## Evaluator Type

**Is this your primary or non-primary legal administrative assistant, or a business services professional?**

## *Please select one.*

- ◉ Primary Legal Administrative Assistant

## Performance Rating Descriptions and Definitions

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### O - Outstanding:
The employee is performing in a highly exceptional manner. This outstanding performance is obvious to all who work with the employee, including supervisors and co-workers. It should be recognized that only a few employees will be Outstanding and this rating should be reserved for those who meet this criteria. An Outstanding rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period.

### E - Exceeds Expectations:
Performance and results achieved, often exceeds the expectations of the position requirements and objectives. This rating should be awarded to those employees who have proven to excel in this aspect of the job.

### M - Meets Expectations:
Performance and results achieved, meets the expectations of the position requirements and objectives. Progress toward achieving goals has been acceptable, and an effective and satisfactory performance level is maintained. This employee performs well but typically does not go above and beyond what is required.

### N - Needs Development:
Performance and results achieved, occasionally does not meet the expectations of the position requirements and objectives. It is clear that development and improvement are necessary. It is anticipated that an employee who receives this rating will strive for improved performance and a higher rating during the next review period. An employee who has multiple Needs Development ratings may be subject to disciplinary action.

### U - Unsatisfactory:
The employee consistently does not meet the expectations of the position requirements and objectives. The employee must immediately improve performance and show sustained improvement. An Unsatisfactory rating should be supported with specific examples of how and when the employee demonstrated this level of performance during the review period. An employee who has multiple Unsatisfactory ratings and doesn't show improvement may be subject to disciplinary action. Human Resources should be aware of existing concerns regarding the employee's performance.

## Performance Factors

Please review performance against the job function and level of responsibility, using the appropriate rating for each competency descriptor.

Please note that you will be REQUIRED to substantiate all Outstanding, Needs Development and Unsatisfactory ratings in the comments sections.

### Job Knowledge

**Demonstrates a solid understanding of the responsibilities and duties required in the position, is willing to learn new techniques and processes to improve job knowledge and apply that knowledge to the work performed.**

- ◉ Outstanding

**Comments:**

- Adrienne has a great wealth of knowledge and experience in her role. She is also always willing to help and advise when she is able.

## Adaptable

**Adapts and responds quickly to shifting priorities, focusing efforts to provide value and impact.**

- Outstanding

**Comments:**

- Adrienne always is able to make time and balance her workload so that she can complete anything I ask her to do, even if it is time sensitive.

## Inclusive

**Interacts, engages and collaborates with team members to achieve a common goal. Listens empathetically and respectfully to understand others' views and needs.**

- Outstanding

**Comments:**

- Adrienne is friendly and I am comforted y knowing I can ask her anything.

## Focused

**Is clear on goals and priorities, and takes personal ownership to deliver seamless and quality service.**

- Outstanding

**Comments:**

- Adrienne does a great job on keeping me in the loop on where she is on assignments and getting things done.

## Insightful

**Gather insight and details from multiple sources, joining the dots to solve problems with high levels of quality and accuracy.**

- Outstanding

**Comments:**

- Adrienne is always willing to go the extra mile and contact the court or other resources in order to get me the information and work product I need.

## Overall Performance Rating

**Select the appropriate rating that captures your employee's overall performance during this period.**

- Outstanding

**Comments:**

- Great job!

## Summary and Training & Development

**Performance Summary: Summarize your employee's performance during this period. Highlight major strengths and accomplishments, areas where strengths may be more broadly applied and areas where improvement would result in a more effective performance.**

- Adrienne has been a great resource to me and the firm. She is always willing to help out and does a great job.

**Training and Development: Describe what experience, skills or training would be helpful for your employee to broaden capabilities within current assignments to develop for potential growth opportunities.**

- n/a

**Diversity and Inclusion: Comment on your employee's contributions to the Firm's diversity and inclusion efforts.**

- n/a

# EXHIBIT B



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: 10/23/1967
CHUBB

Date: 10/31/2023
Next Appointment: 11/21/2023  08:45 AM
Claim#: ████████  Redacted

Insurance Adjuster: Fabiola Vizcarra
Phone: 213-612-5453  Fax: 800-664-1765

Date of Injury: 11/01/2019

**WORK STATUS:**
Patient was previously deemed Permanent and Stationary by QME.

**Work Restrictions:**
- Patient is to to work part time, 3 days a week 7.5 hours per work day.

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.

# EXHIBIT C

Unum
P.O. Box 100158
Columbia, SC 29202-3158
Fax: 1-866-249-3831
www.unum.com



November 28, 2023

ADRIENNE HANKINS
807 DODD CT
BAY POINT, CA 94565

RE:    Hankins, Adrienne
       LMS Leave Number:     Redacted

Unum works with Dentons US LLP to administer family and medical leaves. This includes leave taken under the Family and Medical Leave Act of 1993 (FMLA) and any applicable state leave laws and corporate leave policies. Please read this entire notice for details and further information regarding your leave.

The current status of your leave due to your own serious health condition is:

| Protection | Begin Date | End Date | Schedule | Status |
|---|---|---|---|---|
| FMLA and California Family Rights Act (CFRA) | 10/31/2023 | 11/15/2023 | Reduced | Eligible and Approved |

### Information About Your Leave

Approval dates are subject to change if leave dates or treatment dates change. Please refer to your Employer's policies for any restrictions on scheduling leave and any requirements for reporting leave.

**Details About Your Reduced Leave Schedule:** The healthcare provider has certified that you may need to take leave up to:

- 15 hours off per week

If your leave usage indicates that you require absences beyond the healthcare provider's current estimate of the amount of leave needed, certification may be required to support additional leave.

### FMLA Entitlement

As of November 16, 2023, you will have used 0 week(s), 36 hour(s), and 0 minute(s) of FMLA.

1242-03    UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Name: Hankins, Adrienne
LMS Leave Number: ~~Redacted~~

November 28, 2023
Page 2 of 3

You will have 11 week(s), 1 hour(s), and 30 minute(s) of FMLA remaining.

This amount includes all approved FMLA leave taken within the applicable 12-month period. These totals do not include any requested leave that has not yet been approved and do not reflect entitlement available under any applicable state law or corporate policy.

If you are reporting intermittent absences, you will receive notice every 30 days communicating the amount of FMLA leave taken.

## Additional Information You Need to Know

Any qualifying leave that is approved will count against your FMLA and/or any state law or corporate policy entitlement(s). Upon return from FMLA leave, most employees must be restored to the same job or similar one with equivalent pay, benefits, and other employment terms and conditions. Any leave that is denied may be treated according to your employer's attendance policy.

Absences during the approved timeframe may be denied if:
- the reason for the absence does not qualify;
- you exhaust your leave entitlement;
- you do not report the absence to Unum timely, as applicable; or
- you are exhausting and/or replenishing your leave entitlement regularly.

For more information about your employer's specific leave policies, please read the attached *Important Information about Dentons US LLP's Family and Medical Leave Policy.*

## How To Contact Us Or View Information About Your Leave

As a convenience, we offer a secure website at www.unum.com/claimant where you have the option to:

- go paperless and choose online correspondence;
- report new leaves of absence and view the status of current claim/leave;
- report intermittent absences on active leaves; and
- provide us with updated information regarding your leave of absence.

You may also manage your claim/leave with the Unum Customer App. The Unum Customer App is available for Apple and Android.

In conjunction with our provision of services to you, you may receive a survey asking about your experience with Unum. Your thoughts and advice are critical drivers to our improvement, and we appreciate the opportunity to learn more about your experience.

If you have any questions, please contact Unum at (866) 779-1054.

Sincerely,

# EXHIBIT D

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Lopez, Dana S. |
| **Sent:** | Wednesday, November 1, 2023 8:12 PM |
| **To:** | Hankins, Adrienne |
| **Subject:** | Reduced Schedule/Leave Info |
| **Attachments:** | Unum - FMLA and STD Telephonic Claims Brochure.PDF |

Hi Adrienne,

I am sorry to hear that you have a need for a reduced schedule. I hope everything is okay and that you recover quickly. Your need for time off for your own serious health condition could qualify for a job-protected leave of absence under the FMLA. If you do *not* need to be on a continuous leave for more than 13-calendar days, you may be eligible to receive Non-Parental Leave *Self-Care* benefits.

**FMLA**

Up to 12 weeks of unpaid family and medical leave of absence within a rolling twelve-month period. May be taken on an intermittent or reduced schedule basis when medically necessary. Click here for more information on the FMLA. FMLA may run concurrently with Non-Parental Leave Self-Care.

**Non-Parental Leave Self-Care Benefits**

The Dentons Non-Parental Leave Self-Care policy allows up to 24 weeks of leave. Based on your position and tenure, the Firm will pay: 90% of pay for 6 weeks, then 50% for 6 weeks, then unpaid for 12 weeks, starting on day one if approved by Unum, the Firm's leave administrator. Non-Parental Leave Self-Care benefits will be paid through Dentons payroll.

**NOTE: Non-Parental Self-Care benefits are paid through Payroll and are only paid after Unum's approval is received and may be paid two weeks in arrears\*. The payment amount you receive may be different than the usual semi-monthly you normally get. Additionally, you may go 1-2 pay periods unpaid so please plan accordingly.**

**\*If your PTO balance exceeds 37.5 hours, it will be applied to your unapproved time; once your leave is approved by Unum, the PTO will be returned to your PTO bank.**

**State Specific Leave Entitlements:**

**ALL STATES:** When state leaves run concurrent with a Dentons paid leave, your Dentons leave pay will be reduced by an estimate or the actual payment depending on the state. As a California resident, you may be entitled to receive partial wage replacement for up to 52 weeks. You are responsible for applying for CA State Disability Insurance (SDI) benefits directly with state here.

**Leave Claim Process:** I see that you have already initiated your claim with Unum on 11/1/23, so I have crossed out that section.

~~To start a claim call Unum, the Firm's leave administrator, at 866-779-1054. The attached brochure provides information on what you need to know when filing a leave-of-absence claim.~~

You will need to provide Unum with your doctor's contact information so Unum can provide the necessary paperwork to be completed. We recommend you follow up with the doctor to ensure the paperwork is being completed and returned

1

to Unum. It is your responsibility to make sure Unum receives sufficient medical information in a timely manner to approve your claim.

**Communication**
You are responsible for communicating with and providing updates to the following individuals:

- **Unum:** You are not required to share any details about your medical condition with anyone outside of Unum. Should any leave plans change, keep them informed.
- **Supervisor:** Keep your supervisor updated should your current leave plans/reduced schedule change.
- **Benefits Team:** Keep me/Benefits updated should your current leave plans/reduced schedule change.

I know this is a lot of information. Please let me know if you have any questions or would like to discuss over the phone.

Sincerely,

Dana S. Lopez
Benefits Manager

+1 619 699 2553   |   US Internal 32553

San Diego





# *Filing*
### a Leave Request and/or Short Term Disability Claim by Telephone or on the Unum Website

**Dentons US LLP**

**Short Term Disability Policy #:** 412292;
**FMLA Policy #:** 209780

Telephone: 866-779-1054
Fax: 800-447-2498

Monday-Friday

7:00 a.m.
to
7:00 p.m.

Central

## WHEN TO CALL UNUM

- When your health care provider has determined you are unable to work due to illness, injury or pregnancy.
- When you need to be absent from work to care for a family member who has a serious health condition.
- When you need to care for a child due to birth, adoption or foster care placement.
- When you need to be absent from work for a qualifying exigency leave because your spouse, son, daughter or parent is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces.
- When you need to care for your spouse, child, parent or next of kin undergoing medical treatment, recuperation, or therapy, is in outpatient status, or is on the temporary disability retired list for a serious illness or injury incurred or aggravated in the line of duty on active duty in the Armed Forces (includes the National Guard or Reserves). This includes a veteran who was discharged from the Armed Forces for reasons other than dishonorable within the 5 year period before the employee's first day of leave.
- When you need any other type of leave that may be covered by applicable state leave laws.
- Thirty days before a planned leave based on prescheduled medical treatment related to a serious health condition for you or your family member, or the expected birth, adoption or foster care placement of a child.
- Thirty days before a disability based on the expected delivery date of a child or prescheduled medical treatment.

## WHAT TO DO NEXT

- Notify your manager or supervisor of your absence from work.
- To submit your claim and/or leave request via telephone, call the toll-free number listed to the left. Please be prepared with the information requested on page 2 of this brochure.
- To submit your claim and/or leave request via the Unum website, go to www.unum.com and follow the claim submission instructions.
- If you are eligible for leave, a certification of health care provider form may be required. If so, it will be mailed in your initial leave packet within 2 business days of filing your leave. You will be provided a minimum of 15 days from the date the leave is requested to complete and return this form.

## FOR SHORT TERM DISABILITY CLAIMS

- Provide your health care provider with a signed and dated copy of the authorization form (last page of brochure). This form authorizes the release of medical information needed to evaluate your disability claim.
- Once you have filed your Short Term Disability claim, please fax a copy of the signed and dated disability authorization to the Unum Benefits Center at the following toll-free number, 800-447-2498. If you prefer, you may sign and submit your authorization electronically at www.unum.com/claims.

## OUR COMMITMENT TO YOU

We understand that a disabling illness or injury creates emotional, physical and financial challenges and we want to do whatever we can to help you. You have our commitment to provide you with responsive service and to be understanding and sensitive to your circumstances during the claim process.

G-73650-WEB (04/16)

## INFORMATION NEEDED TO SUBMIT A SHORT TERM DISABILITY CLAIM AND/OR REQUEST FOR LEAVE

**Please be prepared to provide the following information when you call to submit your claim/leave. If someone else makes the call on your behalf, he/she may need to provide this information.**

- Name of the company where you work
- Policy number: 412292; FMLA Policy #: 209780
- Your name and Social Security number or employee ID number
- Complete address and phone number
- Date of birth
- Marital status
- Occupation (or job title)
- Supervisor's name and telephone number
- Your last day worked and your first day absent from work due to your claim and/or leave request
- The date you expect to return to work (if you know), or the actual date if you have already returned to work at the time you call

**Please note:** Leave is job protection under federal and state laws whereas a disability is income replacement. In many situations the two coverages overlap when you are missing work due to your own illness or injury.

**In addition, the following information will be needed when submitting a disability claim.**

- Healthcare provider's name, address, fax and telephone number
- A brief description of your medical condition including cause of condition (illness or injury), date of injury or beginning of illness, and whether it's work-related
- The dates of your first visit, your most recent visit, and your next scheduled visit with your healthcare provider for this condition
- Work restrictions or limitations stated by your healthcare provider, if any.

Prompt and complete information from you and your healthcare provider will help assure a timely decision and payment if you are eligible.

Unum may require additional medical information to better understand your disability claim. The timing of the decision depends on how quickly the information is received.

Unum will partner with you to gather all required information for the duration of your disability claim.

## INFORMATION THAT MAY BE IMPORTANT TO YOU

**Check your claim status, correspondence, and updates online – anytime.**

Unum has developed a secure and easy way for you to manage your disability claim online at www.unum.com/claims. Our secure web services allow you to access and make changes to your open claims, as well as view updates and correspondence when they become available.

Our secure site helps eliminate delays and is simple to use. Here are a few main features:

- Sign and submit your electronic disability authorization form.
- Upload documents for disability claims from your personal computer.
- Register for direct deposit of your claim payment, when applicable.
- Check claim status, correspondence, and most recent payment information.
- Verify and change personal information and monitor your claim progress.

**You may also manage your claim with the Unum Customer App. The Unum Customer App is available for Apple and Android devices.**

Unum is a registered trademark and marketing brand of Unum Group and its insuring subsidiaries. Services provided by subsidiaries of Unum Group.

**Unum Group**, 1 Fountain Square, Chattanooga, TN 37402

unum.com

**Claim Fraud Statements**

**Fraud Warning**

For your protection, the laws of several states, including Alaska, Arizona, Arkansas, Delaware, Idaho, Indiana, Louisiana, Maine, Maryland, New Mexico, Ohio, Oklahoma, Rhode Island, Tennessee, Texas, Virginia, Washington, and West Virginia require the following statement to appear on this claim form:

Any person who knowingly and with the intent to injure, defraud or deceive an insurance company presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Fraud Warning for Alabama Residents**

For your protection, Alabama law requires the following to appear on this claim form:

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

**Fraud Warning for California Residents**

For your protection, California law requires the following to appear on this claim form:

Any person who knowingly presents a false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

**Fraud Warning for Colorado Residents**

For your protection, Colorado law requires the following to appear on this claim form:

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Fraud Warning for District of Columbia Residents**

For your protection, the District of Columbia requires the following to appear on this claim form:

WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

**Fraud Warning for Florida Residents**

For your protection, Florida law requires the following to appear on this claim form:

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing false, incomplete or misleading information is guilty of a felony of the third degree.

**Fraud Warning for Kentucky Residents**

For your protection, Kentucky law requires the following to appear on this claim form:

Any person who knowingly and with intent to defraud any insurance company or other person files a statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Fraud Warning for Minnesota Residents**

For your protection, Minnesota law requires the following to appear on this claim form:

A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**Fraud Warning for New Hampshire Residents**

For your protection, New Hampshire law requires the following to appear on this claim form:

Any person who, with a purpose to injure, defraud, or deceive any insurance company, files a statement of claim containing any false, incomplete, or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638.20.

**Fraud Warning for New Jersey Residents**

For your protection, New Jersey law requires the following to appear on this claim form:

Any person who knowingly and with intent to defraud any insurance company or other persons, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and civil penalties.

**Fraud Warning for New York Residents**

For your protection, New York law requires the following to appear on this claim form:

Any person who knowingly and with the intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**Fraud Warning for Pennsylvania Residents**

For your protection, Pennsylvania law requires the following to appear on this claim form:

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Fraud Warning for Puerto Rico Residents**

For your protection, Puerto Rico law requires the following to appear on this claim form:

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation with the penalty of a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. If aggravating circumstances are present, the penalty thus established may be increased to a maximum of five (5) years; if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

**unum®**

**Fax or mail a completed copy of this authorization to:**
**Unum Benefits Center**
P.O. Box 100158
Columbia, SC 29202-3158
Fax: 800-447-2498

Please sign and return this authorization to The Benefits Center at the address above. You are entitled to receive a copy of this authorization. This authorization is designed to comply with the Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule.

## Authorization to Collect and Disclose Information
### (Not for FMLA Requests)

**I authorize the following persons:** health care professionals, hospitals, clinics, laboratories, pharmacies and all other medical or medically related providers, facilities or services, rehabilitation professionals, vocational evaluators, health plans, insurance companies, third party administrators, insurance producers, insurance service providers, consumer reporting agencies including credit bureaus, GENEX Services, LLC, The Advocator Group and other Social Security advocacy vendors, professional licensing bodies, employers, attorneys, financial institutions and/or banks, and governmental entities;

**To disclose information,** whether from before, during or after the date of this authorization, about my health, including HIV, AIDS or other disorders of the immune system, use of drugs or alcohol, mental or physical history, condition, advice or treatment (except this authorization does not authorize release of psychotherapy notes), prescription drug history, earnings, financial or credit history, professional licenses, employment history, insurance claims and benefits, and all other claims and benefits, including Social Security claims and benefits ("My Information");

**To Unum Group and its subsidiaries,** Unum Life Insurance Company of America, Provident Life and Accident Insurance Company, The Paul Revere Life Insurance Company, and persons who evaluate claims for any of those companies ("Unum");

**So that Unum may evaluate and administer my claims, including providing assistance with return to work.** For such evaluation and administration of claims, this authorization is valid for two years, or the duration of my claim for benefits, whichever is shorter. I understand that once My Information is disclosed to Unum, any privacy protections established by HIPAA may not apply to the information, but other privacy laws continue to apply. Unum may then disclose My Information only as permitted by law, including, state fraud reporting laws or as authorized by me.

**I also authorize Unum to disclose My Information to the following persons** (for the purpose of reporting claim status or experience, or so that the recipient may carry out health care operations, claims payment, administrative or audit functions related to any benefit, plan or claim): any employee benefit plan sponsored by my employer; any person providing services or insurance benefits to (or on behalf of) my employer, any such plan or claim, or any benefit offered by Unum; or, the Social Security Administration. Unum will not condition the payment of insurance benefits on whether I authorize the disclosures described in this paragraph. For the purposes of these disclosures by Unum, this authorization is valid for one year or for the length of time otherwise permitted by law.

**Information authorized for use or disclosure may include information which may indicate the presence of a communicable or non-communicable disease.**

If I do not sign this authorization or if I alter or revoke it, except as specified above, Unum may not be able to evaluate or administer my claim(s), which may lead to my claim(s) being denied. I may revoke this authorization at any time by sending written notice to the address above. I understand that revocation will not apply to any information that Unum requests or discloses prior to Unum receiving my revocation request.

_____
Insured's Signature

_____
Date Signed

_____
Printed Name

_____
Social Security Number

I signed on behalf of the Insured as _____ (Relationship). If Power of Attorney Designee, Guardian, or Conservator, please attach a copy of the document granting authority.

G-73650-WEB (04/16)

TELEPHONIC

# EXHIBIT E

# DENTONS

Dentons US LLP W2
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
312-876-7914

**Pay Statement**

| | |
|---|---|
| Period Start Date | 07/16/2024 |
| Period End Date | 07/31/2024 |
| Pay Date | 07/31/2024 |
| Document | 121716518 |

**Net Pay**    **$10,056.54**

## Message

**NON EXEMPT ONLY: REG EARNINGS ARE PD CURRENT THROUGH 7/31/24. AST & OT ARE PD 6/23 - 7/6**

## Pay Details

**ADRIENNE HANKINS**
BAY POINT, CA 94565
USA   *Redacted*

| | | | | |
|---|---|---|---|---|
| Employee Number | 200464 | Pay Group | Employee Payroll |
| SSN | XXX-XX-XXXX | Location | Oakland |
| Job | Lgl Admin Asst | GL COMPANY | 001 - Dentons US LLP |
| Pay Rate | $56.82 | GL LOCATION | 036 - CA - San Francisco - 303 |
| Pay Frequency | Semi-Monthly | GL DEPARTMNT | 040 - Secretarial |
| | | GL EMP GROUP | 12500 - Salaries-Secretarial |

## Earnings

| Pay Type | Date | Job | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|---|---|
| Admin Time | | | 0.000000 | $0.00 | $0.00 | $1,640.20 |
| CA Meal Penalty | | | 0.000000 | $0.00 | $0.00 | $277.36 |
| CA PTO Adjust | | | 0.000000 | $0.00 | $0.00 | $56.83 |
| Group Term Life | | | 0.000000 | $0.00 | $0.00 | $352.24 |
| Holiday Time | | | 0.000000 | $0.00 | $0.00 | $2,519.06 |
| HSA ER Contr | | | 0.000000 | $0.00 | $0.00 | $1,458.38 |
| Merit Bonus | | | 0.000000 | $0.00 | $0.00 | $3,500.00 |
| Office Closure | | | 0.000000 | $0.00 | $0.00 | $142.06 |
| Paid Leave | 07/31/2024 | Lgl Admin Asst | 157.750000 | $56.82 | $8,964.18 | |
| Paid Leave | 07/31/2024 | Lgl Admin Asst | 36.750000 | $55.13 | $2,026.13 | $11,574.29 |
| Paid Time Off | 07/31/2024 | Lgl Admin Asst | 79.500000 | $56.82 | $4,517.60 | |
| Paid Time Off | 07/31/2024 | Lgl Admin Asst | 4.500000 | $55.13 | $248.10 | $12,636.92 |
| Regular Pay | | | 0.000000 | $0.00 | $0.00 | $50,919.62 |
| Retro Meal Pen | | | 0.000000 | $0.00 | $0.00 | $6.77 |
| Retro Pay | | | 0.000000 | $0.00 | $0.00 | $745.92 |
| Unpaid Time | | | 0.000000 | $0.00 | $0.00 | ($15,410.31) |

**Total Hours Worked**  0.000000        **Total Hours**  278.500000

## Deductions

| Deduction | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|
| 401K Loan 1 | No | $0.00 | $4,449.48 | $0.00 | $0.00 |

| Deduction | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|-----------|---------|------------------|--------------|------------------|--------------|
| 401K Loan 2 | No | $0.00 | $3,467.10 | $0.00 | $0.00 |
| 401K Roth % | No | $0.00 | $988.25 | $0.00 | $0.00 |
| Dental Pre Tax | Yes | $0.00 | $425.18 | $0.00 | $341.88 |
| Group Accident | No | $0.00 | $126.70 | $0.00 | $0.00 |
| Group Term Life | No | $0.00 | $352.24 | $0.00 | $0.00 |
| Grp Crit Ill EE | No | $0.00 | $470.40 | $0.00 | $0.00 |
| Grp Crit Ill Sp | No | $0.00 | $251.02 | $0.00 | $0.00 |
| HSA ER Contr | No | $0.00 | $1,458.38 | $0.00 | $0.00 |
| Medical Pre Tax | Yes | $0.00 | $1,549.24 | $0.00 | $8,250.06 |
| Personal Chgs | No | $0.00 | $61.72 | $0.00 | $0.00 |
| Supp Life EE | No | $0.00 | $757.82 | $0.00 | $0.00 |
| Supp Life Sp | No | $0.00 | $151.62 | $0.00 | $0.00 |

## Taxes

| Tax | Current | YTD |
|-----|---------|-----|
| Federal Income Tax | $3,038.65 | $8,085.43 |
| Employee Medicare | $228.46 | $971.30 |
| Social Security Employee Tax | $976.88 | $4,153.17 |
| CA State Income Tax | $1,282.16 | $3,005.03 |
| CA Disability Employee | $173.32 | $749.02 |

## Paid Time Off

| Plan | Taken | Current | Balance |
|------|-------|---------|---------|
| Paid Time Off | 7.5000 | 0.0000 | 23.0000 |

## Net Pay Distribution

| Account Number | Account Type | Amount |
|----------------|--------------|--------|
| xxxxxxx0846 | Checking | $300.00 |
| xxxx6489 | Savings | $300.00 |
| xxxxxxxxx5805 | Checking | $1,500.00 |
| xxxxxx5064 | Checking | $7,956.54 |
| Total | | $10,056.54 |

## Pay Summary

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|--|-------|-------------------|-------|------------|---------|
| Current | $15,756.01 | $15,756.01 | $5,699.47 | $0.00 | $10,056.54 |
| YTD | $70,419.34 | $66,986.54 | $16,963.95 | $14,509.15 | $38,946.24 |

# EXHIBIT F



**Boomerang Healthcare**
Restoring Hope. Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 08/29/2024
Next Appointment: 09/26/2024  02:00 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 909-477-5505

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.

# EXHIBIT F (a)

Unum
PO Box 100158
Columbia, SC 29202-3158
Fax: 1-800-447-2498
www.unum.com



November 25, 2024

ADRIENNE HANKINS
807 DODD CRT
BAY POINT, CA 94565

RE:    Hankins, Adrienne
       LMS Leave Number:     *Redacted*

Unum works with Dentons US LLP to administer family and medical leaves.  This includes leave
taken under the Family and Medical Leave Act of 1993 (FMLA) and any applicable state leave
laws and corporate leave policies.  Please read this entire notice for details and further
information regarding your leave.

The current status of your leave due to your own serious health condition is:

| Protection | Begin Date | End Date | Schedule | Status |
|---|---|---|---|---|
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 10/31/2024 | 11/21/2024 | Reduced | Eligible and Approved |
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 11/22/2024 | 12/19/2024 | Reduced | Eligible and Approved |

## Information About Your Leave

Approval dates are subject to change if leave dates or treatment dates change.  Please refer to
your Employer's policies for any restrictions on scheduling leave and any requirements for
reporting leave.

**Details About Your Reduced Leave Schedule:**  The healthcare provider has certified that you
may need to take leave up to:

* 7.5 hours off per week

1242-03    UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Name: Hankins, Adrienne
LMS Leave Number ~~Redacted~~ Redacted

November 25, 2024
Page 2 of 2

If your leave usage indicates that you require absences beyond the healthcare provider's current estimate of the amount of leave needed, certification may be required to support additional leave.

## Additional Information You Need to Know

Any qualifying leave that is approved will count against your FMLA and/or any state law or corporate policy entitlement(s). Upon return from FMLA leave, most employees must be restored to the same job or similar one with equivalent pay, benefits, and other employment terms and conditions. Any leave that is denied may be treated according to your employer's attendance policy.

Absences during the approved timeframe may be denied if:
* the reason for the absence does not qualify;
* you exhaust your leave entitlement;
* you do not report the absence to Unum timely, as applicable; or
* you are exhausting and/or replenishing your leave entitlement regularly.

