UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

<table>
<tr><td>ADRIENNE HANKINS,<br><br>Plaintiff,<br><br>v.<br><br>DENTONS US LLP, et al.,<br><br>Defendants.</td><td>Case No. 26-cv-01163-TSH<br><br>**ORDER DENYING MOTION TO DISQUALIFY COUNSEL**<br><br>Re: Dkt. No. 14</td></tr>
</table>

## I.   INTRODUCTION

Plaintiff Adrienne Hankins, who is representing herself, asserts employment-related claims against her former employer, Defendant Dentons US LLP, and several current or former Dentons personnel.  Pending before the Court is Plaintiff's Motion to Disqualify Dentons US LLP and attorney Sandra R. McCandless (an attorney at Dentons) from representing Defendants.[1]  ECF No. 14.  Defendants filed an Opposition (ECF No. 21) and Plaintiff filed a Reply (ECF No. 24).   The Court previously found this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b).  ECF No. 26.  For the reasons stated below, the Court **DENIES** the motion.[2]

## II.   BACKGROUND

### A.   Employment Background and Lawsuit

Plaintiff began working for Dentons on March 10, 2008 as a legal secretary, later titled legal administrative assistant.  First Am. Compl. (FAC) ¶ 15, ECF No. 1-2.  In October 2023 her

---

[1] As one of the individual Defendants has filed motions to dismiss and strike (ECF Nos. 10, 11), the Court resolves this motion first before turning to those motions in a separate order.  *See Bhs L. LLP v. Worldex Indus. & Trading Co.*, 2025 WL 3754296, at *7 (N.D. Cal. Dec. 29, 2025) ("Because a motion to disqualify opposing counsel logically must come before motions filed by the counsel at issue, the Court first turns to Bhs's motions.") (citing *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 105 F. Supp. 3d 1100, 1103 (E.D. Cal. 2015)).

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 6, 8, 44.

United States District Court
Northern District of California

United States District Court
Northern District of California

treating physician prescribed a reduced schedule of three days per week at 7.5 hours per day due to cumulative repetitive motion and orthopedic injuries. *Id.* ¶¶ 16-18. Plaintiff alleges that in February 2024 she and Defendant Ashley Coker, the staff legal administrative assistant manager at Dentons, agreed verbally that she would work in-office one day per week due to medical needs. *Id.* ¶¶ 7, 21. On August 18, 2025, Coker advised the legal administrative assistants that all staff were to work in-office three days per week. *Id.* ¶ 31. Plaintiff sought an in-office exemption, which Dentons approved. *Id.* ¶¶ 32, 40. However, on October 8, 2025, Coker and Defendant Laura Bethke (a Dentons' HR Business Partner) informed Plaintiff that her employment was terminated, with Coker citing a "reduction in force." *Id.* ¶¶ 11, 41.

After receiving the termination notice, Plaintiff paid an attorney to draft a demand letter, but she did not retain counsel for further representation. Mot. at 3. On November 10, 2025, Hankins, through her then-attorney, emailed a letter to Dentons as a "formal demand for enhanced severance and benefits in connection with her recent termination." FAC ¶ 47 & Ex. X. On December 1 Defendant Katherine Mellon, in her capacity as Deputy General Counsel of Dentons, responded to the demand letter, stating Dentons' position regarding Plaintiff's separation and informing her that if she "were to decide to file litigation, Dentons will vigorously defend against her claims." *Id*. ¶¶ 8, 48 & Ex. Y. After receiving the December 1 rejection, Plaintiff states she "understood that no negotiations were ongoing and that the matter was dormant." Mot. at 3.

On December 18, 2025, Plaintiff filed a Complaint against Defendants Dentons US LLP, Ashley Coker, and Katharine E. Mellon in Alameda County Superior Court, captioned *Adrienne Hankins v. Dentons US LLP, et al.*, case number 25CV160714. Notice of Removal, Ex. A, ECF No. 1-2. On January 13, 2026, Plaintiff filed the operative First Amended Complaint, adding Laura Bethke, Brenda Navarrete (Dentons' Leave of Absence Specialist), Arianna Kekatos (an HR Business Coordinator at Dentons), and Antonia Alvarez (Head of Human Resources). FAC ¶¶ 6-12. The FAC sets forth the following 11 causes of action: (1) Wrongful Termination in Violation of the Fair Employment and Housing Act ("FEHA"); (2) Wrongful Termination in Violation of the ADA Amendments Act (Americans with Disabilities Act Amendments); (3) Wrongful Termination in Violation of the California Family Rights Act ("CFRA"); (4) Wrongful

