UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADRIENNE HANKINS,

Plaintiff,

v.

DENTONS US LLP, et al.,

Defendants.

Case No. 26-cv-01163-TSH

**ORDER RE: MOTIONS TO DISMISS AND STRIKE**

Re: Dkt. Nos. 10, 11

## I.    INTRODUCTION

Plaintiff Adrienne Hankins, who represents herself in this matter, asserts employment-related claims against Defendant Dentons US LLP and several current or former Dentons personnel, including Ashley Coker, Katharine E. Mellon, Brenda Navarrete, Arianna Kekatos, Laura Bethke, Antonia Alvarez, and unnamed Doe defendants.  Pending before the Court is Mellon's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 10, "MTD") and Motion to Strike pursuant to Rule 12(f) and California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16 (ECF No. 11, "MTS").  Hankins filed an Opposition (ECF No. 19) and Mellon filed a Reply (ECF No. 20).   The Court previously found this matter suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b).  ECF No. 26.  For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** Mellon's motion to dismiss and **DENIES** Mellon's motion to strike.[1]

---

[1] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 6, 8, 44.

United States District Court
Northern District of California

## II.    BACKGROUND

Hankins began working for Dentons on March 10, 2008 as a legal secretary, later titled legal administrative assistant.  First Am. Compl. (FAC) ¶ 15, ECF No. 1-2.  In October 2023 her treating physician prescribed a reduced schedule of three days per week at 7.5 hours per day due to cumulative repetitive motion and orthopedic injuries.  *Id.* ¶¶ 16-18.  Hankins then pursued job-protected leave under FMLA and CFRA administered through UNUM, with Dentons Human Resources providing leave entitlement information on November 1, 2023.  *Id.* ¶¶ 19-20.  Hankins alleges that in February 2024 she and Defendant Ashley Coker, the staff legal administrative assistant manager at Dentons, agreed verbally that she would work in-office one day per week due to medical needs.  *Id.* ¶¶ 7, 21.

Sometime in June 2024, Dentons began a voluntary back-in-office work initiative, although Hankins continued to work in-office one day per week on her modified schedule.  *Id.* ¶ 22.  On August 29, 2024, Hankins' physician authorized an increase to four days per week at 7.5 hours per day.  *Id.* ¶ 23.  On November 25, 2024, Dentons and UNUM approved CFRA and FMLA leave for Hankins relating to her own condition and to care for her husband following his cancer diagnosis and surgery.  *Id.* ¶ 24.

On April 9, 2025, Hankins met with Coker to discuss her prior year 2024 performance review.  *Id.* ¶ 25.  Coker raised concerns about job performance and stated Hankins would need to appear in the office three days per week, which Hankins contends conflicted with her medical limitations and prior agreement regarding one in-office day.  *Id.* ¶¶ 25-28.

On July 29, 2025, Dentons' benefits team sent Hankins and Coker an email advising that Hankins had 24 weeks of leave eligibility approved through January 10, 2026, and remained eligible for CFRA and FMLA non-parental leave as of August 2025.  *Id.* ¶ 30.

On August 18, 2025, Coker advised Dentons legal administrative assistants that all staff were to work in-office three days per week.  *Id.* ¶ 31.  Hankins sought an in-office exemption and submitted medical documentation supporting a remote-work accommodation, which Dentons approved on September 30 for six months (later extended through April 2026), permitting full work-from-home based on her physician's directives.  *Id.* ¶¶ 32, 40

On October 8, 2025, Coker and Defendant Bethke (a Dentons' HR Business Partner) informed Hankins that her employment was terminated, with Coker citing a "reduction in force." *Id.* ¶¶ 11, 41. Later that day, Hankins received her final paycheck and correspondence that included a cover letter from Defendant Alvarez (Dentons' Head of Human Resources) describing a "2025 Business Services Staffing Review and Organizational Alignment Program." *Id.* ¶¶ 12, 42. Hankins alleges Alvarez's letter made no mention of a reduction-in-force, and she asserts the differing descriptions of the separation were inconsistent and pretextual, particularly because her "job performance was stellar." *Id.* ¶ 42. Dentons offered 19 weeks of severance conditioned on a waiver and release to be accepted by November 22, 2025. *Id.* ¶ 43. As Hankins' medical benefits were set to terminate on October 31, 2025, she requested to remain on payroll to preserve benefits through the duration of her approved leave and accommodation, but Alvarez declined her request. *Id.* ¶¶ 43, 45.

