UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIENNE HANKINS,<br>Plaintiff,<br>v.<br>DENTONS US LLP, et al.,<br>Defendants. | Case No. 26-cv-01163-TSH<br><br>**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION TO STRIKE**<br><br>Re: Dkt. Nos. 61, 62 |

## I. INTRODUCTION

Plaintiff Adrienne Hankins, who is self-represented, asserts employment-related claims against Defendant Dentons US LLP and Ashley Coker, Katharine E. Mellon, Brenda Navarrete, Arianna Kekatos, Laura Bethke, and Antonia Alvarez, who are current or former Dentons employees. In a prior order, the Court dismissed Hankins' claims against Mellon with leave to amend. ECF No. 46 (Prior Order); 2026 WL 1828663 (N.D. Cal. June 24, 2026). Hankins then filed a Second Amended Complaint (SAC), ECF No. 60.

Pending before the Court are two motions: (1) Mellon's Motion to Dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) (ECF No. 61, MTD); and (2) Defendants' Motion to Strike portions of the SAC under Rule 12(f) and Rule 15(a)(2) on the ground that they exceed the leave to amend the Court granted (ECF No. 62, MTS). Hankins filed oppositions to both motions. ECF No. 64 (MTD Opp'n); ECF No. 63 (Strike Opp'n). Mellon filed a reply in support of dismissal (ECF No. 66 (MTD Reply)) and Defendants filed a reply in support of striking (ECF No. 65 (MTS Reply)). The Court finds this matter suitable for disposition without oral argument under Civil Local Rule 7-1(b) and **VACATES** the December 3, 2026 hearing. For the reasons stated below, the Court **GRANTS** Mellon's motion to dismiss and **DENIES** the motion to strike

United States District Court
Northern District of California

as to the remaining Defendants and **DENIES** it as moot as to Mellon.[1]

## II. BACKGROUND

Hankins began working for Dentons on March 10, 2008 as a legal secretary, later titled legal administrative assistant. SAC ¶ 16. She alleges that between 2023 and 2025 she suffered cumulative repetitive-motion injuries, worked a medically certified reduced schedule, and took intermittent leave under the Family and Medical Leave Act (FMLA) and the California Family Rights Act (CFRA). *Id.* ¶¶ 17–48. After Coker directed in August 2025 that legal administrative assistants work in the office three days per week, Hankins sought an accommodation, and on October 2–3, 2025 Dentons approved a remote-work accommodation through April 2026. *Id.* ¶¶ 86–130.

On October 8, 2025, Coker and Bethke told Hankins in a virtual meeting that her employment was terminated, with Coker citing a "reduction-in-force." *Id.* ¶¶ 132–35. Hours later Bethke emailed Hankins documents that included a cover letter from Alvarez, Dentons' Head of Human Resources, stating Dentons had "recently completed a review of our administrative and professional services staffing" and had "determined after a careful review that it is necessary to eliminate your position," and a waiver and release agreement that referred to the "2025 Business Services Staffing Review and Organizational Alignment Program." *Id.* ¶¶ 141–42, 148–49. Hankins was 57 years old. *Id.* ¶ 152. Hankins alleges these descriptions of her separation were inconsistent and pretextual. *Id.* ¶¶ 148, 160.

On November 10, 2025, Hankins' then-attorney sent Alvarez a demand letter requesting 52 weeks of severance pay, one year of employer-paid health coverage, and inclusion in the 2025 profit-sharing contribution, with a response due by November 14, 2025. *Id.* ¶ 163 & Ex. HH, ECF No. 60-7 at 2–5. The letter stated Hankins' employment had been terminated "as part of a workforce reduction"; warned that, absent agreement, Hankins would pursue "all available legal remedies, including but not limited to claims for disability discrimination, age discrimination,

[1]The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). ECF Nos. 6, 8, 44.

retaliation, and wrongful termination"; and stated that the demand was made "in good faith and with the intent to resolve all disputes efficiently and without litigation." ECF No. 60-7 at 2, 4.

On November 13, 2025, Mellon, a Dentons partner and Deputy General Counsel, emailed counsel that "[w]e are looking into this matter and will get back to you." SAC ¶ 164. On December 1, 2025, Mellon sent a written response on behalf of Dentons. *Id.* ¶ 165 & Ex. II, ECF No. 60-7 at 7–8. The letter is captioned "Confidential Settlement Communication" and states that Dentons had "found no support" for Hankins' assertion that her treatment was based on her disability, age, or retaliation, and that the decision to include her in the reduction-in-force "was based on legitimate nondiscriminatory business reasons." ECF No. 60-7 at 7. It states that, "[c]onsistent with our Firm's long-term strategic priorities, this past summer the Firm completed a comprehensive review of our administrative and professional services staffing across the country"; that "two Legal Administrative Assistant roles would be eliminated from the Oakland office" and Hankins "was one of those selected"; and that "[m]aterial to the determination that Ms. Hankins would be one of the two was that she had repeatedly made statements to others in the Oakland office that she planned to retire soon." *Id.* It also states that Hankins "was identified for inclusion in the reduction-in-force prior to her request for full work-from-home medical accommodation," recites the ages of the legal administrative assistants in Oakland who were not selected, and concludes: "If Ms. Hankins were to decide to file litigation, Dentons will vigorously defend against her claims." ECF No. 60-7 at 8; *see* SAC ¶¶ 167–70.

Hankins filed this case in Alameda County Superior Court on December 18, 2025 and filed a First Amended Complaint (FAC) on January 13, 2026, naming Mellon in ten of eleven causes of action. Prior Order at 3–4. Defendants removed the case on February 6, 2026. ECF No. 1. Mellon moved to dismiss and to strike (ECF Nos. 10, 11), and on June 24, 2026 the Court granted Mellon's motion to dismiss and denied her motion to strike. Prior Order at 1, 19. The Court held that, "based on Hankins' allegations as pled, . . . Mellon's December 1 letter falls within the protections of the *Noerr-Pennington* doctrine," that "Hankins pleads no facts alleging that Mellon's letter is subject to the sham exception," and that the dismissal was with leave to amend "to permit Hankins to allege additional allegations against Mellon," cautioning that a plaintiff

seeking to establish the sham exception must "plead around the defense with specificity." *Id*. at 10–11 (citation omitted). The Court permitted Hankins to "file an amended complaint consistent with this order." *Id*. at 19.