For more information about your employer's specific leave policies, please read the attached *Important Information about Dentons US LLP's Family and Medical Leave Policy.*

## How To Contact Us Or View Information About Your Leave

As a convenience, we offer a secure website at www.unum.com/claimant where you have the option to:
* go paperless and choose online correspondence;
* report new leaves of absence and view the status of current claim/leave;
* report intermittent absences on active leaves; and
* provide us with updated information regarding your leave of absence.

You may also manage your claim/leave with the MyUnum for Members Mobile App. The MyUnum for Members Mobile App is available for Apple and Android.

In conjunction with our provision of services to you, you may receive a survey asking about your experience with Unum. Your thoughts and advice are critical drivers to our improvement, and we appreciate the opportunity to learn more about your experience.

If you have any questions, please contact Unum at (866) 779-1054.

Sincerely,


Unum's Absence Operations Team


Enclosures:     Denton Report Groups 3, 4, 7, 8 Important Information

**Important Information About Dentons Family and Medical Leave Policy**

**How is My FMLA Entitlement Calculated?**
If you are eligible and your leave qualifies, you have the right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

**What if I Need Additional Leave?**
If you need an extension of your leave, you should notify Unum. You will be required to provide additional certification of the serious health condition.

**What if I Need Work Place Assistance? -** If your leave request is for your own serious health condition and there is need for workplace assistance, please contact **your manager and the Benefits team** immediately for further discussion. Unum assists your Employer in identifying reasonable modifications that may assist you in performing your job. You will receive any future communications about a workplace assistance request in a separate communication.

**How Do I Notify Unum and My Supervisor of My Return to Work Plans?**
If you are able to return to work sooner than your current estimated return to work date, you should notify Unum and your supervisor as soon as practicable.

If your leave is for your own health condition, you will be required to present your employer with a fitness-for-duty certificate as a condition of being restored to employment.

**How Should I Report Intermittent Absences to Unum?**
If you have an intermittent leave, you must notify Unum within 2 business days each time you need to take intermittent leave. Please also notify your supervisor as soon as possible, no later than 2 business days before or after needing to take intermittent leave. Otherwise, your leave under the FMLA and/or State leave law, where applicable, may be delayed/denied.

**Do I Need to Use Vacation/Sick/PTO While on Leave?**
You must use any accrued PTO exceeding 37.50 hours during any otherwise unpaid FMLA and/or state leave unless otherwise mandated by state law.
Any paid time off used will be counted against your available leave under the FMLA and/or state leave law. Please contact the Benefits team regarding how much paid time off you have available. If you do not meet the terms and conditions of your employer paid leave program for your leave, your entitlement to take unpaid FMLA will not be affected.
After you have exhausted your paid leave, the remainder of your leave will be without pay. If you are receiving workers' compensation or disability benefits, then you may use your accrued paid time off.

**Will My Benefits Continue While I Am on Leave?**
**Health Insurance:**
During your leave, your employer will continue to pay its portion of your group health insurance premiums and you must pay your share, if any, of the health insurance premiums.

- During paid leave, your share of the premiums will continue to be paid through payroll deductions
- During unpaid leave, your employer will provide you with information regarding arrangements for payment of your share of the premiums. Please contact the Benefits team for more information regarding payments for benefit continuation during your leave.

You have a 30-day grace period in which to make such premium payments. If you do not pay your share of the insurance premiums on a timely basis, your insurance coverage for yourself and/or your dependents may be terminated for the remainder of your leave

**Other Benefits (Life, Disability, etc.):**
Your employer will continue other benefits (e.g., life insurance, disability insurance, etc.) while you are on leave. If your employer pays your premiums for other benefits, when you return from leave you will not be expected to reimburse your employer for your share of the payments made on your behalf. Please contact the Benefits team for information regarding your other benefits during your leave.

**Are There Other Types of Leave Available?**
For information regarding other types of leave possibly available through your employer, please contact the Benefits team at benefits@dentons.com.

**You and Your Spouse Work for Same Employer**
If you and your spouse work for the same employer (even if employed at different worksites/operating divisions) and are both eligible for FMLA leave, the two of you are limited to a combined total of 12 weeks of FMLA leave during the applicable 12-month period for any combination of leave taken for the following reasons:
- Birth of a child
- Adoption/foster care placement
- Care for a parent with a serious health condition
- Care for a covered servicemember (military caregiver leave)

# EXHIBIT G

Unum
P.O. Box 100158
Columbia, SC 29202-3158
Fax: 1-866-249-3831
www.unum.com



August 28, 2025

ADRIENNE HANKINS
807 DODD COURT
BAY POINT, CA 94565

RE:    Hankins, Adrienne
       LMS Leave Number:     Redacted

Unum works with Dentons US LLP to administer family and medical leaves. This includes leave taken under the Family and Medical Leave Act of 1993 (FMLA) and any applicable state leave laws and corporate leave policies. Please read this entire notice for details and further information regarding your leave.

The current status of your leave due to your own serious health condition is:

| Protection | Begin Date | End Date | Schedule | Status |
|---|---|---|---|---|
| FMLA, California Family Rights Act (CFRA) and Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 8/14/2025 | 2/13/2026 | Reduced | Eligible and Approved |

**Information About Your Leave**

Approval dates are subject to change if leave dates or treatment dates change. Please refer to your Employer's policies for any restrictions on scheduling leave and any requirements for reporting leave.

**Details About Your Reduced Leave Schedule:** The healthcare provider has certified that you may need to take leave up to:

- 2.00 hours off per week

If your leave usage indicates that you require absences beyond the healthcare provider's current estimate of the amount of leave needed, certification may be required to support additional leave.

1242-03    UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Name: Hankins, Adrienne
LMS Leave Number: ~~Redacted~~

August 28, 2025
Page 2 of 2

### Additional Information You Need to Know

Any qualifying leave that is approved will count against your FMLA and/or any state law or corporate policy entitlement(s). Upon return from FMLA leave, most employees must be restored to the same job or similar one with equivalent pay, benefits, and other employment terms and conditions. Any leave that is denied may be treated according to your employer's attendance policy.

Absences during the approved timeframe may be denied if:
- the reason for the absence does not qualify;
- you exhaust your leave entitlement;
- you do not report the absence to Unum timely, as applicable; or
- you are exhausting and/or replenishing your leave entitlement regularly.

For more information about your employer's specific leave policies, please read the attached *Important Information about Dentons US LLP's Family and Medical Leave Policy.*

### How To Contact Us Or View Information About Your Leave

As a convenience, we offer a secure website at www.unum.com/claimant where you have the option to:

- go paperless and choose online correspondence;
- report new leaves of absence and view the status of current claim/leave;
- report intermittent absences on active leaves; and
- provide us with updated information regarding your leave of absence.

You may also manage your claim/leave with the MyUnum for Members Mobile App. The MyUnum for Members Mobile App is available for Apple and Android.

In conjunction with our provision of services to you, you may receive a survey asking about your experience with Unum. Your thoughts and advice are critical drivers to our improvement, and we appreciate the opportunity to learn more about your experience.

If you have any questions, please contact Unum at (866) 779-1054.

Sincerely,


Unum's Absence Operations Team

Enclosures:      Denton Report Groups 3, 4, 7, 8 Important Information

**Important Information About Dentons Family and Medical Leave Policy**

**How is My FMLA Entitlement Calculated?**
If you are eligible and your leave qualifies, you have the right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

**What if I Need Additional Leave?**
If you need an extension of your leave, you should notify Unum. You will be required to provide additional certification of the serious health condition.

**What if I Need Work Place Assistance? -** If your leave request is for your own serious health condition and there is need for workplace assistance, please contact **your manager and the Benefits team** immediately for further discussion. Unum assists your Employer in identifying reasonable modifications that may assist you in performing your job. You will receive any future communications about a workplace assistance request in a separate communication.

**How Do I Notify Unum and My Supervisor of My Return to Work Plans?**
If you are able to return to work sooner than your current estimated return to work date, you should notify Unum and your supervisor as soon as practicable.

If your leave is for your own health condition, you will be required to present your employer with a fitness-for-duty certificate as a condition of being restored to employment.

**How Should I Report Intermittent Absences to Unum?**
If you have an intermittent leave, you must notify Unum within 2 business days each time you need to take intermittent leave. Please also notify your supervisor as soon as possible, no later than 2 business days before or after needing to take intermittent leave. Otherwise, your leave under the FMLA and/or State leave law, where applicable, may be delayed/denied.

**Do I Need to Use Vacation/Sick/PTO While on Leave?**
You must use any accrued PTO exceeding 37.50 hours during any otherwise unpaid FMLA and/or state leave unless otherwise mandated by state law.
Any paid time off used will be counted against your available leave under the FMLA and/or state leave law. Please contact the Benefits team regarding how much paid time off you have available. If you do not meet the terms and conditions of your employer paid leave program for your leave, your entitlement to take unpaid FMLA will not be affected.
After you have exhausted your paid leave, the remainder of your leave will be without pay. If you are receiving workers' compensation or disability benefits, then you may use your accrued paid time off.

**Will My Benefits Continue While I Am on Leave?**
*Health Insurance:*
During your leave, your employer will continue to pay its portion of your group health insurance premiums and you must pay your share, if any, of the health insurance premiums.
- During paid leave, your share of the premiums will continue to be paid through payroll deductions
- During unpaid leave, your employer will provide you with information regarding arrangements for payment of your share of the premiums. Please contact the Benefits team for more information regarding payments for benefit continuation during your leave.

You have a 30-day grace period in which to make such premium payments. If you do not pay your share of the insurance premiums on a timely basis, your insurance coverage for yourself and/or your dependents may be terminated for the remainder of your leave

*Other Benefits (Life, Disability, etc.):*
Your employer will continue other benefits (e.g., life insurance, disability insurance, etc.) while you are on leave. If your employer pays your premiums for other benefits, when you return from leave you will not be expected to reimburse your employer for your share of the payments made on your behalf. Please contact the Benefits team for information regarding your other benefits during your leave.

**Are There Other Types of Leave Available?**
For information regarding other types of leave possibly available through your employer, please contact the Benefits team at benefits@dentons.com.

**You and Your Spouse Work for Same Employer**
If you and your spouse work for the same employer (even if employed at different worksites/operating divisions) and are both eligible for FMLA leave, the two of you are limited to a combined total of 12 weeks of FMLA leave during the applicable 12-month period for any combination of leave taken for the following reasons:
- Birth of a child
- Adoption/foster care placement
- Care for a parent with a serious health condition
- Care for a covered servicemember (military caregiver leave)

# DENTONS

# DUS POLICIES AND PROCEDURES



# DUS Policies and Procedures

Main View          search for...          policies published since...

## Using This Manual

**Contact:** Mohan, Shannon
**Audience:** All (Entire Firm)
**Last Update:** August 23, 2023
**Copy Link to Policy:**
**Parent:** Benefits

### Family and Medical Leaves of Absence

DUS is cognizant of the fact that certain situations occur in employees' lives that can require them to be away from work for limited periods of time. It is the policy of DUS to provide eligible employees unpaid leaves of absence to attend to personal, family, or medical needs which comply with federal and state laws. For purposes of this manual, the federal law, i.e., the Family and Medical Leave Act of 1993 ("FMLA"), is described.

Upon return from a leave of absence pursuant to the FMLA, an employee will be returned to the same or an equivalent position with no loss in the benefits which accrued prior to the leave of absence. Certain "key employees," as designated by the Firm, will be notified prior to the commencement of their leave if the job restoration provisions of the FMLA must be modified. DUS reserves the right to designate any period of employee absence as qualifying for the FMLA subject to the verification procedures of that act. Employees will be notified of such designations in a timely manner.

If an employee anticipates taking personal, family, or medical leave, or has questions regarding the application of the FMLA or any other applicable mandated benefits as part of this policy, please contact the Human Resources Department's benefits team at benefits@dentons.com.

### Definitions

- **Family/Medical Leave of Absence:** Family/medical leave of absence is defined as an approved absence available to eligible employees for the birth of the child; the placement of a child with the employee for adoption or foster care; employee care of a child, spouse, or parent with a serious health condition; or a serious health condition which makes the employee unable to perform the essential functions of his or her position; or because of a "qualifying exigency" arising out of the fact that the spouse or a son, daughter, or parent of the employee is a member of the Armed Forces or on active duty or call to active duty status in the National Guard or Reserves, and is deployed to a foreign country or deployed in support of a contingency operation.

- Military Caregiver Leave of Absence: Military caregiver leave of absence is defined as an approved absence available to an eligible employee who is the spouse, son, daughter, parent, or next of kin (nearest blood relative) of a "covered service member."

- Serious Medical Condition: A serious health condition is defined as any illness, injury, impairment, or physical or mental condition which involves inpatient care in a hospital, hospice, or residential medical care facility, or continuing treatment by a health care provider (i.e., a doctor of medicine or osteopathy who is licensed to practice medicine or surgery by the state in which he or she practices). DUS requires employees to provide medical certification for all serious health conditions. Short-term health conditions, such as minor illnesses that last only a few days, or surgical procedures that typically involve no hospitalization and require only a brief recovery period, generally do not qualify as a serious health condition.

- Qualifying Exigency: Qualifying exigencies generally include the following: (1) Issues arising from a short notice deployment; (2) Military events and related activities; (3) Childcare and school activity arrangements; (4) Making financial and legal arrangements; (5) Attending to counseling; (6) Spending time with a covered military member on short-term leave for rest and recuperation; (7) Attending to Post-Deployment activities; and (8) Other activities upon which the Firm and an employee can agree is an appropriate exigency, and can agree as to the timing and duration of such leave.

- Covered Service Member: Covered servicemember is defined as a member of the Armed Forces (including a member of the National Guard or Reserves) who has a serious injury or illness incurred in the line of duty while on active duty, or pre-existing conditions which have been aggravated by service in the line of duty on active duty, that may render the service member medically unfit to perform his or her duties, for which he or she is undergoing medical treatment, recuperation, or therapy, or is otherwise in outpatient status, or otherwise on the temporary disability retired list, for a serious injury or illness. Leave for this purpose may also be taken when the service member is a veteran recovering from injuries or illness incurred in the line of duty on active duty at any point in the five years preceding the date of medical treatment.

### Eligibility

To be eligible for a family and medical leave of absence or a military caregiver leave of absence under this policy an employee must have been employed for at least twelve (12) months and must have worked at least 1,250 hours during the twelve-month period prior to the commencement of the leave. Leaves of absence for employees not eligible for FMLA are explained under the "Leaves of Absence for Non-FMLA Eligible Employees" section.

### Leave Duration

Eligible employees are entitled to take up to twelve weeks' unpaid family and medical leave of absence within a rolling twelve-month period measured backward from the date an employee uses family and medical leave without a loss of seniority or benefits. Eligible employees are entitled to take up to twenty-six weeks of unpaid military caregiver leave of absence within a single twelve-month period looking forward from the first day that leave is taken without loss of seniority or benefits. An employee is entitled to a maximum of twelve weeks of leave during any twelve-month period, as military caregiver leave runs concurrently with any other leave granted pursuant to the FMLA. Eligible employees may be entitled to additional unpaid leave as outlined in the "Non-FMLA Medical Leave" section of this manual.

An employee who fails to return to work prior to or immediately following expiration of the authorized leave period may be subject to termination of employment. Other leaves of absence, i.e., workers' compensation and short-term disability, will be counted against the employee's leave entitlement under FMLA.

### Concurrent Use of PTO

Leaves of absence pursuant to the FMLA are generally unpaid. However an employee will be required to use any accrued and unused PTO that exceeds 37.5 hours (equivalent to one week) before such leaves become unpaid. During a leave of absence related to the employee's serious health condition, the employee shall also exhaust any available paid short-term disability benefits before such leave becomes unpaid. An employee may choose to apply unused PTO during the FMLA-designated absence. No PTO will accrue during any unpaid portion of a family and medical leave.

### Notification and Medical Certification Procedures

- Notification: When the need for a leave of absence is foreseeable, an employee is to provide the Firm with at least thirty (30) days' notice. Where the need for the leave is either unforeseeable or it is impossible for the employee to provide thirty (30) days' notice, he or she is to provide as much notice as practicable. The Firm may require periodic updates regarding the employee's status, including the expected return to work date.

  Employees requesting leave will be informed whether they are eligible for family and medical leave, and, if they are not eligible, a reason they are not eligible. Leave taken for any reason which would qualify under this policy may be counted against the employee's leave entitlement under this policy. Any leave taken may be counted concurrently, to the extent permitted by law, against both an employee's maximum federal FMLA leave allowance as well as any applicable state leave allowance.

- Medical Certification: DUS requires medical certification to support a claim for leave for an employee's own serious health condition or to care for a seriously ill child, spouse, or parent. Employees must also complete various other FMLA and disability-related forms and submit them to DUS's disability and leave of absence administrator, Unum, at 866-779-1054. . For an absence due to an employee's own serious health condition, the medical certification must indicate why the employee is unable to perform the essential functions of his or her position. For leave to care for a seriously ill child, spouse, or parent, the medical certification must indicate why alternatives to the employee's absence are not possible, such as care by others, and as definitive an estimate as possible of the amount of time the employee needs to provide care. Additional medical opinions may be required consistent with the law. DUS will pay for any such additional opinions. Before being returned to work, an employee who is on leave of absence as a result of his or her own serious health condition must submit a health care provider's written certification that the employee is able to return to work and to perform the essential job requirements of his or her position. Failure to provide such certification may result in the delay or denial of job restoration.

- Certification for a Qualifying Exigency: DUS requires certification to support a claim for leave for a qualifying exigency. Employees must also complete various other FMLA and disability-related forms and submit them to DUS's disability and leave of absence administrator, Unum, at 866-779-1054. For leave because of a qualifying exigency, the certification must include a copy of the active duty orders the first time the leave is requested. Each leave request because of a qualifying exigency, including the first leave request because of a qualifying exigency, must include a statement or description of appropriate facts regarding the qualifying exigency for which leave is requested and any available written documentation to support the request for leave.

- Medical Certification for Military Caregiver Leave: DUS requires medical certification to support a claim for leave to care for a covered servicemember with a serious injury or illness. Employees must also complete various other FMLA and disability-related forms and submit them to DUS's disability and leave of absence administrator, Unum, at 866-779-1054. For leave to care for a covered servicemember with a serious injury or illness, the medical certification must be

completed by an authorized health care provider of the covered servicemember, including a US Department of Defense ("DOD") health care provider, a US Department of Veteran Affairs health care provider, a DOD TRICARE network authorized private health care provider or a DOD non-network TRICARE authorized private health care provider. The medical certification shall also provide, among other things, an estimate as definitive as possible of the amount of time the employee needs to provide care.

### Intermittent or Reduced Schedule Leave

Leave taken because of the employee's or an employee's family member's serious health condition may be taken on an intermittent or reduced schedule basis when medically necessary. If an employee seeks leave on an intermittent or reduced schedule basis, the employee must submit medical certification, as noted above, and additional certification from the health care provider that the intermittent or reduced schedule leave is medically necessary. DUS may require an employee taking intermittent or reduced schedule leave to temporarily transfer to an alternate position for which the employee is qualified or may modify the employee's current position to better accommodate the employee's recurring periods of leave.

### Insurance Premiums

During a FMLA-designated leave of absence and any approved extension of that leave pursuant to the procedures described under the "Non-FMLA Medical Leave" section, DUS will continue to provide health insurance coverage for the employee. However, the employee will remain personally responsible for paying his or her portion of the insurance premium. Such payments must be made by the first day of each calendar month of the leave and should be submitted directly to the Human Resources Department's benefits team. Such payments also may be made prior to the leave. Failure to pay premiums in a timely manner may result in cancellation of coverage.

The employee's portion of payments for all other benefits must also be paid by the employee during the leave period. An employee who does not return from leave may be required to repay the portion of any insurance premiums paid on their behalf by DUS during such leave.

**PLEASE NOTE:** DUS benefits terminate after you have been an inactive employee for six months. You will be eligible to continue health coverage through COBRA. "Inactive Employee" means an employee who is not actively at work due to an approved leave of absence.

### Job Restoration

Upon return from a FMLA-designated leave of absence, the employee will be returned to the same or an equivalent position with no loss in benefits which accrued prior to the leave of absence.

Certain "key employees" or employees on an extended FMLA-designated leave may not be eligible to be restored to the same or an equivalent job at the conclusion of their leave. DUS will notify any such employees of their status and the conditions which may affect their job restoration prior to approval of the leave extension.

### State or Local Leave Laws

To the extent any state or local law contain different leave requirements, DUS will satisfy the federal, state, or local requirement which is the most advantageous to the employee. To the extent allowed by applicable law, all leave entitlements will run concurrently.

### Parental Leave

DUS provides for leaves to prepare, to the extent possible, for absences occasioned by the birth or adoption of a child and in recognition of the special needs and demands of new parents. These policies apply to full-time and part-time benefits-eligible employees of DUS. Requests for Parental Leaves by hourly part-time employees will be considered on a case by case basis.

### Lawyers and Professionals

All lawyers and professionals will be granted leave for the period of time associated with childbirth, including recovery from delivery, and/or bonding with a newborn or newly-adopted child within the first 12 months following birth or award of guardianship. Total time, including paid and unpaid segments, is available once every 12 months in a rolling calendar year. Available paid leave may be used either consecutively or intermittently, but must be used before unpaid leave unless otherwise specified. If available paid leave is to be used intermittently, it must be used in blocks of time of no less than two (2) weeks.

| All Lawyers and Professionals | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| | 26 weeks | 18 weeks | 8 weeks |

### Business Services Professionals and Paralegals

#### Primary Caregiver

Primary Caregivers will be granted leave for the period of time associated with childbirth, including recovery from delivery, and/or bonding with a newborn or newly-adopted child within the first 12 months following birth or award of guardianship. In order to be eligible for Primary Caregiver leave, the employee must be the parent primarily responsible for the care of the child for the duration of the leave. Documentation of the facts supporting the leave may be requested by the Firm. Total time, including paid and unpaid segments, is available once every 12 months in a rolling calendar year. Available paid leave may be used either consecutively or intermittently, but must be used before unpaid leave unless otherwise specified. If available paid leave is to be used intermittently, it must be used in blocks of time of no less than two (2) weeks.

| | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| | | <1 year = 100% of pay for 8 weeks | <1 year = unpaid for 16 weeks |
| Business Services Professionals (Chiefs/Directors/Managers) | 24 weeks | 1+ years = 100% of pay for 13 weeks, then 50% for 4 weeks | 1+ years = unpaid for 7 weeks |

DUS will not interfere with, restrain, or deny the exercise of any right provided under FMLA or any other applicable state family and medical leave law. DUS will not discriminate against or terminate the employment of any person for opposing any practice made unlawful by FMLA or any other applicable state family and medical leave law or for involvement in any proceeding under or relating to FMLA or any other applicable state family and medical leave law.

**Non-FMLA Medical Leave**

DUS recognizes that an employee's illness or injury may sometimes require a prolonged absence from work and offers medical leaves of absence to address those situations.

Eligibility

All employees are eligible upon hire to request a medical leave of absence.

Employees who are absent for longer than three consecutive work days must provide documentation from their Health Care Provider verifying that they are unable to work for medical reasons and providing the expected duration of the illness or injury. The employee will be required to provide a Return to Work release note from their Health Care Provider before returning to work for any absences exceeding three consecutive days, unless prohibited by state law.

DUS may require an employee seeking a medical leave to be examined, at the Firm's expense, by a Health Care Provider of the Firm's choosing.

Employees should contact the Benefits department at benefits@dentons.com for any questions regarding medical leaves.

Duration

Approved medical leaves may last for up to six (6) consecutive months, and will run concurrently with Family and Medical Leave, and any state leave laws. Employees must notify their manager and the Benefits department at benefits@dentons.com as soon as they learn that they need a medical leave.

Employees requesting an extension of an approved medical leave must provide documentation from their Health Care Provider supporting their need for additional time off. Leave extension requests must be made, at least three (3) business days prior to the conclusion of the current approved leave in order to enable time for proper consideration and approval before the end of the previously approved leave period. Employees who remain away from work without obtaining a timely extension of their leave will be considered to be on an unauthorized leave and may be subject to termination of employment.

Compensation

Employees may be eligible for compensation during all or a portion of their medical leave. For example, employees may be entitled to DUS's Short Term Disability benefit and/or receive compensation from their state's disability program, not to exceed an employee's base pay.

Employees are required to use available PTO or sick time for all work days during the thirteen-calendar day elimination period during which they are absent due to illness or injury prior to beginning an approved medical leave.

Employees will receive Short Term Disability benefits only upon approval by DUS's disability insurance carrier. PTO or sick time must be used during any unpaid portions of an approved medical leave. See the Short Term Disability policy.

Employees who are unable to return to work after six months on an approved medical leave of absence may be eligible for DUS's Long Term Disability benefit. Employees will receive Long Term Disability benefits only upon approval by DUS's disability insurance carrier. See the Long Term Disability policy

Health Insurance

Firm health coverage generally continues during an approved medical leave, subject to employee's payment of applicable contributions to premiums. Employees should contact the Benefits team at benefits@dentons.com to understand benefits continuation during a medical leave.

**PLEASE NOTE:** DUS benefits terminate after you have been an Inactive employee for six months. You will be eligible to continue health coverage through COBRA. "Inactive Employee" means an employee who is not actively at work due to an approved leave of absence.

Return To Work

Employees returning from an approved medical leave under this policy will be reinstated to the same or similar position they held prior to their leave, unless the position is no longer available for reasons unrelated to the leave. As soon as practicable prior to their return, employees must provide the Benefits department with documentation from their Health Service Provider confirming that they are able to return to work, with or without restrictions. If an employee is returning to work with restrictions, the Firm will engage in discussion with the employee about the restrictions and any requested accommodations. See the Disability Accommodation policy.

Employees who are nearing five (5) months of consecutive leave should contact the Benefits department to discuss their ability to return to work and their timeframe for returning. If additional leave is requested, DUS will consider the employee's expected timeframe for being able to return to work, along with the needs of the business and any legal requirements. DUS will not grant requests for indefinite leave.

An employee's failure to return from a medical leave after being released by a Health Care Provider will result in termination of employment.

**Personal Leave**

In certain extraordinary circumstances, an unpaid leave of absence of up to 90 days in one calendar year may be granted to an employee. The Firm will evaluate the circumstances surrounding the request for leave (e.g., duration and nature of the leave, impact on the Firm, length of employment) in determining approval of the request. If the leave is approved, the Firm will advise the employee, prior to commencement of the leave, whether he or she will be reinstated to the same or an equivalent position upon their return.

An employee seeking this type of leave must submit a written request to his or her Supervisor/Manager at least 30 days in advance of the leave. For a leave to be granted, the request must be approved by both the employee's Supervisor/Manager and the HR Director. If a leave is granted, the employee cannot extend the duration of the leave as specifically approved; an employee will be terminated if he or she does not return to work upon expiration of an authorized leave.

During a personal leave of absence there will be no accrual of any Vacation or PTO. Access to certain benefits will also be suspended. The employee will continue to bear the responsibility of paying his or her portion of insurance premiums and/or outstanding Profit Sharing loan repayments during the leave.

## Leave Duration

Eligible employees are entitled to take up to twelve weeks' paid family leave within a rolling twelve-month period measured backward from the date an employee uses family and medical leave without a loss of seniority or benefits. Beginning in 2019, the maximum paid leave duration is ten weeks; in 2021 the maximum paid leave duration will increase to twelve weeks.

## Notification and Medical Certification Procedures

**Notification**: When the need for a leave of absence is foreseeable, an employee is to provide the Firm with at least thirty (30) days' notice. Where the need for the leave is either unforeseeable or it is impossible for the employee to provide thirty (30) days' notice, he or she is to provide as much notice as practicable. The Firm may require periodic updates regarding the employee's status, including the expected return to work date.

Employees requesting leave will be informed whether they are eligible for paid family leave, and, if they are not eligible, a reason they are not eligible. Leave taken for any reason which would qualify under this policy may be counted against the employee's leave entitlement under this policy. Any leave taken will be counted concurrently, to the extent permitted by law, against both an employee's maximum FMLA and PFL leave allowances, as well as any other applicable leave allowance.

**Medical Certification**: DUS requires medical certification to support a claim for leave to care for a seriously ill family member. Employees must also complete various other FMLA/PFL related forms and submit them to DUS's leave of absence administrator, Unum, at 866-779-1054. For leave to care for a seriously ill child, spouse, or parent, the medical certification must include why alternatives to the employee's absence are not possible, such as care by others, and as definitive an estimate as possible of the amount of time the employee needs to provide care.

**Certification for a Qualifying Exigency**: DUS requires certification to support a claim for leave for a qualifying exigency. Employees must also complete various other FMLA/PFL related forms and submit them to DUS's leave of absence administrator, Unum, at 866-779-1054. For leave because of a qualifying exigency, the certification must include a copy of the active duty orders the first time the leave is requested. Each leave request because of a qualifying exigency, including the first leave request because of a qualifying exigency, must include a statement or description of appropriate facts regarding the qualifying exigency for which leave is requested and any available written documentation to support the request for leave.