United States District Court
Northern District of California

Termination in Violation of the Family Medical Leave Act ("FMLA"); (5) Violation of FEHA/Failure to Engage in the Interactive Process; (6) Retaliation in Violation of FEHA; (7) Violation of the Age Discrimination in Employment Act ("ADEA"); (8) Harassment in Violation of FEHA; (9) Wrongful Termination in Violation of Internal Policy/Breach of Implied Covenant; (10) Wrongful Termination in Violation of Public Policy; and (11) Negligent Infliction of Emotional Distress. *Id.* ¶¶ 50-186.

**B.      Plaintiff's Communications with Dentons' Attorneys Post-Filing**

Plaintiff states that at the time she filed this lawsuit, she "did not know who would represent any Defendant," and that because Dentons rejected her severance demand, she "did not anticipate any outreach from Dentons—particularly not from a senior partner with whom she had a longstanding working relationship." Mot. at 3-4.  However, on January 9, 2026, McCandless, Dentons' Head of Employment and Labor contacted her "unexpectedly." *Id.* at 4.  Plaintiff states that "[g]iven their 17-year professional relationship, the call felt familiar and supportive. McCandless expressed compassionate concern about Plaintiff's medical coverage and spoke in a non-adversarial tone.  Plaintiff did not understand the call to be made in a defense-counsel capacity, and McCandless did not clarify her role or advise Plaintiff to seek counsel." *Id.*

Plaintiff states McCandless initiated a second call on January 16, which was joined by Matt Martin, Dentons' Deputy General Counsel from Atlanta.  *Id.*  Because she had also worked with Martin "many times during her employment, the conversation again felt familiar and non-adversarial." *Id.*  Plaintiff states the three discussed settlement, and both attorneys said they needed to talk to Dentons' CEO. *Id.*

In a third call with McCandless and Martin on January 20, Plaintiff states she "candidly shared information regarding her emotional condition, financial stress, and uncertainty about future employment due to her injuries." *Id.* at 4-5.  Plaintiff states Martin suggested firm-paid mediation services offered to employees, and McCandless offered firm-paid outplacement services for employees in a potential package. *Id.* at 5.  During this call "Plaintiff even stated that Dentons would need to hire outside counsel and how costly that would be.  Neither Martin, nor McCandless corrected this misunderstanding." *Id.*  A fourth call was scheduled for January 27,

but Plaintiff states she canceled due to emotional distress. *Id.*

Plaintiff states the "tone, context, and content of the calls were familiar, supportive, and non-adversarial, and nothing in the conversations suggested that Ms. McCandless was acting as defense counsel or in an adversarial capacity." Mot. at 1. During the calls, Plaintiff conveyed "highly personal and significantly harmful information" concerning her emotional condition, financial stress, and employment concerns. *Id.* at 2. Seventeen days after the final call, on February 6, 2026, Defendants made their first appearance, and Plaintiff "learned for the first time that McCandless would be serving as lead defense counsel." *Id.*

Defendants removed the case to this Court on February 6, 2026. One day later, Plaintiff sent a renewed settlement demand to McCandless and Martin. *Id.* at 5. At the time, Plaintiff "had not yet seen the Notice of Removal in her inbox and believed settlement discussions might still be possible. This communication occurred before Plaintiff understood that Dentons had formally appeared as defense counsel." *Id.* Plaintiff states she learned then that McCandless would be serving as lead defense counsel for all Defendants. *Id.*

On February 12, 2026, Plaintiff called Carlos Bacio, who is counsel of record in this case and an attorney with Dentons, to raise what she considered ethical conflicts from her calls with McCandless and Martin. *Id.* at 6. Plaintiff then sent a written request for Dentons' withdrawal, but Dentons responded there was no basis for its withdrawal. *Id.* On February 18, after Plaintiff emailed Bacio and McCandless to request that Dentons stipulate to a stay of the case to allow the parties to resolve any conflict, Bacio responded by email that there was no conflict of interest and no basis for Dentons to withdraw as counsel. *Id.*

**C.     Motion to Disqualify**

Plaintiff filed the present motion on February 23, 2026. Plaintiff seeks disqualification based on the Court's inherent authority and various California Rules of Professional Conduct. In support of disqualification, Plaintiff argues: (1) Dentons violated Rule of Professional Conduct 4.3 because counsel did not disclose adversity, did not advise her to seek counsel, and did not correct her misunderstanding of counsel's role during the January calls; (2) Rule 1.18 applies because the calls created a prospective-client relationship, during which Dentons received information that