On November 10, 2025, Hankins, through her then-attorney, emailed a letter to Alvarez as a "formal demand for enhanced severance and benefits in connection with her recent termination." *Id.* ¶ 47 & Ex. X. In the letter, Hankins

> demands the following as a condition for resolving all claims arising from her employment and separation from Dentons US LLP:
>
> • **Payment of 52 weeks of severance pay,** calculated at her base weekly wage in effect as of her termination date, to be paid in a single lump sum no later than November 14, 2025.
>
> • **Payment of one year of employer-paid health insurance coverage,** including medical, dental, and vision benefits, for Adrienne and her covered dependents, commencing immediately upon the expiration of her active coverage and continuing through October 31, 2026.
>
> • **Inclusion in the 2025 profit sharing contribution,** consistent with the Employee Resource Guide's provision for employees whose employment ends due to disability, with payment to be made on the same schedule as for active employees.

*Id.* The letter states: "If Dentons US LLP fails to comply by [November 14, 2025], Adrienne will pursue all available legal remedies, including but not limited to claims for disability discrimination, age discrimination, retaliation, and wrongful termination." *Id.*

On December 1, 2025, Defendant Mellon, in her capacity as Deputy General Counsel of

Dentons, responded to the November 10 letter, in a letter titled "Confidential Settlement Communication." *Id*. ¶¶ 8, 48 & Ex. Y.  Mellon responded to the allegations made in Hankins' letter, stated Dentons' position regarding Hankins' separation, and stated: "If Ms. Hankins were to decide to file litigation, Dentons will vigorously defend against her claims." *Id.*, Ex. Y.

On December 18, 2025, Plaintiff filed a Complaint in Alameda County Superior Court against Defendants Dentons US LLP, Ashley Coker, and Katharine E. Mellon, captioned *Adrienne Hankins v. Dentons US LLP, et al.*, case number 25CV160714.  Notice of Removal, Ex. A, ECF No. 1-2.  On January 13, 2026, Plaintiff filed the operative First Amended Complaint, adding Brenda Navarrete as DOE 1, Arianna Kekatos as DOE 2, Laura Bethke as DOE 3, and Antonia Alvarez as DOE 4.  *Id.*  The FAC sets forth 11 causes of action: (1) Wrongful Termination in Violation of the Fair Employment and Housing Act ("FEHA"); (2) Wrongful Termination in Violation of the ADA Amendments Act (Americans with Disabilities Act Amendments); (3) Wrongful Termination in Violation of the California Family Rights Act ("CFRA"); (4) Wrongful Termination in Violation of the Family Medical Leave Act ("FMLA"); (5) Violation of FEHA/Failure to Engage in the Interactive Process; (6) Retaliation in Violation of FEHA; (7) Violation of the Age Discrimination in Employment Act ("ADEA"); (8) Harassment in Violation of FEHA; (9) Wrongful Termination in Violation of Internal Policy/Breach of Implied Covenant; (10) Wrongful Termination in Violation of Public Policy; and (11) Negligent Infliction of Emotional Distress.  Mellon is named as a defendant in all but the eighth cause of action.

Defendants (except Brenda Navarette, who had not been served) removed the case to this Court on February 6, 2026.  Mellon filed the present motions on February 13, 2026.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted).  Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the

Case 3:26-cv-01163-TSH    Document 46    Filed 06/24/26    Page 5 of 19

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

The court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B.    Motion to Strike**

The Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter," either on its own motion or on motion made by a party prior to responding to a pleading. Fed. R. Civ. P. 12(f). Mellon moves for an order striking portions of the FAC she argues are immaterial and impertinent. Immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation and quotation marks omitted), *rev'd on other grounds*, 510 U.S. 517 (1994). Impertinent matter includes "statements that do not pertain,

*United States District Court*
*Northern District of California*

5

and are not necessary, to the issues in question." *Id*. at 1527 (citation and quotation marks omitted).

### IV.   DISCUSSION

**A.   Motion to Dismiss**

Mellon argues Hankins' claims against her must be dismissed because the sole allegation of wrongdoing against her is that she authored a response letter to the November 10, 2025 letter from Hankins' then-attorney, but this letter is protected by California's absolute litigation privilege under Civil Code section 47(b) and the *Noerr-Pennington* doctrine.  MTD at 1.