Hankins filed the SAC on October 2, 2026. It asserts 16 causes of action, five more than the FAC, and attaches a redline comparing it to the FAC, ECF No. 60-1, and 41 exhibits, Exhibits A through OO, ECF Nos. 60-2 to 60-7. Four causes of action name Mellon: the Fourth (interference and retaliation under the FMLA, 29 U.S.C. § 2615(a)), the Eighth (aiding and abetting under California Government Code section 12940(i)), the Fourteenth (individual "managing agent" liability under California Labor Code section 558.1), and the Sixteenth (intentional infliction of emotional distress). SAC ¶¶ 247–58, 291–99, 351–56, 365–70. The Eighth, Fourteenth, and Sixteenth causes of action did not name Mellon in the FAC. The SAC alleges that Mellon was a partner, "owner, equity partner, managing agent, and executive officer" of Dentons with "final discretionary decision-making authority over employment separations, severance agreements, and statutory benefit determinations." *Id*. ¶ 9. It also adds the following allegations directed to the sham exception: (1) in January 9 and January 20, 2026 telephone calls, Dentons lawyers Sandra McCandless and R. Matthew Martin told Hankins that they had no involvement in or knowledge of her termination before she filed suit, *id*. ¶¶ 181–86, 192–97 & Exs. KK, MM; (2) Dentons announced strong financial results for 2025, *id*. ¶¶ 187–91 & Ex. LL; (3) in May 2026 Dentons posted an opening for a litigation legal administrative assistant, *id*. ¶¶ 198–203 & Ex. NN; (4) in July 2026 Attorneys' Liability Assurance Society (ALAS) announced that Mellon had joined it as Senior Underwriting Counsel after leaving Dentons, *id*. ¶¶ 204–07 & Ex. OO; and (5) Hankins never gave notice of retirement, specified a retirement date, or told Dentons or its managers that she was retiring, *id*. ¶ 171. Based on these allegations, the SAC asserts "on information and belief" that the December 1 letter was an "objectively baseless and sham pre-litigation communication" issued in "subjective bad faith to manufacture a post-hoc pretext." *Id*. ¶¶ 172, 174, 207–09.

Mellon filed the present motion to dismiss on October 16, 2026. On the same day, all Defendants moved to strike.



United States District Court
Northern District of California

United States District Court
Northern District of California

## III. LEGAL STANDARD

### A. Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011). Rule 8 provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a party need not give "detailed factual allegations," they must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Hikma Pharms. USA Inc. v. Amarin. Pharma, Inc.*, 608 U.S. 580, 589-90 (2026) ("[T]o nudge a claim across the line from conceivable to plausible, a plaintiff must plead facts that, if true, allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (cleaned up).

In considering a motion to dismiss under Rule 12(b)(6), courts accept the truth of all factual allegations and construe them in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**B. Motion to Strike and Amendment Under Rule 15**

The Court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter," either on its own motion or on motion made by a party prior to responding to a pleading. Fed. R. Civ. P. 12(f). Immaterial matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation and quotation marks omitted), *rev'd on other grounds*, 510 U.S. 517 (1994). Impertinent matter includes "statements that do not pertain, and are not necessary, to the issues in question." *Id.* at 1527 (citation and quotation marks omitted).

Once the time to amend as a matter of course has passed, a party "may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to grant leave, courts consider bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended. *Foman*, 371 U.S. at 182. Prejudice to the opposing party "carries the greatest weight," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam), and the party opposing amendment bears the burden of showing prejudice, *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

## IV. DISCUSSION

**A. Motion to Dismiss**

Mellon argues each claim against her rests on the December 1 letter; that the letter falls within the *Noerr-Pennington* doctrine, and the SAC does not plead with specificity facts showing that the sham exception applies; that the Eighth, Fourteenth, and Sixteenth causes of action, and a new "individual employer" theory under the Fourth, exceed the leave to amend the Court granted; and that each claim independently fails. MTD at 7–9, 14–22. Hankins responds that the SAC pleads both steps of the sham exception through the January 2026 statements of two Dentons lawyers, Dentons' 2025 financial results, the May 2026 job posting, and Mellon's later move to ALAS, and that the Court must take those allegations "at face value" and consider the "totality of the circumstances." MTD Opp'n at 5–11. She also argues Mellon did more than write a letter because she "assumed direct operational control" of Hankins' severance negotiations on

November 13, 2025, that the claims against Mellon fall within the leave the Court granted or relate back under Rule 15(c)(1)(B), and that each claim is independently well pleaded. *Id.* at 5, 14–21. In the alternative, she asks for "retroactive" leave to maintain the SAC as pleaded. *Id.* at 21–22.

In reply, Mellon argues the opposition identifies only her November 13 acknowledgment and December 1 response to the threatened litigation, not any employment decision attributable to her. MTD Reply at 5–7. She also argues the response was not objectively baseless, the alleged timing and later events do not show subjective bad faith, the new claims restate the same protected conduct under new theories, and each claim fails for independent reasons. *Id.* at 7–15. She asks that dismissal be without leave to amend. *Id.* at 16.

**1. The Basis of the Claims Against Mellon**

In its prior order, the Court observed that the only allegations against Mellon were based on the December 1 letter. Prior Order at 6. The SAC adds that Mellon was a partner and deputy general counsel who held "final discretionary decision-making authority over employment separations, severance agreements, and statutory benefit determinations," SAC ¶ 9, and that she, with Coker, Bethke, and Alvarez, exercised "operational authority and supervisory control over Plaintiff's work schedule, leave requests, accommodation approvals, final wage distributions, and termination," *id.* ¶ 250. Taking her position as true, these allegations describe authority in the language of the governing statutes. They do not allege any act by Mellon, other than the December 1 letter, concerning Hankins's schedule, leave, accommodation, pay or separation. Such allegations are conclusions and are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678." They are also contradicted by the SAC's specific allegations, which attribute Hankins' schedule directives, the accommodation process, the termination decision and meeting, the final pay, and the post-termination refusal to extend benefits to Coker, Navarrete, Kekatos, Bethke, and Alvarez, *id.* ¶¶ 86–162, and which first mention Mellon on November 13, 2025, more than a month after Hankins was terminated, *id.* ¶ 164. The only conduct the SAC specifically attributes to Mellon is the November 13 acknowledgment email and the December 1 letter. *Id.* ¶¶ 164–70, 253(f), 295(f), 319(f), 355(d), 367(a). The SAC's exhibit index attributes only one document to Mellon, the December 1 letter (Ex. II), apart from the later ALAS announcement (Ex. OO); the

other communications it attributes to Dentons personnel are from Coker, Kekatos, Bethke, and Alvarez, or are leave and human-resources records. ECF No. 60-2. The Court therefore again analyzes the claims against Mellon as arising from the December 1 letter.