**Intermittent Schedule Leave**: Leave taken because of an employee's family member's serious health condition or to bond with a minor child within 1 year of birth, adoption, or foster placement may be taken on an intermittent schedule basis when medically necessary. If an employee seeks leave on an intermittent schedule basis, the employee must submit medical certification, as noted above, and additional certification from the health care provider that the intermittent schedule leave is medically necessary. Intermittent leave under PFL must be taken in whole day increments.

**Insurance Premiums**: During an FMLA or PFL-designated leave of absence, DUS will continue to provide health insurance coverage for the employee. However, the employee will remain personally responsible for paying his or her portion of the insurance premium. Such payments must be made by the first day of each calendar month of the leave and should be submitted directly to the Human Resources Department's benefits team. Such payments also may be made prior to the leave. Failure to pay premiums in a timely manner may result in cancellation of coverage.

The employee's portion of payments for all other benefits must also be paid by the employee during the leave period. An employee who does not return from leave may be required to repay the portion of any insurance premiums paid on their behalf by the Firm during such leave.

**PLEASE NOTE**: DUS benefits terminates after you have been an inactive employee for six months. You will be eligible to continue health coverage through COBRA. "Inactive Employee" means an employee who is not actively at work due to an approved leave of absence.

**Job Restoration**: Upon return from an FMLA or PFL-designated leave of absence, the employee will be returned to the same or an equivalent position with no loss in benefits accrued prior to the leave of absence.

Certain "key employees" or employees on an extended FMLA-designated leave may not be eligible to be restored to the same or an equivalent job at the conclusion of their leave. The Firm will notify any such employees of their status and the conditions which may affect their job restoration prior to approval of the leave extension.

Under ordinary circumstances, an employee who fails to return to work upon expiration of the leave period will be terminated.

An employee may not accept other employment or become self-employed while on a family and medical leave of absence. An employee obtaining or seeking other employment while on a family and medical leave of absence may be terminated.

DUS will not interfere with, restrain, or deny the exercise of any right provided under FMLA or any other applicable state family and medical leave law. DUS will not discriminate against or terminate the employment of any person for opposing any practice made unlawful by FMLA or any other applicable state family and medical leave law or for involvement in any proceeding under or relating to FMLA or any other applicable state family and medical leave law.

During pregnancy disability leave, DUS will continue to provide health insurance coverage for the employee. However, the employee will remain personally responsible for paying her portion of the insurance premium. Such payments must be made by the first day of each calendar month of the leave and should be submitted directly to the Human Resources Department's benefits team. Such payments also may be made prior to the leave. Failure to pay premiums in a timely manner may result in cancellation of coverage.

The employee's portion of payments for all other benefits must also be paid by the employee during the leave period. An employee who does not return from leave may be required to repay the portion of any insurance premiums paid on their behalf by the Firm during such leave.

An employee shall provide at least verbal notice sufficient to make the Firm aware that the employee needs a pregnancy disability leave or transfer and of the anticipated timing and duration of the leave or transfer. An employee must provide at least 30-days' advance notice before pregnancy disability leave or transfer is to begin if the need for the leave or transfer is foreseeable because of pregnancy. The employee shall consult with the Firm and make a reasonable effort to schedule any planned medical treatment or supervision so as to minimize disruption to DUS's operations, subject to the approval of the health care provider of the employee. If 30-days' advance notice is not practicable, such as because of a lack of knowledge of approximately when leave or transfer will be required to begin, a change in circumstances, or a medical emergency, notice must be given as soon as practicable.

An employee requesting pregnancy disability leave must provide written certification from her health care provider. The certification indicating disability necessitating a leave should contain: (1) the date on which the employee became disabled due to pregnancy; (2) the probable duration of the period or periods of disability; and (3) an explanatory statement that, due to the disability, the employee is unable to work at all or is unable to perform one or more of the essential functions of her position without undue risk to herself, the successful completion of her pregnancy, or to other persons. The certification indicating the medical advisability of the transfer should contain: (1) the date on which the need to transfer became medically advisable; (2) the probable duration of the period or periods of the need to transfer; and (3) an explanatory statement that, due to the employee's pregnancy, the transfer is medically advisable.

While on leave, the employee must contact the Human Resources Department's benefits team every 30 days regarding the status of her condition and intent to return to work. In addition, notice must be given as soon as practicable (within two business days if feasible) if the dates of leave change, are extended, or were initially unknown.

Upon expiration of the time period which the health care provider originally estimated that the employee needed, the Firm may require the employee to obtain recertification if additional leave or time for a transfer is requested.

As a condition of the employee's return from pregnancy disability leave or transfer, the employee must obtain a release to "return-to-work" from her health care provider that she is able to resume her original job duties.

An employee returning from a pregnancy disability leave of up to four months will be reinstated to her same or a comparable position, subject to any defense allowed under the law.

An employee granted a leave of absence must resume work on the first scheduled workday following the expiration date of the leave. If the employee does not return on the specified date, she will be considered to have resigned.

An employee must not accept other employment or become self-employed while on a pregnancy disability leave of absence. An employee obtaining or seeking other employment while on a pregnancy disability leave of absence may be terminated.

## Family And Medical Leave: FMLA and CFRA

### Definitions

- **Family And Medical Leave of Absence:** Family/medical leave of absence is defined as an approved absence available to eligible employees for the birth of the employee's child; the placement of a child with the employee for adoption or foster care; the employee's care of a child, spouse, registered domestic partner, parent, parent-in-law, grandparent, grandchild, sibling or "designated person" with a serious health condition; or for a serious health condition which makes the employee unable to perform the essential functions of his or her position. For purposes of this policy, a "designated person" means any person related to you by blood or whose association with you is the equivalent of a family relationship and can be identified by the employee at the time the employee requests a family care and medical leave. Employees are limited to one designated person per 12-month period for family care and medical leave. Additionally, an FMLA-eligible employee whose spouse, domestic partner, son, daughter, or parent, is a member of the Armed Forces or on active duty or called to active duty status in the National Guard or Reserves, and is deployed to a foreign country or deployed in support of a contingency operation, may use their 12-week FMLA leave entitlement to address certain "qualifying exigencies."

- **Military Caregiver Leave of Absence:** Military caregiver leave of absence is defined as an approved absence available to an eligible employee who is the spouse, domestic partner, son, daughter, parent, or next of kin (nearest blood relative) of a "covered servicemember."

- **Serious Health Condition:** A serious health condition is defined as any illness, injury, impairment, or physical or mental condition which involves inpatient care in a hospital, hospice, or residential medical care facility, or continuing treatment by a serious health condition (i.e., a doctor of medicine or osteopathy who is licensed to practice medicine or surgery by the state in which he or she practices). DUS requires employees to provide medical certification for all serious health conditions. Short-term health conditions, such as minor illnesses that last only a few days, or surgical procedures that typically involve no hospitalization and require only a brief recovery period, generally do not qualify as a serious health condition.

- **Qualifying Exigency:** Qualifying exigencies generally include the following: (1) issues arising from a short notice deployment; (2) military events and related activities; (3) childcare and school activity arrangements; (4) making financial and legal arrangements; (5) attending counselling; (6) spending time with a covered military member on short-term leave for rest and recuperation; (7) attending Post-Deployment activities; and (8) other activities upon which the Firm and an employee can agree as an appropriate exigency, and can agree as to the timing and duration of such leave.

- **Covered Servicemember:** Covered servicemember is defined as a member of the Armed Forces (including a member of the National Guard or Reserves) who has a serious injury or illness incurred in the line of duty while on active duty, or pre-existing conditions which have been aggravated by service in the line of duty on active duty, that may render the service member medically unfit to perform his or her duties, for which he or she is undergoing medical treatment, recuperation, or therapy, or is otherwise in outpatient status, or otherwise on the temporary disability retired list, for a serious injury or illness. Leave for this purpose may also be taken when the service member is a veteran recovering from injuries or illness incurred in the line of duty on active duty at any point in the five years preceding the date of medical treatment.

### Eligibility

**Military Leave**

DUS will grant time off, without loss of seniority or benefits, in accordance with the law for any employee who requests leave to fulfill a military obligation. Such leaves may be unpaid; however, an employee may choose to apply available Vacation time or PTO. After duty is completed, the employee will be reemployed in as favorable a position as the employee would have attained had he or she not entered the service but remained on the job if the employee satisfies all applicable legal requirements and reapplies for his or her position as required by law.

DUS will grant leave, as required by applicable state law, to employees whose military spouses are home on leave from deployment.

**Bereavement Leave**

Employees are eligible for 3 days of paid bereavement leave and 2 days of unpaid bereavement leave for the death of an immediate family member, including pregnancy loss, as defined below. Employees may use accrued but unused paid time off to substitute for any unpaid bereavement leave. Bereavement leave must be completed within three months of the family member's date of death, although the days do not need to be consecutive.

For purposes of this policy, a family member includes an employee's:

- spouse or domestic partner,
- (step-)children,
- (step-)parents,
- (step-)brothers,
- (step-)sisters,
- (step-)grandparents,
- (step-)grandchildren and
- in-laws (mother, father, brother, or sister).

Parent and child relationships also include foster, and adopted relationships, and relationships based on one individual's legal guardianship or in loco parentis relationship to another.

Full-time, salaried employees will be granted one day off from work without loss of pay for the death of a close relative not a member of his or her immediate family, which is defined as the employee's aunt, uncle, niece, or nephew.

Bereavement leave will be applied instead of any other PTO if a death occurs which is covered under this policy. DUS reserves the right to request verification upon return to work.

## LEAVES OF ABSENCE POLICIES SPECIFIC TO CALIFORNIA EMPLOYEES

This California Supplement to DUS's Policy and Procedure Manual is a summary of Firm policies, practices, and benefits which are specific to California. Except as noted, all policies in the Policy and Procedure Manual also apply to California Firm employees. While it is the intention of DUS to have policies and practices in all its offices as uniform as possible, California employment laws differ in some respects from those of other states.

### Pregnancy Disability and Family and Medical Leaves of Absences

DUS is cognizant of the fact that certain situations occur in employees' lives that can require them to be away from work for limited periods of time. It is the policy of DUS to provide eligible employees unpaid leaves of absence to attend to personal, family, or medical needs which comply with federal and state laws. This policy, which applies only to California employees, describes Pregnancy Disability Leave, the California Family Rights Act ("CFRA"), and California's Paid Family Leave ("PFL") law.

#### Pregnancy Disability Leave

Consistent with the requirements of California law, a maximum of four months' leave (88 working days for a full-time employee) will be granted to an employee whose doctor certifies that the employee is disabled and cannot perform her job because of pregnancy, childbirth, or related medical conditions.

An employee affected by pregnancy or a related medical condition may also request a transfer to a less strenuous or hazardous position or to less strenuous or hazardous duties, provided that the employee's request is based on the certification of her health care provider that a transfer is medically advisable and such transfer can be reasonably accommodated by the Firm.

A pregnancy disability leave need not be taken in one continuous period of time but can be taken on an as-needed basis. It is medically advisable for an employee to take intermittent leave or leave on a reduced work schedule and it is foreseeable based on planned medical treatment because of pregnancy, the Firm may require the employee to transfer temporarily to an available alternative position. Transfer to an alternative position may include altering an existing job to better accommodate the employee's need for intermittent leave or a reduced work schedule.

An employee may elect to use accrued PTO during the four month pregnancy disability leave. Following the utilization of all accrued PTO, the remainder of the leave will be on an unpaid basis.

No PTO will accrue during any unpaid portion of a pregnancy disability leave.

If the employee is eligible for leave under the federal Family and Medical Leave Act (FMLA), the Firm will count the employee's pregnancy disability leave, up to a maximum of 12 work weeks, against her family and medical leave entitlement.

Employees may be eligible for disability payments under DUS's insurance plans or from the State of California pursuant to state law.

To be eligible for a family and medical leave of absence or a military caregiver leave of absence under this policy, an employee must have been employed for at least twelve (12) months and must have worked at least 1,250 hours during the twelve-month period prior to the commencement of the leave (or the 12-month period preceding the first day of an FMLA-qualifying pregnancy disability leave taken immediately before the requested family and medical leave). Leaves of absence for employees not eligible for FMLA or CFRA are explained under the "Leaves of Absence for Non-FMLA/CFRA Eligible Employees" section.

Leave Duration

Eligible employees are entitled to take up to twelve weeks' unpaid family and medical leave of absence within a rolling twelve-month period measured backward from the date an employee uses family and medical leave without a loss of seniority or benefits. A female employee who is eligible for family and medical leave and who takes a disability leave of absence for pregnancy, childbirth, or related medical conditions, may take 12 workweeks of family and medical leave in addition to her pregnancy disability leave.

Eligible employees are entitled to take up to twenty-six weeks of unpaid military caregiver leave of absence within a single twelve-month period looking forward from the first day that leave is taken without loss of seniority or benefits. An employee is entitled to a maximum of twenty-six weeks of leave during any twelve-month period, as military caregiver leave runs concurrently with any other leave granted pursuant to the FMLA.

Eligible employees may be entitled to additional unpaid leave as outlined in the "Non-FMLA Medical Leave" section of this manual.

An employee who fails to return to work prior to or immediately following expiration of the authorized leave period may be subject to termination of employment. Other leaves of absence, i.e., workers' compensation and short-term disability, will be counted against the employee's leave entitlement under FMLA.

Concurrent Use of PTO

Leaves of absence pursuant to the FMLA/CFRA are generally unpaid. However, an employee will be required to use any accrued and unused PTO that exceeds 37.5 hours (equivalent to one week) before such leaves become unpaid. During a leave of absence related to the employee's serious health condition, the employee shall also exhaust any available paid short-term disability benefits before such leave becomes unpaid. An employee may choose to apply unused PTO during the FMLA- or CFRA-designated absence. No PTO will accrue during any unpaid portion of a family and medical leave.

Notification and Medical Certification Procedures

- **Notification**: When the need for a leave of absence is foreseeable, an employee is to provide the Firm with at least thirty (30) days' notice. Where the need for the leave is either unforeseeable or it is impossible for the employee to provide thirty (30) days' notice, he or she is to provide as much notice as practicable. The Firm may require periodic updates regarding the employee's status, including the expected return to work date.

  Employees requesting leave will be informed whether they are eligible for family and medical leave, and, if they are not eligible, a reason they are not eligible. Leave taken for any reason which would qualify under this policy may be counted against the employee's leave entitlement under this policy. Any leave taken will be counted concurrently, to the extent permitted by law, against both an employee's maximum FMLA and CFRA leave allowances, as well as any other applicable leave allowance.

- **Medical Certification**: DUS requires medical certification to support a claim for leave for an employee's own serious health condition or to care for a seriously ill child, spouse, or parent. Employees must also complete various other FMLA/CFRA- and disability-related forms and submit them to DUS's disability and leave of absence administrator, Unum, at 866-779-1054. For an absence due to an employee's own serious health condition, the medical certification must include why the employee is unable to perform the essential functions of his or her position. For leave to care for a seriously ill child, spouse, or parent, the medical certification must include why alternatives to the employee's absence are not possible, such as care by others, and as definitive an estimate as possible of the amount of time the employee needs to provide care. Additional medical opinions may be required consistent with the law. DUS will pay for any such additional opinions.

  Before being returned to work, an employee who is on leave of absence as a result of his or her own serious health condition must submit a health care provider's written certification that the employee is able to return to work and to perform the essential job requirements of his or her position. Failure to provide such certification may result in the delay or denial of job restoration.

- **Certification for a Qualifying Exigency**: DUS requires certification to support a claim for leave for a qualifying exigency. Employees must also complete various other FMLA and disability-related forms and submit them to DUS's disability and leave of absence administrator, Unum, at 866-779-1054. For leave because of a qualifying exigency, the certification must include a copy of the active duty orders the first time the leave is requested. Each leave request because of a qualifying exigency, including the first leave request because of a qualifying exigency, must include a statement or description of appropriate facts regarding the qualifying exigency for which leave is requested and any available written documentation to support the request for leave.

- **Medical Certification for Military Caregiver Leave**: DUS requires medical certification to support a claim for leave to care for a covered servicemember with a serious injury or illness. Employees must also complete various other FMLA and disability-related forms and submit them to DUS's disability and leave of absence administrator, Unum, at 866-779-1054. For leave to care for a covered servicemember with a serious injury or illness, the medical certification must be completed by an authorized health care provider of the covered servicemember, including a US Department of Defense ("DOD") health care provider, a US Department of Veteran Affairs health care provider, a DOD TRICARE network authorized private health care provider or a DOD non-network TRICARE authorized private health care provider. The medical certification shall also provide, among other things, an estimate as definitive as possible of the amount of time the employee needs to provide care.

- **Intermittent Reduced Schedule Leave**: Leave taken because of the employee's or an employee's family member's serious health condition may be taken on an intermittent or reduced schedule basis when medically necessary. If an employee seeks leave on an intermittent or reduced schedule basis, the employee must submit medical certification, as noted above, and additional certification from the health care provider that the intermittent or reduced schedule leave is medically necessary. DUS may require an employee taking intermittent or reduced schedule leave to temporarily transfer to an alternate position for which the employee is qualified or may modify the employee's current position to better accommodate the employee's recurring periods of leave.

- **Insurance Premiums**: During an FMLA or CFRA-designated leave of absence and any approved extension of that leave pursuant to the procedures described under the "Non-FMLA Medical Leave" section, the Firm will continue to provide health insurance coverage for the employee. However, the employee will remain personally responsible for paying his or her portion of the insurance premium. Such payments must be made by the first day of each calendar month of the leave and should be submitted directly to the Human Resources Department's benefits team. Such payments also may be made prior to the leave. Failure to pay premiums in a timely manner may result in cancellation of coverage.

The employee's portion of payments for all other benefits must also be paid by the employee during the leave period. An employee who does not return from leave may be required to repay the portion of any insurance premiums paid on their behalf by the Firm during such leave.

**PLEASE NOTE:** DUS benefits terminate after you have been an inactive employee for six months. You will be eligible to continue health coverage through COBRA. "Inactive Employee" means an employee who is not actively at work due to an approved leave of absence.

- Job Restoration  Upon return from an FMLA-designated leave of absence, the employee will be returned to the same or an equivalent position with no loss in benefits which accrued prior to the leave of absence.

Certain "key employees" or employees on an extended FMLA-designated leave may not be eligible to be restored to the same or an equivalent job at the conclusion of their leave. The Firm will notify any such employees of their status and the conditions which may affect their job restoration prior to approval of the leave extension.

Under ordinary circumstances, an employee who fails to return to work upon expiration of the leave period will be terminated.

An employee must not accept other employment or become self-employed while on a family and medical leave of absence. An employee obtaining or seeking other employment while on a family and medical leave of absence may be terminated.

DUS will not interfere with, restrain, or deny the exercise of any right provided under FMLA or any other applicable state family and medical leave law. DUS will not discriminate against or terminate the employment of any person for opposing any practice made unlawful by FMLA or any other applicable state family and medical leave law or for involvement in any proceeding under or relating to FMLA or any other applicable state family and medical leave law.

### Leaves of Absence for Non-FMLA/CFRA Eligible Employees

Employees who are not eligible for leave pursuant to the FMLA or CFRA may apply for a leave of absence pursuant to applicable leave policy for medical disabilities, other than those qualifying as Pregnancy Disability Leave, or for any other situation covered under the FMLA or CFRA. DUS's disability and leave of absence administrator, Unum, will evaluate the circumstances surrounding the request for leave (e.g., duration and nature of the leave) in determining approval of the request. If the leave is approved, the Firm will advise the employee, prior to commencement of the leave, whether he or she will be reinstated to the same or an equivalent position upon his or her return from leave.

The notification and medical certification process for these types of leaves is the same as those outlined under the "Family and Medical Leave of Absence" section. Benefits for employees on Non-FMLA/CFRA leaves are also handled in the same manner as for employees on FMLA- or CFRA-designated leaves.

Partners who are not eligible for leave pursuant to the FMLA or CFRA may apply for a leave of absence for medical disabilities or for any other situation covered under the FMLA or CFRA. The Firm will evaluate the circumstances surrounding the request for leave (e.g., duration and nature of the leave, impact on the Firm, length of employment) in determining approval of the request. If the leave is approved, the Firm will advise the Partner, prior to commencement of the leave, whether he or she will be reinstated to the same or an equivalent position upon their return from leave.

Partners must provide the Firm with at least thirty (30) days' notice of a need for leave. Where the need for the leave is either unforeseeable or it is impossible for the Partner to provide thirty (30) days' notice, he or she is to provide as much notice as practicable. The Partner must complete and submit medical certification to DUS's benefits team at benefits@dentons.com. Benefits for Partners on Non-FMLA/CFRA leaves are handled in the same manner as for employees on FMLA- or CFRA-designated leaves.

### Paid Family Leave

Any employee who is absent from work to care for a family member with a "serious health condition" or to bond with a minor child within 1 year of birth, adoption, or foster placement may be entitled to partial wage replacement from the Employment Development Department ("EDD") of the state of California for up to six (6) weeks in any twelve (12) month period under the Paid Family Leave law ("PFL"). Employees are solely responsible for applying for any PFL benefits to which they may be entitled, and for complying with all requirements established by the EDD for qualification of PFL benefits. For further information, please contact the EDD directly, or the Human Resources Department's benefits team.

DUS requires that employees applying for wage replacement under PFL first exhaust up to two weeks of accrued and unused PTO before receiving benefits. Employees may elect to use more than the required two weeks of accrued and unused PTO.

### School Visitation

DUS will grant employees, upon reasonable notice, a defined amount of unpaid leave to attend their dependent child(ren)'s school-related events. Eligible dependents include children in grades kindergarten through high school. Verification of attendance at the school-related event will be required. Employees may apply PTO to their absence. For specific information, contact the appropriate Administrative Director/Office Administrator or Supervisor/Manager.

### LEAVE OF ABSENCE POLICY SPECIFIC TO NEW YORK EMPLOYEES

This New York Supplement to DUS's Policy and Procedure Manual is a summary of benefits which are specific to New York. Except as noted, all policies in the Policy and Procedure Manual also apply to New York Firm employees. While it is the intention of the Firm to have policies and practices in all its offices be uniform as possible, New York employment laws differ in some respects from those of other states.

### Paid Family Leave

Any eligible employee who is absent from work to care for an eligible family member with a "serious health condition" or to bond with a minor child within 1 year of birth, adoption, or foster placement, or other events related to a family member's active-duty military status may be entitled to partial wage replacement from the state of New York in any twelve (12) month period under the Paid Family Leave law ("PFL"). Employees are solely responsible for applying for any PFL benefits to which they may be entitled, and for complying with all requirements established by the state of New York for qualification of PFL benefits. For further information, please contact DUS's leave administrator, Unum, directly, or DUS's benefits team.

If the employee is eligible for leave under the federal Family and Medical Leave Act (FMLA), the Firm will count the employee's paid family leave, up to a maximum of 12 work weeks, against their family and medical leave entitlement.

Eligible employees are those defined as a full-time employee (defined as working 20 or more hours per week) who has worked for their employer for 26 weeks, or a part-time employee (less than 20 hours per week) who has worked 175 days.

| | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| Business Services Professionals and Paralegals (Non-Exempt) | Up to 24 weeks | <1 year = 50% of pay for 4 weeks*<br><br>1 - <2 years = 75% of pay for 6 weeks;<br>then 50% of pay for 6 weeks*<br><br>2+ years = 90% of pay for 6 weeks,<br>then 50% of pay for 6 weeks* | <1 year = unpaid for 8 weeks*<br><br>1 - <2 years = unpaid for 12 weeks*<br><br>2+ years = unpaid for 12 weeks* |

*The use of PTO to supplement regular earnings during any unpaid portion of leave is required.  A maximum of 37.50 hours of banked PTO may be preserved.

*Non-Primary Caregiver*

Non-primary Caregivers will be granted leave for the period of time associated with providing support to a Primary Caregiver of an eligible family member with a certified serious health condition. Documentation of the facts supporting the leave may be requested by the Firm.

| | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| Partners and Principals | 17 weeks | <1 year = 100% of pay for 2 weeks<br>1+ years = 100% of pay for 2 weeks, then 50% of pay for 2 weeks | <1 year = unpaid for 15 weeks<br>1+ years = unpaid for 13 weeks |
| Counsel, Professionals, and Other Non-Partner Lawyers | 17 weeks | <1 year = 100% of pay for 2 weeks<br>1+ years = 100% of pay for 2 weeks, then 50 % of pay for 2 weeks | <1 year = unpaid for 15 weeks<br>1+ years = unpaid for 13 weeks |
| Business Services Professionals (Chiefs/Directors/Manager) | 17 weeks | <1 year = 100% of pay for 2 weeks<br>1+ years = 100% of pay for 2 weeks, then 50 % of pay for 2 weeks | <1 year = unpaid for 15 weeks<br>1+ years = unpaid for 13 weeks |
| Business Services Professionals and Paralegals (Other Exempt) | Up to 12 weeks | <1 year = 50% of pay for 2 weeks*<br>1+ years = 100% of pay for 2 weeks, then 50% of pay for 1 weeks* | <1 year = unpaid for 2 weeks*<br>1+ years = unpaid for 9 weeks* |
| Business Services Professionals and Paralegals (Non-Exempt) | Up to 12 weeks | <1 year = 50% of pay for 2 weeks*<br><br>1 - <2 years = 50% of pay for 3 weeks*<br><br>2+ years = 75% of pay for 3 weeks* | <1 year = unpaid for 2 weeks*<br><br>1 - <2 years = unpaid for 9 weeks*<br><br>2+ years = unpaid for 9 weeks* |

*The use of PTO to supplement regular earnings during any unpaid portion of leave is required.  A maximum of 37.50 hours of banked PTO may be preserved.

*Self-Care*

Time off will be provided for self-care consistent in alignment with the 'Non-Parental Primary Caregiver' allocation schedule above.  Requests for self-care leave by hourly part-time employees will be considered on a case- by- case basis.  You will be granted leave for the period of time associated with taking care of yourself when you have a certified serious health condition.  Self-care leave will primarily be used to cover the time needed to treat a certified serious health condition that does not otherwise qualify for short term disability, i.e., absences that do not meet the 13-day elimination period.  Documentation of the facts supporting the leave may be requested by the Firm.

**Leaves of Absence for Non-FMLA Eligible Partners and Employees**

Employees who are not eligible for leave pursuant to the FMLA may apply for a leave of absence for medical disabilities or for any other situation covered under the FMLA.  DUS will evaluate the circumstances surrounding the request for leave (e.g., duration and nature of the leave) in determining approval of the request. If the leave is approved, the Firm will advise the employee, prior to commencement of the leave, whether he or she will be reinstated to the same or an equivalent position upon their return from leave.

The notification and medical certification process for these types of leaves is the same as those outlined under the "Family and Medical Leave of Absence" section. Benefits for employees on Non-FMLA leaves are also handled in the same manner as for employees on FMLA-designated leaves.

Partners who are not eligible for leave pursuant to the FMLA may apply for a leave of absence for medical disabilities or for any other situation covered under the FMLA. The Firm will evaluate the circumstances surrounding the request for leave (e.g., duration and nature of the leave, impact on DUS, length of employment) in determining approval of the request. If the leave is approved, the Firm will advise the Partner, prior to commencement of the leave; whether he or she will be reinstated to the same or an equivalent position upon their return from leave.

Partners must provide the Firm with at least thirty (30) days' notice of a need for leave. Where the need for the leave is either unforeseeable or it is impossible for the Partner to provide thirty (30) days' notice, he or she is to provide as much notice as practicable. The Partner must complete and submit medical certification to DUS's benefits team at benefits@dentons.com. Benefits for Partners on Non-FMLA leaves are handled in the same manner as for employees on FMLA-designated leaves.

| | | | |
|---|---|---|---|
| Business Services Professionals and Paralegals (Other Exempt) | Up to 24 weeks | <1 year = 50% of pay for 8 weeks*<br>1+ years = 100% of pay for 12 weeks | <1 year = unpaid for 4 weeks*<br>1+ years = unpaid for 12 weeks* |
| Business Services Professionals and Paralegals (Non-Exempt) | Up to 24 weeks | <1 year = 50% of pay for 8 weeks*<br>1 - <2 years = 75% of pay for 12 weeks*<br>2+ years = 90% of pay for 12 weeks* | <1 year, = unpaid or 4 weeks*<br>1 - <2 years = unpaid for 12 weeks*<br>2+ years = unpaid for 12 weeks* |

*The use of PTO to supplement regular earnings during any unpaid portion of leave is required. A maximum of 37.50 hours of banked PTO may be preserved.