4

United States District Court
Northern District of California

could be significantly harmful to her; (3) alternatively, an implied attorney-client relationship arose under Rule 1.9, rendering Dentons' representation directly adverse in the same matter; (4) any resulting conflict is imputed to the entire firm under Rule 1.10; and (5) McCandless is a necessary witness under Rule 3.7 regarding the content and context of the January communications.  Mot. at 7-11.  Plaintiff also argues that statements made in the February 18 email were misleading (Rule 4.1), that supervising counsel ratified or failed to correct ethical lapses (Rule 5.1), and that Defendants' subsequent pleadings contained blanket denials inconsistent with information she obtained in January (Rules 3.1 and 3.3).  Mot. at 11-14.  Plaintiff also asserts that Rule 8.4 is implicated because Dentons' conduct constitutes a pattern of conduct that undermines the integrity of the proceedings.  Mot. at 14-15.

Plaintiff seeks the following relief:

> 1. Disqualifying Dentons US LLP, including all attorneys affiliated with the firm, from representing any Defendant in this action, effective immediately.

> 2. Directing Dentons US LLP to withdraw pursuant to Civil Local Rule 11-5 and requiring Defendants to obtain new, conflict-free counsel and file a Notice of Appearance within 14 days of the Court's order.

> 3. Striking [Dentons' Answer, Motion to Dismiss, and Motion to Strike at] ECF Nos. 9, 10, and 11 pursuant to the Court's inherent authority to protect the integrity of the proceedings, without prejudice to refiling by substitute counsel, and prohibiting successor counsel from relying on or incorporating any portion of those filings.

> 4. Prohibiting Dentons US LLP from transferring or disclosing to successor counsel any work product, materials, or information generated during the period of conflict, and prohibiting successor counsel from receiving or using such materials.

> 5. Requiring successor counsel to implement screening measures to ensure that no attorney or staff member receives or reviews any materials generated by Dentons US LLP during the period of conflict, and requiring successor counsel to file a certification of compliance within 7 days of appearance.

> 6. Staying all deadlines in this matter pending the appearance of new counsel and issuance of a revised scheduling order.

> 7. Granting Plaintiff leave to file a Second Amended Complaint within 21 days after substitute counsel appears, with a redlined version comparing the amended pleading to the prior operative pleading, consistent with the Court's Standing Order.

8. Granting such other and further relief the Court deems just and proper.

*Id.* at 15-16.

### III.    LEGAL STANDARD

"[F]ederal courts apply state law in determining matters of disqualification." *Reading Int'l, Inc. v. Malulani Grp., Ltd.*, 814 F.3d 1046, 1049 (9th Cir. 2016) (cleaned up); *see also* Civ. L.R. 11-4(a)(1) (this District requires attorneys before it to "comply with the standards of professional conduct required of members of the State Bar of California."). Generally, a "party seeking disqualification must establish by a preponderance of the evidence that there exists a prior representation creating a conflict in the current case." *Google LLC v. NAO Tsargrad Media*, 2024 WL 4844799, at *4 (N.D. Cal. Nov. 19, 2024) (citation omitted).

"As a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless [a] former [or current] client moves for disqualification." *Bhs L. LLP*, 2025 WL 3754296, at *5 (alterations in original) (quoting *Kasza v. Browner,* 133 F.3d 1159, 1171 (9th Cir.1998)). "However, California law recognizes a narrow exception to the former or current client standing rule: A court may disqualify an attorney at the urging of a third party 'where the ethical breach so infects the litigation in which disqualification is sought that it impacts the moving party's interest in a just and lawful determination of her claims.'" *Id.* (quoting *TransPerfect Glob., Inc. v. MotionPoint Corp.*, 2012 WL 2343908, at *7 (N.D. Cal. June 20, 2012)). Even under this exception, "'a non[-]client litigant must establish a personal stake in the motion to disqualify sufficient to satisfy the 'irreducible constitutional minimum' of Article III." *Id.* (alteration in original) (citing *Colyer v. Smith*, 50 F. Supp. 2d 966, 971 (C.D. Cal. 1999)).