In her opposition, Hankins first argues Mellon's motion "rest[s] on the assertion that Plaintiff sued Mellon solely because she wrote a letter.  The FAC alleges far more.  Mellon authored the Dec-1 letter purporting to justify Plaintiff's termination, articulating Dentons' position regarding the alleged RIF, and participating in the employer's response to Plaintiff's protected activity.  These facts are relevant to discriminatory motive, retaliatory motive, and pretext."  Opp'n at 3.  She argues: "Defendant's attempt to recast the claims as arising solely from Mellon's letter is inconsistent with the FAC and improper under Rule 12(b)(6). [citation]. Mellon's motions rest on a mischaracterization of the claims and should be denied." *Id.* However, the Court notes that the only allegations against Mellon are, in fact, based on the December 1 letter.  Accordingly, the Court considers Mellon's arguments based on Civil Code section 47(b) and the *Noerr-Pennington* doctrine.

**1.   California Litigation Privilege**

California Civil Code section 47(b) privileges any "publication or broadcast" made in any "judicial proceeding."  This privilege, also known as the California litigation privilege, "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990) (citations omitted).  The "privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.'"  *Action Apartment Assn., Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1241 (2007) (quoting *Silberg*, 50 Cal. 3d 205) (emphasis in original).  The California Supreme

United States District Court
Northern District of California

United States District Court
Northern District of California

Court has "given the litigation privilege a broad interpretation." *Id.*

There is no dispute that no litigation was pending at the time of the December 1 letter. However, Mellon argues the communication was made in the context of judicial proceedings because Hankins' November 10 communication was a "demand letter." MTD at 5 (citing FAC, Ex. X ("If Dentons US LLP fails to comply by this date, Adrienne will pursue all available legal remedies, including but not limited to claims for disability discrimination, age discrimination, retaliation, and wrongful termination.")). Mellon argues her letter directly responds to Hankins' demand. *Id.* (quoting FAC, Ex. Y) ("If Ms. Hankins were to decide to file litigation, Dentons will vigorously defend against her claims.").

"The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'" *Action Apartment Assn*, 41 Cal. 4th at 1241 (quoting *Rusheen v. Cohen,* 37 Cal. 4th 1048, 1057 (2006)); *Weiser L. Firm PC v. Hartleib*, 2024 WL 4987351, at *4 (9th Cir. Dec. 5, 2024) ("The privilege does extend to 'statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit.'") (quoting *Hagberg v. California Fed. Bank*, 32 Cal. 4th 350, 361 (2004)). But the California Supreme Court has stated that a prelitigation communication is privileged only if it "relates to litigation that is contemplated in good faith and under serious consideration." *Action Apartment Assn*, 41 Cal. 4th at 1251; *see also Thimes Sols., Inc. v. TP Link USA Corp.*, 2022 WL 1125628, at *1 (9th Cir. Apr. 15, 2022) (California's litigation privilege applies only to communications preliminary to 'proposed' litigation that was seriously contemplated at the time of the communication.") (citing *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 264 (9th Cir. 2013)).

Hankins maintains her counsel's November 10 letter was not a litigation threat. Opp'n at 3. She notes the November 10 letter was addressed to the Head of HR, requested enhanced severance and benefits, set a deadline for acceptance, and expressly sought to resolve the matter without litigation. *Id.* at 3-4 (citing FAC, Ex. X at 3) ("This demand is made in good faith and with the intent to resolve all disputes efficiently and without litigation."). She maintains the letter did not threaten imminent suit and did not propose litigation. *Id.* at 4.

At this stage, the Court cannot determine that imminent litigation was seriously proposed and actually contemplated in good faith. "[T]he privilege attaches at that point in time that imminent access to the courts is seriously proposed by a party." *Edwards v. Centex Real Estate Corp.*, 53 Cal. App. 4th 15, 36 (1997). "The mere potential or bare possibility that judicial proceedings might be instituted in the future is insufficient to invoke the litigation privilege." *Id.* "The classic example of an instance in which the privilege would attach to prelitigation communications is the attorney demand letter threatening to file a lawsuit if a claim is not settled." *Id.* at 35 n.10 (citing *Lerette v. Dean Witter Org., Inc.*, 60 Cal. App. 3d 573, 577-78 (1976)). "Nevertheless, because the privilege does not attach prior to the actual filing of a lawsuit unless and until litigation is seriously proposed in good faith for the purpose of resolving the dispute, even a threat to commence litigation will be insufficient to trigger application of the privilege if it is actually made as a means of inducing settlement of a claim, and not in good faith contemplation of a lawsuit." *Id.* (italics omitted); *see id.* at 35 ("By the same token even a threat to file a lawsuit would be insufficient to activate the privilege if the threat is merely a negotiating tactic and not a serious proposal made in good faith contemplation of going to court."). Thus, as Hankins maintains her November 10 letter was not a litigation threat, the Court cannot find Mellon is entitled to claim the California litigation privilege. *See id.*; *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1381 (1999) (holding trial court erred in granting summary judgment on the basis of the California litigation privilege because "[i]t remain[ed] a triable issue of fact whether . . . imminent litigation was seriously proposed and actually contemplated in good faith as a means of resolving the dispute between [the parties].")). As such, the Court finds there is a legitimate issue as to whether Mellon's letter arose from protected activity, and the Court therefore **DENIES** her motion to dismiss based on the California litigation privilege.