In her opposition, Hankins does not identify any other conduct. She argues Mellon "took full operational control" of her severance negotiations on November 13, 2025, intercepted correspondence Hankins had directed to Alvarez, and timed her response so that it would arrive after the 45-day acceptance period in the separation agreement had expired. MTD Opp'n at 1; MTS Opp'n at 5–6. But these allegations are not in the SAC, and a court deciding a Rule 12(b)(6) motion "may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). The SAC alleges Hankins' counsel wrote to Alvarez on November 10, that Mellon wrote to counsel on November 13 that Dentons was looking into the matter, and that Mellon sent the substantive response on December 1. SAC ¶¶ 163–65. The separation agreement's acceptance period was set on October 8, before Mellon appears in the SAC, and the SAC does not allege facts showing that Mellon had any role in setting it or received Hankins' correspondence to Alvarez before November 13. SAC ¶¶ 150, 163–65. The timing of Mellon's response is not separate conduct. It is part of the same petitioning activity analyzed below. As Mellon notes, the only conduct Hankins cites for "operational control," apart from Mellon's title, is the November 13 acknowledgment. MTD Reply at 6.

### 2. *Noerr-Pennington* Doctrine and the Sham Exception

Based on the allegations in the FAC, the Court found the December 1 letter, which responded to a pre-suit settlement demand that threatened claims for discrimination, retaliation, and wrongful termination, is protected by the *Noerr-Pennington* doctrine unless it falls within the sham exception. Prior Order at 9–10. The SAC attaches both the demand letter and the December 1 response, ECF No. 60-7 at 2–5, 7–8, and the exhibits confirm the Court's prior characterization: the response, which is captioned a "Confidential Settlement Communication," answers a demand that threatened claims for disability discrimination, age discrimination, retaliation, and wrongful termination. Nothing in the SAC or its exhibits alters the Court's conclusion on that point. The

question is whether Hankins has now pleaded, with the specificity the Court described, that the sham exception applies.

The *Noerr–Pennington* doctrine "derives from the Petition Clause of the First Amendment and provides that 'those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'" *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 535 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 212 (2022) (quoting *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 643 (9th Cir. 2009)). The doctrine immunizes parties to litigation, and it applies both to "petitions sent directly to the court in the course of litigation [and] conduct incidental to the prosecution of the suit." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 934 (9th Cir. 2006) (internal quotation marks and citation omitted). The Ninth Circuit has been careful to state that the *Noerr-Pennington* doctrine does not immunize "litigation conduct generally." *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184-85 (9th Cir. 2005). It nevertheless has held that the doctrine bars claims based upon decisions to accept or reject a settlement, settlement demands, and discovery misconduct. *See id.*; *Sosa*, 437 F.3d at 942; *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1528 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993) ("A decision to accept or reject an offer of settlement is conduct incidental to the prosecution of the suit"). The Ninth Circuit has also held that "[c]onduct incidental to a lawsuit, including a pre-suit demand letter, falls within the protection of the *Noerr-Pennington* doctrine." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (citing *Sosa*, 437 F.3d at 936–38).

The sham exception removes protection from petitioning activity that is "objectively baseless" and brought for an unlawful purpose. *Prof'l Real Estate Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993). The Ninth Circuit requires a plaintiff to show that the defendant's conduct lacked both objective merit and subjective good faith. *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184–85 (9th Cir. 2005). The first step is an objective one: the petitioning must be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Invs.*, 508 U.S. at 60; *see B&G Foods N. Am.*, 29 F.4th at 538. "Only if challenged litigation is objectively meritless may a court examine the

litigant's subjective motivation." *Prof'l Real Estate Invs.*, 508 U.S. at 60. And, as the Court cautioned in its prior order, a plaintiff seeking to establish the exception must "plead around the defense with specificity." Prior Order at 11 (quoting *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1028 (N.D. Cal. 2018)). That requirement is not a matter of form. In the analogous context of alleged misrepresentations, the Ninth Circuit has explained that a heightened pleading standard "would have no force if in order to satisfy it, a party could simply recast disputed issues from the underlying litigation as 'misrepresentations' by the other party." *Kottle v. Nw. Kidney Ctrs.*, 146 F.3d 1056, 1063 (9th Cir. 1998) (quoting *Or. Nat. Res. Council v. Mohla*, 944 F.2d 531, 536 (9th Cir. 1991)); *see Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1079 (N.D. Cal. 2018) (party "must plead facts showing that the pre-suit license demands . . . were objectively baseless and based on improper motives," and an allegation that information underlying the demands might not have been accurate was "insufficient") (emphasis omitted).

Hankins invokes three principles that she contends relax this standard. None does. First, she relies on *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 515–16 (1972), for the rule that a court must "take the allegations of the complaint at face value." MTD Opp'n at 6. But the Court has done so. That is the ordinary Rule 12(b)(6) rule, and it does not require the Court to accept conclusions such as that the letter was "a complete fiction." *Iqbal*, 556 U.S. at 678. The complaint in *California Motor Transport* alleged that the defendants had instituted proceedings "with or without probable cause, and regardless of the merits of the cases," to bar competitors from meaningful access to agencies and courts. 404 U.S. at 512. The Court explained that a "pattern of baseless, repetitive claims" may show that adjudicatory processes have been abused. *Id.* at 513. The SAC alleges nothing comparable, only a single response to a pre-suit demand. Second, Hankins argues the Court must consider the "totality of the circumstances." MTD Opp'n at 5–6 (citing *Kottle*, 146 F.3d at 1062, and *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014)). *Kottle* used that phrase to decide whether a state administrative proceeding was sufficiently adjudicatory for the judicial sham exception to apply. 146 F.3d at 1062. It did not alter the two-step test. *Octane Fitness* concerned the fee-shifting provision of the Patent Act and has no bearing on this question. It addressed the *Noerr-*

*Pennington* doctrine only to explain why the sham-exception standard of *Professional Real Estate Investors* should not be imported into the Patent Act's fee-shifting provision, and it did not purport to alter the standard that governs the sham exception itself. 572 U.S. at 555–56; *see* MTD Reply at 12–13. Third, Hankins argues that Rule 9(b) permits intent and knowledge to be alleged generally. MTD Opp'n at 9. That rule bears at most on the subjective step, which the Court reaches only if the petitioning is objectively baseless. *Prof'l Real Estate Invs.*, 508 U.S. at 60. Hankins also acknowledges that the authorities she cites for step one were decided at summary judgment. MTD Opp'n at 7. That does not relieve her of the obligation to plead around the defense with specificity.