### Non-primary Caregiver

Non-primary Caregivers will be granted leave for the period of time associated with bonding with and helping to care for a newborn or newly-adopted child within the first 12 months following birth or award of guardianship. Documentation of the facts supporting the leave may be requested by the Firm. Total time, including paid and unpaid segments, is available once every 12 months in a rolling calendar year. Available paid leave may be used either consecutively or intermittently, but must be used before unpaid leave unless otherwise specified. If available paid leave is to be used intermittently, it must be used in blocks of time of no less than two (2) weeks.

| | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| Business Services Professionals (Chiefs/Directors/Managers) | 17 weeks | <1 year = 100% of pay for 2 weeks<br>1+ years = 100% of pay for 4 weeks | <1 year = unpaid for 15 weeks<br>1+ years = unpaid for 13 weeks |
| Business Services Professionals and Paralegals (Other Exempt) | Up to 12 weeks | <1 year = 100% of pay for 1 week*<br>1+ years = 100% of pay for 2 weeks, then 50% for 2 weeks* | <1 year = unpaid for 3 weeks*<br>1+ years = unpaid for 8 weeks* |
| Business Services Professionals and Paralegals (Non-Exempt) | Up to 12 weeks | <1 year = 100% of pay for 1 week*<br>1+ years = 90% of pay for 2 weeks, then 50% for 1 week* | <1 year = unpaid for 3 weeks*<br>1+ years = unpaid for 9 weeks* |

*The use of PTO to supplement regular earnings during any unpaid portion of leave is required. A maximum of 37.50 hours of banked PTO may be preserved.

### Non-Parental Leave

DUS recognizes the challenges employees face when trying to balance work demands and familial needs. Accordingly, these Non-Parental Leave policies are designed to provide time off when you (self-care) have a serious health condition or a family member with a serious health condition needs assistance. Eligible family members include a spouse, domestic partner, child, parent, step-child and step-parent. Total time, including paid and unpaid segments, is available once every 12 months in a rolling calendar year. All available paid leave is to be used consecutively and before unpaid leave unless otherwise specified. Full-time and part-time benefits eligible employees of DUS are eligible. Requests for Non-Parental Leaves by hourly part-time employees will be considered on a case by case basis

### Primary Caregiver

Primary Caregivers will be granted leave for the period of time associated with providing care to an eligible family member with a certified serious health condition. In order to be considered a Primary Caregiver, the employee must be primarily responsible for the care of the family member for the duration of the leave. Documentation of the facts supporting the leave may be requested by the Firm. .

| | Total Time Available | Paid Leave | Unpaid Leave |
|---|---|---|---|
| Partners and Principals | 24 weeks | <1 year = 100% of pay for 6 weeks<br>1+ years = 100% of pay for 12 weeks | <1 year = unpaid for 18 weeks<br>1+ years = unpaid for 12 weeks |
| Counsel, Professionals, and Other Non-Partner Lawyers | 24 weeks | <1 year = 100% of pay for 6 weeks<br>1+ years = 100% of pay for 12 weeks | <1 year = unpaid for 18 weeks<br>1+ years = unpaid for 12 weeks |
| Business Services Professionals (Chiefs/Directors/Manager) | 24 weeks | <1 year = 100% of pay for 6 weeks<br>1+ years = 100% of pay for 12 weeks | <1 year = unpaid for 18 weeks<br>1+ years = unpaid for 12 weeks |
| Business Services Professionals and Paralegals (Other Exempt) | Up to 24 weeks | <1 year = 50% of pay for 6 weeks*<br>1+ years = 100% of pay for 6 weeks, then 50% for 6 weeks* | <1 year = unpaid for 6 weeks*<br>1+ years = unpaid for 12 weeks* |

# EXHIBIT H

Unum
PO Box 100158
Columbia, SC 29202-3158
Fax: 1-800-447-2498
www.unum.com



July 28, 2025

ADRIENNE HANKINS
807 DODD CT
BAY POINT, CA 94565

RE:    Hankins, Adrienne
        LMS Leave Number:     Redacted

Unum works with Dentons US LLP to administer family and medical leaves. This includes leave taken under the Family and Medical Leave Act of 1993 (FMLA) and any applicable state leave laws and corporate leave policies. Please read this entire notice for details and further information regarding your leave.

The current status of your leave due to your own serious health condition is:

| Protection | Begin Date | End Date | Schedule | Status |
|---|---|---|---|---|
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 10/31/2024 | 11/21/2024 | Reduced | Eligible and Approved |
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 11/22/2024 | 12/19/2024 | Reduced | Eligible and Approved |
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 12/20/2024 | 1/30/2025 | Reduced | Eligible and Approved |
| Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 2/28/2025 | 3/16/2025 | Reduced | Eligible and Approved |
| FMLA, California Family Rights Act (CFRA) and Non-Parental Leave - | 3/17/2025 | 5/5/2025 | Intermittent | Eligible and Approved |

1242-03      UNUM IS A REGISTERED TRADEMARK AND MARKETING BRAND OF UNUM GROUP AND ITS INSURING SUBSIDIARIES.

Name: Hankins, Adrienne
LMS Leave Number: ~~Redacted~~

July 28, 2025
Page 2 of 3

| | | | | |
|---|---|---|---|---|
| Primary Caregiver - All employees (24 weeks) | | | | |
| FMLA, California Family Rights Act (CFRA) and Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 5/6/2025 | 6/17/2025 | Reduced | Eligible and Approved |
| FMLA, California Family Rights Act (CFRA) and Non-Parental Leave - Primary Caregiver - All employees (24 weeks) | 7/11/2025 | 1/10/2026 | Intermittent | Eligible and Approved |

## Information About Your Leave

Approval dates are subject to change if leave dates or treatment dates change. Please refer to your Employer's policies for any restrictions on scheduling leave and any requirements for reporting leave.

**Details About Your Intermittent Leave Schedule:** The healthcare provider has certified that you may need to take leave up to:

- 1 per month lasting 24 hours for treatment/medical visits
- 3 per month lasting 24 hours for care/recovery during episodes of incapacity

If your leave usage indicates that you require absences beyond the healthcare provider's current estimate of the amount of leave needed, certification may be required to support additional leave.

## FMLA Entitlement

As of July 25, 2025, you will have used 2 week(s), 19 hour(s), and 14 minute(s) of FMLA.

You will have 9 week(s), 18 hour(s), and 16 minute(s) of FMLA remaining.

This amount includes all approved FMLA leave taken within the applicable 12-month period. These totals do not include any requested leave that has not yet been approved and do not reflect entitlement available under any applicable state law or corporate policy.

If you are reporting intermittent absences, you will receive notice every 30 days communicating the amount of FMLA leave taken.

## Additional Information You Need to Know

Name: Hankins, Adrienne
LMS Leave Number: 25190204

July 28, 2025
Page 3 of 3

Any qualifying leave that is approved will count against your FMLA and/or any state law or corporate policy entitlement(s). Upon return from FMLA leave, most employees must be restored to the same job or similar one with equivalent pay, benefits, and other employment terms and conditions. Any leave that is denied may be treated according to your employer's attendance policy.

Absences during the approved timeframe may be denied if:

- the reason for the absence does not qualify;
- you exhaust your leave entitlement;
- you do not report the absence to Unum timely, as applicable; or
- you are exhausting and/or replenishing your leave entitlement regularly.

For more information about your employer's specific leave policies, please read the attached *Important Information about Dentons US LLP's Family and Medical Leave Policy.*

### How To Contact Us Or View Information About Your Leave

As a convenience, we offer a secure website at www.unum.com/claimant where you have the option to:

- go paperless and choose online correspondence;
- report new leaves of absence and view the status of current claim/leave;
- report intermittent absences on active leaves; and
- provide us with updated information regarding your leave of absence.

You may also manage your claim/leave with the MyUnum for Members Mobile App. The MyUnum for Members Mobile App is available for Apple and Android.

In conjunction with our provision of services to you, you may receive a survey asking about your experience with Unum. Your thoughts and advice are critical drivers to our improvement, and we appreciate the opportunity to learn more about your experience.

If you have any questions, please contact Unum at (866) 779-1054.

Sincerely,


Unum's Absence Operations Team


Enclosures:     Denton Report Groups 3, 4, 7, 8 Important Information

**Important Information About Dentons Family and Medical Leave Policy**

**How Is My FMLA Entitlement Calculated?**
If you are eligible and your leave qualifies, you have the right under the FMLA for up to 12 weeks of unpaid leave in a 12-month period calculated as a "rolling" 12-month period measured backward from the date of any FMLA leave usage.

**What if I Need Additional Leave?**
If you need an extension of your leave, you should notify Unum. You will be required to provide additional certification of the serious health condition.

**What if I Need Work Place Assistance?** – If your leave request is for your own serious health condition and there is need for workplace assistance, please contact **your manager and the Benefits team** immediately for further discussion. Unum assists your Employer in identifying reasonable modifications that may assist you in performing your job. You will receive any future communications about a workplace assistance request in a separate communication.

**How Do I Notify Unum and My Supervisor of My Return to Work Plans?**
If you are able to return to work sooner than your current estimated return to work date, you should notify Unum and your supervisor as soon as practicable.

If your leave is for your own health condition, you will be required to present your employer with a fitness-for-duty certificate as a condition of being restored to employment.

**How Should I Report Intermittent Absences to Unum?**
If you have an intermittent leave, you must notify Unum within 2 business days each time you need to take intermittent leave. Please also notify your supervisor as soon as possible, no later than 2 business days before or after needing to take intermittent leave. Otherwise, your leave under the FMLA and/or State leave law, where applicable, may be delayed/denied.

**Do I Need to Use Vacation/Sick/PTO While on Leave?**
You must use any accrued PTO exceeding 37.50 hours during any otherwise unpaid FMLA and/or state leave unless otherwise mandated by state law.
Any paid time off used will be counted against your available leave under the FMLA and/or state leave law. Please contact the Benefits team regarding how much paid time off you have available. If you do not meet the terms and conditions of your employer paid leave program for your leave, your entitlement to take unpaid FMLA will not be affected.
After you have exhausted your paid leave, the remainder of your leave will be without pay. If you are receiving workers' compensation or disability benefits, then you may use your accrued paid time off.

**Will My Benefits Continue While I Am on Leave?**
*Health Insurance:*
During your leave, your employer will continue to pay its portion of your group health insurance premiums and you must pay your share, if any, of the health insurance premiums.
- During paid leave, your share of the premiums will continue to be paid through payroll deductions
- During unpaid leave, your employer will provide you with information regarding arrangements for payment of your share of the premiums. Please contact the Benefits team for more information regarding payments for benefit continuation during your leave.

You have a 30-day grace period in which to make such premium payments. If you do not pay your share of the insurance premiums on a timely basis, your insurance coverage for yourself and/or your dependents may be terminated for the remainder of your leave

*Other Benefits (Life, Disability, etc.):*
Your employer will continue other benefits (e.g., life insurance, disability insurance, etc.) while you are on leave. If your employer pays your premiums for other benefits, when you return from leave you will not be expected to reimburse your employer for your share of the payments made on your behalf. Please contact the Benefits team for information regarding your other benefits during your leave.

**Are There Other Types of Leave Available?**
For information regarding other types of leave possibly available through your employer, please contact the Benefits team at benefits@dentons.com.

**You and Your Spouse Work for Same Employer**
If you and your spouse work for the same employer (even if employed at different worksites/operating divisions) and are both eligible for FMLA leave, the two of you are limited to a combined total of 12 weeks of FMLA leave during the applicable 12-month period for any combination of leave taken for the following reasons:
- Birth of a child
- Adoption/foster care placement
- Care for a parent with a serious health condition
- Care for a covered servicemember (military caregiver leave)

# EXHIBIT I

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Adrienne Hankins <adrn.hankins@yahoo.com> |
| **Sent:** | Thursday, August 29, 2024 1:40 PM |
| **To:** | Coker, Ashley; Lopez, Dana S. |
| **Cc:** | Hankins, Adrienne |
| **Subject:** | Hankins Work status |
| **Attachments:** | 1Work Status  FORMS_08292024.PDF |

**[WARNING: EXTERNAL SENDER]**

Hello Dana and Ashley, good afternoon, see attached my work status from my doctor.  Starting tomorrow, Friday, Aug 30, I will be working 4 days per week.  Out on every Friday.

Have a great weekend!

Adrienne Hankins
████-7369 (cell)        *Redacted*

Yahoo Mail: Search, Organize, Conquer

----- Forwarded Message -----
**From:** "IPMCARE.donotreply@ipmdoctors.com" <IPMCARE.donotreply@ipmdoctors.com>
**To:** "adrn.hankins@yahoo.com" <adrn.hankins@yahoo.com>

1



**Boomerang Healthcare**
Restoring Hope, Returning Health

450 North Wiget Lane
Walnut Creek, CA 91598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 08/29/2024
Next Appointment: 09/26/2024  02:00 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 909-477-5505

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.

# EXHIBIT I (a)



**Boomerang Healthcare**
Restoring Hope. Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~  *Redacted*
CHUBB

Date: 10/31/2023
Next Appointment: 11/21/2023  08:45 AM
Claim#: ~~Redacted~~  *Redacted*

Insurance Adjuster: Fabiola Vizcarra
Phone: 213-612-5453  Fax: 800-664-1765

Date of Injury: 11/01/2019

## WORK STATUS:
Patient was previously deemed Permanent and Stationary by QME.

## Work Restrictions:
- Patient is to to work part time, 3 days a week 7.5 hours per work day.

*[signature]*

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



**Boomerang Healthcare**
Restoring Hope, Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 12/21/2023
Next Appointment: 01/25/2024  09:15 AM
Claim#: ~~Redacted~~

Insurance Adjuster: Fabiola Vizcarra
Phone: 213-612-5453  Fax: 800-664-1765

Date of Injury: 11/01/2019

## WORK STATUS:
Patient was previously deemed Permanent and Stationary by QME.

**Work Restrictions:**
- Patient is to to work part time, 3 days a week 7.5 hours per work day.



Kang, Sally

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE:



**Boomerang Healthcare**
Restoring Hope. Returning Health.

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 04/30/2024
Next Appointment: 06/11/2024 02:15 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Fabioli Vizcarra
Phone: 213-612-5453  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 3 days a week 7.5 hours a day Patient was previously deemed Permanent and Stationary.

Kang, Sally

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



# Boomerang
# Healthcare
## Restoring Hope, Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 06/11/2024
Next Appointment: 07/11/2024  01:30 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Fabioli Vizcarra
Phone: 213-612-5453  Fax: 800-664-1765

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 3 days a week 7.5 hours a day Patient was previously deemed Permanent and Stationary.



Kang, Sally

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT, THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



**Boomerang Healthcare**
Restoring Hope. Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~ *Redacted*
CHUBB

Date: 07/11/2024
Next Appointment: 08/06/2024  01:30 PM
Claim#: ~~Redacted~~ *Redacted*

Insurance Adjuster: Fabioli Vizcarra
Phone: 213-612-5453  Fax: 800-664-1765

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 3 days a week 7.5 hours a day Patient was previously deemed Permanent and Stationary.

Kang, Sally

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



**Boomerang Healthcare**
Restoring Hope, Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: [Redacted]
CHUBB    *Redacted*

Date: 08/06/2024
Next Appointment: 08/29/2024 01:15 PM
Claim#: [Redacted] *Redacted*

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 909-477-5505

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 3 days a week 7.5 hours a day Patient was previously deemed Permanent and Stationary.

Kang, Sally

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 08/29/2024
Next Appointment: 09/26/2024  02:00 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 909-477-5505

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.



**Boomerang Healthcare**
Restoring Hope. Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB    *Redacted*

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 909-477-5505

Date: 09/26/2024
Next Appointment: 10/24/2024  01:15 PM
Claim#: ~~Redacted~~

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 10/24/2024
Next Appointment: 11/21/2024 01:00 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 909-477-5505

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.



**Boomerang Healthcare**
Restoring Hope. Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date: 11/21/2024
Next Appointment: 12/19/2024  01:15 PM
Claim#: ~~Redacted~~

Date of Injury: 03/12/2014

**WORK STATUS:**

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

Sally Kang FNP-BC

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.



**Boomerang Healthcare**
Restoring Hope, Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 12/19/2024
Next Appointment: 01/30/2025 01:15 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 01/30/2025
Next Appointment: 02/27/2025  01:15 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



**Boomerang Healthcare**
Restoring Hope. Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 02/27/2025
Next Appointment: 04/08/2025  01:30 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.


This form has been electronically signed by Kang, Sally


Boparai, Navjeet  MD



I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT, THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.



**Boomerang Healthcare**
Restoring Hope, Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 04/08/2025
Next Appointment: 05/06/2025  01:30 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



**Boomerang Healthcare**
Restoring Hope. Returning Health.

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 05/06/2025
Next Appointment: 06/17/2025 01:15 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



**Boomerang Healthcare**
Restoring Hope. Returning Health.

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 06/17/2025
Next Appointment: 08/19/2025 01:15 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533 Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.



**Boomerang Healthcare**
Restoring Hope. Returning Health.

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 08/19/2025
Next Appointment: 09/04/2025  08:45 AM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

This form has been electronically signed by Tareque, Timothy

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.



**Boomerang Healthcare**
Restoring Hope, Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 09/04/2025
Next Appointment: 10/09/2025  01:00 PM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins

DOB: ~~Redacted~~ *Redacted*

CHUBB

Date: 10/09/2025
Next Appointment: 11/20/2025  11:00 AM
Claim#: ~~Redacted~~ *Redacted*

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

## WORK STATUS:

Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed Permanent and Stationary.

This form has been electronically signed by Tareque, Timothy

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.

# EXHIBIT J

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Benefits |
| **Sent:** | Tuesday, July 29, 2025 8:13 AM |
| **To:** | Hankins, Adrienne; Coker, Ashley |
| **Cc:** | Bethke, Laura; Alvarez, Antonia; De Rosa, Anne V.; Kledzik, Barbie; Ramirez, Vanessa; HRIS Requests; Qualls, Michele; Ward, Anna; Benefits; Cary, Gary; Kekatos, Arianna; Navarrete, Brenda |
| **Subject:** | UPDATE: Intermittent Leave of Absence | Adrienne Hankins (OAK/EMPL) |
| **Attachments:** | Intermittent Leave Time Entry 90.PDF |

| | |
|---|---|
| Intermittent Leave of absence for: | **Adrienne Hankins** |
| Leave Number: | **25190204** |
| Leave start date: | **10/31/2024** |
| Leave approved through date: | **01/10/2026** |
| Possible frequency: | 3 times per month |

@Hankins, Adrienne
Your entitlement is 24 Weeks; please reference the below table for breakdown.

| Entitlement |
|---|
| 90% pay for 6 weeks (225 hours) |
| 50% pay for 6 weeks (225 hours) |
| Unpaid for 12 weeks (450 hours) |

Intermittent absences must be communicated to your supervisor or manager as soon as possible and you must indicate that the absence is for an approved LOA-qualifying reason. You must also notify Unum no later than 2 business days before or after needing to take intermittent leave.

In addition to notifying Unum within 2 business days of an intermittent absence, **you are responsible for logging your own intermittent time in UKG Workforce Management**, just like you enter other Time Off Requests. The following codes should be used, as applicable:
- **Intermittent Leave** = Paid time (90% or 50%) related to your approved leave
- **PTO Cascade** = Paid Time Off (10% or 50% PTO) related to your approved leave

**To enter approved intermittent leave in UKG Workforce Management**, go to "Time-Off Request" in the My Accrual Hours tile. Select the date and then "Apply"; under "Duration" select if the time off is in Hours or Full Day. If duration is in Hours enter in Start Time of leave and the amount in decimals and select the applicable leave type per the instructions in this email.
You need to account for a 37.50-hour work week; therefore, you will only be required to enter intermittent leave time when you have worked less than a 37.50-hour week. See attached Intermittent Leave Time Entry instructions for 90% pay. If you move to 50% pay, further instructions will be sent.

**Your intermittent time should be entered at the end of the week, rather than day-by-day. This is to ensure the correct amount of intermittent time is entered after your regular work hours are taken into account. Please see Intermittent Time Entry for UKG document attached.**

1

- **Example: you are approved for 3 hours of intermittent time every day for a week. Instead of working 4.5 hours per day though, you worked 5 hours per day. Therefore, at the end of the week, you should enter 2.5 hours of intermittent leave per day, rather than 3 hours per day.**

If you do not have sufficient PTO, the approved time will be unpaid. You must send an email to hris.requests@dentons.com to report approved intermittent time that should be coded as unpaid. Please include the date and amount of unpaid hours; entering the intermittent paid portion is still your responsibility. Before intermittent time can be coded as unpaid, available PTO that exceeds 37.5 hours must be exhausted concurrently with approved leave.  If 37.50 hours or less of PTO are available, you can opt to use or save the hours. Please note that Benefits will be monitoring your intermittent hours.

Please connect with brenda.navarrete@dentons.com if there are any questions. Thank you!

---

**From:** Benefits <benefits@dentons.com>
**Sent:** Thursday, June 05, 2025 6:52 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>; Coker, Ashley <ashley.coker@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>; Alvarez, Antonia <antonia.alvarez@dentons.com>; De Rosa, Anne V. <anne.derosa@dentons.com>; Kledzik, Barbie <barbie.kledzik@dentons.com>; Ramirez, Vanessa <vanessa.ramirez@dentons.com>; HRIS Requests <hris.requests@dentons.com>; Qualls, Michele <michele.qualls@dentons.com>; Ward, Anna <anna.ward@dentons.com>; Benefits <benefits@dentons.com>; Cary, Gary <gary.cary@dentons.com>; Kekatos, Arianna <arianna.kekatos@dentons.com>; Navarrete, Brenda <brenda.navarrete@dentons.com>
**Subject:** Intermittent Leave of Absence | Adrienne Hankins (OAK/EMPL)

| Intermittent Leave of absence for: | Adrienne Hankins |
|---|---|
| Leave Number: | 25190204 |
| Leave start date: | 10/31/2024 |
| Leave approved through date: | 06/17/2025 |
| Possible frequency: | 3 times per month |

@Hankins, Adrienne
Your entitlement is 24 Weeks; please reference the below table for breakdown.

| Entitlement |
|---|
| 90% pay for 6 weeks (225 hours) |
| 50% pay for 6 weeks (225 hours) |
| Unpaid for 12 weeks (450 hours) |

Intermittent absences must be communicated to your supervisor or manager as soon as possible and you must indicate that the absence is for an approved LOA-qualifying reason.  You must also notify Unum no later than 2 business days before or after needing to take intermittent leave.

In addition to notifying Unum within 2 business days of an intermittent absence, **you are responsible for logging your own intermittent time in UKG Workforce Management**, just like you enter other Time Off Requests.  The following codes should be used, as applicable:
- **Intermittent Leave** = Paid time (90% or 50%) related to your approved leave

- **PTO Cascade** = Paid Time Off (10% or 50% PTO) related to your approved leave

**To enter approved intermittent leave in UKG Workforce Management,** go to "Time-Off Request" in the My Accrual Hours tile. Select the date and then "Apply"; under "Duration" select if the time off is in Hours or Full Day. If duration is in Hours enter in Start Time of leave and the amount in decimals and select the applicable leave type per the instructions in this email.

You need to account for a 37.50-hour work week; therefore, you will only be required to enter intermittent leave time when you have worked less than a 37.50-hour week. See attached Intermittent Leave Time Entry instructions for 90% pay. If you move to 50% pay, further instructions will be sent.

**Your intermittent time should be entered at the end of the week, rather than day-by-day. This is to ensure the correct amount of intermittent time is entered after your regular work hours are taken into account. Please see Intermittent Time Entry for UKG document attached.**

- **Example: you are approved for 3 hours of intermittent time every day for a week. Instead of working 4.5 hours per day though, you worked 5 hours per day. Therefore, at the end of the week, you should enter 2.5 hours of intermittent leave per day, rather than 3 hours per day.**

If you do not have sufficient PTO, the approved time will be unpaid. You must send an email to hris.requests@dentons.com to report approved intermittent time that should be coded as unpaid. Please include the date and amount of unpaid hours; entering the intermittent paid portion is still your responsibility. Before intermittent time can be coded as unpaid, available PTO that exceeds 37.5 hours must be exhausted concurrently with approved leave.  If 37.50 hours or less of PTO are available, you can opt to use or save the hours. Please note that Benefits will be monitoring your intermittent hours.

Please connect with brenda.navarrete@dentons.com if there are any questions. Thank you!

## How to enter time while out on Intermittent Leave
90% Pay

| Hours of Leave Taken | Enter as Intermittent Leave | Enter as: PTO Cascade If have over 37.5 hours of PTO* If do not, see below** |
|---|---|---|
| Hours/Minutes | Hours/Minutes | Hours/Minutes |
| 7:30 | 6.75 | 0.75 |
| 7:15 | 6.50 | 0.75 |
| 7:00 | 6.25 | 0.75 |
| 6:45 | 6.00 | 0.75 |
| 6:30 | 5.75 | 0.75 |
| 6:15 | 5.50 | 0.75 |
| 6:00 | 5.50 | 0.50 |
| 5:45 | 5.25 | 0.50 |
| 5:30 | 5.00 | 0.50 |
| 5:15 | 4.75 | 0.50 |
| 5:00 | 4.50 | 0.50 |
| 4:45 | 4.25 | 0.50 |
| 4:30 | 4.00 | 0.50 |
| 4:15 | 3.75 | 0.50 |
| 4:00 | 3.50 | 0.50 |
| 3:45 | 3.25 | 0.50 |
| 3:30 | 3.25 | 0.25 |
| 3:15 | 3.00 | 0.25 |
| 3:00 | 2.75 | 0.25 |
| 2:45 | 2.50 | 0.25 |
| 2:30 | 2.25 | 0.25 |
| 2:15 | 2.00 | 0.25 |
| 2:00 | 1.75 | 0.25 |
| 1:45 | 1.50 | 0.25 |
| 1:30 | 1.25 | 0.25 |
| 1:15 | 1.25 | 0.00 |
| 1:00 | 1.00 | 0.00 |
| 0:45 | 0.75 | 0.00 |
| 0:30 | 0.50 | 0.00 |
| 0:15 | 0.25 | 0.00 |

*PTO Cascade - to be used when PTO balance is above 37.5 hours

** If you have 37.5 hours or less of PTO, your time will be unpaid. You must email the HRIS Team at hris.requests@dentons.com to report approved intermittent time that should be coded as unpaid. Please include the date and missed hours.

In UKG, minutes must be entered as decimal hours. Here is the simple conversion:

| Minutes of leave | Decimal Hours to be entered into UKG |
|---|---|
| 15 | .25 |
| 30 | .5 |
| 45 | .75 |

# EXHIBIT K



**Boomerang Healthcare**
Restoring Hope. Returning Health

450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~
CHUBB

Date: 08/19/2025
Next Appointment: 09/04/2025  08:45 AM
Claim#: ~~Redacted~~

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

This form has been electronically signed by Tareque, Timothy

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO
ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF
PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH
REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY
PROCEDURE.

# EXHIBIT K (a)

## Adrienne Hankins

| | |
|---|---|
| **From:** | Navarrete, Brenda <brenda.navarrete@dentons.com> |
| **Sent:** | Tuesday, August 19, 2025 3:37 PM |
| **To:** | Hankins, Adrienne |
| **Cc:** | Kekatos, Arianna |
| **Subject:** | RE: Adrienne Hankins | Work Status, Aug 19 |

Hi Adrienne,

If you are unable to meet the in-office days, I believe your doctor is referring to a work accommodation form. I will send the work accommodation info in a separate email. I'll schedule a time to connect and go over this process as well as the Unum leaves; we currently have 2 leaves on file and want to confirm the information we received from Unum.

Thank you,

**Brenda Navarrete**
Benefits and LOA Specialist

☎ +1 602 508 3953  |  🚫 +1 602 245 5498  |  US Internal 63953

---

**From:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Sent:** Tuesday, August 19, 2025 3:32 PM
**To:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Cc:** Kekatos, Arianna <arianna.kekatos@dentons.com>
**Subject:** RE: Adrienne Hankins | Work Status, Aug 19

It is intermittent leave, I do not have a designated full day. Also see attached designation notice I downloaded from my Unum portal.

I advised my doctor that I am being required to commute into the office 4 days a week. I was then advised to request an "exemption" form (an "exception" form?) from my job for them to fill out on my behalf.

I do not know what the difference in these two forms.

Adrienne Hankins
Legal Administrative Assistant

☎ +1 415 882 0170  |  US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

1

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Tuesday, August 19, 2025 3:12 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Kekatos, Arianna <arianna.kekatos@dentons.com>
**Subject:** Adrienne Hankins | Work Status, Aug 19

Hi Adrienne,

Thank you for connecting with us.

To confirm, you are requesting intermittent/reduced leave starting 8/14/25 and working 4 full days per week (30 hours per week)? If yes, is there a dedicated day that you will be out on leave each week? Please keep Unum posted as well.

The work exception form that you are requesting, is this regarding a work accommodation request?