Moreover, "[b]ecause motions to disqualify can be abused to deprive a party of her chosen counsel, courts have the discretion to disqualify or not." *Google v. NAO Tsargrad*, 2024 WL 4844799, at *4 (collecting cases). In sum, the Court must balance a party's choice of counsel against preserving "public trust in the scrupulous administration of justice and the integrity of the bar." *Id.* (cleaned up).

6

**IV.    DISCUSSION**

The Court finds Plaintiff's motion must be denied for two reasons.  First, Plaintiff lacks general standing to seek counsel's disqualification.  Second, even if she could establish standing, she has failed to establish a disqualifying conflict.

**A.    Citations to Fictitious Cases**

As a preliminary matter, Defendants point out that Plaintiff's motion includes citations to judicial opinions that don't appear to exist.  Opp'n at 20.  In her reply, "Plaintiff acknowledges there were some miss-citations in her opening brief."  Reply at 9.  The Court declines to make a finding on this issue as part of this order, but it advises as follows.

The Court does not prohibit or oppose the use of AI in legal advocacy, but if AI tools are utilized, parties have a duty to "independently verif[y] the accuracy of AI-generated content." *Oneto v. Watson*, 808 F. Supp. 3d 974, 979, 981 (N.D. Cal. 2025) (awarding sanctions against counsel for citing fictitious cases); *see also* Fed. R. Civ. P. 11(b) (attorneys and unrepresented parties have a duty to conduct a reasonable inquiry into the facts and the law when filing pleadings and motions); *Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994) (noting that Federal Rule of Civil Procedure 11, which permits courts to impose sanctions on parties, applies to pro se litigants).  And, as other courts have "noted in admonishing a pro se plaintiff who engaged in similar conduct, 'it is no more acceptable for a pro se litigant to submit briefs with fake case citations than it is for a lawyer to do so.'" *Ligeri v. Amazon.com Servs. LLC*, 2025 WL 2161497, at *2 (W.D. Wash. July 30, 2025) (quoting *Dukuray v. Experian Info. Sols.*, 2024 WL 3812259, at *11 (S.D.N.Y. July 26, 2024), *report and recommendation adopted*, 2024 WL 3936347 (S.D.N.Y. Aug. 26, 2024)).  Thus, if parties use AI, they must ensure the accuracy of any content they include in their filings.  The Court warns that any future filings that contain citations to nonexistent cases may result in sanctions, including submissions being stricken, filing restrictions or monetary penalties being imposed, or the case being dismissed.  *See Ligeri*, 2025 WL 2161497, at *2 (similar warning); *Dukuray*, 2024 WL 3812259, at *12 (same).

**B.    Standing**

"A 'standing' requirement is implicit in disqualification motions." *Great Lakes Constr.,*

7

United States District Court
Northern District of California

*Inc. v. Burman*, 186 Cal. App. 4th 1347, 1356 (2010).  The requirements for standing, necessary for any party to seek relief from a federal court, are that the party have personally suffered from an "injury in fact," which is causally related to the conduct at issue and redressable by a favorable decision of the court.  *Colyer,* 50 F. Supp. 2d at 968 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)).  The party moving to disqualify counsel bears the burden of establishing these "irreducible constitutional minimum" elements with respect to the issues the party wishes to have decided.  *Id.*; *see also Canatella v. Stovitz,* 2004 WL 2648284 at *1 (N.D. Cal. Sept. 13, 2004).

Here, Plaintiff has failed to establish that there exists a prior representation.  To the extent she argues "the January calls created an implied attorney-client relationship," Mot. at 8, this claim is defeated by her own timeline of events, including that she retained a separate attorney to represent her interests against Dentons and sent Dentons a demand letter threatening litigation prior to the January phone calls.  *See* Hankins Decl. ¶ 8; FAC, Ex. X.  In California, an attorney client relationship is formed "[w]hen a party seeking legal advice consults an attorney at law and secures that advice."  *People ex rel. Dept. of Corps. v. SpeeDee Oil Change Systems, Inc.,* 20 Cal. 4th 1135, 1148 (1999).  "An attorney represents a client-for purposes of a conflict of interest analysis-when the attorney knowingly obtains material confidential information from the client and renders legal advice or services as a result."  *Id*.  Despite Plaintiff's belief that the telephone conferences with the Dentons' attorneys about the lawsuit she filed against Dentons formed an attorney-relationship with them, her subjective belief does not make it so.  *See Fox v. Pollack*, 181 Cal. App. 3d 954, 959 (1986) (a party's subjective belief that an attorney represented their interests, without evidentiary facts reasonably supporting such a conclusion, is insufficient to establish an attorney-client relationship unilaterally); *Synergy Tech & Design Inc. v. Terry*, 2007 WL 1288464, at *8 (N.D. Cal. May 2, 2007) ("The individual's subjective belief regarding the existence of an attorney-client relationship must be reasonably based on all of the attending circumstances."); *In re Marriage of Zimmerman*, 16 Cal. App. 4th 556, 565 (1993) (upholding a finding that a conclusory declaration claiming that confidential information was shared is insufficient to support disqualification).  Hankins maintains she shared "confidential information"