### 2.    *Noerr-Pennington* Doctrine

Mellon next argues the December 1 letter is protected by the *Noerr-Pennington* doctrine because it "is unquestionably related to petitioning activity, namely, responding to Hankins' threaten of litigation and settlement demand." MTD at 7.

The *Noerr–Pennington* doctrine "derives from the Petition Clause of the First Amendment

8

United States District Court
Northern District of California

and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'" *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 212 (2022) (quoting *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643 (9th Cir. 2009)). The doctrine immunizes parties to litigation, and it applies both to "petitions sent directly to the court in the course of litigation [and] conduct incidental to the prosecution of the suit." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006) (internal quotation marks and citation omitted). The Ninth Circuit has been careful to state that the *Noerr-Pennington* doctrine does not immunize "litigation conduct generally." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184-85 (9th Cir. 2005). It nevertheless has held that the doctrine bars claims based upon decisions to accept or reject a settlement, settlement demands, and discovery misconduct. *See id.*; *Sosa*, 437 F.3d at 942; *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991) ("A decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit").

Unlike California's litigation privilege, which is absolute in nature, under *Noerr–Pennington*, litigants are not immune from liability that arises out of their petitioning activity if such activity is a "sham." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1071 (9th Cir. 2004); *Kearney*, 590 F.3d at 644. The sham exception requires a plaintiff to show that defendant's conduct lacked both objective merit and subjective good faith. *Freeman*, 410 F.3d at 1184-85.

As noted above, the only allegations in the FAC related to Mellon pertain to the December 1 letter, which is a response to Hankins' November 10 settlement demand letter. It recites Dentons' factual narrative, denies liability on all major issues raised, sets forth legal and factual reasons for its position, and expressly states: "If Ms. Hankins were to decide to file litigation, Dentons will vigorously defend against her claims." FAC ¶ 48. While the letter does not accept, counter, or deny Hankins' settlement demands, it directly responds to Hankins statement that she "will pursue all available legal remedies, including but not limited to claims for disability discrimination, age discrimination, retaliation, and wrongful termination." FAC, Ex. X. As such, Mellon could be entitled to protection under the *Noerr–Pennington* doctrine. *See EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1082 (C.D. Cal. 2010) ("[A]ll

communications between private parties related to litigation—including presuit demand letters and settlement offers—are entitled to immunity.") (citing *Sosa,* 437 F.3d at 936–37) ("[P]receding the formal filing of litigation with an invitation to engage in negotiations to settle legal claims is a common, if not universal, feature of modern litigation. . . . Restricting such prelitigation conduct when the same demands asserted in a petition to the court is protected would render the entire litigation process more onerous, imposing a substantial burden on a party's ability to seek redress from the courts."). Based on Hankins' current allegations against Mellon, the Court finds the letter is subject to the privilege so long as it does not fall within the sham exception.

*Noerr-Pennington* does not protect litigation-related activity that is "objectively baseless" and brought for an unlawful purpose. *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993). To establish this sham exception, the Ninth Circuit requires a plaintiff to show that defendant's conduct lacked both objective merit and subjective good faith. *Freeman*, 410 F.3d at 1185. At the motion to dismiss stage, the Court need not conclude whether the letter was, in fact, a sham. *EcoDisc Tech. AG,* 711 F. Supp. 2d at 1083. Instead, the Court "must decide only whether Plaintiff has properly pleaded that the conduct was a sham." *Id.*

Here, Hankins pleads no facts alleging that Mellon's letter is subject to the sham exception. In her opposition, Hankins argues Mellon's letter was "asserted only as a pretext to shield discriminatory and retaliatory conduct," and therefore "the sham exception applies and defeats Defendants' claimed immunity." Opp'n at 6. But these allegations are not in her FAC, and the Court has not considered them here because the analysis under Rule 12(b)(6) is limited to the allegations in the operative complaint. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993) ("Review is limited to the complaint; evidence outside the pleadings . . . cannot normally be considered in deciding a 12(b)(6) motion.") (internal quotations and citation omitted).