**a. Objective Baselessness**

The petitioning activity at issue is Dentons' response to a pre-suit demand that threatened discrimination and retaliation claims, in which Dentons took the position that it had selected Hankins for a staffing reduction for nondiscriminatory reasons and would defend against any suit. The question is therefore whether, as pleaded, no reasonable litigant in Dentons' position could realistically have expected to succeed on that position. The SAC's theory is that the "reduction in force" explanation was a "post-hoc fabrication" by Mellon. SAC ¶¶ 186, 191, 197, 203, 207–08. Accepting the SAC's well-pleaded facts as true and drawing reasonable inferences in Hankins' favor, the Court concludes that the facts she pleads do not plausibly show objective baselessness for several reasons.

First, Hankins alleges that on January 9 and 20, 2026, after she filed suit, two other Dentons lawyers, McCandless and Martin, told her that they had not been involved in and did not know of the termination decision before the lawsuit was filed. SAC ¶¶ 181–86, 192–97. The call logs Hankins attaches show only that the calls took place and how long they lasted, ECF No. 60-7 at 19, 26, and the Court takes as true her account of what was said. She infers that the staffing-review explanation must therefore have been "objectively false and fabricated post-hoc." *Id.* ¶¶ 186, 197. But the statements, taken as true, show only that those two lawyers were not involved in the decision. They do not suggest that no staffing review occurred, or that Mellon lacked information from which to describe it, and the SAC elsewhere alleges that the decision was made

and carried out by Coker, Bethke, and Alvarez. *Id.* ¶¶ 134, 140, 154, 160, 295(a), (d)–(e). The allegations that Martin said in substance that the outcome might have been different had he been involved earlier, and that neither lawyer defended Mellon's explanation, *id.* ¶¶ 195–96, do not change this analysis. A colleague's lack of involvement in, or silence about, a decision says nothing about whether the explanation Dentons gave in response to a demand letter was objectively baseless.

In her opposition, Hankins adds that, according to declarations she filed earlier in the case (ECF Nos. 16, 24-1), McCandless and Martin said they had consulted Dentons' chief executive and general counsel "to explore mitigation options," and she asserts that the Court "credited" those declarations in ECF No. 48. MTD Opp'n at 5. The declarations are not part of the SAC, and the Court does not consider them in deciding this motion. *See* Fed. R. Civ. P. 12(d); *Schneider*, 151 F.3d at 1197 n.1. Mellon responds that the Court made no evidentiary determination in its prior order and that the declarations are outside the Court's review on this motion. MTD Reply at 10–11. Even as Hankins describes them, the declarations show that Dentons' lawyers looked for ways to resolve the dispute after Hankins sued. That does not suggest that the position Mellon stated in December was one that no reasonable litigant could expect to succeed on, and it does not support Hankins' related assertion that the letter's statement that Dentons was prepared to defend a suit was "flatly contradicted" by Dentons' later conduct. MTD Opp'n at 7.

Second, Hankins alleges that on January 13, 2026, Dentons announced record financial results for 2025 and that no practice area was under-performing. SAC ¶¶ 187–91. Hankins argues these results contradict the letter's reference to a reduction in force. *Id.* ¶ 191. As Mellon points out, however, the letter attributes the staffing review to "our Firm's long-term strategic priorities," not to financial distress. ECF No. 60-7 at 7; SAC ¶ 206; MTD at 18. The article Hankins attaches reports record revenue and net income and states that "[n]o specific practice areas were considered under-performing," but it concerns the firm's lawyers, partners, and practice groups, without addressing administrative or professional services staffing. ECF No. 60-7 at 21–24. That a firm is profitable does not suggest that no reasonable litigant could expect to succeed on the position that it eliminated administrative positions after a staffing review.

Third, Hankins alleges that on May 12, 2026, more than seven months after her termination and more than five months after the letter, Dentons posted an opening for a litigation legal administrative assistant with a hybrid schedule and a stated salary range of $90,000 to $110,000, and she infers that her position was never eliminated. SAC ¶¶ 198–203; ECF No. 60-7 at 28–30. Viewed in Hankins' favor, the posting may be relevant to whether Dentons' explanation was a pretext for discrimination or retaliation in her claims against Dentons. But the sham inquiry is different. Even accepting that the listed duties overlap with Hankins' former duties, a later posting does not show that, in December 2025, no reasonable litigant could have expected to succeed on the position that the review had resulted in the elimination of two Oakland positions.

Fourth, Hankins alleges that on July 27, 2026, ALAS announced that Mellon had left Dentons to join it, and she characterizes the departure to "Dentons' liability insurer" as showing that the letter was an "unsubstantiated, post-hoc fabrication." SAC ¶¶ 204–07. The announcement she attaches says only that Mellon "joined ALAS as Senior Underwriting Counsel in the Member Services Department" after serving as a Dentons partner and Deputy General Counsel. It does not state why she left, and it does not say that ALAS insures Dentons. ECF No. 60-7 at 32. The inference is speculative. Mellon's later change in employment says nothing about whether the position she communicated in December 2025 was objectively baseless. *See Twombly*, 550 U.S. at 555. Hankins adds that the move occurred 33 days after the Prior Order and was a "tactical maneuver." MTD Opp'n at 11. That argument is also speculative, and a departure seven months after the letter was sent does not bear on whether the letter was objectively baseless when sent.