# WORK STATUS:
Patient is to work part time 4 days a week 7.5 h
Permanent and Stationary.

Thank you,

Brenda Navarrete
Benefits and LOA Specialist

✆ +1 602 508 3953   |   🚫 +1 602 245 5498   |   US Internal 63953

-----Original Message-----
**From:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Sent:** Tuesday, August 19, 2025 2:36 PM
**To:** HRIS Requests <hris.requests@dentons.com>; Navarrete, Brenda <brenda.navarrete@dentons.com>
**Subject:** FW: Work Status, Aug 19

Please find attached my work status letter from my doctor.

My doctor is also requesting the Dentons work exemption form. Please send it to me and I will send it to my doctor.

Thank you.

Adrienne Hankins

2

Legal Administrative Assistant

D +1 415 882 0170   |   US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland


-----Original Message-----
From: Adrienne Hankins <adm.hankins@yahoo.com>
Sent: Tuesday, August 19, 2025 2:27 PM
To: Hankins, Adrienne <adrienne.hankins@dentons.com>
Subject: Work Status, Aug 19

[WARNING: EXTERNAL SENDER]

# EXHIBIT K (b)

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Benefits <benefits@dentons.com> |
| **Sent:** | Tuesday, August 19, 2025 3:40 PM |
| **To:** | Hankins, Adrienne |
| **Cc:** | Navarrete, Brenda |
| **Subject:** | Adrienne Hankins | Work Accommodation Request |
| **Attachments:** | Request for Medical Information from Health Care Provider.pdf; Employee Request & Medical Release Form.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hi Adrienne,

If you are looking for a work accommodation, the following forms are required to begin the process:

1. **Employee Request & Medical Release Form** – To be completed by you and returned immediately
   - ? Must contain an actual (wet or electronic) signature
   - ? Must indicate the start & end date and/or possible duration for your accommodation request.

2. **Request for Medical Information from Health Care Provider Form** – Have your doctor complete this form and return it ASAP
   - ? It can be faxed to our confidential fax number: 312-277-5126 or emailed to Benefits benefits@dentons.com or @Navarrete, Brenda
   - ? Do not use a substitute form of any kind.
   - ? Must contain an actual (wet or electronic) signature
   - ? Must indicate the start & end date and/or possible duration for your accommodation
   - ? Must indicate the nature of the disability and accommodation/work limitations.

As with all personal and medical information received in HR, the contents of submitted documents will be treated confidentially and will not be disclosed to anyone not involved in the accommodation determination.

Upon receipt of both completed forms, Benefits and Human Resources will engage in the interactive process with you, beginning with a review of the documents. Until we receive the completed forms and a decision is made, the expectation would be that you work from the office per Firm policy.

Please let me know if you have any questions or would like to discuss over the phone.

Thank you,

Benefits Team

1

**DENTONS**

### REQUEST FOR MEDICAL INFORMATION FROM HEALTH CARE PROVIDER

A request for a reasonable accommodation has been made by our employee _____.
In order to assist with the interactive process, we are requesting you to provide feedback to the following questions based on your medical expertise.

Background

An employee has a disability if he or she has an impairment that substantially limits one or more major life activities or a record of such an impairment. "Substantially limits" under the ADA Amendments Act of 2008 ("ADAAA") has been broadened to allow someone with an impairment to be "regarded as" having a disability, even without the perception that the impairment limits a major life activity, provided that the impairment does not have an actual or expected duration less than or equal to six months.

The ADAAA provides examples of "major life activities," including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, working, and the operation of a major bodily function, such as functions of the immune system, normal cell growth and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine and reproductive functions."

Please answer these questions to help determine disability and reasonable accommodation. **Fax completed form to Dentons' confidential fax number: 312-277-5126.**

1) Please review the attached job description. (If no job description is attached, please discuss the position with the employee to determine essential job duties.) Is the employee able to perform the essential job functions of this position with or without reasonable accommodation? **Yes / No**

If yes, please continue to next question.

If no, how long will the employee be unable to perform these job duties?

_____ # of weeks _____# of months _____permanently

2) Does the employee have a physical or mental impairment? **Yes / No**

If yes, what is the impairment?

3) What limitation(s) is interfering with job performance, and how does it interfere with the employee's ability to perform the job function(s)?

4) What adjustments to the work environment or position responsibilities would enable the employee to perform the essential functions of that position?

5) The employee's typical schedule is _____. What, if any, adjustments need to be made to the employee's work schedule to enable the employee to perform the essential functions of that position?

6) How would your suggestions improve the employee's job performance?

7) How long will the employee need the reasonable accommodation? If unable to provide date, when will he or she be medically reevaluated?

| Start Date: | End Date: | Duration: |
|---|---|---|

Any additional comments or suggestions:

Provider's name and business address: _____

Telephone: (_____) _____    Fax: (_____) _____

Type of practice/medical specialty: _____

Provider's signature: _____

Date: _____

**DENTONS**

## EMPLOYEE REQUEST & MEDICAL RELEASE

1. Name: _____

2. Phone Number: _____

3. Position: _____

4. Department: _____

5. Office Location: _____

5. Manager: _____

6. Nature of the Qualifying Disability: _____

_____

_____

7. Requested Accommodation/Work Schedule: (Please describe the accommodations you believe are needed to enable you to perform the essential functions of this job.) _____

| Start Date: | End Date: | Duration: |
|---|---|---|

8. Health care Provider Contact Information (Please provide name, address, telephone and fax numbers) The physician may receive a letter/fax from us requesting information on your impairment/disability and recommendations for accommodations: _____

_____

*I authorize the release of necessary confidential medical information regarding my disability to Dentons US LLP Human Resources. I also attest to the fact that a copy of the position description has been given to me for review and reference.*

Signature: _____

Date: _____

# EXHIBIT L

 Sent

# Work accommodation 📎

**Adrienne Hankins**
To: adrienne · Thu, Sep 4 at 2:59 PM ⌃

**To:**  adrienne.hankins@dentons.com <adrienne.hankins
@dentons.com>

**1 attachment**                                          Download ⬇

  **BRWEC5C68B1E369...**
                     PDF · 138.5 KB

DENTONS

## REQUEST FOR MEDICAL INFORMATION FROM HEALTH CARE PROVIDER

A request for a reasonable accommodation has been made by our employee ___Adrienne Hankins___.
In order to assist with the interactive process, we are requesting you to provide feedback to the following
questions based on your medical expertise.

Background

An employee has a disability if he or she has an impairment that substantially limits one or more major
life activities or a record of such an impairment. "Substantially limits" under the ADA Amendments Act
of 2008 ("ADAAA") has been broadened to allow someone with an impairment to be "regarded as"
having a disability, even without the perception that the impairment limits a major life activity, provided
that the impairment does not have an actual or expected duration less than or equal to six months.

The ADAAA provides examples of "major life activities," including "caring for oneself, performing
manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing,
learning, reading, concentrating, thinking, communicating, working, and the operation of a major bodily
function, such as functions of the immune system, normal cell growth and digestive, bowel, bladder,
neurological, brain, respiratory, circulatory, endocrine and reproductive functions."

Please answer these questions to help determine disability and reasonable accommodation. Fax
completed form to Dentons' confidential fax number: 312-277-5126.

1) Please review the attached job description. (If no job description is attached, please discuss the position
with the employee to determine essential job duties.) Is the employee able to perform the essential job
functions of this position with or without reasonable accommodation? Yes / No

If yes, please continue to next question.

If no, how long will the employee be unable to perform these job duties?

_____ # of weeks _____ # of months __/permanently

2) Does the employee have a physical or mental impairment? (Yes)/ No

If yes, what is the impairment?

chronic neck pain.

3) What limitation(s) is interfering with job performance, and how does it interfere with the employee's ability to perform the job function(s)?

Chronic neck pain

4) What adjustments to the work environment or position responsibilities would enable the employee to perform the essential functions of that position?

Patient snould be able to work from home

5) The employee's typical schedule is _____. What, if any, adjustments need to be made to the employee's work schedule to enable the employee to perform the essential functions of that position?

No change in schedule needed

6) How would your suggestions improve the employee's job performance?

By working from home there will be fewer flareups caused by commuting allowing her to compute job related tasks.

7) How long will the employee need the reasonable accommodation? If unable to provide date, when will he or she be medically reevaluated?

(12 mo) - 9/4/2025 - 9/4/2026

Start Date: 9/4/2025  End Date: 9/4/2026  Duration: 1 year

Any additional comments or suggestions:

Provider's name and business address: _____

Telephone: (925) 691 9806     Fax: (925) 691 9807

Type of practice/medical specialty: PM+R

Provider's signature: _____

Date: 9/4/2025



**EMPLOYEE REQUEST & MEDICAL RELEASE**

1. Name: Adrienne Hankins

2. Phone Number: ▓▓▓7369  *Redacted*

3. Position: Legal Administrative Assistant

4. Department: Commercial Litigation

5. Office Location: Oakland

5. Manager: Ashley Coker

6. Nature of the Qualifying Disability: Taking into consideration, I have a cervical spine injury

which causes chronic debilitating pain, a 3 or 4 day commute into the office, I would risk aggravation

and more frequent flare-ups of my condition. I also attend on-going self-care medical appointments weekly for pain management.

7. Requested Accommodation/Work Schedule: (Please describe the accommodations you believe are needed to enable you to perform the essential functions of this job.) I currently travel into the office one

day per week and I am requesting to keep this current accommodation.

Start Date: 9/4/2025    End Date: 9/4/2026    Duration: 1 year

8. Health care Provider Contact Information (Please provide name, address, telephone and fax numbers) The physician may receive a letter/fax from us requesting information on your impairment/disability and recommendations for accommodations: Dr. Navjeet Boparai, 450 N. Wiget Lane, Walnut Creek, CA

925.691.9806 (phone) 925.691.9807 (fax)

*I authorize the release of necessary confidential medical information regarding my disability to Dentons US LLP Human Resources. I also attest to the fact that a copy of the position description has been given to me for review and reference.*

Signature: *Adrienne Hankins*

Date: 9/4/2025

# EXHIBIT M

## Adrienne Hankins

| | |
|---|---|
| **From:** | Hankins, Adrienne <adrienne.hankins@dentons.com> |
| **Sent:** | Thursday, September 18, 2025 5:13 PM |
| **To:** | Navarrete, Brenda |
| **Cc:** | Bethke, Laura; Kekatos, Arianna |
| **Subject:** | RE: In Office Exception vs. Work Accommodation Request |
| **Attachments:** | memo rev.pdf |

Please see attached and respond as soon as possible.

Thank you.

**Adrienne Hankins**
Legal Administrative Assistant

@ +1 415 882 0170  |  US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Monday, September 15, 2025 3:23 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>; Kekatos, Arianna <arianna.kekatos@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

This is for provider to clarify and include in his/her form. Provider can update the last copy OR provider can include in new copy (attached).

Thank you,

**Brenda Navarrete**
Benefits and LOA Specialist

@ +1 602 508 3953  |  @ +1 602 245 5498  |  US Internal 63953

**From:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Sent:** Monday, September 15, 2025 3:21 PM
**To:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>; Kekatos, Arianna <arianna.kekatos@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

Thank you, not doing too good today, but I will talk with my doctor.


**Adrienne Hankins**
Legal Administrative Assistant


☎ +1 415 882 0170   |   US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland


**From:** Kekatos, Arianna <arianna.kekatos@dentons.com>
**Sent:** Thursday, September 11, 2025 3:30 PM
**To:** Navarrete, Brenda <brenda.navarrete@dentons.com>; Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

Hello Adrienne,

Hope you are doing well! would you be able to have your doctor update the form for question 2? It seems that the information provided pertains to a symptom rather than a diagnosis. Additionally, we need clarification on how commuting, particularly by public transit, aggravates the condition.

Thanks!


**Arianna Kekatos**
HR/Benefits Coordinator


☎ +1 312 876 8241   |   US Internal 18241


**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Tuesday, September 02, 2025 4:04 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Cc:** Bethke, Laura <laura.bethke@dentons.com>
**Subject:** RE: In Office Exception vs. Work Accommodation Request

Hi Adrienne,

Hope all is well. I have not received your doctor's completed form. Can you please check with your doctor?

Also, can you please sign/date the "employee request" form?

I will check with Unum on your 2nd leave request and follow-up.

Thank you,

+1 415 882 0170  |  US Internal 40170

Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West

San Francisco/Oakland

dentons.com

**MEMORANDUM**

To:        HRIS
           Laura Lemke
           laura.bethke@dentons.com
           Navarrete, Brenda
           brenda.navarrete@dentons.com
           Kekatos, Arianna
           arianna.kekatos@dentons.com

From:      Adrienne Hankins
           Date of Hire: March 10, 2008

Date:      September 18, 2025

Subject:   Employee Request & Medical Release / In Office Exception

**Response requested no later than Tuesday, September 23 or sooner.**

I hope this memo will assist you in evaluating my disabilities and whether I am eligible for an in-office 3-day exception. My situation is unique, and I respectfully request that it be evaluated appropriately and assessed based on my individual disability. My ability to work remotely for the last several years has not created an undue hardship on the firm, nor has it created an administrative burden. I am requesting that Dentons continue to allow me to work from home to accommodate my medical condition and so that I can stay in compliant with my medical treatment plan and medical appointments that I attend several times per week. I am allotted 7.5 hours of intermittent leave per week to attend medical appointments, including travel time.

Note:  I see my doctor every 6 weeks, and at my doctor's discretion, I am open to commuting in at least one day per week depending on my symptoms from day to day.

I have been diagnosed with various serious health conditions, which are well documented, these conditions are chronic in nature. Under the direction and supervision of my doctor/healthcare provider, I am required to work from home due to my current medical condition.

I travelled by public transportation yesterday, 9/17, to try it out. It literally took me 2 hours to get to the office. I left my home at 7:35 a.m., at a time where traffic should have been smoother, instead of leaving at 6:45 a.m. but as usual, it was unpredictable. I arrived in the office at 9:36 a.m.  I left the office to head home at 2:30 p.m., took a train to a bus, I arrived home at 4:32 p.m.  Almost 4 extra hours lost when

**Puyat Jacinto & Santos ► Link Legal ► Zaanouni Law Firm & Associates ► LuatViet ► For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms**

taking public transportation, approximately 2 hours of PTO used to commute and off the clock away from my very demanding position. [8:30am-9:36am, PTO; 2:30pm-3:30p (lunch hour); 3:30pm to 4:32 pm, PTO] with only 30 minutes remaining to handle the requests that were waiting for me in my email inbox.

Due to my chronic debilitating neck, back and right shoulder pain, commuting on public transportation for example walking down two flights of steep stairs with my carry bag that weighs about 15-18 lbs., just to get to the train platform, continuously will cause aggravation and exacerbation of my back injury and cause neck strain, as well as risk re-injury. Changing my schedule at this point, it is going to cause unreasonable stress that can negatively impact my physical, mental and emotional well-being. In closing, I am requesting to continue to remote work, to maintain a healthy quality of life.

Respectfully submitted, Adrienne Hankins

**Diagnosis:**
*(See question 2, request for medical info)*

**Attachments:**

**1) Att. A - QME Report - 11/20/2020**
**2) Att. B – initial therapy/treatment order for lower back - 7/18/2025**
**3) Att. C - Work Status letter - 9/4/2025**
**4) Att. D - photos of steep stairs at BART station -9/17/2025**

**DENTONS**

## REQUEST FOR MEDICAL INFORMATION FROM HEALTH CARE PROVIDER

A request for a reasonable accommodation has been made by our employee  Adrienne Hankins .
In order to assist with the interactive process, we are requesting you to provide feedback to the following questions based on your medical expertise.

### Background

An employee has a disability if he or she has an impairment that substantially limits one or more major life activities or a record of such an impairment. "Substantially limits" under the ADA Amendments Act of 2008 ("ADAAA") has been broadened to allow someone with an impairment to be "regarded as" having a disability, even without the perception that the impairment limits a major life activity, provided that the impairment does not have an actual or expected duration less than or equal to six months.

The ADAAA provides examples of "major life activities," including "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, working, and the operation of a major bodily function, such as functions of the immune system, normal cell growth and digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine and reproductive functions."

Please answer these questions to help determine disability and reasonable accommodation. **Fax completed form to Dentons' confidential fax number: 312-277-5126.**

1) Please review the attached job description. (If no job description is attached, please discuss the position with the employee to determine essential job duties.) Is the employee able to perform the essential job functions of this position with or without reasonable accommodation? **Yes / No**

If yes, please continue to next question.

If no, how long will the employee be unable to perform these job duties?

_____ # of weeks _____ # of months _Ø_ permanently

2) Does the employee have a physical or mental impairment? ⓨes / No

If yes, what is the impairment?

chronic neck pain.

physical impairment, facet arthropathy, cervical
disc disorder, intervertebral disc degeneration (cervical &
spondylosis, lumbar region, right shoulder biceps tendinitis, lumbar spine
R AC joint degenerative changes.

3) What limitation(s) is interfering with job performance, and how does it interfere with the employee's ability to perform the job function(s)?

~~Chronic neck pain~~ St

chronic neck pain

4) What adjustments to the work environment or position responsibilities would enable the employee to perform the essential functions of that position?

Patient should be able to work from home

5) The employee's typical schedule is _____. What, if any, adjustments need to be made to the employee's work schedule to enable the employee to perform the essential functions of that position?

No change in schedule needed

6) How would your suggestions improve the employee's job performance?

By working from home there will be fewer flareups caused by commuting allowing her to compute job related tasks.

7) How long will the employee need the reasonable accommodation? If unable to provide date, when will he or she be medically reevaluated?

(12 mo) - 9/4/2025 - 9/4/2026

Start Date: 9/4/2025   End Date: 9/4/2026   Duration: 1 year

Any additional comments or suggestions:

Forcing patient to take public transit multiple times a week in order to go to work will increase patients risk for fall, trauma, reinjury and also aggravate current injuries, and hinder the progress she is making by being compliant with her medical treatm

Provider's name and business address: _____

Telephone: (925) 691 9806          Fax: (925) 691 9807

Type of practice/medical specialty: PM + R

Provider's signature: _____

Date: 9/4/2025

**DENTONS**

## EMPLOYEE REQUEST & MEDICAL RELEASE

1. Name: Adrienne Hankins

2. Phone Number: 650.291.7369

3. Position: Legal Administrative Assistant

4. Department: Commercial Litigation

5. Office Location: Oakland

5. Manager: Ashley Coker

6. Nature of the Qualifying Disability: Taking into consideration, I have a cervical spine injury

which causes chronic debilitating pain, a 3 or 4 day commute into the office, I would risk aggravation

and more frequent flare-ups of my condition. I also attend on-going self-care medical appointments weekly

for pain management.

7. Requested Accommodation/Work Schedule: (Please describe the accommodations you believe are needed to enable you to perform the essential functions of this job.) I currently travel into the office one

day per week and I am requesting to keep this current accommodation.

| Start Date: 9/4/2025 | End Date: 9/4/2026 | Duration: 1 year |

8. Health care Provider Contact Information (Please provide name, address, telephone and fax numbers) The physician may receive a letter/fax from us requesting information on your impairment/disability and recommendations for accommodations: Dr. Navjeet Boparai, 450 N. Wiget Lane, Walnut Creek, CA

925.691.9806 (phone) 925.691.9807 (fax)

*I authorize the release of necessary confidential medical information regarding my disability to Dentons US LLP Human Resources. I also attest to the fact that a copy of the position description has been given to me for review and reference.*

Signature: *Adrienne Hankins*

Date: 9/4/2025

**Attachment A**

# James D. Mays, M.D.

### Board Certified Orthopaedic Surgeon
### Qualified Medical Evaluator

MAILING ADDRESS
8221 N. Fresno St
Fresno, CA 93720
(559) 222-2294

## PANEL QUALIFIED MEDICAL EVALUATION

Disability Evaluation Unit
1515 Clay Street, 6th Floor
Oakland, CA 94612

RE:                              Hankins, Adrienne
DATE OF EVALUATION:              November 23, 2020
EMPLOYER:                        Dentons US LLP
DATE OF INJURY:                  March 12, 2014
CLAIM NO:                        ~~Redacted~~ *Redacted*
FILE NO:                         190-0 *Redacted*

## FEE DISCLOSURE

**ML 104-95:** This is an Qualified Medical Evaluation with Extraordinary Circumstances as a result of meeting the requirements of 4 complexity factors, which are listed below:

- .12 hour(s) of record review time
- 35 minutes of face to face time
- 2 ½ hour(s) of report preparation time
- 15 total hours of combined time
- Four hours or more of any combination of 2 complexity factors (2 factors)
- Addressing issues of causation (1 factor)
- Addressing issues of apportionment when the physician addresses: (1 factor)
    - 3+ injuries to the **SAME** body system or region
    - 2+ injuries to 2 **DIFFERENT** body system or regions

**\*\*This is a medical legal report and does not qualify for a PPO/Network discount.**

RE: Hankins, Adrienne
Page 3

She continued under the care of Stephen Chen, MD and was allowed to return to regular work with five minute breaks every 30 minutes.

01/21/2016, Jeffrey Peterson, MD began treatment and diagnosed lumbar strain, cervical strain, biceps tendinitis. Recommended acupuncture, physical therapy, and home exercise.

01/11/2017 Manijehy Ryan, MD began treatment with diagnosis of C6 radiculopathy. C5-6 disc herniation. Recommended cervical MRI, continue full duty.

01/30/2017 Teresa Simonson, MD, MRI of the cervical spine revealed multi-level degenerative disc and facet disease. Straightening and kyphosis of the cervical spine suggest muscle spasm and/or cervical strain. Moderate to severe degenerative disc disease at the mid-cervical level with endplate edema at C4-5 and C3-4 suggesting segmental stress. Severe bilateral C3, C4 foraminal stenosis due to degenerative disease.

02/04/2017 Manijehy Ryan, MD, EMG/nerve conduction studies, bilateral upper extremity and cervical spine did not reveal abnormality of cervical spine brachial plexus or indications of polyneuropathy or myopathy.

02/13/2017 Manijehy Ryan, MD delivered a P&S report diagnosis of C6 radiculitis, C5-6 disc herniation. Cervical facet arthropathy with initially a 28% whole person impairment with a DRE Cervical Category IV. The following paragraph indicated that Adrienne Hankins had a 7% whole person impairment from a DRE Cervical Category II rating.

11/29/2017 Adrienne Hankins care was transferred to Navjeet Boparai, MD with a diagnosis of arthropathy unspecified. Cervical disc disorder. Strain of muscle, fascia, and tendon at neck level. Other muscle spasms and recommended diagnostic medical branch block at C4, C5 and C6.

06/13/2018 Navjeet Boparai, MD performed cervical facet nerve blocks on the left at C4, C5 and C6 with partial relief.

08/22/2018 Navjeet Boparai, MD did a medial branch radiofrequency neurotomy at C4, C6 and C6 branch on the left for a total of three lesions with good result.

Adrienne Hankins states that her cervical symptoms kept increasing an on 05/01/2019, had a repeat cervical facet block on the right C3, C4, C5 with positive results.

RE: Hankins, Adrienne
Page 5

01/21/2016 Jeffery Peterson, MD noted that the neck pain, right shoulder pain and low back pain, Diagnosed as having lumbar strain, cervical strain, biceps tendinitis, continue acupuncture, physical therapy, hot and cold compresses, and modified work consisting of five minute breaks every 30 minutes.

03/08/2016, 04/08/2016, 04/26/2016, 05/27/2016 and 06/15/2016 multiple reports from Robert Yee, MD and Angelica Caserta, Nurse Practitioner were reviewed noting the symptoms were continuing in the cervical spine and lumbar spine. It was also noted that a new date of injury of 03/11/2016 for right hand, wrist and digit finger pain was initiated with treatment consisting of anti-inflammatory and occupational therapy.

Manijehy Ryan, MD.    Doctor's First Report on 01/11/2017 diagnosed as C6 radiculopathy. C5-6 disc herniation. Recommended a cervical MRI.

01/30/2017 Teresa Simonson, MD MRI of the cervical spine without contrast. Impression was multi-level degenerative disc and facet disease, straightening of the kyphosis of the cervical spine suggesting muscle spasm or cervical strain. Moderate to severe degenerative disc disease at the mid-cervical level with endplate edema at C4-5 and C3-4 suggesting segmental stress.    Severe bilateral C3-4 foraminal stenosis, degenerative disease.

02/04/2017 Manijehy Ryan, MD, EMG/nerve conduction study bilateral upper extremity and cervical spine and interpreted as normal.

02/13/2017 Manijehy Ryan, MD, P&S report. Initially a 28% whole person impairment with a DRE IV with the following paragraph of 7% whole person impairment with a DRE Category II.

05/17/2017, Manijehy Ryan, MD, office report. Diagnosis C6 radiculitis. C5-6 disc degeneration. Cervical facet arthropathy.    Continue oral anti-inflammatories, begin chiropractic care, and continue full duty.

07/19/2017 Manijehy Ryan, MD. Office report.

09/20/2017 Manijehy Ryan, MD office report.

10/25/2017 Manijehy Ryan office report.

RE: Hankins, Adrienne
Page 7

04/21/2014 through 04/09/2020 multiple physical therapy reports by John Lovejoy, PT and Heather O'Meara, PT, Nai-Huang Nguyen, PT, Marcie Fitzsimmons, PT, Thomas Lawrence, PT, Robert Lin, DPT and Kyles PT were reviewed.

## WORK STATUS

Adrienne Hankins is continuing to work as a legal secretary with self-modification of work.

## RELEVANT MEDICAL HISTORY

She states she has not had similar problems with or injuries to the body part or parts involved in this claim.

She states that she has had other work injuries since the injury involved in this claim. These are to the right thumb, hand, index finger and wrist, left shoulder and arm, left shoulder and left knee pain.

She continues to experience discomfort in her cervical spine.

She had not had any other work-related injuries. She has never been involved in a motor vehicle accident.

She is not currently being treated for any serious accidents, sport injuries or illnesses.

She has not received a permanent disability settlement.

She does not have any medical problems or serious illnesses for which she is being treated.

## MEDICATIONS

None.   Allergies to medicine: None.

## PREVIOUS SURGERIES

None.

RE: Hankins, Adrienne
Page 9

Range of motion of the cervical spine, flexion 10 degrees, extension 11 degrees, lateral bending was 33 degrees to the right which produced mild achiness into the left contralateral left upper extremity. She had 25 degrees of lateral bending to the left produced right neck pain. Rotation 38 degrees right, 41 degrees left. Compression produced pain in the upper neck traction. There is negative Spurling's on the left, positive on the right. Adson's maneuver is positive on the right, negative on the left. Venous distention dissipated at 90 degrees right and left. There was a positive overhead stress, Wright's maneuver and traction on the right upper extremity and trace on the left upper extremity.

Negative Phalen's, negative reverse Phalen's, negative Hoffman's test.

Sensation was noted to be intact in all cervical dermatomes.

Motor strength was noted to be 5/5 through deltoid, biceps, triceps and brachioradialis, wrist, finger, and thumb flexions/extensors and intrinsics.

Grip strength using the Dynatron in the second note in kilograms on the right 35, 25 and 15. On the left 18, 18, and 18.

Reflexes are 0 right and left biceps, triceps and brachioradialis.

Examination of the shoulders right and left. There was positive empty and full can test and tender over the greater tuberosity.

Range of motion right over left, flexion 145/140, abduction was 151/145, external rotation was 90/75, internal rotation was 68/60, adduction was 30/30 and extension was 50/50.

<div align="center">IMPRESSION</div>

1. Sprain/strain cervical spine.
2. C5 radiculopathy right greater than left.
3. Post-rhizotomy right C4, 5 and 6.
4. Post-rhizotomy left C4, 5 and 6.
5. Thoracic outlet syndrome, trace right upper extremity.

<div align="center">DISCUSSION</div>

RE: Hankins, Adrienne
Page 11

## WORK STATUS

Adrienne Hankins may continue working as a legal secretary.

## FUTURE MEDICAL CARE

She will require the availability of provisional visits for the appropriate medication as needed for any flare.

This would entail re-evaluation, appropriate diagnostic studies as indicated as well as provision with medication, physical therapy, repeat rhizotomies, possible discectomy, possible foraminotomies, possible anterior cervical discectomy and fusion and physical therapy up to 12 visits per year.

Thank you for the opportunity to evaluate this examinee.  If I may be of additional assistance please correspond with me, in writing, at 8221 N. Fresno St, Fresno, Ca. 93720.

### ATTESTATION

I, James D. Mays, M.D., personally took the examinee's history, reviewed the medical records, performed the physical examination, and dictated this report. All of the opinions expressed in the report are mine.  In the preparation of the report Gloria Guisando, MT, arranged all of the records in chronological order and prepared a list and excerpt of records for my review. I personally then reviewed all of the available medical records and the excerpt prior to the preparation of my report. Staff time has not been included in the calculation of time spent on this report.  The entire report was personally reviewed by me and signed on the date and county as indicated.