8

with Dentons' attorneys during the January 2026 calls, including "personal information" regarding her emotional, mental, and financial state.  Hankins Decl. ¶ 15.c.  But there is no elaboration on what that information is or how it is confidential.  Indeed, Plaintiff's complaint and its exhibits provide detailed information about her emotional, mental, and financial state, thus rendering it non-confidential.  *See, e.g.* FAC at ¶¶ 41-49.  Plaintiff does not provide any other detail about what information she believes she shared, and she does not establish how any information she shared resulted in the rendering of legal advice such that an attorney-client relationship was established.  *See SpeeDee Oil Change Systems, Inc.*, 20 Cal. 4th at 1148 (formation of an attorney-client relationship requires the rendering of legal advice).  To the contrary, Plaintiff states the parties engaged in settlement negotiations during the January 2026 calls.  *See* Mot. at 4-5.  Accordingly, the Court finds Plaintiff lacks standing.

## C.  Presence of a Conflict

Even if the Court were to find Plaintiff has standing to seek defense counsel's disqualification, she has not shown a conflict that warrants disqualification.  As noted above, under the narrow exception for a non-client, Plaintiff must show there is an ethical breach that is "infectious to the litigation."  It must be so "manifest and glaring" that the Court would have a "plain duty to act."  *Colyer*, 50 F. Supp. 2d at 971-72.

### 1.  Rule of Professional Conduct 4.3 (Unrepresented Persons)

Plaintiff first argues Dentons violated Rule of Professional Conduct 4.3, which provides:

> (a) In communicating on behalf of a client with a person* who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows* or reasonably should know* that the unrepresented person* incorrectly believes* the lawyer is disinterested in the matter, the lawyer shall make reasonable* efforts to correct the misunderstanding. If the lawyer knows* or reasonably should know* that the interests of the unrepresented person* are in conflict with the interests of the client, the lawyer shall not give legal advice to that person,* except that the lawyer may, but is not required to, advise the person* to secure counsel.
>
> (b) In communicating on behalf of a client with a person* who is not represented by counsel, a lawyer shall not seek to obtain privileged or other confidential information the lawyer knows* or reasonably should know* the person* may not reveal without violating a duty to another or which the lawyer is not otherwise entitled to receive.

9

Plaintiff argues Defendants violated Rule 4.3 because "[a]t no point did Ms. McCandless disclose that she represented Dentons in connection with Plaintiff's claims or advise Plaintiff to obtain counsel." Mot. at 7. Plaintiff states she "expressly stated during the January 20 call that Dentons would 'need to hire outside counsel,' demonstrating a clear misunderstanding of Ms. McCandless's role. Neither attorney corrected this misunderstanding." *Id.* Plaintiff argues McCandless's failure to correct this misunderstanding, "combined with the solicitation and receipt of personal and significantly harmful information, constitutes a violation of Rule 4.3." *Id.* at 7-8.

This claim fails for several reasons. First, Plaintiff herself states Dentons' attorneys called on behalf of Dentons to discuss settlement of her lawsuit. *See, e.g.,* Hankins Decl. ¶ 10 (Dentons' attorney stated in the January 9, 2026 call "I do not want to get into the details of the lawsuit, but if you want to talk money, we can talk money."); Mot. at 4 (stating "Settlement was discussed" during the January 16, 2026 call). Rule 4.3 does not require an attorney to advise an unrepresented person to seek counsel during settlement negotiations. Second, Plaintiff had just filed a lawsuit naming Dentons and several of its employees as defendants, making it improbable that Dentons would represent Plaintiff in the lawsuit she brought against it. Third, Plaintiff's own conduct indicates she was aware Dentons' attorneys were not representing her in her lawsuit against Dentons, as she states she read from an "opening statement" she had prepared "to directly confront" Dentons' counsel during the calls. Hankins Decl. at ¶¶ 13-14. It is unclear how a plaintiff who prepares adversarial talking points for discussion with opposing counsel can then credibly claim she believed those attorneys were acting in her interest rather than the interest of the defendants she had sued. Accordingly, the Court finds Plaintiff has failed to establish a violation of Rule 4.3.