In sum, based on Hankins' allegations as pled, the Court finds Mellon's December 1 letter falls within the protections of the *Noerr-Pennington* doctrine. The Court therefore **GRANTS** Mellon's motion to dismiss. However, leave to amend is appropriate since it is possible Hankins could allege other allegations against Mellon, including allegations that go to establishing the sham exception. *See Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1027-28

United States District Court
Northern District of California

(N.D. Cal. 2018) (granting leave to amend "to permit plaintiffs to allege, if possible, a basis for establishing a sham exception to *Noerr-Pennington*."). As such, dismissal is **WITH LEAVE TO AMEND** to permit Hankins to allege additional allegations against Mellon. If Hankins chooses to amend, she should be mindful that "the Ninth Circuit has required a plaintiff seeking to establish the sham exception to *Noerr-Pennington* to plead around the defense with specificity." *Id.* at 1028 (citing *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988); *Empress LLC v. City & Cnty. of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005)).

**B.   Motion to Strike**

Mellon moves to strike the following portions of Hankins' FAC:

- The following language from Paragraph 2, line 10: "KATHARINE E. MELLON"

- Paragraphs 8, 47, and 48;

- Reference to "Mellon" in each of the headings of the eleven causes of action, including page 19, line 11; page 20, line 11; page 21, line 21; page 23, line 8; page 24, line 23; page 26, line 13; page 28, line 3; page 30, line 25; page 32, line 7; and page 33, line 15; and

- Exhibits X and Y.

Mot. to Strike at 2.

Mellon argues all allegations against her must be stricken pursuant to the California anti-SLAPP statute, the *Noerr-Pennington* doctrine, and Federal Rules of Evidence 408.

**1.   California's anti-SLAPP statute**

The anti-SLAPP grounds in the motion are directed only at Hankins' claims under California law, since only those claims are subject to a special motion to strike under California Code of Civil Procedure section 425.16. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 900-01 (9th Cir. 2010) ("a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims").

California Code of Civil Procedure section 425.16 is California's response to "strategic lawsuits against public participation," or SLAPP lawsuits. It was enacted "to provide a procedure for expeditiously resolving nonmeritorious litigation meant to chill the valid exercise of the

11

constitutional rights of freedom of speech and petition in connection with a public issue." *Hansen v. Cal. Dep't of Corr. & Rehab.*, 171 Cal. App. 4th 1537, 1542-43 (2008). It provides that a cause of action against a person "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). An act "in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,
>
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
>
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or
>
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

"When served with a SLAPP suit, the defendant may immediately move to strike the complaint under Section 425.16." *Hansen*, 171 Cal. App. 4th at 1543. A motion to strike under California's anti-SLAPP statute involves a two-step inquiry. *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021). "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citation and internal quotation marks omitted). "Second, once the defendant has made a prima facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.*

Mellon argues Hankins' claims against her must be stricken because they are based solely

United States District Court
Northern District of California

on the December 1 letter, which is protected under the California litigation privilege. MTS at 5-6. However, as discussed above, the Court is unable to determine at this stage in the proceedings whether Mellon is entitled to protection under this privilege. "A claim arises from protected activity when that activity underlies or forms the basis for the claim." *Park v. Bd. of Trs. of California State Univ.*, 2 Cal. 5th 1057, 1062 (2017). The movant cannot meet its burden by merely showing that an action was filed after protected activity took place, even if the protected activity might have triggered the action. *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002). Instead, the "arising from" requirement is satisfied when "*the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e)." *Park*, 2 Cal. 5th at 1063 (emphasis in original) (internal quotation marks and citation omitted); *see also id.* at 1062 ("Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.'").