Fifth, Hankins alleges she never submitted a notice of retirement, specified a retirement date, or told Dentons or its managers that she was retiring, and she argues that the letter's statement that her perceived intention to "retire soon" was "[m]aterial to the determination" was therefore a fabrication. SAC ¶¶ 168, 171, 175. But the letter does not assert that Hankins gave formal notice. It asserts she "had repeatedly made statements to others in the Oakland office that she planned to retire soon." ECF No. 60-7 at 7; SAC ¶ 168. The SAC does not allege that Hankins never made such statements to colleagues, or that Mellon had no information that she

United States District Court
Northern District of California

had. Nor does the SAC plead facts suggesting that the demographic figures the letter recites were inaccurate. Instead, it labels the letter's reliance on them "subjective fabrications" without more. SAC ¶ 175; ECF No. 60-7 at 8. At most, Hankins disputes whether the retirement rationale is accurate or lawful, which is a merits question in her age-discrimination claims against Dentons.

Mellon argues Hankins' FAC alleged she "contemplated options for an early retirement" and "considered an early retirement," FAC ¶¶ 17, 22, ECF No. 1-2, and that Hankins removed those allegations from the SAC. MTD at 11, 18–19; MTD Reply at 9-10. However, a party may file an amended pleading that omits or contradicts earlier allegations. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858-60 (9th Cir. 2007) ("The short of it is that there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading."). Regardless, the deficiency here exists even accepting Hankins' allegations in the SAC without drawing any adverse inference from the omissions. Nor does the Court resolve what Hankins said to her colleagues, which Mellon's reply characterizes as a factual dispute. MTD Reply at 9–10. The dispositive point is narrower. Even assuming the SAC's allegations are true, Hankins' disagreement with the letter's explanation does not show that the position stated in response to her counsel's demand was objectively baseless.

Finally, the SAC itself pleads that on October 8, 2025, nearly two months before the December 1 letter and before any demand, Dentons told Hankins in writing that it had "recently completed a review of our administrative and professional services staffing" and "determined after a careful review that it is necessary to eliminate your position," and that Hankins' separation documents referred to a "2025 Business Services Staffing Review and Organizational Alignment Program." SAC ¶¶ 141–42, 148–49; *see also id.* ¶¶ 154, 160; ECF No. 60-6 at 5, 8 (Exs. Z, AA). The letter therefore did not introduce a new account of the termination but instead described, in response to Hankins' demand, the staffing review that Dentons had identified when it terminated her. Hankins' own demand letter, to which Mellon was responding, likewise proceeded from the

premise that Dentons had terminated her "as part of a workforce reduction" and invoked the severance plan that "governs severance benefits for employees affected by workforce reductions." ECF No. 60-7 at 2–3. That characterization does not concede that the reduction was genuine or lawful, but it undercuts the claim that a response engaging with it was objectively baseless. Hankins also alleges that the October 8 descriptions were inconsistent with Coker's "reduction-in-force" remark and with each other, SAC ¶¶ 148, 160, and that she was selected shortly after her accommodation was approved, *id.* ¶¶ 173, 218. Those are allegations that Dentons' stated reasons were pretextual, and they may be tested in the claims against Dentons. They do not plausibly show that Dentons' position, as stated in a response to a demand letter, was one that no reasonable litigant could expect to succeed on, much less that Mellon invented it. Holding otherwise on these allegations would mean that a plaintiff could strip an employer's pre-suit response to a demand of *Noerr-Pennington* protection by alleging that the employer's stated reason was pretextual, without pleading facts showing that the employer's position was objectively baseless. The sham exception, not a freestanding inquiry into pretext, is the safeguard the Ninth Circuit has identified against baseless assertions in pre-litigation communications. *See Sosa*, 437 F.3d at 936, 940 (explaining the importance of protecting pre-suit demands and negotiations). As *Sosa* explains, protecting presuit negotiation is important to meaningful access to courts and can facilitate resolving disputes without litigation. *Id.* at 936–42. The fact that an employer's stated justification for termination may be disputed, or even ultimately rejected on the merits, therefore is not by itself enough to establish that its presuit litigation position was objectively baseless.

Hankins' opposition largely restates the allegations discussed above and adds several arguments. She argues that the letter's statement that she was selected for the reduction in force before she requested her accommodation cannot be reconciled with the six-and-a-half-week interactive process, and that her favorable April 2025 performance review is inconsistent with a concern that she would retire. MTD Opp'n at 7–8. She also argues that the letter, titled "Confidential Settlement Communication," proposed no settlement terms, and that the May 2026 posting offered a lower salary than she earned. *Id.* at 7. The absence of a counteroffer does not take the letter outside the *Noerr-Pennington* doctrine, which protects a response that states a

party's position on a demand that threatened litigation, and it says nothing about whether the position was baseless. The fact that Dentons continued the accommodation process through October 3 likewise does not show that no staffing review had occurred. Hankins argues that privately considering retirement is different from announcing a retirement plan, MTD Opp'n at 8, and the Court accepts that difference for purposes of this motion. But the letter refers to statements to colleagues, and the SAC does not allege that she made none. Her opposition also does not address the other facts the letter recited, including that the Oakland positions were chosen because reassigning the attorneys' work would be the least disruptive option and the ages of the employees who were not selected. MTD Reply at 7–8; ECF No. 60-7 at 7–8. Each is, at most, a challenge to the accuracy or lawfulness of Dentons' stated reasons, which is the subject of her claims against Dentons. None addresses whether a reasonable litigant in Dentons' position could have expected to prevail on the position the letter stated. Her principal argument is that relying on "planned-retirement" statements to select an older employee for a reduction in force is "discriminatory on its face," so that no reasonable litigant could expect a factfinder to accept it as a legitimate reason. MTD Opp'n at 1, 8–9. Whether an employer may lawfully consider an employee's stated retirement plans in that setting is a merits question the Court does not decide at this stage. But Hankins cites no authority holding that such a position is objectively baseless, and the sham exception does not apply merely because a position may ultimately be rejected or is alleged to be unlawful. *See Prof'l Real Estate Invs.*, 508 U.S. at 60. Dentons' position also does not become baseless because the letter gave a reason that Hankins had not heard on October 8. *See* MTS Opp'n at 7 (arguing that the letter "invent[ed]" a third rationale). Shifting explanations may be evidence of pretext in the claims against Dentons, but they do not show that the position lacked any reasonable basis.