I hereby declare under penalty of perjury that I have not violated Labor Code Section 139.3 to the best of my knowledge and have not offered, delivered, received or accepted any rebate, refund, commission, preference, patronage, dividend, discount or other consideration for any referral for examination or evaluation by a physician.

I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others.  As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.

Sincerely,

James D. Mays, M.D.
Board Certified Orthopaedic Surgeon

Signed this _28_ day of _Dec_ 2020 in _Contra Costa_ County in the State of California.

**Attachment B**



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

## THERAPY/TREATMENT ORDER
### *Please fax all reports to 925-691-9807*

**Requesting Provider**
**Provider Name:**   Navjeet Boparai, MD                                    **NPI #:** 1407025299
**Address:**            450 North Wiget Lane  Walnut Creek, CA 945982408
**Phone/Fax:**       925-691-9806 Phone / 925-691-9807 Fax   **Tax ID #:** 680477806

**Patient Information**
**Patient Name:**   Ms. Adrienne Hankins                          **DOB:**  ~~Redacted~~ *Redacted*
**Address:**            ~~██████████~~, Bay Point, CA 94565
**Phone:**             – x  *Redacted*                    **Alternate Phone:**  ~~████~~-7369  *Redacted*
**Diagnosis:** M12.9
            Arthropathy, unspecified
            M50.90
            Cervical disc disorder, unspecified, unspecified cervical region
            S16.1XXS
            Strain of muscle, fascia and tendon at neck level, sequela
            M62.838
            Other muscle spasm
            M53.82
            Other specified dorsopathies, cervical region
            M62.830
            Muscle spasm of back
            M47.812
            Spondylosis without myelopathy or radiculopathy, cervical region
            M79.10
            Myalgia, unspecified site
            M25.511
            Pain in right shoulder
            F45.42
            Pain disorder with related psychological factors
            G89.29
            Other chronic pain
            M54.2
            Cervicalgia
            M54.50
            Low back pain

**Insurance Information**

**Ins. #1:**        Blue Cross 60007                  **Ins. #2:**
**ID #/Claim #:**   DDZ831803162                  **ID #:**
**Billing Address:**  PO Box 60007                  **Billing Address:**
                     Los Angeles, CA 90060
**Adjuster Contact:** - Ph.: ,  Fax:                  **DOI:**    01/01/2024

**Order:**
**Requested Treatment:**

**Physical Therapy:** Initial trial, 6 visits to the low back.

07/18/2025

_____          _____
          **Date**                                 **Signature**

# Attachment C



450 North Wiget Lane
Walnut Creek, CA 94598
P: 925-691-9806
F: 925-691-9807

Patient Name: Adrienne Hankins
DOB: ~~Redacted~~ *Redacted*
CHUBB

Date: 09/04/2025
Next Appointment: 10/09/2025  01:00 PM
Claim#: ~~Redacted~~ *Redacted*

Insurance Adjuster: Odetta Robinson
Phone: 909-477-5533  Fax: 213-612-5785

Date of Injury: 03/12/2014

**WORK STATUS:**
Patient is to work part time 4 days a week 7.5 hours a day. Patient was previously deemed
Permanent and Stationary.

This form has been electronically signed by Kang, Sally

Boparai, Navjeet  MD

I DECLARE UNDER PENALTY THAT THE INFORMATION ACCURATELY DESCRIBED THE INFORMATION PROVIDED TO ME AND EXCEPT AS NOTED HEREIN THAT I BELIEVE IT TO BE TRUE. I FURTHER DECLARE UNDER PENALTY OF PERJURY THAT I HAVE NOT VIOLATED THE PROVISIONS OF CALIFORNIA LABOR CODE SECTION 1393 WITH REGARDS TO THE EVALUATION OF THIS PATIENT. THE PREPARATION OF THE REPORT OR THE DICTATION OF ANY PROCEDURE.

# Attachment D





# EXHIBIT N

**Adrienne Hankins**

| | |
|---|---|
| **From:** | Hankins, Adrienne |
| **Sent:** | Friday, October 3, 2025 2:24 PM |
| **To:** | Navarrete, Brenda |
| **Cc:** | Bethke, Laura |
| **Subject:** | RE: Adrienne Hankins | Remote Accommodation Approved Through 03/03/26 |
| **Attachments:** | RE: In Office Exception vs. Work Accommodation Request |

Hi again Brenda, this process started Aug 20. I came into the office 3 days per week in Sept, so actually this is only 5 months. This should be pushed to April, which is 6 months.

Adrienne Hankins
Legal Administrative Assistant

☏ +1 415 882 0170  |  US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

---

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Thursday, October 02, 2025 1:54 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Subject:** RE: Adrienne Hankins | Remote Accommodation Approved Through 03/03/26

Hi Adrienne,

This means your office/department policy for the days that you have to be in-office. Keep Benefits posted if you need a remote extension beyond 3/3/26.

Thank you,

Brenda Navarrete
Benefits and LOA Specialist

☏ +1 602 508 3953  |  ⊘ +1 602 245 5498  |  US Internal 63953

---

**From:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Sent:** Thursday, October 02, 2025 1:52 PM
**To:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Subject:** RE: Adrienne Hankins | Remote Accommodation Approved Through 03/03/26

Thank you Brenda. Can you send me a link to the return-to-office-policy, I cannot find it in the Policies and Procedures?

Adrienne Hankins
Legal Administrative Assistant

☎ +1 415 882 0170  |  US Internal 40170
Assistant To: Emily S. Nozick, Mordecai D. Boone, Thomas D'Antonio, Anne E. Waddell, Jessica West
San Francisco/Oakland

---

**From:** Navarrete, Brenda <brenda.navarrete@dentons.com>
**Sent:** Thursday, October 02, 2025 1:29 PM
**To:** Hankins, Adrienne <adrienne.hankins@dentons.com>
**Subject:** Adrienne Hankins | Remote Accommodation Approved Through 03/03/26

Hi Adrienne,

Thank you for contacting the Benefits Team regarding your request for a reasonable accommodation pursuant to the ADA.

Your remote accommodation has been approved from 09/04/25 through 03/03/26 (6-month duration).

Should you need an accommodation beyond 03/03/26, you can reapply for an extension and provide updated ADA forms/medical documentation. Please ensure you submit your updated/new request ahead of time so that your team leaders have time to review before your current accommodation ends.

If there is no need for an extension, the expectation would be that you follow the return-to-office policy. Please let us know if you have any questions.

Thank you,

Brenda Navarrete
Benefits and LOA Specialist

☎ +1 602 508 3953  |  🚫 +1 602 245 5498  |  US Internal 63953

# EXHIBIT O

**NOTICE TO EMPLOYEE AS TO CHANGE IN RELATIONSHIP**
(Issued pursuant to provisions of Section 1089
of the California Unemployment Insurance Code)

Name **Adrienne Hankins**      SSN# **REDACTED**

1. You were/will be laid off/discharged on **October 8** 20**25**
(date)

2. You were/will be on leave of absence starting _____ 20_____
(date)

3. On _____ employment status changed/will change as follows:
(date)

_____

_____

_____

**Dentons US LLP**
(Name of Employer)

**Laura Bethke**
(By)

# EXHIBIT P

# DENTONS US LLP

# STAFF SEVERANCE PAY PLAN

**DENTONS US LLP**
**STAFF SEVERANCE PAY PLAN**
**AND**
**PLAN DESCRIPTION**

## I.    INTRODUCTION

Dentons US LLP, a Delaware limited liability partnership (the "Firm"), hereby amends and restates the Dentons US LLP Staff Severance Pay Plan (the "Plan") as originally adopted effective October 11, 2007, and as amended from time to time.  This amendment and restatement of the Plan is effective July 20, 2022.

The Plan is governed by a federal law called the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). This document is both the formal plan document and the summary plan description required by ERISA. This document replaces all prior severance plans, programs or policies, whether formal or informal. If you have any questions about the Plan, you should contact Antonia Alvarez, Head of Human Resources at Dentons US LLP, at 2398 E. Camelback Road, Suite 850 Phoenix, AZ 85016-9007, or at +1 602-508-3983, or her successor.

## II.    WHO IS ELIGIBLE TO RECEIVE BENEFITS UNDER THE PLAN?

In order to receive benefits under the Plan, you must meet all of the following conditions:

    (a)    you must be an "Eligible Employee" as described in Section III below; AND

    (b)    you must have a "Qualified Termination" as described in Section IV below; AND

    (c)    you must have been employed with Dentons US LLP, including any predecessor or successor in interest, for at least six months before your "Qualified Termination"; AND

    (d)    you continue actively working in your position through and including your date of release from employment by the Firm ("Release Date"). "Actively working" means performing your everyday responsibilities at a level meeting Firm performance expectations, policies and practices or being on a Firm-approved Leave of Absence; AND

    (e)    you must sign, within the time limits specified by the Firm, a general waiver and release agreement provided by the Firm which says, among other things, that you release any claims you may have against the Firm, its current and former partners, employees, and certain others determined by the Firm; AND

    (f)    if you are given a certain period of time in which to revoke your general waiver and release agreement, you do not revoke the agreement within that time period; AND

(g)     you return all Firm property (including keys, credit cards, identification cards, office equipment, portable computers and cellular telephones) and confidential information of the Firm (including all copies, duplicates, reproductions or excerpts thereof).

## III.   WHO IS AN "ELIGIBLE EMPLOYEE"?

Generally, you are an "Eligible Employee" for Plan purposes if you are classified by the Firm as a full-time employee or a part-time employee of the Firm.

However, you are not an "Eligible Employee" if you are: (a) a lawyer practicing as such on behalf of the Firm, (b) paralegal or other professional timekeeper; (c) an employee who has any other agreement with the Firm providing for continuation of employment or the payment of specified benefits upon termination of employment or is otherwise eligible to receive severance benefits payable under any other plan, policy or arrangement maintained by the Firm; (d) classified by the Firm as a temporary employee, leased employee, independent contractor or consultant, even if you are later determined by a court or governmental agency to be, or to have been, a full-time or part-time employee of the Firm; or (e) not classified by the Firm as a full-time or part-time employee.

## IV.   WHAT IS A "QUALIFIED TERMINATION"?

You will become a participant in the Plan if the Firm eliminates your job position in connection with a workforce reduction. However, in order to be eligible to receive benefits under the Plan, you must also have a "Qualified Termination." You have a "Qualified Termination" only when the Firm eliminates your job position in connection with a workforce reduction and you are not offered a "Comparable Position" (as defined below):

You do not have a "Qualified Termination" if your job with the Firm ends for any other reason, including but not limited to:

(a)     your voluntary resignation;

(b)     your job is eliminated by the Firm, but you are offered a "Comparable Position" (as defined below);

(c)     the functional area of the Firm in which you work, is transferred or "outsourced" to a successor firm or other entity, and the successor or other entity offers you a "Comparable Position" (as defined below); or

(d)     you are discharged by the Firm for failing to perform your responsibilities at a level meeting Firm expectation, or a similar reason.

A "Comparable Position" for this purpose means a position with the Firm or any affiliate, successor, or related entity, as applicable, for which the scheduled base salary or hourly rate offered is more than, the same as, or not more than 15% less than, your current salary or hourly rate.

-2-

The Firm is solely responsible for determining whether your termination is a "Qualified Termination" and whether you have been offered a "Comparable Position" as those terms are defined above.

## V.    HOW MUCH SEVERANCE PAY CAN I RECEIVE UNDER THE PLAN?

If you meet all of the conditions in Section II, you will receive the amount of severance pay described in the Severance Pay Calculation Schedule, which is attached to this document and labeled "Appendix A." The amount depends on your years of continuous service with the Firm before your employment termination date and your base weekly wages immediately prior to your employment termination date. Base weekly wages means (i) if you are a salaried employee, your base weekly salary or (ii) if you are paid on an hourly basis, your hourly rate of pay multiplied by 37.5 if you are a full-time employee or the number or hours you are regularly scheduled to work each week if you are a part-time employee. Base weekly wages does not include overtime, bonuses, benefits or other types of additional compensation.

The amount of your severance pay determined under the Schedule will be reduced by:

(a)    any other unemployment or severance benefits payable to you directly by the Firm under any federal, state or local law, including but not limited to the Federal Worker Adjustment and Retraining Notification Act (but not including statutory unemployment compensation benefits that are not payable to you directly by the Firm);

(b)    any amount you owe the Firm when your job ends; and

(c)    applicable federal, state, and local income and employment tax withholdings.

## VI.    WHEN WILL MY SEVERANCE BENEFITS BE PAID?

Your severance benefits under the Plan will be calculated based on the Calculation Schedule set forth in Appendix A. At the sole discretion of the Firm, your severance benefits will either be paid to you in a single payment or in installment payments made at the time of the Firm's regular payroll payment dates.

Your payment will be made or, if your benefits will be paid in installments, payments will start on the first regular payroll payment date after the waiver and release agreement referred to in Section II(e) becomes effective, or the next following regular payroll payment date. You will not receive any payments under the Plan until your revocation period, if any, expires.

## VII.    WHAT IF I AM REHIRED AFTER RECEIVING SEVERANCE PAY UNDER THE PLAN?

If you are rehired by the Firm or any affiliate, successor, or related entity in any capacity (including full-time or part-time employee or consultant) while you are receiving severance payments under the Plan, your entitlement to severance payments will cease as of the date of your rehire or re-engagement by the Firm. In the Firm's discretion, you may be required to repay all or any part of the severance pay you have already received as a condition of your rehire.

If you are rehired and if your employment with the Firm later terminates again under circumstances that make you eligible for severance benefits under Section II, you will be entitled to the amount of severance pay described in the Severance Pay Calculation Schedule attached to this document as "Appendix A;" however, in this event, your years of service will not include any period of service before your rehire date. Your years of service will only include the period of continuous service from your rehire date to your next employment termination date.

## VIII.    CAN SEVERANCE BENEFITS BE PAID IN ANY OTHER CIRCUMSTANCES?

Nothing in this Plan prevents the Firm from entering into a severance arrangement with any employee or former employee pursuant to which the Firm agrees to make severance or other payments on terms different than those provided in this Plan.

## IX.    WHO ADMINISTERS THE PLAN?

The Firm is the "Plan Administrator" of the Plan and is responsible for the performance of all reporting and disclosure obligations under ERISA and all other obligations required to be performed by a plan administrator under ERISA, except those obligations and responsibilities it delegates another person or to a Plan committee. The Firm is the "named fiduciary" for ERISA purposes. The Firm may establish such ongoing administrative procedures as it deems necessary to fulfill its responsibilities under the Plan.

The Plan Administrator has the sole and complete authority with absolute discretion to interpret the terms of the Plan, to manage, administer and operate the Plan, to make factual findings, to determine all questions arising in connection with the administration, interpretation and application of the Plan, to determine eligibility of employees or former employees for benefits and the amount of benefits payable under the Plan, to approve or deny claims for payment of such benefits, and to adopt, alter and repeal such administrative rules, regulations and practices governing the operation of the Plan as it from time to time deems advisable. The decisions of the Plan Administrator are final and conclusive with respect to all questions concerning the administration of the Plan. The Plan Administrator may delegate to other persons responsibility for performing certain of the duties of the Plan Administrator under the terms of the Plan and may seek such expert advice as the Plan Administrator deems reasonably necessary with respect to the Plan. The Plan Administrator is entitled to rely upon the information and advice furnished by such delegates and experts, unless actually knowing such information and advice to be inaccurate or unlawful.

## X.    WHAT CAN I DO IF I DO NOT RECEIVE BENEFITS I AM ENTITLED TO?

The Plan Administrator will notify you in writing if you have a Qualified Termination and are eligible to receive severance benefits under the Plan. If, however, you believe you have had a Qualifying Termination and you are eligible for severance benefits under the Plan and have not received written notice of your eligibility for benefits, you or your authorized representative may file a claim for benefits by writing to the Plan Administrator. Your letter must state the reason why you believe you are entitled to benefits, and your letter must be received no later than three (3) months after your termination of employment with the Firm. If your claim is not filed within three (3) months of your termination of employment, neither the Plan nor the Firm has any obligation to pay the disputed benefits and you will have no further rights under the Plan.

If you file a timely claim for disputed Plan benefits, the following procedures will be followed:

(a)     You will be notified by the Plan Administrator or its delegate of the approval or denial of your claim for benefits within 90 days after the receipt of the claim, unless special circumstances require an extension of time for processing the claim.

(b)     If an extension of time is required by the Plan Administrator or its delegate, you will be notified in writing prior to the end of the initial 90-day period. This written notice will specify the special circumstances requiring the extension and will provide the date by which a final decision will be reached (which will not be later than 180 days after the date on which your claim was filed).

(c)     If your claim is denied, in whole or in part, you will be given a written notice containing:

(1)     the reason for the denial;

(2)     references to pertinent Plan provisions on which the denial is based;

(3)     a description of any additional material or information necessary to perfect the claim, if it is possible to perfect, and an explanation of why such material or information is necessary; and

(4)     your rights to seek review of the denial.

(d)     If your claim is denied, in whole or in part, you have the right to have the Plan Administrator or its delegate review the denial. You must file a written request for review with the Plan Administrator or its delegate within 60 days after the date you receive notice of the denial.

(e)     You or your authorized representative may review pertinent documents, records and other information relating to your claim and may submit to the Plan Administrator or its delegate written comments, documents, records and other information relating to your claim. The review will take account of all pertinent comments, documents, records or other information you or your authorized representative timely submit.

(f)     Within 60 days after your request for review is received by the Plan Administrator or its delegate, you will be advised in writing of the decision on review, unless special circumstances require an extension of time for processing the review.

(g)     If an extension of time is required by the Plan Administrator or its delegate to process the review, you will be notified in writing within the initial 60-day period. The written notice will specify the special circumstances requiring an extension and provide the date by which the review will be completed (which will not be later than 120 days after the date on which your request for review was filed).

(h)    The decision on review will be given to you in writing and will include the specific reason or reasons for the decision and specific references to Plan provisions on which the decision is based.

(i)    A decision on review is final and binding on all persons for all purposes.

(j)    If you fail to file a request for review in accordance with the above procedures, you will have no further rights to review and will have no right to bring an action in any court. In addition, you may not bring an action in any court until you either received a final decision on review or the period of time for providing a written decision on review has expired without the issuance of final decision on review.  Any such action must be filed within 120 days after you have either received a final decision on review or the period of time for providing a written decision on review has expired without the issuance of a final decision on review.

## XI.   CAN THE PLAN BE CHANGED OR TERMINATED?

The Firm can amend or terminate the Plan at any time and for any reason or no reason. An amendment or termination must be adopted and executed by the Firm's Chief Executive Officer, Managing Partner, Chief Operating Officer or HR Director, or if there is no individual with such title then by a partner or officer of the Firm having comparable responsibilities. The Firm does not promise you the continuation of any benefits or any specific level of benefits before or after termination or retirement.

You should keep in mind that the terms of the Plan cannot be amended by any oral statements made by any partner, employee, officer, or agent of the Firm, or by any other person, and you should not rely on any such statements. In the event any oral statement conflicts with any term of the Plan, the Plan term always will control.

## XII.   WHAT OTHER RIGHTS DO I HAVE UNDER THE PLAN?

Participants in the Plan are entitled to certain rights and protections under ERISA, as described below.

Information About Plan and Benefits

ERISA provides that all Plan participants are entitled to:

(a)    Examine, without charge, at the Plan Administrator's office and at other specified locations, all documents governing the Plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 series) filed by the Plan with the U.S. Department of Labor.

(b)    Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, and copies of the latest annual report (Form 5500 series) and updated summary plan description. The Plan Administrator may make a reasonable charge for the copies.

(c)     Receive a summary of the Plan's annual financial report, if any.

Prudent Action by Plan Fiduciaries

In addition to creating rights for Plan participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interests of Plan participants and beneficiaries. No one, including the Firm, or any other person, may fire or otherwise discriminate against you in any way to prevent you from obtaining a Plan benefit or exercising your rights under ERISA.

Enforce Participant Rights

If your claim for a Plan benefit is denied or ignored in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days, you can file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.

If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim was frivolous.

Assistance With Questions

If you have any questions about the Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Regional Office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in the telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

## XIII.   GENERAL PLAN INFORMATION

(a)     The name of the Plan is the Dentons US LLP Staff Severance Pay Plan.

(b)     The Plan is an employee welfare benefit plan providing severance benefits.

(c)     The Plan Sponsor is:

Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606

(d)     The Employer Identification Number of the Plan Sponsor is: 36-1796730

(e)     The Plan Administrator is:

Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606
(312) 876-8000

(f)     The Named Fiduciary of the Plan is the Plan Administrator, Dentons US LLP:

(g)     The Plan's records are kept on a calendar year basis.

(h)     The Plan Number is: 522.

(i)     The agent for service of legal process on the Plan is:

Dentons US LLP
c/o Edward J. Reich
Partner and General Counsel
1221 Avenue of the Americas
New York, NY 10020

(j)     The Plan is unfunded. This means that benefits are paid by the Firm out of its
general assets. There is no trust or trust fund. Severance benefits are not insured.

## XIV.  NO EMPLOYMENT RIGHTS

Nothing in the Plan or done pursuant to the Plan may be construed to create a contract of
employment between you and the Firm, or to give you a right to continue in the employ of the Firm
for any particular period of time, or to limit the right of the Firm to discharge you with or without
cause or for any reason or no reason, or otherwise to alter your status as an employee at will.

## XV.  RECOVERY OF PAYMENTS MADE BY MISTAKE

In the event any payments under the Plan are made to you (or your beneficiary in the event of
your death) on account of a mistake of fact or law, you are required (or your beneficiary is required
in the event of your death) to immediately return such payment or overpayment to the Firm upon
request of the Firm.

## XVI.  NO ASSIGNMENT

Under no circumstances can benefits provided under the Plan be subject to anticipation, alienation, pledge, sale, transfer, assignment, garnishment, attachment, execution, encumbrance, levy, lien or charge, and any attempt to cause any such benefits to be so subjected will be void and of no effect, except to the extent required by law. This means, among other things, that you cannot pledge your right to benefits under the Plan as security for a loan and your creditors generally may not garnish or otherwise reach your benefits under the Plan before they are paid to you.

## XVII.  BENEFICIARY

If a participant dies after becoming eligible for severance benefits, but before such severance benefits are fully paid, any unpaid severance benefits will be paid in a single payment as soon as administratively practicable after the participant's death to the following person or persons, according to the following order of priority: (1) the participant's surviving spouse; then if none (2) the participant's surviving children (including adopted children) equally; then if none (3) the participant's surviving parents; then if none (4) the participant's estate or, if there is no estate in existence at the time the benefit is to be paid, to any person or persons the Firm reasonably believes to be responsible for winding up the participant's affairs.

## XVIII.  GOVERNING LAW

The Plan will be interpreted in accordance with the laws of the State of Delaware (determined without regard to any conflicts of law provisions), to the extent not preempted by federal law.

## XIX.  INDEMNIFICATION

The Firm will fully protect and indemnify each Firm partner and employee serving as a fiduciary of the Plan against any and all liabilities, damages, costs and expenses (including reasonable attorney's fees) incurred by such individual by reason of any act or failure to act made in good faith and consistent with the provisions of the Plan, including costs and expenses incurred in defense or settlement of any claim relating thereto.

## XX.  SEVERABILITY

Plan provisions are severable, so that if any Plan provision is held invalid or unenforceable that invalid or unenforceable provision will be severed from the Plan and the Plan will operate without regard to such severed provision.

## XXI.  HEADINGS

All headings and captions used in the Plan are used as a matter of convenience and for reference only, and they will not be considered in determining the scope or intent of the Plan or in interpreting or construing any Plan provisions.

\* \* \* \* \* \*

**IN WITNESS WHEREOF, DENTONS US LLP** has caused this amendment and restatement of the **DENTONS US LLP STAFF SEVERANCE PAY PLAN** to be executed by its duly authorized officer or representative as of the 20th day of July 2022.

DENTONS US LLP

By:

Buck Owen
Chief Operating Officer

# APPENDIX A

## SEVERANCE PAY CALCULATION SCHEDULE

| | | | |
|---|---|---|---|
| Non-Exempt | 2 weeks of base weekly wages | 1 week of base weekly wages per year of service | Minimum of 2 weeks of base weekly wages<br><br>Maximum of 20 weeks of base weekly wages |
| Exempt | 4 weeks of base weekly wages | 1 week of base weekly wages per year of service | Minimum of 4 weeks of base weekly wages<br><br>Maximum of 25 weeks of base weekly wages |

An employee who completes at least nine (9) months of service following the most recent anniversary of his/her date of hire is considered to have completed a year of service.

Minimum and maximum payment amounts, as outlined under Payment Parameters above, for both Non-Exempt and Exempt employees, includes the Base Payment of two and four weeks of base weekly wages, respectively.

In no event will severance pay exceed the maximum duration and amount permitted for involuntary separation pay plans by Treas. Reg. § 1.409A-1(b)(9)((iii) (or further or successor applicable regulations) under Section 409A of the Internal Revenue Code of 1986, or for welfare plans exempt from treatment as pension plans by DOL Reg. 29 C.F.R. § 2510.3-2(b) (or further or successor applicable regulations) under Section ERISA.

# EXHIBIT P (a)

DENTONS

# Dentons US LLP
# Employee Resource Guide

DENTONS

**DENTONS US LLP**
**BUSINESS SERVICES EMPLOYEE GUIDE**

| | |
|---|---|
| Introduction | 2 |
| HR & Payroll Contact Information | 3 |
| Employee Benefits | 4-6 |
| Payroll | 7 |
| Q&A | 9-10 |

DENTONS

# Employee Guide

This Employee Guide provides information and guidance that may be helpful.

Included herein you will find contact information for our HR representatives and an overview of the changes to your health and other benefits plans upon your transition from the Firm.

In addition to contacting your HR Business Partner, you can reach the HR team at **dentonsushumanresources@dentons.com** or toll-free at 833-220-2255.

2

**DENTONS**

# Who Can I Contact at Dentons?

| Contact | Phone | Email |
|---|---|---|
| Human Resources | (833) 220-2255 | dentonsushumanresources@dentons.com |
| **HR Business Partner** | | |
| **Tracy Wakup** | **(312) 876-8209** | tracy.wakup@dentons.com |
| **Laura Bethke** | **(213) 243-6183** | laura.bethke@dentons.com |
| Benefits & Wellness | | benefits@dentons.com |
| **Gary Cary** | **(312) 876-3141** | gary.cary@dentons.com |
| **Brenda Navarrete** | **(603) 508-3953** | brenda.navarrete@dentons.com |
| Payroll | | payroll@dentons.com |
| **Vanessa Ramirez** | **(312) 876-2624** | vanessa.ramirez@dentons.com |
| **Anne De Rosa** | **(312) 876 8146** | anne.derosa@dentons.com |
| **Barbie Kledzik** | **(312) 876-3182** | barbie.kledzik@dentons.com |

DENTONS

# What Happens To My Benefits

## Health Insurance

### A. Medical, Dental, and/or Vision Insurance

Medical, dental, and/or vision coverage ends on the last day of the month in which employment concludes. Those covered under the medical plan receive a Certificate of Creditable Coverage from your carrier that provides evidence of coverage. HealthEquity/WageWorks, the Firm's COBRA administrator, will mail a Notification of Continuation Rights under COBRA to the home address on file. This notice provides details about the rights to continue coverage under the medical, dental, and/or vision plan(s) pursuant to the provisions of COBRA. *Any questions regarding COBRA should be directed to HealthEquity/WageWorks at 888-678-4881.*

### B. Flexible Spending Accounts (FSAs)

Health Care, Limited Purpose and/or Dependent Care FSA plans end on the last day of the month in which employment concludes. *FSA cards are deactivated on the date the plan ends.* Participants may continue to submit paper claims for reimbursement until March 31st of the following year for expenses incurred up to the last day of the month in which employment concludes, but not after that date. Claim forms can be found at www.inspirafinancial.com.

Those covered under the Health Care or Limited Purpose FSA will receive a Notification of Continuation Rights under COBRA. HealthEquity/WageWorks, the Firm's COBRA administrator, will mail this notification to the home address on file. This notice provides details about the rights to continue coverage under the Health Care FSA pursuant to the provisions of COBRA. *Any questions regarding COBRA should be directed to HealthEquity/WageWorks at 877-502-6272.*

### C. Health Savings Account (HSA)

HSAs are portable and individually owned. Participants can take their HSA with them upon termination of employment and continue to use the funds that remain. Funds left in an HSA continue to grow tax-free. If an individual is later covered by a qualified High Deductible Health Plan, s/he can resume making contributions to their HSA. Note: enrollment in Medicare Part A and/or B makes you ineligible to contribute to an HSA. *Any questions regarding Health Savings Account (HSA) should be directed to Inspira Financial at 800-284-4885.*

## Life and AD&D Insurance

### A. Basic Life, Supplemental Life, and AD&D Insurance

Coverage under the Unum Basic Life, Supplemental Life, and AD&D plans end upon termination of employment. Participants have the option to either continue ("port") or convert their coverage. Those who wish to continue or convert coverage must apply within 31 days from the date coverage ends. Unum will mail portability and/or conversion forms to your home address shortly after your last day of employment.