### 2. Rule of Professional Conduct 1.18

Under California Rule of Professional Conduct 1.18, an attorney has a continued duty of confidentiality and loyalty to a prospective client. A "prospective client" is a person who "consults a lawyer for the purpose of retaining the lawyer or securing legal service or advice from the lawyer in the lawyer's professional capacity." Cal. R. Prof. Conduct 1.18(a).

Plaintiff argues Defendants violated Rule 1.18 because she "disclosed harmful information

10

during the January calls under circumstances reasonably leading her to believe the attorneys were acting in a consultative capacity." Mot. at 8. But not all persons who communicate information to a lawyer are entitled to protection under this rule. A person who "communicates information unilaterally to a lawyer, without reasonable expectation that the lawyer is willing to discuss the possibility of forming a lawyer-client relationship or provide legal advice is not a 'prospective client.'" Cal. R. Prof'l Conduct, Rule 1.18, cmt. 2. As discussed above, Plaintiff has failed to establish that the January 2026 calls created a prospective attorney-client relationship. The Court therefore finds disqualification is not required under Rule 1.18. *See Michael Grecco Prods., Inc. v. Ziff Davis, LLC*, 2021 WL 6618863, at *3 (C.D. Cal. Sept. 8, 2021) (denying motion to disqualify, despite plaintiff having emailed confidential information to the attorney, because there was no prospective client relationship).

### 3. Rule of Professional Conduct 1.9

Plaintiff argues an implied attorney-client relationship arose under Rule of Professional Conduct 1.9, which governs successive representation. Rule 1.9 provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent." Cal. R. Prof'l Conduct 1.9(a). Here, Plaintiff has presented no evidence that any Dentons attorney previously represented her, let alone represented her "in the same or a substantially related matter" that is at issue in this case. As such, the Court finds disqualification is not required under Rule 1.9.

### 4. Rule of Professional Conduct 3.7 (Advocate-Witness Rule)

Plaintiff next argues McCandless must be disqualified because she is a necessary witness under California Rule of Professional Conduct 3.7. Mot. at 10. Rule 3.7 provides: "A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: (1) the lawyer's testimony relates to an uncontested issue or matter; (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or (3) the lawyer has obtained informed written consent from the client." In enacting this rule, "*the State Bar has concluded that a fully*

11

*informed client's right to chosen counsel outweighs potential conflict or threat to trial integrity posed by counsel's appearance as witness.*" *Maxwell v. Super. Ct.*, 30 Cal. 3d 606, 619 n. 9 (1982) (emphasis in original)).  The State Bar has also determined "that counsel's dual participation under the circumstances is not unethical." *Id.*

California courts make clear that the "discretion to disqualify a likely advocate-witness notwithstanding client consent . . . has been judicially interpreted to be permissible only upon 'a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process.'" *Geringer v. Blue Rider Fin.*, 94 Cal. App. 5th 813, 822 (2023) (quoting *Lyle v. Superior Court*, 122 Cal. App. 3d 470, 482 (1981)).  "Accordingly, a court can only disqualify counsel when it is "'confronted with manifest interests which it must protect from palpable prejudice.'" *Pampena v. Musk*, 2025 WL 3443502, at *2 (N.D. Cal. Dec. 1, 2025) (quoting *Lyle*, 122 Cal. App. 3d at 482).  "And the moving party has a heavy burden.  They must make a 'convincing demonstration . . . of a potential for injury to the integrity of the judicial process—a showing that must be based on an adequate factual record, not overarching statements of policy or conclusory allegations.'" *Id.* (quoting *Geringer*, 94 Cal. App. 5th at 826).

When exercising discretion to disqualify counsel under the advocate-witness rule, a court considers: "(1) whether counsel's testimony is, in fact, genuinely needed; (2) the possibility [opposing] counsel is using the motion to disqualify for purely tactical reasons; and (3) the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case." *Doe v. Yim*, 55 Cal. App. 5th 573, 583 (2020) (quotation marks omitted).