While Hankins' demand letter stated she would pursue "all available legal remedies" if Dentons failed to comply with her demand, Mellon fails to establish this communication was made in anticipation of litigation and that her response therefore warrants protection under Section 425.16(e)(2). Conduct that "will lead to litigation only if negotiations fail or contractual commitments are not honored," even if that conduct is a "necessary prerequisite" to litigation, is not protected prelitigation activity because future litigation is "merely theoretical rather than anticipated." *People ex rel. Allstate Ins. Co. v. Rubin*, 66 Cal. App. 5th 493, 499 (2021) (citation omitted). Here, Hankins maintains her letter was not a litigation threat, and expressly sought to resolve the matter without litigation. Opp'n at 3-4 (citing FAC, Ex. X at 3) ("This demand is made in good faith and with the intent to resolve all disputes efficiently and without litigation."). Accepting her allegations as true, even if Dentons suspected Hankins could file a lawsuit, litigation was merely a possibility until the parties' negotiations did not result in an informal resolution. Hankins' November 10 letter thus did not involve statements made in connection with litigation "contemplated in good faith and under serious consideration." *Action Apartment Assn*, 41 Cal. 4th at 1251; *see also Thimes Sols.*, 2022 WL 1125628, at *1 (finding district court erred in granting motion to strike based on California's litigation privilege because defendants' complaints

13

"did not propose litigation" and did not "seriously contemplate litigation at that time"); *ABN Corp. v. Groupe PELM Int'l Corp.*, 2025 WL 707092, at *2 (N.D. Cal. Mar. 4, 2025) (denying motion to strike under California's anti-SLAPP statute, even though company retained counsel to advise it throughout the course of its transaction with defendant and to prepare for and initiate litigation if default were to occur, but "litigation was merely a possibility until the transaction actually fell apart.").

Accordingly, the Court **DENIES** Mellon's motion to strike based on California's anti-SLAPP statute.

### 2.     *Noerr-Pennington* Doctrine

As to the *Noerr-Pennington* doctrine, Mellon raises the same argument she raised for her motion to dismiss, maintaining her letter "is unquestionably related to petitioning activity, namely, responding to Hankins' threaten of litigation and settlement demand." MTS at 7-8. However, it is not clear that the *Noerr–Pennington* doctrine is appropriately raised in a motion to strike, as the doctrine provides immunity from liability for protected petitioning conduct. *See Sosa,* 437 F.3d at 926. Because it is a substantive immunity doctrine, it is properly considered as part of a motion to dismiss or motion for summary judgment. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (holding that Rule 12(f) cannot be used to dismiss a claim for damages); *Evans Hotels, LLC v. Unite Here! Loc. 30*, 2025 WL 2254068, at *6 (S.D. Cal. Aug. 7, 2025), *report and recommendation adopted,* 2025 WL 2630515 (S.D. Cal. Sept. 12, 2025) ("Motions to strike should not be used as a substitute for a motion to dismiss or motion for summary judgment."). As the Ninth Circuit has noted, allowing parties to use Rule 12(f) as a surrogate for Rule 12(b)(6) would improperly alter appellate review:

> Rule 12(f) motions are reviewed for "abuse of discretion," *Nurse* [*v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000)], whereas 12(b)(6) motions are reviewed *de novo, San Pedro Hotel Co., Inc. v. City of Los Angeles,* 159 F.3d 470, 477 (9th Cir. 1998). Thus, if a party may seek dismissal of a pleading under Rule 12(f), the district court's action would be subject to a different standard of review than if the district court had adjudicated the same substantive action under Rule 12(b)(6). Applying different standards of review, when the district court's underlying action is the same, does not make sense.

*Whittlestone*, 618 F.3d at 974.

The Court is aware that other courts have considered the *Noerr-Pennington* doctrine as part of a Rule 12(f) motion to strike. *See, e.g., Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1028 (N.D. Cal. 2018) (granting motion to strike based on *Noerr-Pennington* doctrine with leave to amend). However, doing so appears to decide a merits defense, which would then be subject to only a discretionary standard of review, contrary to *Whittlestone*'s guidance. Further, the Court is unaware of any decisions analyzing the *Noerr-Pennington* doctrine under both the Rule 12(b)(6) and Rule 12(f) standards. Accordingly, the Court declines to adjudicate Mellon's *Noerr-Pennington* defense via Rule 12(f).