Hankins argues that petitioning is objectively baseless when it "rests on facts that are demonstrably false, lacks contemporaneous evidentiary support, contradicts the actor's own internal knowledge, or is incompatible with the actor's actual course of conduct." MTD Opp'n at 7. She does not cite authority adopting that formulation, and it is not the test in *Professional Real Estate Investors*. To the extent she argues that the letter falls within a misrepresentation

United States District Court
Northern District of California

exception, the argument fails. The Ninth Circuit has recognized that litigation can be deemed a sham where a party's "knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Kottle*, 146 F.3d at 1060 (citation omitted). Hankins does not allege that Mellon made any representation to a court or other adjudicator, and the SAC's allegations that the letter was false are, for the reasons above, conclusory and rest on disputed issues from the underlying employment claims. *See id.* at 1063 (a plaintiff may not avoid the specificity requirement by recasting disputed issues from the underlying employment claims as "misrepresentations.").

**b. Subjective Bad Faith**

Because the SAC does not plausibly allege that the December 1 letter was objectively baseless, the Court need not reach the subjective prong. *Prof'l Real Estate Invs.*, 508 U.S. at 60–61. The Court notes, however, that the SAC's allegations of bad faith are made "on information and belief" and consist of conclusions, such as that the letter was "designed solely to cover, conceal, ratify, and perpetuate" discrimination and was issued "in subjective bad faith to manufacture a post-hoc pretext." SAC ¶¶ 172, 174, 207. The SAC pleads no facts about what Mellon knew, who provided the information in the letter, or why she had reason to believe it was false. Such allegations do not meet the specificity the Court described. Prior Order at 11. Hankins responds that Rule 9(b) permits intent and knowledge to be alleged generally and that she need not plead Dentons' internal communications before discovery. MTD Opp'n at 9. The Court does not require her to plead those communications, but Rule 9(b) "does not give [a plaintiff] license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686–87. The facts she does plead must support a plausible inference of knowing baselessness, and they do not. The additional facts Hankins cites are those the Court has found insufficient on the objective step, together with the timing of Mellon's response and her later departure. MTD Opp'n at 9–11. Mellon first appears in the SAC on November 13, 2025, after the separation agreement's deadline had been set, and she acknowledged the demand before the date by which it asked for a response. SAC ¶ 164; ECF No. 60-7 at 2. The SAC does not identify any duty on Mellon's part to respond or to extend the offer by November 22 or allege that Hankins accepted or tried to

accept it within that period. Mellon argues that Hankins wrote on October 10 that the severance agreement "does not support my best interests," that her counsel's November 10 letter demanded a larger package, and that nothing in the SAC suggests that Mellon promised a response by the deadline or that Hankins asked to extend it. MTD Reply at 11–12 (citing SAC ¶ 153 & Exs. DD, HH). Hankins also asserts that a January 2026 statement by Martin shows that Mellon "was not acting on behalf of Dentons," MTD Opp'n at 10, but the SAC itself alleges that Mellon sent the response on Dentons' behalf. SAC ¶ 165.

**3. Mellon's Remaining Arguments**

Because each claim against Mellon rests on the December 1 letter and is barred by the *Noerr-Pennington* doctrine, the Court need not decide whether the Eighth, Fourteenth, and Sixteenth causes of action exceeded the leave the Court granted, or whether those claims and the Fourth cause of action independently fail for the reasons Mellon gives. MTD at 20–22. Hankins' arguments that each claim is adequately pleaded depend on the same premise, that Mellon "assumed direct operational control" of her severance negotiations and thereby ratified her termination. MTD Opp'n at 10–17. They therefore fall with the *Noerr-Pennington* ruling. Hankins does not argue that the doctrine applies differently to the Eighth, Fourteenth, and Sixteenth causes of action. *See* MTD Reply at 13–14. The Court addresses the scope of its prior grant of leave below.

**4. Leave to Amend**

Courts have broader discretion in denying motions for leave to amend after leave to amend has already been granted. *See Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) ("[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed.") (cleaned up); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002).

In its prior order, the Court gave Hankins leave to amend, explained that the sham exception was the deficiency, and cautioned that she must plead around the defense with specificity. Prior Order at 10–11. Although the SAC adds new allegations, Hankins has identified

no additional facts that plausibly allege the sham exception. The Court therefore denies further leave to amend based on Hankins' failure, after notice of the particular pleading deficiency and an opportunity to cure it, to allege facts supporting an exception to *Noerr-Pennington*. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (discretion to deny further leave is particularly broad after a plaintiff fails to add requisite particularity following an opportunity to amend); *Carvalho*, 629 F.3d at 892–93. On the present record, the proposed expansion of claims against Mellon also would not cure that defect, and Hankins' opposition identifies no additional, nonconclusory facts that she could allege. Her alternative request asks only that the Court allow the SAC to stand "as pleaded." MTD Opp'n at 17–18. The Court therefore concludes another amendment would be futile. In her reply, Mellon argues Hankins has now had two opportunities to plead the sham exception. MTD Reply at 6. That overstates the history because the FAC was filed before the Court identified the deficiency. The denial of leave rests instead on Hankins' failure to cure the identified deficiency after notice and on the absence of any identified additional facts that could do so, not merely on the number or length of her pleadings. The Fourth, Eighth, Fourteenth, and Sixteenth causes of action are therefore **DISMISSED** as to Mellon **WITHOUT LEAVE TO AMEND**.