**DENTONS**

### B. Travel/Accident Insurance

Coverage under the Chubb Travel and Accident plan ends upon termination of employment.

### C. Accident Insurance

Coverage under the Unum Accident Insurance plan ends upon termination of employment. Participants have the option to continue ("port") their coverage. Those who wish to continue coverage must apply within 31 days from the date coverage ends. Unum will mail portability forms to your home address shortly after your last day of employment.

### D. Critical Illness Insurance

Coverage under the Unum Critical Illness Insurance plan ends upon termination of employment. Participants have the option to continue ("port") their coverage. Those who wish to continue coverage must apply within 31 days from the date coverage ends. Unum will mail portability forms to your home address shortly after your last day of employment.

### E. Long Term Care Insurance

Coverage under the Unum Long Term Care plan ends on the last day of the month in which employment terminates. Participants have the option to continue their coverage. Those who wish to continue coverage must apply within 31 days from the date coverage ends. Unum will mail portability forms to your home address shortly after your last day of employment.

## Disability Insurance

### A. Short Term Disability Insurance

Coverage under the Short-Term Disability plan ends upon termination of employment.

### B. Long Term Disability Insurance

Coverage under the Unum Long Term Disability plan ends upon termination of employment. Participants may obtain converted disability insurance coverage if they have been insured for at least 12 consecutive months just before coverage under the plan ends. Those who wish to convert coverage must apply for and pay the first quarterly premium within 31 days from the date coverage ends. Unum will mail conversion forms to your home address shortly after your last day of employment.

## Commuter Benefits

### HealthEquity/WageWorks Commuter

If you have any remaining funds on your Transit Commuter card, you will have 90 days from termination date to use the funds. If you have remaining funds on your Parking Commuter Card or in your Pay Me Back balance, funds will be forfeited on termination date and cannot be reimbursed. *Any questions regarding Commuter Benefits should be directed to Health Equity/ WageWorks at 877-924-3967.*

DENTONS

## Retirement

### Retirement – 401(k) (Schwab)

401(k) Plan participants will receive a package from Schwab at the home address on file with information about their options, including rolling over their account to another employer's plan, rolling retirement funds into a personal IRA or taking a lump-sum distribution; you may also leave funds in the Plan subject to the Plan document. The money in your account will remain in the investments you previously selected and will continue to be subject to the market fluctuation. It is important that you continue to manage your account as you had while actively employed with Dentons.

If you leave the Firm and you have a 401(k) loan, your 401(k) loan(s) must be repaid in full within 80 days of termination or the date you receive a distribution of your entire account balance, whichever is earlier. It is important for you to contact Schwab directly at **(800) 724-7526** or **www.workplace.schwab.com**.

## Back-up Childcare

### Bright Horizons

Back-up child and eldercare will end upon termination of employment.

## PTO and Vacation

### Paid Time Off and Vacation

Accrued but unused PTO/Vacation will be paid no later than the payroll date following your last day.

## Other

### Pet Insurance (Nationwide)

Participants will transition to direct bill after the last day of employment. Nationwide will mail the bill directly to your home address. Nationwide can be reached at **800-540-2016**.

### LifeLock Identity Theft Protection

Norton LifeLock offers you the ability to continue to receive a membership at a discounted rate. In order to keep your membership, you must contact Norton LifeLock Member Services & Support at **800-607-9174** to provide a credit card for billing, and select from one of the retail plans available.

6

**DENTONS**

# How Do I Access My Pay and Tax Statements

## Accessing Pay and Tax Information

Through UKG Pro, our payroll provider, we are able to offer you access to your earnings statements 24 hours a day, 7 days a week via a secure internet website. The UKG Pro self-service portal enables you to view your pay statements and access your W-2's. You can access your account with the same login credentials you had as an active employee. This means you can view and print from your home or office at any time in the event you need them for your personal financial objectives. These features are available to you even after you leave the Firm.

UKG Pro is the Firm's payroll system which can be accessed here:
https://n14.ultipro.com/Login.aspx?ReturnUrl=%2fLogin

If you have never logged onto your UKG account or have questions concerning your pay statements or tax forms, please contact Vanessa Ramirez, Payroll Manager at vanessa.ramirez@dentons.com.

7

**DENTONS**

# Q&A

**Will my severance be paid as a lump sum or in installments?**

Receipt of severance is subject to your executing and not revoking a Waiver and Release Agreement.  Employee severance will be paid in a single lump payment via direct deposit. Payment will be on the first possible payroll date following your Waiver and Release Agreement becoming effective.

**When will my last day be?**

Your last day of employment is October 8, 2025.

**When would I receive my severance payment?**

A Waiver and Release Agreement is being provided to you as part of the notice meeting. Depending upon the amount of time between the effective date of the Agreement (as defined in the Waiver) and the next regularly scheduled payroll date, the severance payment will be paid either on the next payroll date following the effective date or on the next payroll date thereafter. Note: once the Waiver is signed, HR can advise of the date on which severance will be paid.  If you do not sign the agreement within the specific allowed time, you will not be eligible to receive a severance payment.

**Do I need to consult a lawyer?**

It is up to you.  You may do so if you choose.

**What happens if I do not sign the Waiver and Release Agreement?**

An employee who chooses not to sign their Waiver will not be eligible to receive a severance payment.

**Can I stay on payroll for the length of the severance?**

No.  Severance will be paid as a lump sum payment, as described above.

**If I receive a severance payment, will I still receive payout of my PTO/Vacation?**

Yes, PTO will be paid in the pay period following your release date (unless required by law to be provided on your last day of employment).

**What happens to my health insurance benefits?**

If you are currently enrolled in the Firm's health insurance benefits (medical, dental and/or vision), you will remain covered until the last day of the month in which you are employed.  You will be eligible for continuation of coverage under COBRA thereafter.  See the **What Happens To My Benefits** section for more information on your health insurance benefits.

**DENTONS**

**What happens to my life insurance, long-term disability, long-term care (LTC), accident, critical illness benefits?**

UNUM will contact you via US mail with paperwork regarding your life, LTC, disability, accident and critical illness policies. See **What Happens To My Benefits** section for more information on these benefits.

**Am I eligible for Medicare?**

Generally, Medicare is available for people age 65 or older, younger people with disabilities and people with End-Stage Renal Disease (permanent kidney failure requiring dialysis or transplant).

To find out if you are Medicare-eligible and to see your expected premium, visit the Medicare.gov Eligibility Tool page. If you or your spouse are Medicare eligible and have questions about how to enroll or the potential cost, Dentons has a dedicated Medicare consultant you can contact anytime. For more information, please email at MedicareHub@HUBInternational.com or call at 844-972-0228.

**When can I apply for Social Security?**

You may be able to start your Social Security benefit as early as age 62. To learn more about applying for Social Security you can visit the Retirement Benefits section of the Social Security website.

**Will I still receive my Profit Sharing contribution for 2025?**

In order to be eligible for the Profit Sharing contribution, you must be an employee as of December 31, 2025, or if your last day of employment occurs during the year after turning 65 years of age or due to disability or death.

**What happens to my 401(k) loan?**

Your 401(k) loan(s) must be repaid in full within 80 days following your last day of employment or the date you receive a distribution of your entire account balance, whichever is earlier. It is important for you to contact Schwab directly at **800-724-7526**. You may also contact Gary Cary at 312-876-3141 for benefits questions. See **What Happens To My Benefits** for more information on your 401(k) plan.

**If I receive a severance payment, will I still be eligible to collect unemployment insurance benefits?**

Eligibility for unemployment insurance benefits is determined by the various states, and not Dentons. However, the Firm will not contest claims for unemployment insurance benefits for affected employees. Generally, employees separated in a staff reduction are determined eligible for unemployment benefits by the states in which they've worked.

We recommend contacting your State unemployment department for further information and to apply. Click on "State's unemployment insurance program".

**DENTONS**

You will most likely need to have the following information available when applying for unemployment insurance:

- Social Security number
- Home address and mailing address (if different)
- Telephone number
- Email address
- Your bank name, address, account number and routing number for direct deposit
- Your Dentons office address and phone number
- Dentons' EIN (federal taxpayer ID number): 36-1796730
- First and last day worked.

If you have questions or need assistance with your application, please contact the HR department at **833-220-2255** or email at **dentonsushumanresources@dentons.com**.

**Can I apply for another open position within the Firm?**

If there were to be an open position for which you are qualified, you could apply and be considered along with other qualified candidates.

**What should I tell a future employer about the reason for my departure?**

This is your decision. However, per Firm policy, if contacted for a verification of employment, HR will confirm your title and dates of employment only and state that it is HR policy to provide only that information. We will not confirm nor deny your stated reason for departure.

**What will the Firm say if called for a reference?**

As with the above, per Firm policy, if contacted for a verification of employment, HR will confirm your title and dates of employment only and state that it is HR policy to provide only that information. We will not confirm nor deny your stated reason for departure.

**How do I return my home access kit and/or other Firm equipment?**

The Firm will provide you with a FedEx mailing label and shipping materials so that you may ship any equipment, furniture or other Firm property from your home to your local office at the Firm's expense.

**With whom can I speak if I have specific questions or would like additional information about severance payments?**

You may direct all questions to the Human Resources Department. Please call **833-220-2255** or email at **dentonsushumanresources@dentons.com**.

Additionally, we encourage you to review the Staff Severance Pay Plan, a copy of which was recently made available to you.

10

# EXHIBIT Q

# DENTONS

Dentons US LLP W2
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
312-876-2624

**Pay Statement**

| | |
|---|---|
| Period Start Date | 10/01/2025 |
| Period End Date | 10/15/2025 |
| Pay Date | 10/08/2025 |
| Document | 001 |
| **Net Pay** | **$0.00** |

## Pay Details

Adrienne Hankins

Bay Point, CA 94565
USA

| | | | | |
|---|---|---|---|---|
| Employee Number | 200464 | Pay Group | Employee Payroll |
| SSN | XXX-XX-XXXX | Location | Oakland |
| Job | Lgl Admin Asst | GL SECTION | 0001 - Default-US |
| Pay Rate | $58.36 | GL LOCATION | 8029 - Oakland |
| Pay Frequency | Semi-Monthly | GL DEPARTMNT | 5100 - Secretarial Services |
| | | GL EMP GROUP | 12500 - Salaries-Secretarial |

## Earnings

| Pay Type | Date | Job | Hours | Pay Rate | Current |
|---|---|---|---|---|---|
| Straight Time | | | 0.000000 | $0.00 | $0.00 |
| Admin Time | | | 0.000000 | $0.00 | $0.00 |
| Retro Meal Pen | | | 0.000000 | $0.00 | $0.00 |
| Retro Overtime | | | 0.000000 | $0.00 | $0.00 |
| Retro Pay | | | 0.000000 | $0.00 | $0.00 |
| Retro Strt Time | | | 0.000000 | $0.00 | $0.00 |
| Merit Bonus | | | 0.000000 | $0.00 | $0.00 |
| Unpaid Time | | | 0.000000 | $0.00 | $0.00 |
| LOA Pay | | | 0.000000 | $0.00 | $0.00 |
| Profit Sharing | | | 0.000000 | $0.00 | $0.00 |
| Overtime | | | 0.000000 | $0.00 | $0.00 |
| CA PTO Adjust | | | 0.000000 | $0.00 | $0.00 |
| CA Meal Penalty | | | 0.000000 | $0.00 | $0.00 |
| Office Closure | | | 0.000000 | $0.00 | $0.00 |
| Holiday Time | | | 0.000000 | $0.00 | $0.00 |
| Paid Leave | | | 0.000000 | $0.00 | $0.00 |
| Paid Time Off | | | 0.000000 | $0.00 | $0.00 |
| Regular Pay | | | 0.000000 | $0.00 | $0.00 |
| Group Term Life | 10/15/2025 | Lgl Admin Asst | 0.000000 | $0.00 | $26.02 |
| HSA ER Contr | 10/15/2025 | Lgl Admin Asst | 0.000000 | $0.00 | $104.17 |
| Regular Pay | 10/15/2025 | Lgl Admin Asst | 0.000000 | $0.00 | $2,586.57 |

**Total Hours Worked** 0.000000       **Total Hours** 0.000000

## Deductions

# DENTONS

Dentons US LLP W2
233 S. Wacker Drive
Suite 5900
Chicago, IL 60606
312-876-2624

**Pay Statement**

| | |
|---|---|
| Period Start Date | 09/16/2025 |
| Period End Date | 09/30/2025 |
| Pay Date | 09/30/2025 |
| Document | 211703365 |
| **Net Pay** | **$2,179.51** |

## Message

EXEMPT & NON-EXEMPT REG EARNINGS ARE PD CURRENT THROUGH 9/30. NON-EXEMPT OT HRS ARE PD 8/24 – 9/6.

## Pay Details

**ADRIENNE HANKINS**
BAY POINT, CA 94565
USA

| | | | | |
|---|---|---|---|---|
| Employee Number | 200464 | Pay Group | Employee Payroll | |
| SSN | XXX-XX-XXXX | Location | Oakland | |
| Job | Lgl Admin Asst | GL SECTION | 0001 - Default-US | |
| Pay Rate | $58.36 | GL LOCATION | 8029 - Oakland | |
| Pay Frequency | Semi-Monthly | GL DEPARTMNT | 5100 - Secretarial Services | |
| | | GL EMP GROUP | 12500 - Salaries-Secretarial | |

## Earnings

| Pay Type | Date | Job | Hours | Pay Rate | Current | YTD |
|---|---|---|---|---|---|---|
| Admin Time | | | 0.000000 | $0.00 | $0.00 | $786.37 |
| CA Meal Penalty | | | 0.000000 | $0.00 | $0.00 | $115.19 |
| CA PTO Adjust | | | 0.000000 | $0.00 | $0.00 | $551.00 |
| Group Term Life | 09/30/2025 | Lgl Admin Asst | | | $26.02 | $468.36 |
| Holiday Time | 09/30/2025 | Lgl Admin Asst | 7.500000 | $58.36 | $437.73 | $3,668.77 |
| HSA ER Contr | 09/30/2025 | Lgl Admin Asst | | | $104.17 | $1,875.06 |
| LOA Pay | | | 0.000000 | $0.00 | $0.00 | $7,874.40 |
| Merit Bonus | | | 0.000000 | $0.00 | $0.00 | $3,500.00 |
| Office Closure | 09/30/2025 | Lgl Admin Asst | 2.750000 | $58.36 | $160.50 | $204.27 |
| Overtime | | | 0.000000 | $0.00 | $0.00 | $385.88 |
| Paid Leave | 09/30/2025 | Lgl Admin Asst | 5.500000 | $58.36 | $321.00 | $3,636.05 |
| Paid Time Off | 09/30/2025 | Lgl Admin Asst | 2.750000 | $58.36 | $160.50 | $8,293.56 |
| Regular Pay | 09/30/2025 | Lgl Admin Asst | 62.750000 | $58.36 | $3,662.32 | $67,892.78 |
| Retro Meal Pen | | | 0.000000 | $0.00 | $0.00 | $1.54 |
| Retro Overtime | | | 0.000000 | $0.00 | $0.00 | $8.08 |
| Retro Pay | | | 0.000000 | $0.00 | $0.00 | $872.25 |
| Retro Strt Time | | | 0.000000 | $0.00 | $0.00 | $0.38 |
| Straight Time | | | 0.000000 | $0.00 | $0.00 | $28.42 |
| Unpaid Time | | | 0.000000 | $0.00 | $0.00 | ($1,091.62) |

**Total Hours Worked** 62.750000      **Total Hours** 81.250000

**Deductions**

| Deduction | Pre-Tax | Employee Current | Employee YTD | Employer Current | Employer YTD |
|---|---|---|---|---|---|
| 401(K) Flat $ | Yes | $200.00 | $1,600.00 | $0.00 | $0.00 |
| 401K Loan 1 | No | $317.82 | $5,720.76 | $0.00 | $0.00 |
| 401K Loan 2 | No | $247.65 | $4,457.70 | $0.00 | $0.00 |
| Dental Pre Tax | Yes | $33.80 | $608.40 | $27.18 | $489.24 |
| Group Accident | No | $9.05 | $162.90 | $0.00 | $0.00 |
| Group Term Life | No | $26.02 | $468.36 | $0.00 | $0.00 |
| Grp Crit Ill EE | No | $33.60 | $604.80 | $0.00 | $0.00 |
| Grp Crit Ill Sp | No | $17.93 | $322.74 | $0.00 | $0.00 |
| Health Savings | Yes | $293.75 | $5,287.50 | $0.00 | $0.00 |
| HSA ER Contr | No | $104.17 | $1,875.06 | $0.00 | $0.00 |
| Medical Pre Tax | Yes | $120.43 | $2,167.74 | $541.31 | $11,543.58 |
| Personal Chgs | No | $0.00 | $71.74 | $0.00 | $0.00 |
| Roth Flat $ | No | $300.00 | $2,400.00 | $0.00 | $0.00 |
| Supp Life EE | No | $54.13 | $974.34 | $0.00 | $0.00 |
| Supp Life Sp | No | $10.83 | $194.94 | $0.00 | $0.00 |

**Taxes**

| Tax | Current | YTD |
|---|---|---|
| Federal Income Tax | $385.91 | $9,675.37 |
| Employee Medicare | $62.64 | $1,292.41 |
| Social Security Employee Tax | $267.85 | $5,526.19 |
| CA State Income Tax | $150.85 | $3,984.02 |
| CA Disability Employee | $56.30 | $1,149.91 |

**Paid Time Off**

| Plan | Taken | Current | Balance |
|---|---|---|---|
| Paid Time Off | 2.7500 | 0.0000 | 27.5000 |

**Net Pay Distribution**

| Account Number | Account Type | Amount |
|---|---|---|
| xxxxxx1018 | Checking | $250.00 |
| xxxxxxx0846 | Checking | $800.00 |
| xxxx6489 | Savings | $400.00 |
| xxxxxxxxx5805 | Checking | $650.00 |
| xxxxxx5064 | Checking | $79.51 |
| Total | | $2,179.51 |

**Pay Summary**

| | Gross | FIT Taxable Wages | Taxes | Deductions | Net Pay |
|---|---|---|---|---|---|
| Current | $4,872.24 | $4,120.09 | $923.55 | $1,769.18 | $2,179.51 |
| YTD | $99,070.74 | $87,532.04 | $21,627.90 | $26,916.98 | $50,525.86 |

# EXHIBIT R



**Antonia Alvarez**
Head of Human Resources

antonia.alvarez@dentons.com
D   +1 602-508-3983

Dentons US LLP
2398 East Camelback Road, Suite 850
Phoenix, AZ 85016-9007
United States

dentons.com

October 8, 2025

**BY E-MAIL**

**PERSONAL AND CONFIDENTIAL**

Adrienne Hankins
adm.hankins@protonmail.com

Re:    Information Regarding the 2025 Business Services Staffing Review and Organizational Alignment
Program and the Waiver and Release

Dear Adrienne,

As part of our ongoing commitment to operational excellence, the Firm regularly evaluates staffing needs. We recently completed a review of our administrative and professional services staffing. We have determined after a careful review that it is necessary to eliminate your position. Your employment with the Firm will terminate effective today, October 8, 2025 ("Release Date"). We thank you for all you have contributed during your tenure with us. The impact of your service and devotion to helping support the Firm and our clients is immeasurable.

To qualify for payment under the Program, and the career transition support, it will be necessary for you to sign a Waiver and Release Agreement ("Waiver") within the time frame specified by the Firm. Information regarding eligibility for payment and other important information is contained in the Waiver. Attached is a copy of the Waiver for your review. Please note the following specific items with regard to the Waiver:

1. The Waiver discusses rights and obligations concerning severance pay and other matters.

2. You will have forty-five (45) days after the date of your receipt of the Waiver to decide whether to accept or reject the Waiver. You may sign the Waiver prior to the end of such forty-five (45) day period, but you are not required to do so.

3. If you sign the Waiver, you will then have seven (7) days after you sign it to change your mind and revoke the Waiver.

4. If you sign the Waiver and do not revoke it, the Waiver will be effective on the 8th day after you sign it ("Effective Date"). Depending upon the amount of time between the Effective Date and the next regularly scheduled payroll date, the severance payment will be paid either on the next payroll date following the Effective Date or on the next payroll date thereafter.

**DENTONS**

dentons.com

October 8, 2025
Page 2

If you elect to accept the Waiver, please sign and date the Waiver and return it to me in the time frame noted above.  I will sign on behalf of the Firm and return a copy to you.  If you have any questions regarding this or your benefit options, please contact me.

If you have any questions, please feel free to contact me.

Sincerely,
Antonia Alvarez
Head of Human Resources

## WAIVER AND RELEASE AGREEMENT

This Waiver and Release Agreement ("Waiver") is entered into between Dentons US LLP (the "Firm") and Adrienne Hankins (the "Employee").

WHEREAS, it is anticipated that the Employee's employment with the Firm will end effective October 8, 2025 ("Separation Date"), in accordance with the 2025 Business Services Staffing Review and Organizational Alignment Program ("Program");

WHEREAS, the Firm has determined that the Employee will receive severance pay under the Dentons US LLP Staff Severance Pay Plan (the "Plan") provided all other conditions of eligibility for the Employee to receive such severance pay are fulfilled and the Employee executes and complies with the terms of this Waiver; and

WHEREAS, the Employee acknowledges that the Employee is being offered the opportunity to receive severance pay from the Firm to which the Employee would not be otherwise entitled, in exchange for execution of this Waiver.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements set forth below, the parties hereby acknowledge and agree as follows:

1. <u>Severance Pay</u>. In consideration for the Employee's agreements contained herein, the Firm will pay the Employee a lump sum severance payment in an amount equivalent to 19 weeks' pay, based on the Employee's annual base salary in effect on the Employee's Separation Date, a total gross payment of $41,584.07, less applicable deductions, plus provide up to three months of career transition services. Depending upon the amount of time between the "Effective Date" of this Waiver as such term is defined below and the next regularly scheduled payroll date, the severance payment will be paid on either the next payroll date following the Effective Date or on the next payroll date thereafter.

2. <u>Final Wages and Paid Time Off</u>. In addition to the payment provided in Paragraph 1 above, the Employee will receive unpaid wages accrued during the final pay period for time worked through and including the Employee's Separation Date, as well as payment for any accrued but unused paid time off and whatever other benefits and payments to which the Employee is entitled by virtue of the Employee's service with the Firm up to and including the Separation Date pursuant to the terms of the applicable Firm benefit and incentive plans that do not relate to the severance payment. Except as specifically provided in this Waiver, the Employee understands that the Employee shall not be entitled to any other severance payment, benefits, or other consideration from the Firm.

3. <u>Waiver and Release</u>. In consideration for the payment described above in Paragraph 1 and to be provided to the Employee, the Employee, on behalf of the Employee and the Employee's heirs, executors, administrators and assigns, hereby waives, releases and forever discharges the

Firm and all affiliated entities, including, but not limited to, Dentons Group (a Swiss Verein) and its members, and all partners, supervisors, employees, agents, representatives, attorneys and their predecessors and successors, and all persons acting by, through or under any of them ("the Releasees") from any and all known or unknown causes of action, or liabilities of any kind which have been, or could be asserted, against the Releasees up to and including the date the Employee executes this Release, including but not limited to:

causes of action or liabilities arising under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act of 1967, the Older Workers' Benefit Protection Act, the Employee Retirement Income Security Act of 1974, the Worker Adjustment and Retraining Notification Act, the Americans with Disabilities Act, the Family and Medical Leave Act, the US Equal Pay Act of 1963 and any equal and/or fair pay acts of any state, the Arizona Civil Rights Act, the California Fair Employment and Housing Act, the California Family Rights Act, the California Labor and Government Codes, the Colorado Anti-Discrimination Act, the Colorado Revised Statutes, the District of Columbia Human Rights Act, the District of Columbia Wage Payment and Wage Collection Law, the District of Columbia Wage and Hour Laws, the District of Columbia Family and Medical Leave Act, the Georgia Fair Employment Practices Act, the Georgia Age Discrimination Act, the Georgia Equal Employment for Persons with Disabilities Code, the Atlanta Human Relations Code, the Florida Civil Rights Act, the Hawaii Wage and Hour Laws, the Hawaii Family Leave Law, the Hawaii Employment Practices Law, the Hawaii Civil Rights Act, the Hawaii Discriminatory Practices Law, the Illinois Human Rights Act, the Chicago Human Rights Ordinance, the Cook County Human Rights Ordinance, the Louisiana Employment Discrimination Law, the Maryland Fair Employment Practices Act, the Maryland Parental Leave Act, the Fairness for all Marylanders Act, the Maryland Code, the Massachusetts Wage Act, the Massachusetts Fair Employment Practices Act, the Missouri Human Rights Act, the Missouri Service Letter Statute, the New Jersey Family and Medical Leave Act, the New Jersey Law Against Discrimination, the New Jersey Conscientious Employee Protection Act, the New York State Human Rights Law, the New York City Human Rights Law, the New York State Labor Law, the Texas Payday Law, the Texas Labor Code, the Virginians with Disabilities Act, and the Virginia Human Rights Act, as such Acts have been amended, and/or any other federal, state, municipal, or local employment statutes, ordinances or codes; and/or causes of action or liabilities arising under any other federal, state, municipal, or local statute, law, ordinance or regulation (including, but not limited to, claims based on age, sex, attainment of benefit plan rights, race, religion, national origin, marital status, sexual orientation, ancestry, harassment, parental status, handicap, disability, retaliation, and veteran status); and/or any other cause of action including, but not limited to, actions seeking compensation, retention or separation pay, except as provided for herein, actions based upon breach of contract, wrongful termination, defamation, intentional infliction of emotional distress, tort, personal injury, invasion of privacy, violation of public policy, negligence and/or any other common law, or other cause of action whatsoever arising out of or relating to employment with and/or separation from employment with the Firm and/or any of the other Releasees.

The Employee hereby agrees that this Waiver shall apply to all unknown or unanticipated claims resulting from the Employee's employment with the Firm and the Firm's termination of

that employment, as well as those known and anticipated claims, and the Employee does hereby knowingly waive any and all rights and protections under California Civil Code Section 1542 and also specifically acknowledges that the Employee is aware of and familiar with the provisions of California Civil Code Section 1542, which provides as follows:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

**The Employee, being aware of this section, hereby expressly waives and relinquishes all rights and benefits the Employee may have under this Section as well as under any other statutes or common law principles of similar effect.**

Provided, however, (1) the Firm will not contest any claim which the Employee may file for unemployment benefits; and (2) nothing herein shall limit or impede the Employee's right to file or pursue an administrative charge with, or participate in, any investigation before the Equal Employment Opportunity Commission, or any other local, state or federal agency, and/or any cause of action which by law the Employee may not legally waive. The Employee agrees, however, that if the Employee or anyone acting on the Employee's behalf, brings any action concerning or related to any cause of action or liability released in this Waiver, the Employee waives any right to, and will not accept, any payments, monies, damages, or other relief, awarded in connection therewith.

4. <u>Confidentiality</u>. The Employee acknowledges and agrees that, in the course of the Employee's employment with the Firm, the Employee received information which is proprietary and confidential. The Employee covenants and agrees not to use or disclose any proprietary and confidential information of the Firm or any of its affiliates or of any person or entity with which the Firm does business, including, but not limited to, the following: (1) financial information or data of the Firm or its clients; (2) client lists or client-related information; (3) business strategies, processes, know-how, project plans, practice information, and data of the Firm; (4) personnel information, hours or timekeeping information and employment practices; (5) emails or other communications from any Firm personnel or email address (except as relates to the Employee's personal compensation or benefits); and (6) any other business plan, trade secret, or other business information of the Firm or of any person or entity with which the Firm does business. Nothing in this Waiver prevents the Employee from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that the Employee has reason to believe is unlawful.

5. <u>Defend Trade Secrets Act</u>. Pursuant to the Defend Trade Secrets Act of 2016, the Employee shall not be held criminally or civilly liable under any federal, or state trade secret law for the disclosure of a trade secret made in confidence to a federal, state or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or

3

investigating a suspected violation of law; made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal; or, in the event of a lawsuit for retaliation for reporting a suspected violation of law, to the Employee's attorney and for use in the court proceeding, if any document containing the trade secret is filed under seal and not disclosed, except pursuant to court order.

6. <u>References</u>. In the event any prospective employer requests that the Firm provide a reference for the Employee, the reference request should be referred to the Human Resources Director who shall state that it is the Firm's policy to provide only dates of employment and position held and shall provide only that information on the Employee to the party requesting reference.