Plaintiff argues "McCandless is one of the only two witness [sic] other than Plaintiff to critical disputed facts, including what was said during the January calls—whether she provided any disclaimers, whether she proposed outplacement services, whether she heard Plaintiff's 'outside counsel' comment, and whether she accepted confidential information." Mot. at 10. Plaintiff maintains McCandless's "testimony is central to the conflict analysis and cannot be obtained from any other source." *Id.*  Plaintiff further argues Dentons' counsel is disqualified

12

from representing Dentons and its employees because they engaged in post-employment settlement negotiations with her after she filed her lawsuit. *Id.* at 10-11.

At this stage in the proceedings, the Court declines to find that Defendants' counsel have violated (or will violate) Rule 3.7. First, "[w]henever an adversary declares his intent to call opposing counsel as a witness, prior to ordering disqualification of counsel, the court should determine whether counsel's testimony is, in fact, genuinely needed." *Smith, Smith & Kring*, *v. Superior Ct. (Oliver)*, 60 Cal. App. 4th 573, 581 (1997) (internal quotations and citations omitted). In determining the necessity of counsel's testimony, the court must consider "the significance of the matters to which he might testify, the weight his testimony might have in resolving such matters, and the availability of other witnesses or documentary evidence by which these matters may be independently established." *Id*. (internal quotations and citations omitted). Plaintiff premises her attempt at disqualifying Dentons' counsel on the proposition that because Dentons' attorneys engaged in post-employment settlement negotiations with her after she filed her lawsuit, somehow they are now necessary witnesses. If the Court adopts Plaintiff's position, every counsel who engages in settlement negotiations, or even speaks to the other side, will become a necessary witness that must be disqualified, regardless of the matters in which they might testify, the weight of their testimony, or evidence to be independently established.

Second, Plaintiff has not established that Dentons attorneys who participated in the January 2026 calls are witnesses to the allegations described in her complaint, and she has not shown they possess independent knowledge of the allegations raised therein. If Plaintiff's intention would be to have Dentons attorneys repeat her allegations as she conveyed them during the January 2026 calls, that does not make them percipient witnesses. *See Witt v. Ross*, 2025 WL 2968025, at *3 (N.D. Cal. Oct. 20, 2025) (denying motion to disqualify opposing counsel based on the argument that opposing counsel would likely be a material witness, finding: "While the Court agrees with this basic proposition, Plaintiff has not identified any such contested facts. The Court does not credit Plaintiff's conclusory assertions that Mr. Finwall is part of 'a broader extortionate and retaliatory scheme' because there is no evidence in the record to that effect."). Moreover, even if it is possible that grounds for disqualification under Rule 3.7 may arise in the future, "such a

13

motion is, at this time, premature." *Bhs L. LLP*, 2025 WL 3754296, at \*7-8 (denying motion to disqualify under Rule 3.7 while recognizing the issue could be revisited).[3]

Accordingly, the Court finds disqualification is not required under Rule 3.7.

### 5.    Rule of Professional Conduct 4.1 (Truthfulness)

Plaintiff next argues Defendants violated Rule of Professional Conduct 4.1, which provides:

> In the course of representing a client a lawyer shall not knowingly:
>
> (a) make a false statement of material fact or law to a third person;\* or
>
> (b) fail to disclose a material fact to a third person\* when disclosure is necessary to avoid assisting a criminal or fraudulent\* act by a client, unless disclosure is prohibited by Business and Professions Code section 6068, subdivision (e)(1) or rule 1.6.

Cal. R. Prof. Conduct 4.1.

Plaintiff argues Bacio's February 18 email contains statements that conflict with her contemporaneous notes of the January calls, "including his assertion that any confidential information disclosed was Plaintiff's choice and the mischaracterization of Plaintiff's prior working relationship with Ms. McCandless."  Mot. at 11; Hankins Decl., Ex. M.  She further argues "[t]he email also characterizes the calls as 'settlement discussions,' despite the absence of any disclosure of adversity or any indication that Plaintiff understood the calls to be adversarial."  Mot. at 11.  The problem with Plaintiff's argument is that for the Court to conclude that Bacio or other Dentons attorneys violated their ethical obligations under Rule 4.1, it would have to ignore its finding above that there was no attorney-client relationship, that Plaintiff herself states she prepared an opening statement to directly confront" Dentons' counsel during the January calls, and that she admits settlement negotiations occurred during the calls.  *See* Mot. at 4; Hankins Decl. ¶¶ 13-14.  The Court declines to make such a finding here.  *See Witt*, 2025 WL 2968025, at \*3 (denying motion to disqualify under Rule 4.1 where doing so would require the court to accept

---

[3] The Court also notes that Rule 3.7(a) permits a lawyer to act as a witness if he or she "has obtained informed written consent from the client," and Rule 3.7(b) provides that disqualification under this rule is not automatically imputed to an entire firm.