Finally, the Court notes the *Noerr-Pennington* doctrine serves as "immunity from liability, not from trial." *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 711 F.3d 1136, 1140 (9th Cir. 2013). Thus, "unlike California's anti-SLAPP statute, which is in the nature of an immunity from suit, the *Noerr–Pennington* doctrine provides only a defense to liability, implied into various federal statutes to protect the right of petitioning." *Id.* (cleaned up). When courts grant motions based on *Noerr-Pennington*, they typically dismiss claims rather than strike specific documents or allegations from pleadings. For example, in *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, the court granted a motion to strike "as to these causes of action" that rested on allegations protected by *Noerr-Pennington*, focusing on the claims themselves rather than merely removing references to protected conduct. 420 F. Supp. 3d 966, 982 (N.D. Cal. 2019). This approach recognizes that, while the protected conduct cannot form the basis of liability, the underlying facts may still be relevant to the litigation. *See Sosa*, 437 F.3d at 933-35 (holding that *Noerr-Pennington* immunity extended to RICO claims based on prelitigation demand letters, but the analysis focused on whether the letters could form the basis of liability, not whether they must be stricken from the record entirely); *Gamble*, 348 F. Supp. 3d at 1027 (explaining that *Noerr-Pennington* "does not immunize 'litigation conduct generally'" but rather bars claims "based upon" protected petitioning activities such as "decisions to accept or reject a settlement, settlement demands, and discovery misconduct"). As discussed below, the underlying letters and facts may still be relevant to the litigation, including establishing context, intent, or other elements of non-barred claims.

Accordingly, the Court **DENIES** Mellon's motion to strike based on *Noerr-Pennington*.

15

### 3. Federal Rule of Evidence 408

Finally, Mellon argues the November 10 and December 1 letters must be stricken because Federal Rules of Evidence 408 "prohibits the admission of settlement offers and statements made during negotiations to prove or disprove the validity or amount of a disputed claim for the purpose of encouraging open, confidential settlement communications." MTS at 2, 9.

Federal Rule of Evidence 408(a) provides:

> (a) Prohibited Uses. Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim

"While there is some disagreement among district courts in the Ninth Circuit, the weight of authority holds that even though Rule 408 is an evidentiary rule, a motion to strike under Rule 12(f) is proper where allegations in a complaint disclose communications that would be inadmissible under Rule 408." *Ma v. San Francisco Estuary Inst.*, 2024 WL 2113862, at *6 (N.D. Cal. May 8, 2024) (collecting cases).

"Settlement negotiations include an offer or promise to provide or accept 'valuable consideration' to settle a claim, as well as 'conduct or statements made in compromise negotiations regarding the claims.'" *Mastec N. Am., Inc. v. Coos Cnty.*, 2007 WL 2027011, at *8 (D. Or. July 6, 2007) (quoting Fed. R. Evid. 408). "A litigant asserting the applicability of Rule 408 must make a 'substantial showing that the communications were part of the attempts to settle the dispute." *Rondor Music Int'l, Inc. v. TVT Records LLC,* 2006 WL 5105272, at *11 (C.D. Cal. Aug. 21, 2006) (internal quotation marks and citation omitted).

Here, the Court finds Mellon has not made a substantial showing that the challenged letters were settlement communications or that she will be prejudiced if the Court declines to strike them. As a preliminary matter, "[j]ust as with a motion to dismiss for failure to state a claim, the Court must view the pleadings in a light most favorable to the pleading party." *In re 2TheMart.com, Inc.*

16

*Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000) (citing *State of Cal. ex rel. State Lands Comm'n v. United States*, 512 F. Supp. 36, 39 (N.D. Cal. 1981)).  Hankins argues she does not offer the letters "to prove liability; they are offered to show discriminatory motive, retaliatory motive, and pretext.  FRE 408 expressly permits such use."  Opp'n at 8.  It is true that the letters could still be used for other purposes.  *See* Fed. R. Evid. 408(b) ("The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."); *Asics Am. Corp. v. Lutte Licensing Grp. LLC*, 2014 WL 10538912, at *6 (C.D. Cal. Apr. 28, 2014) ("Evidence relating to settlement negotiations 'has [ ] been admitted by courts for additional purposes other than establishing liability, including . . . to show knowledge and intent'") (quoting *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 689 (7th Cir. 2005)); *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1028 n.17 (N.D. Cal. 2018) (noting that motion to strike under Rule 408 would be improper where evidence could be admitted for other purposes under Rule 408(b)).

As to Mellon's December 1 letter, it does not include an offer or promise to provide or accept valuable consideration to settle a claim.  Instead, Mellon responds to the allegations made in Hankins' letter and states that Dentons will vigorously defend against any claims Hankins chooses to bring.  FAC, Ex. Y.  "Rule 408 is designed to ensure that parties may make offers during settlement negotiations without fear that those same offers will be used to establish liability should settlement efforts fail."  *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1161 (9th Cir. 2007).  As Mellon's letter does not include any discussion about settlement, the Court concludes for purposes of her motion that it does not include the kind of evidence that would be barred by Rule 408.  *See Spiva v. Walmart*, 2019 WL 1063386, at *8 (D. Or. Jan. 18, 2019), *report and recommendation adopted,* 2019 WL 1062371 (D. Or. Mar. 6, 2019) (denying Rule 12(f) motion to strike, noting: "Rather than a negotiation or offer to compromise, [the defendant's] statements reflect denial of culpability, refusal to compromise, and shifting of blame -- none of which fall under the ambit of FRE 408."); *Int'l Bhd. of Elec. Workers Loc. 48 v. Rosendin Elec., Inc.*, 2023 WL 3981282, at *10 (D. Or. June 12, 2023) (denying motion to strike based on Rule 408 where