**B. Motion to Strike**

Defendants, including Mellon, move to strike much of the SAC except the allegations concerning Mellon's December 1 letter and the sham exception: the rewritten introductory, jurisdictional, venue, and party allegations (SAC ¶¶ 1–15); the rewritten statement of facts (*id.* ¶¶ 16–162, 177–80); the First through Seventh and Ninth causes of action; the Eighth, Tenth through Sixteenth causes of action; and the revised prayer for relief. MTS at 2–3, 10–11. They argue the Court's prior order granted leave only to plead facts establishing the sham exception as to Mellon, that Hankins did not obtain Defendants' consent or the Court's leave before rewriting the complaint and adding new claims and new theories of liability against other Defendants, and that the additions should therefore be stricken under Rule 15(a)(2). *Id.* at 5, 8–10. Hankins responds that she filed the SAC "pursuant to" the prior order, that Rule 81(c)(1) required her to restructure her state-court pleading to meet federal standards, and that every added claim arises from the same

facts and relates back under Rule 15(c)(1)(B). MTS Opp'n at 1–4. She argues Defendants show no prejudice, that she discovered her wage claims while verifying the SAC, and that the allegations about the other Defendants are needed to plead the sham exception. *Id*. at 4–10. She also contends that Defendants seek to suppress statements by McCandless and Martin, whom she describes as witnesses under California Rule of Professional Conduct 3.7, and that the motion is a dilatory tactic. *Id*. at 10–11. Alternatively, she asks for leave to amend or for leave to move for leave to file a proposed third amended complaint. *Id*. at 11. In their reply, Defendants stress that, according to Hankins' own redline, virtually all 66 pages of the SAC differ from the FAC. They ask the Court to strike everything outside the scope of the prior order and say that this should include the Second, Eighth, Tenth through Fourteenth, and Sixteenth causes of action, the new individual-liability allegations against Coker, Navarrete, Kekatos, Bethke, and Alvarez, and the new Labor Code penalty requests. They also argue that Hankins may not obtain leave retroactively and ask in the alternative that she be required to file a noticed motion for leave. MTS Reply at 2–6.

**1. Scope of the Court's Leave to Amend**

The Court agrees with Defendants that the prior order did not authorize the amendments Hankins made to her claims against the other Defendants. The prior order resolved only Mellon's motion to dismiss and motion to strike, dismissed only the claims against Mellon, and gave Hankins leave "to permit Hankins to allege additional allegations against Mellon." Prior Order at 11. The other Defendants had answered the FAC, and no motion directed at the claims against them was before the Court. Although the prior order's final sentence permitted Hankins to file "an amended complaint consistent with this order," *id.* at 19, that sentence must be read together with the rest of the order, which concerned only Mellon. Because the time to amend as a matter of course had passed, Hankins could not otherwise amend without Defendants' written consent or leave of court. Fed. R. Civ. P. 15(a)(2). The SAC nonetheless adds claims against Dentons, including claims for failure to accommodate, failure to prevent discrimination, and several violations of the California Labor Code (SAC ¶¶ 224–36, 313–50); changes the FMLA claim to assert that Coker, Bethke, and Alvarez are "individual employers" (*id.* ¶¶ 8, 12–13, 250); and adds

new aiding-and-abetting and Labor Code section 558.1 claims against individual Defendants (*id.* ¶¶ 291–99, 351–56). Hankins did not seek leave or consent before doing so. Her opposition does not say otherwise. It asks that the Court grant leave "retroactively." MTS Opp'n at 1; MTS Reply at 2. Hankins' contrary arguments are not persuasive. She says the SAC was filed "pursuant to" the prior order, but that order granted leave to cure the sham-exception deficiency as to Mellon and did not invite new claims or new theories against anyone. Rule 81(c)(1) provides that the Federal Rules apply to a civil action after removal, and Rule 81(c)(2) provides that "[a]fter removal, repleading is unnecessary unless the court orders it." Neither exempts a removed plaintiff from Rule 15(a)(2), and the second undercuts the claim that she had to restructure her pleading. Rule 15(c)(1)(B) determines whether an amendment that is allowed is treated as filed on the date of the original pleading. It does not dispense with consent or leave, and Hankins' own authority describes the purpose of the rule as to "defeat the bar of statutes of limitations." MTD Opp'n at 12 (quoting *Ramirez v. Ghilotti Bros., Inc.*, 941 F. Supp. 2d 1197, 1208 (N.D. Cal. 2013)). Hankins also cites *DCD Programs* for the proposition that an amended complaint may assert additional claims. MTS Opp'n at 8. *DCD Programs* states that the "liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties," 833 F.2d at 186, but that goes to whether leave should be granted, not to whether it is required. And although Hankins explains that she found the Labor Code violations while verifying the SAC, MTS Opp'n at 9–10, that explanation bears on the Rule 15 factors, not on whether she needed leave. Hankins is cautioned that, going forward, she may not amend her complaint without the written consent of Defendants or leave of court. Fed. R. Civ. P. 15(a)(2).

Civil Local Rule 15-1(a) provides that, "[u]nless the court orders otherwise," a party moving to file an amended pleading must attach the entire proposed pleading and a redlined version comparing it to the prior pleading. Hankins filed the SAC and a comparison, ECF Nos. 60, 60-1, but did not file a motion requesting the additional amendments before filing them. Her request for leave in opposition to the motion to strike is not the procedure that Rule 15(a)(2) and Civil Local Rule 15-1 contemplate. The question remains whether the Court should nevertheless exercise its discretion to permit the additional claims.

Hankins also argues that the allegations and claims directed at the other Defendants are needed to plead the sham exception because the conduct of Coker and the human resources Defendants contradicts the letter's account of a summer reduction in force. MTS Opp'n at 5–6. The Court has considered those allegations in resolving the motion to dismiss, and they do not change the result. But the need to describe the context of the letter does not explain the addition of claims against Dentons and the individual Defendants for failure to accommodate, failure to prevent discrimination, and Labor Code violations, none of which bears on whether the letter was a sham. Nor does Hankins' invocation of Rule 3.7 change the analysis. Defendants do not seek to strike the allegations about the January 2026 calls with McCandless and Martin (SAC ¶¶ 181–97), *see* MTS at 2–3, and whether either lawyer may be a witness is not before the Court. Finally, the Court does not find that Defendants brought the motion in bad faith or to delay. Although motions to strike are disfavored, Defendants were correct that the SAC exceeded the leave granted.

**2. Whether to Strike**

That Hankins exceeded the leave granted does not, however, mean that the appropriate remedy is to strike the SAC. First, most of what Defendants seek to strike does not fall within the categories of matter that Rule 12(f) addresses: redundant, immaterial, impertinent, or scandalous matter. Defendants do not contend that the challenged allegations lack a relationship to the claims. Instead, they contend the claims were added without permission. Second, Defendants ask the Court to strike the claims, not simply allegations, and the Ninth Circuit has made clear that Rule 12(f) is not a vehicle for removing claims from a pleading on legal grounds. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010); Prior Order at 14–15. That reasoning applies with some force where, as here, the relief requested would strike nearly the entire operative pleading as to six of the seven Defendants and leave unclear what pleading governs the claims against them. MTS at 2-3, 10-11. The reply does not narrow that request. MTS Reply at 5-6. Third, the question Defendants' argument presents is whether Hankins should be permitted to add these claims at this stage, and Rule 15(a)(2) answers that question by directing that leave be "freely give[n] when justice so requires." Hankins is representing herself, and the Court construes her filing liberally. The Court therefore construes the SAC, to the extent it

exceeds the leave granted, as a request for leave to amend and evaluates it under the *Foman* factors.