7. <u>Non-Disparagement</u>. The Employee agrees not to disparage the Firm, its projects, work, and services, either verbally or in writing, except as may be required for truthful testimony compelled by judicial or administrative process. Nothing in this Waiver prevents the Employee from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that the Employee has reason to believe is unlawful.

8. <u>Arbitration of Claims</u>. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM (WHETHER IN CONTRACT, STATUTE, TORT, OR OTHERWISE) RELATING TO THIS RELEASE AGREEMENT. All claims, disputes, or other controversies concerning compliance with or alleged breach of this Waiver and any and all other potential disputes of any kind between the Employee and the Firm, including, but not limited to, statutory claims of any kind, shall be resolved by final and binding private arbitration in the State of California by a sole arbitrator in accordance with the Employment Arbitration Rules of the American Arbitration Association then in effect, provided that the arbitrator shall have no authority to add to, amend, modify or ignore any of the provisions of this Waiver. The Firm will pay the arbitrator's fees and arbitration expenses and any other costs unique to the arbitration hearing (recognizing that each side bears its own deposition, witness, expert and attorney's fees, and other expenses to the same extent as if the matter were being heard in court). If, however, any party prevails on a statutory claim that affords the prevailing party attorneys' fees and costs, then the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to who is a prevailing party or the reasonableness of any fee or costs shall be resolved by the arbitrator. All proceedings, correspondence, documents and communication concerning such arbitration shall be and remain confidential. Judgment on the award rendered by the arbitrator may be entered by any court having jurisdiction thereof. Notwithstanding the foregoing, the parties agree that the Firm shall be able to seek emergency, preliminary, temporary, or permanent injunctive relief from a court of competent jurisdiction with respect to any actual or threatened breach of paragraphs 4 or 7 of this Waiver, and the Employee consents to the jurisdiction of the state and federal courts in the State of California for this purpose.

9. <u>Acknowledgment of Notice to Seek Counsel, and Acknowledgment of Consideration Period, Revocation Period</u>. The Employee acknowledges: (a) that the Employee has hereby been advised in writing to consult with an attorney before signing this document; and (b) that the

4

Employee has had at least forty-five (45) days after receipt of this information and Waiver to consider whether to accept or reject this Waiver. The Employee understands that the Employee may voluntarily sign this Waiver prior to the end of such forty-five (45) day period, but is not required to do so. In addition, the Employee has seven (7) days after the Employee signs this Waiver to revoke it. Such revocation must be in writing and delivered either by hand, e-mail or mailed and postmarked within the seven (7) day period. If by email, send to antonia.alvarez@dentons.com; if by mail, send by certified mail, return receipt requested to Antonia Alvarez, Head of Human Resources, c/o Dentons US LLP, 2398 East Camelback Road, Suite 850, Phoenix, AZ 85016-9007. If the Employee revokes this Waiver as provided herein, it shall be null and void. If the Employee does not revoke this Waiver within seven (7) days after signing it, this Waiver shall become enforceable and effective on the eighth (8th) day after the Employee signs this Waiver ("Effective Date"). By Attachment A to this Waiver, the Employee has been informed in writing of the organizational unit affected by the Firm's 2025 Business Services Staffing Review and Organizational Alignment Program; the job titles and the ages of all affected individuals in the organizational unit and the job titles and the ages of all individuals in the organizational unit who were not affected; and the eligibility requirement for payment of severance pay.

10. Governing Law; Disputes. This Waiver shall be governed by, and construed and enforced in accordance with the laws of the State of California to the extent not covered by federal law.

11. Miscellaneous. No provision of this Waiver may be modified, waived, or discharged unless such waiver, modification, or discharge is agreed to in writing signed by the Employee and the Firm. This Waiver shall be enforced in accordance with its terms and shall not be construed against either party.

12. Counterparts. This Waiver may be executed in two counterparts, each of which shall be deemed to be an original but both of which together will constitute one and the same instrument.

13. Successors and Assigns. This Waiver binds and inures to the benefit of the Employee's heirs, administrators, representatives, executors, successors, and assigns, and the Firm's partners, employees, representatives, agents, successors, and assigns.

14. Entire Agreement - Termination of Prior Agreements. This Waiver contains the entire agreement between the parties hereto with respect to the transactions contemplated hereby and supersedes any previous oral and written agreements or representations relating to the subject matters herein.

15. Compliance with Section 409A. The provisions of this Waiver shall be interpreted at all times to comply with applicable exemptions from the requirements of Section 409A of the Internal Revenue Code and guidance issued thereunder.

The Employee hereby acknowledges and agrees that the Employee has carefully read and fully understands all the provisions of this Waiver, has had an opportunity to seek counsel, and has voluntarily entered into this Waiver by signing below as of the date set forth below.

DENTONS US LLP

Dated:_____        By:_____

                               Name:___Antonia Alvarez_____

                               Title:____Head of Human Resources___


Dated:_____        _____

                               Adrienne Hankins

6

ATTACHMENT A TO WAIVER AND RELEASE AGREEMENT

The following information is provided to comply with the Older Workers' Benefit Protection Act.

(a)      The organizational unit is composed of all Business Services Staff employees of Dentons US LLP (the "Firm").

(b)      All persons in the above organizational unit whose employment will be terminated in the 2025 Business Services Staffing Review and Organizational Alignment Program are eligible for severance pay.

(c)      This attachment includes a listing of (1) the ages and job titles of all persons in the organizational unit whose employment will be terminated in the 2025 Business Services Staffing Review and Organizational Alignment Program and who therefore are eligible to receive severance pay in consideration for signing a release of claims, and (2) the ages and job titles of all persons in the organizational unit not so selected.

(d)      All persons age forty (40) and over who choose to sign the Waiver and Release Agreement must sign the Waiver and Release Agreement and return it to Antonia Alvarez at the Firm within forty-five (45) days after receiving the Waiver and Release Agreement.  Once the Waiver and Release Agreement is signed, employees age forty (40) and over shall have seven (7) days to revoke the Waiver and Release Agreement.

7

# EXHIBIT S

 *Redacted*

Bay Point, CA  94565
adrn.hankins@protonmail.com


October 10, 2025


By E-Mail

Personal and Confidential

Dentons US LLP
Head of Human Resources
2398 East Camelback Road, Ste.850
Phoenix, AZ  85016
Antonia Alvarez
antonia.alvarez@dentons.com


Dear Antonia,

I have received the Waiver and Release Agreement.  The severance agreement does not support my best interests.

First of all, I currently have two active medical conditions of which I am protected under FMLA and CFRA.  I am eligible and approved through February 13, 2026, which provides "job-protected" leave for my serious health conditions.

Secondly, Dentons has approved my ADAAA request for a reasonable accommodation to work remotely, through April 30, 2026, to accommodate my disabilities.

Finally, I am requesting to remain on Dentons payroll and keep my benefits in place for the duration of my leave.


Respectfully,
Adrienne Hankins

# Re: Dentons Staff Severance Pay Plan

From    adrn.hankins <adrn.hankins@protonmail.com>

To      antonia.alvarez@dentons.com

Date    Monday, October 13th, 2025 at 9:57 AM

Thank you.

Sent from ProtonMail mobile

-------- Original Message --------
On Oct 13, 2025, 9:54 AM, Alvarez, Antonia < antonia.alvarez@dentons.com> wrote:

> I will have the reach work on the performance review.  For the private files, I will route your request to the appropriate team for handling.
>
>
> Antonia Alvarez, MSHRM
>
> Head of Human Resources
>
>
> ⊗ +1 602 508 3983  |  ⊘ +1 708 285 1624
>
>
>
>
> **From:** adrn.hankins <adrn.hankins@protonmail.com>
> **Sent:** Monday, October 13, 2025 9:52 AM
> **To:** Alvarez, Antonia <antonia.alvarez@dentons.com>
> **Subject:** Re: Dentons Staff Severance Pay Plan

**[WARNING: EXTERNAL SENDER]**

Can you please provide the following docs, I need the requested information asap by Oct 17: 1) performance review 2024; 2) from my private profile all docs saved in Imanage 2022-2025.

thank you.

Sent from ProtonMail mobile

-------- Original Message --------
On Oct 10, 2025, 5:06 PM, Alvarez, Antonia < antonia.alvarez@dentons.com > wrote:

Hi Adrienne,

I wanted to address your concerns regarding your job protection under FMLA and ADA accommodation. To clarify, job protection would only apply if the decision to terminate your employment was related to your intermittent leave. In this case, the decision to eliminate your position was based solely on the organizational review and is unrelated to your intermittent leave or ADA accommodation.

Your ADA accommodation is applicable while you are employed, but as you are no longer employed with the Firm due to the organizational review, neither your accommodation nor your intermittent leave was the basis of the decision, and therefore, they are irrelevant in this context.

As outlined in your waiver and release agreement, you have 45 days from the date you received the waiver to decide whether you would like to accept or reject it.

Antonia

Antonia Alvarez, MSHRM

Head of Human Resources

&#9410; +1 602 508 3983  |  &#9416; +1 708 285 1624

---

**From:** adrn.hankins <adrn.hankins@protonmail.com>
**Sent:** Friday, October 10, 2025 9:23 AM
**To:** Alvarez, Antonia <antonia.alvarez@dentons.com>
**Subject:** Dentons Staff Severance Pay Plan

**[WARNING: EXTERNAL SENDER]**

Dear Antonia -

Please find attached letter.

Adrienne Hankins

# EXHIBIT T

**HealthEquity** | **WageWorks**

My Account   One-Time Payments   My Resources   My Notices

Home > One-Time Payments

# Make a One-Time Premium Payment

**Submission Confirmation**

We received your payment request. This confirmation verifies that you've authorized Wageworks to initiate an electronic payment from your bank account. Please print this page as a receipt of your submission.

This is a one-time payment request. Be sure to visit this site each time you wish to make an online payment. If you don't make a payment or your payment is returned, your account will be marked as unpaid. Make sure your payments are up-to-date because we can't guarantee that we'll be able to notify you in time for you to correct the issue — which could cause your coverage to end permanently.

IMPORTANT: Paying your premium directly does not guarantee coverage under your plan. If your employer/plan sponsor terminates the plan, your group health coverage may be terminated retroactively. If your plan is terminated, Wageworks can't guarantee a refund of your premium payment if they've already forwarded it to the employer/plan sponsor for payment on your behalf.

Payments are generally processed within three business days.

Reference Number: 52961043
Order Date: 10/23/2025
Total: $952.42
Routing Number: xxxxx1184
Account Number: xxxxx0846

# EXHIBIT U

## RE: Profit Sharing Contribution for 2025

From    antonia.alvarez@dentons.com <antonia.alvarez@dentons.com>

To    adrn.hankins<adrn.hankins@protonmail.com>

Date    Monday, October 13th, 2025 at 9:34 AM

Hi Adrienne –

Your separation would need to be due to disability for you to be eligible for profit sharing.  Your separation was not due to disability so you will not be eligible for profit sharing for 2025.

Antonia Alvarez, MSHRM

Head of Human Resources

⊕ +1 602 508 3983   |   ⊗ +1 708 285 1624

[WARNING: EXTERNAL SENDER]

Dear Antonia, with regards to Profit Sharing Contribution, due to my disability, in the Employee Resource packet, page 9, it states I am eligible to receive the contribution.

Please advise.

Thank you!
Adrienne Hankins

Sent from ProtonMail mobile

**From:** adrn.hankins <adrn.hankins@protonmail.com>
**Sent:** Saturday, October 11, 2025 11:13 AM
**To:** Alvarez, Antonia <antonia.alvarez@dentons.com>
**Subject:** Profit Sharing Contribution for 2025

# EXHIBIT V

**BALOGH LAW LTD.**
6680 Alhambra Ave., Ste 101
Martinez, CA 94553
925-575-8056



Jason Balogh
jason@baloghlaw.com
510-473-2697 (direct)

November 10, 2025

Antonia Alvarez
Head of Human Resources
Dentons US LLP
2398 East Camelback Road, Suite 850
Phoenix, AZ 85016-9007
antonia.alvarez@dentons.com

### RE: Adrienne Hankins Demand Letter for Severance and Benefits

Dear Ms. Alvarez:

I represent Adrienne Hankins ("Adrienne" or "my client"), who served as a legal administrative assistant at Dentons US LLP in Oakland, California, for over seventeen years. This letter constitutes a formal demand for enhanced severance and benefits in connection with her recent termination. Specifically, Adrienne demands payment of **52 weeks of severance, one year of paid health insurance coverage**, and **inclusion in the 2025 profit sharing contribution**, with confirmation of all terms by **November 14, 2025**. If Dentons US LLP fails to comply by this date, Adrienne will pursue all available legal remedies, including but not limited to claims for disability discrimination, age discrimination, retaliation, and wrongful termination.

Adrienne dedicated more than seventeen years to Dentons US LLP, consistently performing at an exceptional level as a legal administrative assistant in the Oakland, Walnut Creek, and San Francisco offices. Throughout her tenure, she received outstanding performance reviews and was recognized by attorneys and colleagues for her professionalism, reliability, and value to the firm.

During her employment, Adrienne sustained multiple repetitive motion injuries directly attributable to her job duties. These injuries, documented over several years, include cervical and lumbar spine injuries, right and left shoulder injuries, and right upper extremity impairments. Despite chronic pain, she maintained her work responsibilities, using paid time off only for necessary medical appointments until the pain became unmanageable in recent years.

In the past two years, as her injuries worsened, Adrienne obtained FMLA leave to address her serious health conditions. She had requested, and the week prior to her termination was approved for full work-from-home medical accommodation. Nevertheless, on October 8, 2025, while still on FMLA leave and immediately following Denton's approval of her accommodation, Dentons US LLP terminated her employment as part of a workforce reduction.

During her tenure at Dentons US LLP, Adrienne Hankins was subjected to repeated harassment, discriminatory conduct, and retaliatory behavior by her direct supervisor, Ashley Coker. This conduct included repeated demands that Ms. Hankins disregard medical advice to work additional days in the office while injured and she made threatening gestures towards her. Ms. Coker's conduct materially affected the terms and conditions of Ms. Hankins' employment and contributed to a hostile work environment, in violation of California law.

Dentons US LLP
November 10, 2025
Page 2 of 4

At the time of her termination, Adrienne was 57 years old and facing ongoing medical needs, including scheduled procedures and care for her own injuries as well as her husband's cancer treatment, both of which require continued health insurance coverage. She was offered 19 weeks of severance, which does not reflect her long-standing contributions, the circumstances of her separation, or her ongoing medical and financial needs.

Adrienne's record of service, the timing of her termination, and the context of her medical accommodations and protected leave form the basis for this demand.

The Dentons US LLP Staff Severance Pay Plan ("Severance Plan") governs severance benefits for employees affected by workforce reductions. Under the Plan, eligible employees are entitled to severance based on years of service, with a cap of 20 weeks for non-exempt and 25 weeks for exempt staff. However, the Plan expressly reserves Dentons US LLP's discretion to enter into severance arrangements on terms different from those set forth in the Plan, including enhanced severance and benefits, where warranted by the circumstances.

The Employee Resource Guide confirms that health insurance coverage ends on the last day of the month in which employment terminates, with COBRA continuation available at the employee's expense unless otherwise negotiated. The Guide further provides that employees are eligible for a profit sharing contribution for the year if their employment ends due to disability, as documented by medical evidence and work status reports.

Adrienne's situation is exceptional. She suffered multiple, well-documented repetitive motion injuries during her employment, resulting in chronic pain and permanent impairment. She was approved for FMLA leave to address her serious health conditions and, immediately prior to her termination, was granted a full work-from-home medical accommodation. Despite these accommodations and her ongoing medical needs, Dentons US LLP terminated her employment, while she was still on protected leave.

Federal and California law provide robust protections against discrimination and retaliation in employment. The California Fair Employment and Housing Act (FEHA) prohibits discrimination and retaliation based on disability and age, and requires employers to provide reasonable accommodations to qualified employees (California Government Code §§ 12940, 12945.2). The Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA) provide similar protections at the federal level (42 U.S.C. §§ 12101 et seq.; 29 U.S.C. §§ 621 et seq.). The Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA) prohibit interference with protected leave and retaliation for exercising leave rights (29 U.S.C. § 2615; Cal. Gov. Code § 12945.2).

Courts have recognized that adverse employment actions taken shortly after an employee requests or receives a medical accommodation or protected leave may support claims for disability discrimination, retaliation, and wrongful termination in violation of public policy. See, e.g., Stevenson v. Superior Court, 16 Cal.4th 880, 889-90 (1997); Diaz v. Federal Express Corp., 373 F. Supp. 2d 1034, 1050-51 (C.D. Cal. 2005). The timing of Adrienne's termination—immediately following her request for and approval of a medical accommodation, and while on FMLA leave—raises a strong inference of unlawful motive.

Dentons US LLP
November 10, 2025
Page 3 of 4

Further. Dentons US LLP's own policies and procedures require supervisors to foster an equitable work environment and prohibit harassment, discrimination, and retaliation. The failure to prevent and address Ms. Coker's conduct represents a breach of these obligations and exposes the Firm to liability for both direct and vicarious harassment.

Given Adrienne's long tenure, exemplary performance, documented disability, and the circumstances of her termination, the default severance offer is inadequate. The Plan's discretionary provision, combined with the significant legal exposure Dentons US LLP faces under state and federal law, justifies the enhanced severance, health insurance, and profit sharing demands set forth below.

In light of the facts and legal authority outlined above, Adrienne hereby demands the following as a condition for resolving all claims arising from her employment and separation from Dentons US LLP:

- **Payment of 52 weeks of severance pay**, calculated at her base weekly wage in effect as of her termination date, to be paid in a single lump sum no later than November 14, 2025.

- **Payment of one year of employer-paid health insurance coverage**, including medical, dental, and vision benefits, for Adrienne and her covered dependents, commencing immediately upon the expiration of her active coverage and continuing through October 31, 2026.

- **Inclusion in the 2025 profit sharing contribution**, consistent with the Employee Resource Guide's provision for employees whose employment ends due to disability, with payment to be made on the same schedule as for active employees.

Adrienne requires written confirmation of Dentons US LLP's agreement to these terms by **November 14, 2025**. If Dentons US LLP fails to provide such confirmation by the deadline, Adrienne will consider the offer rejected and reserves her right to pursue all available legal remedies, including but not limited to claims for disability discrimination, age discrimination, retaliation, and wrongful termination under FEHA, ADA, ADEA, FMLA, and related statutes.

This demand is made in good faith and with the intent to resolve all disputes efficiently and without litigation.

The facts and timing of Adrienne's termination expose Dentons US LLP to substantial liability under multiple state and federal statutes. First, the California Fair Employment and Housing Act (FEHA) and the Americans with Disabilities Act (ADA) prohibit discrimination and retaliation against employees with disabilities, and require employers to provide reasonable accommodations to qualified individuals. Adrienne Hankins was terminated immediately after requesting and receiving a full work-from-home medical accommodation, and while on FMLA leave for documented, work-related injuries. This sequence of events strongly supports claims for disability discrimination and retaliation under both FEHA and ADA (California Government Code § 12940; 42 U.S.C. § 12112).

Dentons US LLP
November 10, 2025
Page **4** of **4**

Second, the Age Discrimination in Employment Act (ADEA) and FEHA prohibit adverse employment actions based on age. At 58 years old and with over seventeen years of service, Adrienne falls squarely within the protected class. The proximity of her termination to her protected leave and accommodation, combined with her age and long tenure, further supports a claim for age discrimination (29 U.S.C. § 623; Cal. Gov. Code § 12941).

Third, the Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA) prohibit employers from interfering with, restraining, or retaliating against employees for exercising their rights to protected leave (29 U.S.C. § 2615; Cal. Gov. Code § 12945.2). Terminating an employee while on FMLA/CFRA leave, especially after granting a medical accommodation, is a textbook basis for a retaliation claim.

Finally, California law recognizes a cause of action for wrongful termination in violation of public policy, including terminations based on disability, age, or protected leave. The Supreme Court of California has held that such claims are actionable when grounded in statutes like FEHA and the ADEA (*Stevenson v. Superior Court*, 16 Cal.4th 880, 889-90 (1997)).

If this matter proceeds to litigation, Dentons US LLP faces the risk of significant compensatory damages, statutory penalties, attorneys' fees, and reputational harm. The evidence of pretext and retaliatory motive is compelling, and the legal exposure far exceeds the cost of resolving this matter on the terms demanded.

Adrienne reiterates her demand for **payment of 52 weeks of severance, one year of employer-paid health insurance, and inclusion in the 2025 profit sharing contribution**, with written confirmation of these terms by **November 14, 2025**.

Sincerely yours,

*Jason Balogh*
Jason Balogh

# EXHIBIT W

**DENTONS**

Katharine E. Mellon
Partner and Deputy General Counsel

katharine.mellon@dentons.com
D    +1 312-876-8162

Dentons US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606-6361
United States

dentons.com

December 1, 2025

Jason Balogh, Esq.
Balogh Law LTD.
6680 Alhambra Ave., Ste 101
Marinez, CA 94553

Via Email:  jason@baloghlaw.com

Re:    Adrienne Hankins

<u>**Confidential Settlement Communication**</u>

Dear Jason,

I write in response to your November 10, 2025 letter.

We have reviewed your allegations regarding Adrienne Hankins's inclusion in Dentons US LLP ("Dentons" or the "Firm") recent reduction-in-force and your claims of "repeated harassment, discriminatory conduct and retaliatory behavior" by her supervisor Ashley Coker.

We have found no support for your assertion that the Firm's treatment of Ms. Hankins was based on her disability, age, retaliation or any other proscribed reason.  Rather, the Firm's decision to include Ms. Hankins in the RIF was based on legitimate nondiscriminatory business reasons.

Consistent with our Firm's long-term strategic priorities, this past summer the Firm completed a comprehensive review of our administrative and professional services staffing across the country. Among other things, the Firm concluded that two Legal Administrative Assistant roles would be eliminated from the Oakland office.  After careful consideration, Ms. Hankins was one of those selected.  Factors considered included the overall operational impact of the role eliminations.  The determination was made that reassigning the work of the attorneys to whom Ms. Hankins and one other Legal Administrative Assistance were assigned would be the least disruptive decision to be made, given the need for continued operational efficiency.  Material to the determination that Ms. Hankins would be one of the two was that she had repeatedly made statements to others in the Oakland office that she planned to retire soon. Thus, in contrast to the Legal Administrative Assistants who were retained, the likelihood was that Ms. Hankins would soon leave, causing future disruption in work assignments and the unnecessary layoff of an employee who had not signaled a forthcoming plan to leave employment.  Thus, based on the anticipated lack of disruption in reassigning her attorneys and, in the context of her previous statements regarding an approaching retirement, the concern that she would soon retire if retained at that time, Ms. Hankins was selected.

Puyat Jacinto & Santos ► Link Legal ► Zaanouni Law Firm & Associates ► LuatViet ► For more information on the firms that have come together to form Dentons, go to dentons.com/legacyfirms

DENTONS

December 1, 2025
Page 2

dentons.com

Regarding your allegations that Ashley Coker subjected her to harassment, discriminatory conduct, and retaliatory behavior, the Firm has no record of Ms. Hankins ever having made a complaint against Ms. Coker during her employment, whether harassment or discrimination or any other complaint, to Human Resources, the Office of General Counsel or anyone in leadership.

We do agree that throughout her tenure Ms. Hankins requested and was granted multiple leaves of absence and workplace accommodations.  From November 31, 2023, through November 30, 2024, Hankins requested -- and was granted – a reduced schedule of 3 days a week; subsequently, she requested, and was also granted, a reduced schedule of 4 days a week.  Throughout the period, she also requested and was granted intermittent leave three times a month for appointments.  We have found no support for the allegation that Ms. Hankins' supervisor, Ms. Coker, made repeated demands that Ms. Hankins disregard medical advice.

Your suggestion that Ms. Hankins was among those whose position was included in the reduction-in-force due to her request for a remote work accommodation is demonstrably not the case.  Ms. Hankins was identified for inclusion in the reduction-in-force prior to her request for full work-from-home medical accommodation.  Notably, two of the Legal Administrative Assistants in the Oakland office who were not selected for the reduction-in-force had previously requested and were granted remote work accommodations.

The claim that Ms. Hankins was selected for the reduction-in-force because of her age is also unsubstantiated, given the undisputable facts.  As you state in your email, Ms. Hankins was 57 years old at the time of her termination.  173 of the Business Services Staff employee from amongst whom layoff decisions were made and not selected for layoff were the same age or older than Ms. Hankins; 73 of the Legal Administrative Assistants from amongst whom layoff decisions were made and not selected for layoff were the same age or older than Ms. Hankins; and the five Legal Administrative Assistants  in Oakland who were not selected for layoff were ages 71, 70, 67, 61, and 52.

We are of the strong view that the actual record regarding Ms. Hankins and Dentons will not support the claims you have asserted in your November 10, 2025 letter.  If Ms. Hankins were to decide to file litigation, Dentons will vigorously defend against her claims.

Again, Ms. Hankins was selected for the Firm's reduction-in-force for legitimate and non-discriminatory business reasons.  We have found no evidence of discrimination, harassment, retaliation, hostile work environment, or any other conduct that could support a viable claim against the Firm.  If you believe such evidence exists, I would be happy to discuss it with you.

We reserve all rights.

Very truly yours,

*Katharine Mellon*

Katharine E. Mellon
Partner and Deputy General Counsel

# EXHIBIT X



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

December 8, 2025

RE: **Notice of Filing of Discrimination Complaint**
CRD Matter Number: 202512-32531508
Right to Sue: Hankins / Dentons US LLP et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/11)

## COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
### Civil Rights Department
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

In the Matter of the Complaint of

Adrienne Hankins

                Complainant,

CRD No. 202512-32531508

vs.

Dentons US LLP
233 South Wacker Drive
Chicago, IL 60606

Dentons US LLP
1999 Harrison Street, Suite 1210
Oakland, CA 94612

                Respondents

1. Respondent **Dentons US LLP** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant is naming **Dentons US LLP** business as Co-Respondent(s).

3. Complainant **Adrienne Hankins**, resides in the City of **Bay Point**, State of **CA**.

4. Complainant alleges that on or about **December 1, 2025**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's age (40 and over), disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

**Complainant was discriminated against** because of complainant's age (40 and over), disability (physical, intellectual/developmental, mental health/psychiatric), family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies and as a result of the discrimination was terminated, laid off, denied accommodation for a disability, denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

-1-
*Complaint – CRD No. 202512-32531508*

Date Filed: December 8, 2025

CRD-ENF 80 RS (Revised 2025/11)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Complainant experienced retaliation** because complainant requested or used a disability-related accommodation, requested or used family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies and as a result was terminated, laid off, denied family care and medical leave (cfra) related to serious health condition of employee or family member, child bonding, or military exigencies.

**Additional Complaint Details:** Complainant was terminated on October 8, 2025 apparently due to a RIF.  There were 5 other Legal Administrative Assistants, Supv. Coker could have terminated any one of us, we all had very similar skill sets and tenure at DENTONS, Supv. Coker could have selected any one of them, but she selected me, the employee with injuries and on an approved leave with a reduced schedule due to FMLA, CFRA and was granted an approved full remote work from home ADAAA accommodation and terminated the day the accommodation was to begin.  It appears discriminatory due to Plaintiff's medical disability.  It seems as though Supv. Coker made the decision to terminate Plaintiff's position due to Plaintiff's health condition and multiple medical appointments attended per weekly basis.

-2-
Complaint – CRD No. 202512-32531508

Date Filed: December 8, 2025

CRD-ENF 80 RS (Revised 2025/11)

VERIFICATION

I, **Adrienne Hankins**, am the **Complainant** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

On December 8, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Bay Point California**

-3-
Complaint – CRD No. 202512-32531508

Date Filed: December 8, 2025

CRD-ENF 80 RS (Revised 2025/11)

## PROOF OF SERVICE BY FIRST CLASS-MAIL
### CRD CIVIL RIGHTS DEPARTMENT
### CRD MATTER #202512-32531508

I am over 18 years of age. I am a resident in the county where the mailing took place.

My residence address is: 807 Dodd Court, Bay Point, CA 94565.

On December 8, 2025: I mailed from Bay Point, California: the following documents California Civil Rights Department,

- Notice of Filing of Discrimination Complaint; and Notice of Right to Sue:

a. depositing the sealed envelope with the United States Postal Service with the postage fully prepaid.

The envelope was addressed and mailed as follows:

a. Katharine E. Mellon, Partner and Deputy General Counsel, Dentons US LLP, 233 South Wacker Drive, Suite 5900, Chicago, IL 60606
b. Ashley Coker, Staff Supervisor, Dentons US LLP, 1999 Harrison Street, Suite 1210, Oakland, CA 94612

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: December 8, 2025

Adrienne Hankins