United States District Court
Northern District of California

plaintiff's conclusory allegations). As such, the Court finds disqualification is not required under Rule 4.1.

### 6.    Rules of Professional Conduct 3.1 and 3.3 (Frivolous Claims/Candor)

Plaintiff argues Defendants' subsequent pleadings after her calls with McCandless contained blanket denials inconsistent with information she obtained in January, in violation of Rules of Professional Conduct 3.1, which bars filing pleadings that lack a factual or legal basis, and Rule 3.3, which prohibits knowingly making false statements to the court. Plaintiff argues "Dentons filed an Answer denying every paragraph of the complaint approximately thirty hours after Plaintiff raised conflict concerns, despite already possessing detailed information from the January calls about Plaintiff's medical, emotional, and financial circumstances, the circumstances of her termination, and the substance of the conversations themselves." Mot. at 13. However, Plaintiff has failed to show that Defendants' Answer does not meet the responsive pleading standards, and settlement discussions do not obligate a party to admit liability. Accordingly, the Court finds disqualification is not required under Rule 3.1 or 3.3.

### 7.    Rule of Professional Conduct 8.4 (Misconduct)

Plaintiff argues Dentons' conduct constitutes a pattern of conduct that undermines the integrity of the proceedings in violation of Rule of Professional Conduct 8.4. Mot. at 14. Rule 8.4 prohibits a lawyer from "engag[ing] in conduct involving dishonesty, fraud,* deceit, or reckless or intentional misrepresentation." Cal. R. Prof. Conduct 8.4(c). Plaintiff argues "Dentons' conduct—including failing to disclose adversity, allowing Plaintiff to believe the calls were supportive, accepting harmful confidential information, mischaracterizing the calls as settlement discussions, filing pleadings while conflict issues were unresolved, and making false statements in the February 18 email—constitutes a pattern of conduct that undermines the integrity of the proceedings and violates Rule 8.4." Mot. at 14. However, these misconduct allegations rest entirely on the same conduct underlying her other claims for disqualification, none of which the Court has found constitute ethical violations. As discussed above, the Court declines to find ethical violations where doing so would require it to accept Plaintiff's conclusory allegations. *See Witt*, 2025 WL 2968025, at *3 (denying motion to disqualify under Rule 8.4 for the same reason).

15

**8.      Rule of Professional Conduct 5.1**

Plaintiff next argues McCandless "ratified" misconduct by allowing an associate to deny that a conflict of interest exists in violation of Rule of Professional Conduct 5.1.  Mot. at 12.  Rule 5.1 sets forth the responsibilities of managerial and supervisory attorneys in a law firm and states that a supervising attorney shall be responsible for another lawyer's violation of the rules if they ratify the conduct.  Cal. R. Prof. Conduct 5.1(c).  Plaintiff argues:

> Ms. McCandless had supervisory authority over the associate who authored the February 12 and 18 emails.  She participated in the January calls, knew Plaintiff misunderstood her role, knew confidential information had been obtained, and was copied on the communications denying any conflict.  Despite this knowledge, she allowed the associate to deny the conflict and to mischaracterize the January calls.  Her failure to correct these statements constitutes ratification under Rule 5.1.

Mot. at 12.  However, as discussed above, there was no misconduct to ratify, and the Court therefore finds disqualification is not required under Rule 5.1.

**9.      Rule of Professional Conduct 1.10**

Plaintiff argues any resulting conflict is imputed to the entire firm under Rule 1.10, which states: "While lawyers are associated in a firm, none of them shall knowingly* represent a client when any one of them practicing alone would be prohibited from doing so."  Cal. R. Prof'l Conduct 1.10(a).  "When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm." *SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th at 1139 (citing *Flatt v. Superior Court*, 9 Cal.4th 275, 283 (1994)).  Here, the Court has found no reason for disqualification based on any other rule, so Rule 1.10 does not apply.  Accordingly, the Court finds disqualification is not required.

### V.      CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion to disqualify counsel.

**IT IS SO ORDERED.**

Dated: June 22, 2026

_____
THOMAS S. HIXSON
United States Magistrate Judge

16