17

the disputed allegations did not show "that Defendant ever furnished, promised, or offered a valuable consideration during the discussions between the parties."); *Med. Prot. Co. v. Pang*, 25 F. Supp. 3d 1232, 1243 (D. Ariz. 2014)(finding no negotiations where "the sole communication from [the defendant] does not mention negotiations, but rather demands payment of attorneys' fees and that MPC withdraw its pending Rule 59(e) and 60(b) motions.").

As to Hankins' November 10 letter, the Court need not determine at this stage whether the communication constituted settlement negotiations within the meaning of Rule 408. Even assuming the letter was part of compromise discussions, Rule 408 does not require striking because Hankins does not rely on the communication to prove liability or the amount of a claim, but instead asserts that it is relevant to issues such as discriminatory motive, retaliatory motive, and pretext. *See* Fed. R. Evid. 408(b). As other district courts have observed, determining whether a statement was made during compromise negotiations is a fact-intensive inquiry. *See, e.g., Stewart v. Wachowski*, 2004 WL 5618386, at *3-*5 (C.D. Cal. Sept. 28, 2004); *Columbia Sportswear Co. v. Ferreira*, 2023 WL 5928528, at *3 (D. Or. Sept. 12, 2023). The court must determine whether the statement was made in the context of an existing dispute because "the protections of Rule 408 were designed to encourage the compromise and settlement of existing disputes." *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338, 1343 (9th Cir. 1987) (holding that Rule 408 did not cover termination agreements that attempted to condition severance pay on the release of potential claims); *see also Josephs v. Pac. Bell*, 443 F.3d 1050, 1064 (9th Cir. 2006) (holding that district court did not err in admitting statements made by agents of defendant employer during grievance proceeding over a Rule 408 objection because "the grievance proceeding did not concern [plaintiff employee's] not-yet-filed discrimination claim"). If there is an existing dispute, the court must consider when settlement negotiations have been crystallized. *See Wall Data Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 447 F.3d 769, 783-84 (9th Cir. 2006) (holding that district court did not err in admitting memorandum prepared by the defendant because the document "merely recounted a meeting between Sheriff's Department employees and Wall Data to discuss possible over-use of the RUMBA licenses" at issue in the case and was written a week before settlement discussions crystallized). At this stage in the proceedings and

18

viewing the pleadings in a light most favorable to Hankins, the Court is unable to make this determination. *See Columbia Sportswear Co.*, 2023 WL 5928528, at *5 ("The evidence Defendants provided with their Motion does not clarify when the alleged representations were made and when negotiations began. Because this case is at an early stage and motions to strike are disfavored, the Court concludes that Defendants have not made an adequate showing."); *City of Tillamook Oregon v. Kennedy Jenks Consultants, Inc.*, 2019 WL 1639930, at *4 (D. Or. Apr. 16, 2019) ("Here Plaintiff's warning to Defendant that it would accept a reasonable settlement offer if such an offer was made by Big River and Defendant's refusal to participate in the mediation between Plaintiff and Big River do not constitute allegations of an offer, acceptance, or promise to accept from Defendant 'a valuable consideration in compromising or attempting to compromise' any claim."). Even assuming an existing dispute had arisen and the November 10 communication was made in the course of efforts to resolve that dispute, Rule 408 would not require the Court to strike the allegations. Rule 408 governs admissibility and expressly permits evidence offered for purposes other than proving liability or the amount of a claim. Whether the letters ultimately are admissible for a particular purpose is a question more appropriately addressed later in the case.

In sum, the Court finds Rule 408 does not provide a basis for the Court to strike the disputed letters at this stage in the proceedings. Accordingly, the Court **DENIES** Mellon's motion to strike based on Rule 408.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Mellon's motion to dismiss and **DENIES** Mellon's motion to strike. If Hankins chooses to do so, she may file an amended complaint consistent with this order by July 24, 2026.

**IT IS SO ORDERED.**

Dated: June 24, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

19