Defendants are correct that a court may strike an amendment that exceeds the leave it granted, even when the added claims are not independently subject to Rule 12(f). *See Ferris v. Santa Clara Cnty.*, 891 F.2d 715, 719 (9th Cir. 1989) (affirming the striking of a second amended complaint that added a new claim after final judgment, where an earlier amendment had failed to cure the defect the district court identified); MTS Reply at 2–3, 5 (citing *Peguero v. Toyota Motor Sales, USA, Inc.*, 2021 WL 2910562, at *4–5 (C.D. Cal. Apr. 26, 2021), and *Temple of 1001 Buddhas v. City of Fremont*, 2022 WL 1570480, at *6 (N.D. Cal. May 18, 2022), *aff'd,* 2023 WL 4399243 (9th Cir. July 7, 2023)). The Court does not read *Whittlestone* to deprive it of that authority. But these decisions show that striking is available, not that it is required. *Ferris* involved an amendment after final judgment, and it also recognized that the policy favoring amendment is liberally construed for self-represented plaintiffs. 891 F.2d at 719. Defendants also argue that Rule 15 does not permit leave to be sought retroactively, MTS Reply at 2, but they cite no binding authority that prevents the Court from construing a self-represented plaintiff's pleading as a request for leave. Their alternative request that Hankins be ordered to file a noticed motion would require the same analysis after further delay, and the Court denies it.

As to the claims against Dentons, Coker, Navarrete, Kekatos, Bethke, and Alvarez, those factors do not favor striking the SAC. Defendants describe Hankins' redline as "nearly incomprehensible" and argue that her approach deprived them of the chance to raise futility, delay, and prejudice before the amendment took effect. MTS Reply at 2, 4. Those are legitimate procedural concerns, but they do not describe concrete prejudice. Prejudice is the most important factor, and the party opposing amendment bears the burden of showing it. *Eminence Capital*, 316 F.3d at 1052; *DCD Programs*, 833 F.2d at 187. The case is at the pleading stage, with no case management schedule or discovery deadlines having been set. The new claims arise from the same employment, accommodation, and termination events alleged in the FAC and the charge Hankins filed with the California Civil Rights Department, so Defendants have long been on notice of the underlying facts. Hankins also explains that she found the wage-and-hour claims

while verifying the SAC's exhibits, MTS Opp'n at 9–10, which weighs against a finding of bad faith or undue delay. Further, resolving related claims arising from the same termination in one action avoids duplicative litigation. Those considerations bear only on discretionary leave and are not a finding that any new claim is sufficient. Defendants do not argue that the new claims were pleaded in bad faith or are futile. Their reply says only that a noticed motion would have given them the chance to raise delay and futility. MTS Reply at 4. The Court expresses no view on the sufficiency of any claim against those Defendants, which they may challenge under Rule 12. Nor has Hankins previously been permitted to amend her claims against these Defendants after any ruling by this Court. Accordingly, the Court **DENIES** the motion to strike as to the claims against these Defendants and **GRANTS** Hankins leave to maintain the SAC as the operative pleading as to them. In so ruling, the Court finds it unnecessary to reach Hankins' alternative request for leave to move for leave to file a third amended complaint. MTS Opp'n at 11.

Defendants also argue the scale of the changes and the departure from the typical motion process have imposed additional work on Defendants. MTS Reply at 2–5. But Defendants had the filed SAC and Hankins' comparison, moved against particular additions, and have now briefed their argument for excluding them in a motion and reply. They do not identify an expired discovery period, an approaching trial date, or a loss of proof caused by the additions. The case remains at the pleading stage, and the additional claims arise from the same employment and separation events. Requiring a formal Rule 15 motion would largely duplicate the briefing already completed. The Court therefore exercises its discretion to allow the filed SAC to serve as the operative pleading as to the remaining Defendants. *See* Fed. R. Civ. P. 15(a)(2); Civ. L.R. 15-1(a). The Court does not excuse noncompliance in future filings, and it does not determine that any newly added claim is legally sufficient.

As to Mellon, the analysis differs because Hankins added claims against her after the Court dismissed the claims she had pleaded and identified a specific deficiency. The new claims against Mellon, in the Eighth, Fourteenth, and Sixteenth causes of action, and the new "individual employer" theory in the Fourth, rest on the same December 1 letter, and the Court has concluded that the SAC does not plausibly allege that the letter falls outside the *Noerr-Pennington* doctrine.

Leave to add those claims against Mellon would therefore be futile, and the Court denies it on that basis. Hankins' contentions that these claims fall within the leave granted or relate back, MTD Opp'n at 11–13, fail for the reasons given above, and her alternative request for "retroactive" leave to maintain them, *id*. at 17–18, is denied for the same reason. The new claims restate the same protected conduct under different legal theories, so the theory attached to each claim makes no difference. Because amendment as to Mellon would be futile, the Court may deny leave as to her while allowing the SAC to proceed against the remaining Defendants. *See Foman*, 371 U.S. at 182. In light of the Court's ruling on the motion to dismiss, the motion to strike is otherwise **DENIED AS MOOT** as to the portions of the SAC directed to Mellon.

## V. CONCLUSION

For the reasons stated above, the Court **GRANTS** Mellon's motion to dismiss and **DISMISSES** the Fourth, Eighth, Fourteenth, and Sixteenth causes of action as to Mellon **WITHOUT LEAVE TO AMEND**. The Court **DENIES** the motion to strike as to the remaining Defendants and **DENIES AS MOOT** the motion as to Mellon. The remaining Defendants shall answer or otherwise respond to the SAC within 14 days of this order. Hankins may not further amend her complaint without the written consent of Defendants or leave of court. Fed. R. Civ. P. 15(a)(2).

**IT IS SO ORDERED.**

Dated: November 23, 2026

THOMAS S. HIXSON
United States Magistrate Judge